**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GARY H. RAGAN, Individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>APPHARVEST, INC., JONATHAN WEBB, and LOREN EGGLETON,<br><br>　　　　　Defendants. | Case No.: 1:21-cv-07985-LJL<br><br>Hon. Lewis J. Liman |

**ALAN NARZISSENFELD'S MEMORANDUM OF LAW IN OPPOSITION TO THE**
**COMPETING MOTIONS FOR LEAD PLAINTIFF**

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ................................................................................... 1

II.     ARGUMENT .............................................................................................................. 3

        A.    The PSLRA Process............................................................................................ 3

        B.    Mr. Narzissenfeld Is the Presumptive Lead Plaintiff........................................ 4

              1.    Mr. Narzissenfeld Has the Largest Financial Interest. ............................... 4

              2.    Mr. Narzissenfeld Meets the Typicality and Adequacy Requirements of
                    Rule 23. ....................................................................................................... 5

        C.    The Court Should Reject Plymouth's Proposed Class Period as it is Implausible
              and "Obviously Frivolous". ............................................................................... 7

        D.    Plymouth Faces an Additional Unique Defense of Being a Professional Plaintiff........ 10

III.    CONCLUSION........................................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Aronson v. McKesson HBOC, Inc.,*
    79 F. Supp. 2d 1146 (N.D. Cal. 1999) ........................................................................ 10, 11

*Brady v. Top Ships Inc.,*
    324 F. Supp. 3d 335 (E.D.N.Y. 2018) ................................................................................. 6

*In re Centerline Holding Co. Sec. Litig.,*
    08 Civ. 505 (SAS), 08 Civ. 1026 (SAS), 08 Civ. 1158 (SAS), 08 Civ. 1458 (SAS), 08
    Civ. 1593 (SAS), 08 Civ. 1902 (SAS), 2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5,
    2008) ................................................................................................................................... 7

*Chahal v. Credit Suisse Grp. AG,*
    Nos. 18-CV-2268 *et al.,* 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018)........... 1, 4

*Chiaretti v. Orthodontic Ctrs. of Am., Inc.,*
    No. 03-1027 Section "F", 2003 U.S. Dist. LEXIS 25264 (E.D. La. Aug. 28, 2003).. 10, 11, 13

*In re Comverse Tech., Inc. Sec. Litig.,*
    No. 06-CV-1825, 2007 U.S. Dist. LEXIS 3028  (E.D.N.Y. Mar. 2, 2007) ............................. 4

*Dura Pharm., Inc. v. Broudo,*
    544 U.S. 336 (2005) ............................................................................................................. 7

*In re Enron Corp., Sec. Litig.,*
    206 F.R.D. 427 (S.D. Tex. 2002) ................................................................................... 10, 13

*Faris v. Longtop Fin. Techs. Ltd.,*
    No. 11 Civ. 3658 (SAS); 11 Civ. 3661 (SAS), 2011 U.S. Dist. LEXIS 112970, Fed. Sec.
    L. Rep. (CCH) P96,562 (S.D.N.Y. Oct. 4, 2011) ................................................................. 5

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization,*
    *LLC*,
    616 F. Supp. 2d 461 (S.D.N.Y. 2009) .............................................................................. 4, 11

*Khunt v. Alibaba Grp. Holding Ltd.,*
    102 F. Supp. 3d 523 (S.D.N.Y. 2015) .................................................................................. 5

*Maliarov v. Eros Int'l PLC*,
    15-CV-8956 (AJN); 16-CV-223 (AJN), 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5,
    2016) ................................................................................................................................... 9

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
    256 F.R.D. 620 (E.D. Wis. 2009) ......................................................................................... 7

*Stengle v. Am. Ital. Pasta Co.*,
   No. 05-0725-CV-W-ODS, 2005 U.S. Dist. LEXIS 43816 (W.D. Mo. Dec. 19, 2005).......... 11

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999)......................................................................... 10, 11, 12

*Thompson v. Shaw Group, Inc.*,
   No. 04-1685 Section "C" (1), 2004 U.S. Dist. LEXIS 25641 (E.D. La. Dec. 13, 2004)........ 11

*In re Unumprovident Corp. Sec. Litig.*,
   No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. Nov. 6, 2003) ................. 11, 13

*Villare v. Abiomed, Inc.*,
   19 Civ. 7319 (ER); 19 Civ. 9258 (ER), 2020 U.S. Dist. LEXIS 114684 (S.D.N.Y. June
   29, 2020) ............................................................................................................... 2, 8

**Statutes**

15 U.S.C. §78u-4 ............................................................................................................... *passim*

**Other Authorities**

ERIKA FRY, FORTUNE, *The Little Louisiana Pension Fund Litigation Monster*
   (October 7, 2013) ........................................................................................................ 12

iii

## I.    PRELIMINARY STATEMENT

This securities fraud class action is governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires courts at the outset to appoint a "lead plaintiff" and "lead counsel" to oversee and conduct the litigation. 15 U.S.C. §78u-4(a)(3). The role of "lead plaintiff" is important insofar as the individuals appointed are trusted with overseeing their lawyers and serving in a fiduciary capacity to act in the best interests of their fellow class members. To aid courts in their decision, the PSLRA provides a straightforward process for assessing the competing applicants. It gives preference to the movant with the "largest financial interest" in the action and otherwise satisfies the typicality and adequacy requirements of Rule 23. This preference or presumption can only be rebutted by actual "proof" that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

In this District, Courts routinely consider a movant's claimed loss as most determinative. *Chahal v. Credit Suisse Grp. AG,* Nos. 18-CV-2268 *et al*., 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018) Mr. Narzissenfeld is the presumptive lead plaintiff as he has the largest financial interest of any movant, having lost $391,369.23 from trading in AppHarvest securities. The other movants claimed significantly smaller losses, ranging from as small as $5,500 to $128,000.[1] Mr. Narzissenfeld, a sophisticated businessman who has been trading in securities for more than thirty years, easily meets the typicality and adequacy requirements of Rule 23.

---

[1] On December 7, 2021, lead plaintiff movant group Marc Pierre & Brandon York filed a notice of non-opposition, stating that they do not have largest financial interest. ECF No. 23. That same day, movant John Whitlow filed a withdrawal of his lead plaintiff motion. ECF No. 24. Accordingly, Mr. Narzissenfeld and Plymouth are the only two remaining movants before the Court.

One issue stands to complicate this straightforward analysis. On November 22, 2021, the night before the deadline for filing lead plaintiff motions, Plymouth filed a new complaint with a materially different class period. The initial complaint presented a class period of May 17, 2021 through August 10, 2021; Plymouth County's complaint extended the class period back in time by seven months to begin on October 9, 2020 (the "Plymouth class period"). While financial interests at the lead plaintiff stage may be assessed under the most inclusive class period, "numerous courts have cautioned that blindly accepting the longest class period without any inquiry may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest." *Villare v. Abiomed, Inc*., 19 Civ. 7319 (ER); 19 Civ. 9258 (ER), 2020 U.S. Dist. LEXIS 114684, at *9 (S.D.N.Y. June 29, 2020). Even the most cursory of looks at Plymouth County's proposed class period shows that it is an attempt to "manipulate" its way into having "the largest financial loss."

As evident from Plymouth County's "Certification" filed with its complaint, it did not have any purchases of AppHarvest securities during the initial class period between May 17, 2021 and August 10, 2021. In fact, its only purchase of AppHarvest stock was on October 27 and 28, 2020. Plymouth County and its counsel consequently filed a new complaint with a class period just far back enough to cover these purchases. They then issued a notice announcing the new class period with less than 24 hours before the deadline to file a motion for lead plaintiff.

The timing of Plymouth County's actions relative to the deadline suggest that the new complaint was filed in gamesmanship. This conclusion is supported by the fact that the alleged theory of fraud does not (indeed, cannot) extend back in time to the October 2020 period in which Plymouth County purchased its AppHarvest stock. As alleged in both the initial complaint and Plymouth County's complaint, investors sustained losses when AppHarvest announced on August

2

11, 2021, its second quarter results and that it was lowering its full year sales guidance due to operational headwinds that had impacted its operations during the second quarter of the year. *The guidance at issue did not exist prior to February 25, 2021, thereby making it impossible for it to have been false at any point beforehand.* Moreover, given that AppHarvest did not even complete construction of its flagship growing facility until October 2020 or start growing its indoor greenhouse crops until October/November 2020, operations could not have been impacted by "headwinds" that developed later in the year.

Plymouth County's actions warrant careful scrutiny. Having filed in *nine* cases in the past *three years* alone, it is clearly a repeat filer in violation of the PSLRA's bar. *See* 15 U.S.C. §78u-4(A)(3)(B)(vi). Appointing Plymouth County as the lead plaintiff in this case would create a host of unnecessary risk for the class. Accordingly, the Court should reject the expanded class period proposed by Plymouth, and grant Mr. Narzissenfeld's motion in its entirety.

## II.     ARGUMENT

### A.     The PSLRA Process.

The PSLRA sets forth the procedure for the selection of a Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as Lead Plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. §78u-4(a)(3)(A)(i). This straightforward leadership selection provides that the "person or group of persons" with the largest loss is the presumptive lead plaintiff and must be appointed lead so long as it is otherwise adequate and typical within the meaning of Rule 23. 15 U.S.C. §78u–4(a)(3)(B)(i) and (iii)(I)(bb)-(cc). Congress created the lead plaintiff presumption because it believed that the movant with the largest

loss would be most incentivized to actively prosecute the securities class action and monitor counsel:

> Further, the provisions created a "rebuttable presumption" that the most "adequate plaintiff" is, inter alia, the person or group of persons that "has the largest financial interest in the relief sought by the class." "The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff – frequently a large institution or otherwise sophisticated investor – would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price."[2]

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009).

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

**B.    Mr. Narzissenfeld Is the Presumptive Lead Plaintiff.**

**1.    *Mr. Narzissenfeld Has the Largest Financial Interest.***

While the PSLRA does not define "financial interest," Courts in the second Circuit and this District, typically find that the amount of financial loss claimed by a lead plaintiff movant is the most significant factor to be considered. *See, e.g., In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825, 2007 U.S. Dist. LEXIS 3028, at *16 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most

---

[2] Unless otherwise noted, citations are omitted, and emphasis is added.

influential in identifying the plaintiff with the largest financial interest"); *Chahal,* 2018 U.S. Dist.

LEXIS 104185, at *12) (equating financial interest with economic loss). Courts will also consider

other factors when determining a movant's financial interest, if necessary, such as retained shares,

and funds expended.

| Movant | Shares Purchased | Net Shares Retained | Funds Expended | LIFO Loss | *Dura* LIFO Loss[3] |
|---|---|---|---|---|---|
| Alan Narzissenfeld | **149,727** | **36,585** | **$ 491,433.16** | **$ 391,369.23** | **$ 361,788.09** |
| Plymouth County Retirement Association | 0 | 0 | 0 | 0 | 0 |

As demonstrated above, it is quite clear that Mr. Narzissenfeld possesses the largest

financial interest of any movant before the Court, as he suffered the largest loss, purchased the

most shares, retained the most shares, and expended the most funds out of all movants. Further, it

is important to note that Plymouth purchased zero shares within the class period and is therefore

not a member of the class. This makes Plymouth subject to unique defenses with regard to standing,

risks becoming the focus of the litigation, and overtaking the common questions and interests of

the class. *See Khunt v. Alibaba Grp. Holding Ltd.,* 102 F. Supp. 3d 523, 537 (S.D.N.Y. 2015)

(quoting   15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb)).

    **2.**    ***Mr. Narzissenfeld Meets the Typicality and Adequacy Requirements of Rule 23.***

In addition to possessing the greatest financial interest, Mr. Narzissenfeld satisfies the

adequacy and typicality requirements of Rule 23. "At the lead plaintiff stage of the litigation, in

contrast to the class certification stage, 'a proposed lead plaintiff need only make a 'preliminary

---

[3] Disregarding gains and losses not attributable to the alleged fraud from intra-class period sales matched to intra-class period purchases.

showing that it will satisfy the typicality and adequacy requirements of Rule 23.'" *Faris v. Longtop Fin. Techs. Ltd.,* No. 11 Civ. 3658 (SAS); 11 Civ. 3661 (SAS), 2011 U.S. Dist. LEXIS 112970, Fed. Sec. L. Rep. (CCH) P96,562, at *12 (S.D.N.Y. Oct. 4, 2011) (quoting *In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,* 258 F.R.D. 260, 268 (S.D.N.Y. 2009)). "Typicality 'requires that the claims of the class representatives be typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* "The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that [he] seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class." *Id.* (ellipsis omitted).

As set forth in greater detail in his initial memorandum in support of the instant motion (the "Opening Brief") (ECF No. 12), Mr. Narzissenfeld's claims are based on the same legal theories and arise from the same event or practice or course of conduct that gives rise to the claims of other class members. Likewise, Mr. Narzissenfeld's certification pursuant to the federal securities laws, (ECF No. 14-1), his Declaration detailing his motivation and intention to oversee this litigation (ECF No. 14-4), and his selection of experienced and capable counsel in Levi & Korsinsky demonstrate that Mr. Narzissenfeld does not have interests antagonistic to the class and will adequately represent the interests of the proposed class. Accordingly, Mr. Narzissenfeld has made a preliminary showing that he satisfies the adequacy and typicality requirements of Rule 23.

As Mr. Narzissenfeld has the largest financial interest in the litigation and satisfies the adequacy and typicality requirements of Rule 23, he is entitled to the presumption of being the "most adequate plaintiff" to represent the Class.

**C.    The Court Should Reject Plymouth's Proposed Class Period as It Is Implausible and "Obviously Frivolous".**

As noted in Mr. Narzissenfeld's Opening Brief, one day before the PSLRA lead plaintiff deadline in the above-captioned *Ragan* Action, an additional complaint against Defendants was filed by Plymouth, purporting to expand the class period defined in the *Ragan* Action back by over seven months.[4] The *Ragan* Action defined the class period as May 17, 2021 through August 10, 2021, inclusive, while the *Plymouth* Action proposes an expanded class period from October 9, 2020 through August 10, 2021, inclusive.

An extended class period that is wholly implausible as pleaded from the face of the complaint cannot, and will not, be adopted as the governing class period for purposes of determining the movant with the largest financial interest in the litigation. *In re Centerline Holding Co. Sec. Litig.,* 08 Civ. 505 (SAS), 08 Civ. 1026 (SAS), 08 Civ. 1158 (SAS), 08 Civ. 1458 (SAS), 08 Civ. 1593 (SAS), 08 Civ. 1902 (SAS), 2008 U.S. Dist. LEXIS 36406, at *12 (S.D.N.Y. May 5, 2008). Further, an expanded class period that is "obviously frivolous" should not be adopted at the lead plaintiff stage as "unscrupulous movants" might be encouraged to "allege longer class periods in an effort to manipulate the lead plaintiff determination". *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009).

In this instance, it is quite clear that Plymouth's class period proposed by is implausible and obviously frivolous.[5] The corrective disclosure that is cited in both the *Ragan* and *Plymouth*

---

[4] The additional action is entitled *Plymouth County Retirement Association v. AppHarvest, Inc., et al.,* C.A. No 1:21-cv-9676 (S.D.N.Y.) ("*Plymouth* Action").

[5] Even if the Court decides to consider Plymouth County's class period when determining the movant with the largest financial interest in the litigation, Mr. Narzissenfeld still possesses the largest financial interest and should be appointed as the lead plaintiff. Indeed, his recoverable loss under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005), amounts to nearly $900,000 when excluding intra-class period gains and losses that are unrelated to the alleged fraud. *See Alibaba,*

7

Complaints occurred on August 11, 2021, when AppHarvest announced it was lowering its full year 2021 guidance due to "operational headwinds". *Ragan* ¶ 4; *Plymouth* ¶ 6. AppHarvest's Fiscal Year 2021 forecast, along with its First Quarter 2021 outlook, was not provided to the investing public until February 25, 2021, as cited in the Plymouth Complaint. *Plymouth* ¶ 40.[6] Therefore, the "operational headwinds" faced by AppHarvest could not have existed in October 2020 because the Morehead facility only opened on October 21, 2020, and the first tomatoes were not announced planted at this facility until November 2020. *Plymouth* ¶¶ 35-36. Further, the tomatoes that were planted in late 2021 were not expected to sell until early spring 2021 and were not harvested until January 19, 2021. *Plymouth* ¶ 38. It is entirely impossible for Plymouth to propose a class period that started in October 2020, when the "operational headwinds" AppHarvest faced did not exist that early on.

Plymouth's class period appears to be a product of gamesmanship. Although in securities class actions the more inclusive class period may be used when assessing financial interests at the lead plaintiff stage, "numerous courts have cautioned that blindly accepting the longest class period without any inquiry may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest." *Abiomed,* 2020 U.S. Dist. LEXIS 114684, at *9. In *Abiomed*, plaintiff/movant Barry, attempted to expand the class period hours

---

102 F. Supp. 3d at 531 (disregarding losses sustained prior to revelation of alleged fraudulent conduct). He also had gross purchases of shares amounting to nearly 630,000, retained shares of almost 75,000, and net funds expended of approximately $84,000. Mr. Narzissenfeld's potential LIFO gain during this period of time of $175,000 does not outweigh the significant financial interest he possesses or his motives to vigorously litigate the claims on behalf of the class in order to maximize the potential recovery. A copy of Mr. Narzissenfeld's transactions during this expanded class period is attached hereto as Exhibit A.

[6] The earliest the class period could start on, based on the August 11, 2021 corrective disclosure, would be February 25, 2021, when AppHarvest first announced its Fiscal Year 2021 forecast. Even expanding the class period back by approximately three months, Plymouth would still not qualify as a class member.

8

before the PSLRA deadline, and in doing so inflated Barry's losses by almost $200,000. *Id*. at *13. Judge Ramos concluded that the longer class period proposed at the eleventh hour should not be used for purposes of the lead plaintiff analysis, due to concerns that the expansion was merely a product of gamesmanship. *Id*.[7]

Plymouth's actions are the same, if not worse, than Barry in *Abiomed*. Expanding the class period backwards by seven months on the eve of the 60-day PSLRA deadline to gain standing that otherwise would not exist due to the absence of any purchases in the original class period smacks of manipulation. Plymouth's gamesmanship to manipulate the class period in the eleventh hour should not be tolerated or rewarded. Courts in this District have consistently expressed their reluctance "to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour, thereby precluding similarly-situated potential movants from identifying themselves to the Court." *Maliarov v. Eros Int'l PLC*, 15-CV-8956 (AJN); 16-CV-223 (AJN), 2016 U.S. Dist. LEXIS 46082, at *10-12 (S.D.N.Y. Apr. 5, 2016). Here, as in *Eros*, a complaint expanding the class period was filed well into the 60-day PSLRA timeframe which meant individuals who would otherwise "be able to meet the requirements of a lead plaintiff motion" under the expanded disclosure date would be "precluded from filing such motions given the expiration of the PSLRA's time limit for doing so." *Eros*, 2016 U.S. Dist. LEXIS 46082, at *12 (citing *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 620 (S.D.N.Y. 2015)). "The specter of gamesmanship on these facts causes the Court to question whether [Plymouth] will 'fairly and adequately protect the interests of the class.'" *Eros*, 2016 U.S. Dist. LEXIS 46082, at *12 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)).

---

[7] Counsel for plaintiff/movant Barry in *Abiomed,* Scott + Scott, LLP, is also counsel for Plymouth here.

**D.      Plymouth Faces an Additional Unique Defense of Being a Professional Plaintiff.**

As of November 22, 2021, Plymouth has sought to serve as lead plaintiff in 12 class actions that have been brought or "filed" within the last three years, not including this action. Of those 12 actions, Plymouth has been appointed lead plaintiff in nine, which is a direct violation of the Five-in-Three Rule. Plymouth's status as a "professional plaintiff" runs afoul of the PSLRA's purpose of safeguarding against lawyer-driven litigation and therefore it cannot be found to be an adequate representative under Rule 23. *See* 15 U.S.C. §78u-4(A)(3)(B)(vi) (". . . consistent with the purposes of this section, a person may be a lead plaintiff . . . in no more than 5 securities class actions . . . during any 3-year period); *Aronson v. McKesson HBOC, Inc.,* 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999) (recognizing that this "provision gives the court considerable discretion to bar repeat litigants, creating a rebuttable presumption that the same plaintiff should not direct more than five securities class actions in three years" and barring institution from service as lead plaintiff).

A ""primary tenet of the PSLRA is to protect a class from representation by repeat plaintiffs, who may not adequately monitor numerous litigations and counsel simultaneously." *Chiaretti v. Orthodontic Ctrs. of Am., Inc.,* No. 03-1027 Section "F", 2003 U.S. Dist. LEXIS 25264, at *5 (E.D. La. Aug. 28, 2003) (disqualifying institution overseeing six securities class actions from service as lead plaintiff). In light of this premise, it is not surprising that the PSLRA expressly bars repeat plaintiffs. 15 U.S.C. §78u-4(a)(3)(B)(vi). While "involvement in numerous other securities fraud [cases]…. may demonstrate valuable experience and quality leadership, it also means fractured attention and resources with respect to this suit"). *In re Enron Corp., Sec. Litig.,* 206 F.R.D. 427, 457 (S.D. Tex. 2002). "[A]n institutional investor that is simultaneously involved in one or more other securities class actions would have fewer resources available and be less able to police its attorney's conduct". *In re Telxon Corp. Sec. Litig.,* 67 F. Supp. 2d 803, 822

10

(N.D. Ohio 1999).

Plymouth's status as a "professional plaintiff" is no doubt due to the fact that it is engaged in "monitoring agreements" with several law firms to manage its portfolio with respect to possible securities fraud litigation. Under these "monitoring agreements," a law firm will provide "free" monitoring services to a pension fund in exchange for that pension fund agreeing to retain the firm to pursue a case if and when the fund decides to participate in the litigation. *See Credit-Based Asset Servicing & Securitization*, 616 F. Supp. 2d 461, 464. "[T]his practice, on its face, creates a clear incentive for [a law firm] to discover 'fraud' in the investments it monitors and to recommend to the Fund's non-lawyer administrator (and, through him, to the trustees) that the Fund, at no cost to itself, bring a class action lawsuit. In other words, the practice fosters the very tendencies toward lawyer-driver litigation that the PSLRA was designed to curtail." *Id*. Further, these sorts of agreements have led to a variety of problems over the years due to the inherent conflicts they present. *See*, *e.g.*, *In re Unumprovident Corp. Sec. Litig.*, No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633, at *21-22 (E.D. Tenn. Nov. 6, 2003) (the "larger the number of cases being directed by a single institutional investor, the less likely it is these purposes are being served," *i.e.*, "cure perceived abuses of securities class actions by wresting control of such actions from professional plaintiffs and overly-aggressive attorneys").[8]

---

[8] *See also Stengle v. Am. Ital. Pasta Co.*, No. 05-0725-CV-W-ODS, 2005 U.S. Dist. LEXIS 43816, at *19-20 (W.D. Mo. Dec. 19, 2005) (excluding pension fund because it was "currently serving as a lead plaintiff in at least six actions and is therefore defined as a 'professional plaintiff' whose application to be lead plaintiff is disfavored by the statute"); *Thompson v. Shaw Group, Inc.*, No. 04-1685 Section "C" (1), 2004 U.S. Dist. LEXIS 25641, at *22 (E.D. La. Dec. 13, 2004) (disqualifying pension fund because "there is a risk of overstretch where [the fund] would be directing a total of eight concurrent lawsuits"); *Unumprovident Corp.*, 2003 U.S Dist. LEXIS 25633, at *22 (denying motion by pension fund that had served in thirteen cases); *Orthodontic Ctrs. of Am., Inc.*, 2003 U.S. Dist. LEXIS 25264, at *6 (disqualifying pension fund from serving as lead plaintiff where its "general counsel currently oversees at least six large securities class

11

The most notorious example, of course, involved a pension fund similar to Plymouth, Louisiana Municipal Police Employees' Retirement System ("LMPRS"), which was featured by Fortune Magazine in a 2013 article describing the fund as being unaware of the various cases it was purportedly prosecuting let alone being capable of actively monitoring them. *See* ERIKA FRY, FORTUNE, *The Little Louisiana Pension Fund Litigation Monster* (October 7, 2013) (noting that LMPERS sues "companies with abandon, sometimes even more regularly than its administrative corps wears blue"). In a 10-day period in February, for example, the fund sued Dell, US Airways, Hewlett-Packard, Heinz, and EnergySolutions . . . ." The article reported that LMPERS' General Counsel, R. Randall Roche – who signed the fund's Certification and Joint Declaration in this case – "**admits he doesn't know exactly how many lawsuits LMPERS has filed** since he started working with the fund in the early '90s (**one defendant counted at least 192 in a recent five-year period; FORTUNE tallied 133**), and he only half-jokingly confesses that he has had a hard time saying no to plaintiffs law firms offering up their services. 'I was not strong enough to beat back all that were knocking at the door,' he says."

Plymouth's track-record is not dissimilar from LMPRS's. With serving as lead plaintiff in nine cases filed in the last three years alone, not including other actions outside of the three-year window where the Association serves as lead plaintiff, there is no indication that it will be able to adequately oversee this case if given the opportunity. Without anything in the record to warrant otherwise, the Court should deny Plymouth's motion pursuant to the PSLRA's restriction against "professional plaintiffs" rule, which prohibits a movant from serving as a lead plaintiff in more

---

actions"); *Telxon Corp.*, 67 F. Supp. 2d 803, 819-22 (holding that pension fund "cannot serve as lead plaintiff" because it "has served as lead plaintiff in five securities class actions"); *McKesson*, 79 F. Supp. 2d 1146, 1156 (holding that pension fund was "presumptively barred from serving as lead plaintiff" as it was "'currently serving as a lead plaintiff or co-lead plaintiff in six such actions'").

than five cases in any three-year period. *See* 15 U.S.C. §78u-4(A)(3)(B)(vi). Importantly, the PSLRA "places the burden on the [presumptively barred institution] to demonstrate why the bar should not be applied." *Telxon Corp.*, 67 F. Supp. 2d 803, 820; *Unumprovident Corp.,* 2003 U.S. Dist. LEXIS 24633, at *20. Plymouth has failed to carry its burden in this regard. *See Orthodontic Ctrs. Of Am., Inc.,* 2003 U.S. Dist. LEXIS 25264, at *5 (the "primary tenet of the PSLRA is to protect a class from representation by repeat plaintiffs, who ***may not*** adequately monitor numerous litigations and counsel simultaneously."); *see also Enron Corp.,* 206 F.R.D. 427, 457 (recognizing that while "involvement in numerous other securities fraud [cases], both as Lead Plaintiff and class participant, may demonstrate valuable experience and quality leadership, it also means ***fractured attention and resources*** with respect to this suit").

## III.    CONCLUSION

For the foregoing reasons, Mr. Narzissenfeld respectfully requests that the Court grant his Motion and enter an Order: (1) appointing Movant as Lead Plaintiff, (2) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.

Dated: December 7, 2021                    Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Adam M. Apton*
Adam M. Apton (AS-8383)
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Alan Narzissenfeld and [Proposed] Lead Counsel for the Class*

13