**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GARY H. RAGAN, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:21-cv-07985-LJL |
| Plaintiff, | |
| v. | |
| APPHARVEST, INC., JONATHAN WEBB, and LOREN EGGLETON, | |
| Defendants. | |
| PLYMOUTH COUNTY RETIREMENT ASSOCATION, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:21-cv-09676-LJL |
| Plaintiff, | |
| v. | |
| APPHARVEST, INC. f/k/a NOVUS CAPITAL CORPORATION, JONATHAN WEBB, and LOREN EGGLETON, | |
| Defendants. | |

**PLYMOUTH COUNTY RETIREMENT ASSOCIATION'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

## **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ...........................................................................................................1

ARGUMENT ...............................................................................................................................2

     A.     Plymouth Has the Largest Financial Interest of Any Movant ................................2

     B.     The Longer Class Period Is the Proper Class Period for Determining the Financial Interest of the Lead Plaintiff Movants .......................................................3

     C.     Plymouth Is the Presumptive Lead Plaintiff and Should Be Appointed Lead Plaintiff ......................................................................................................................7

     D.     The Related Cases Should Be Consolidated.............................................................9

CONCLUSION..............................................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cornwell v. Credit Suisse Grp.*,
No. 08-cv-03758, 2011 WL 13263367 (S.D.N.Y. July 20, 2011)..............................................8

*Crowe v. JPMorgan Chase & Co.*,
No. 08 MDL 1963 (RWS), 2009 WL 3852381 (S.D.N.Y. Nov. 18, 2009)...............................9

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C07-06140, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)............................................1, 6

*Francisco v. Abengoa, S.A.*,
No. 15 CIV 6279 (ER), 2016 WL 3004664 (S.D.N.Y. May 24, 2016)....................................9

*Hachem v. Gen. Elec. Inc.*,
No. 17-CV-8457 (JMF), 2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018) ..................................6

*Hom v. Vale, S.A.*,
No. 1:15-CV-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ...................................3

*In re Braskem S.A. Sec. Litig.*,
No. 15 Civ 5132 (PAE), 2015 WL 5244735 (S.D.N.Y. Sept. 8, 2015)...................................8

*In re Centerline Holding Co. Sec. Litig*,
No. 08 CIV. 1026 (SAS), 2008 WL 1959799 (S.D.N.Y. May 5, 2008) ...................................3

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006)......................................................................................3

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ............................................................................................1

*Lucas v. United States Oil Fund, LP*,
No. 20 CIV. 4740-PGG, 2020 WL 5549719 (S.D.N.Y. Sept. 16, 2020) .............................3, 5

*Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*,
256 F.R.D. 620 (E.D. Wis. 2009) ...........................................................................................3

*Turner v. ShengdaTech, Inc.*,
No. 11 CIV. 1918 TPG, 2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011) ...................................6

*Villare v. ABIOMED, Inc.*,
No. 19 CIV. 7319 (ER), 2020 WL 3497285 (S.D.N.Y. June 29, 2020)..................................9

**Statutes, Rules, and Regulations**

15 U.S.C.
    §78u-4(a)(3)(A)(ii)................................................................................................................6
    §78u-4(a)(3)(B)(iii)(I)..........................................................................................................1

Federal Rules of Civil Procedure
    Rule 23 ..........................................................................................................................1, 2, 7

## SUMMARY OF ARGUMENT

Presently pending before the Court are competing motions for appointment as lead plaintiff and approval of lead counsel.[1] ECF Nos. 6, 9, 11, 15. Under the PSLRA, the Court "shall" select as lead plaintiff the movant with the largest financial interest so long as that movant is otherwise adequate and typical within the meaning of Rule 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Plymouth County Retirement Association ("Movant" or "Plymouth") (ECF No. 15), an institutional investor, should be appointed to lead this case because its loss of approximately $128,000 is the largest financial interest of any movant and it is clearly adequate and typical.

One competing movant, Alan Narzissenfeld (ECF No. 11), claims a larger loss than Plymouth; but Narzissenfeld used the incorrect class period to calculate his loss. There are two related cases on file, the *Ragan* Action and the *Plymouth* Action. The first-filed *Ragan* Action pleads a class period of May 17, 2021 through August 10, 2021, inclusive. *Ragan* Compl. ¶26. The related *Plymouth* Action pleads a longer Class Period of October 9, 2020 through August 10, 2021, inclusive. The general rule is that the "larger, most inclusive class period" is the proper class period to use when analyzing lead plaintiff motions. *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012). That rule governs here because the allegations supporting the longer class period are neither implausible nor obviously frivolous. Any argument by Narzissenfeld to the contrary is pure gamesmanship, so that he can maximize his losses by using the shorter class period. It also demonstrates why he will not be a good fiduciary for the proposed class. *See Eichenholtz v. Verifone Holdings, Inc.,* No. C07-06140, 2008 WL 3925289, at *2 (N.D. Cal. Aug.

---

[1]    Unless otherwise defined herein, all capitalized terms shall maintain the same meaning as those set forth in Plymouth's memorandum of law filed in support of its motion. ECF No. 16. The three competing motions were filed by: John Whitlow ("Whitlow") (ECF No. 6); Brandon York and Marc Pierre (York & Pierre) (ECF No. 9); and Alan Narzissenfeld ("Narzissenfeld") (ECF No. 11). Whitlow since withdrew his motion and York & Pierre filed a notice of non-opposition. ECF Nos. 23-24.

22, 2008) ("[I]t is unclear why a plaintiff would argue for a shorter class period at th[e] [lead plaintiff] stage, which would have the effect of reducing the class size and limiting the potential amount of damages, unless it was in the best interest of that particular plaintiff only.").

Plymouth is the "most adequate" movant, as defined by the PSLRA, and should be appointed lead plaintiff based on the financial losses it suffered as a result of the wrongful conduct alleged in this litigation and because it satisfies the relevant requirements of Rule 23. Its claims are typical of other Class members and it has shown that it can fairly and adequately represent the interests of the Class. In addition, Plymouth's selection of Scott+Scott as Lead Counsel should be approved because Scott+Scott has substantial expertise in securities class action litigation and the experience and resources to prosecute this action efficiently and effectively. Finally, the above-captioned related cases should be consolidated.

## ARGUMENT

### A. Plymouth Has the Largest Financial Interest of Any Movant

As reflected in the following chart of losses asserted by the movants, Plymouth has suffered the largest financial interest. The only movant who claims a greater loss is Narzissenfeld; however, that is true only because he made a strategic choice to not provide his losses for the longer, more inclusive class period alleged in the *Plymouth* Action. His loss is therefore not properly comparable to Plymouth's.

| Movant | Longer CP Loss | Shorter CP Loss |
|---|---|---|
| **Plymouth** | **$128,107** | None claimed |
| Narzissenfeld | *Not provided* | $391,369 |
| Whitlow | *Not provided* | $106,684 |
| York & Pierre | $5,594 | $5,594 |

*See* ECF Nos. 17-4; 14-2; 8-3; 18-1.

**B.      The Longer Class Period Is the Proper Class Period for Determining
          the Financial Interest of the Lead Plaintiff Movants**

Plymouth has alleged the largest financial interest in this case using the longer class period

alleged in the *Plymouth* Action.  The general rule in this District and around the country, when

there are multiple related securities class actions with differing class periods, is to use "the longer,

more inclusive class period [ ] because the longer class period encompasses more potential class

members and damages."  *Hom v. Vale, S.A.*, No. 1:15-CV-9539-GHW, 2016 WL 880201, at *4

(S.D.N.Y. Mar. 7, 2016) (citing, *e.g.*, *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-

03 (S.D.N.Y. 2006) (utilizing more expansive class period by nearly four years); *Villella v. Chem.

& Mining Co. of Chile Inc.*, No. 15-cv-2106-ER, 2015 WL 6029950, at *5 n.5 (S.D.N.Y. Oct. 14,

2015) (same)).  Moreover, the lead plaintiff stage is not the proper time to evaluate the sufficiency

of allegations in a complaint.  There can be no dispute that Plymouth should be appointed lead

plaintiff using the longer class period.

"Courts vary from this approach only where the proposed longer class period is

'[im]plausibl[e]' or 'obviously frivolous.'"  *Lucas v. United States Oil Fund, LP*, No. 20 CIV.

4740-PGG, 2020 WL 5549719, at *4 (S.D.N.Y. Sept. 16, 2020) (citing cases); *see also Plumbers

& Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009)

("obviously frivolous" standard); *In re Centerline Holding Co. Sec. Litig*, No. 08 CIV. 1026 (SAS),

2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008) (plausibility standard).  Neither of these very

high standards can be met here.

The crux of both complaints is that AppHarvest did not disclose to the investing public that

it did not have the operational capacity to successfully produce its first tomato harvest, due to

inadequate training of its employees. *Ragan* Compl. ¶23; *Plymouth* Compl. ¶45.  Because of this,

AppHarvest's first quarter as a public company was disappointing for investors who thought they

3

were investing in a company with experienced management, a "strong network of employer assistance programs," and a top-notch facility, such that AppHarvest was fully prepared to harvest its first crop. AppHarvest's stock price fell 29% when the truth was disclosed. *Ragan* Compl. ¶¶24-45; *Plymouth* Compl. ¶¶32, 46-47.

The *Ragan* Action alleges a class period of less than four months, encompassing just four paragraphs of misstatements stemming from AppHarvest's first quarter 2021 financial results. *Ragan* Compl. ¶¶19-22. Those statements are financial and operational results (and not financial guidance) and are statements about Mastronardi, AppHarvest's exclusive distributor. *Id.*

The *Plymouth* Complaint adds allegations that the Company knew (or should have known) about these training inadequacies much earlier; specifically, during a the time of intense due diligence as it raised hundreds of millions of dollars from investors in the process of going public via a SPAC merger. *Plymouth* Compl. ¶¶19-23. Indeed, AppHarvest touted the strength of its management team to raise this capital and go public; but, in reality, its management neglected the training that was needed for the first harvest to be a success. The *Plymouth* Action adds thirteen additional paragraphs of misstatements, some of which are nearly the exact same statements that are also pled in *Ragan*, but were made earlier in time. *Compare Plymouth* Compl. ¶34 with *Ragan* Compl. ¶22. The longer class period also includes AppHarvest's first announcements about the harvest at issue and the new facility where the growing and harvesting would take place. *Plymouth* Compl. ¶¶38-39. Furthermore, the longer class period includes AppHarvest's February 2021 full-year net revenue guidance of $20 million to $25 million, issued after harvesting had already begun, and which was drastically reduced to $7 million to $9 million six months later. ¶¶40, 46. The *Ragan* Action alleges an unnecessarily short class period that does not even pick up this misleading

4

guidance.  The scienter allegations are identical for the two complaints.  *Ragan* Compl. ¶37; *Plymouth* Compl. ¶59.  If the *Plymouth* Action is implausible, so is the *Ragan* Action.

This case is about operational failures and AppHarvest's failure to disclose that its employees were not sufficiently prepared to harvest the Company's first crop of tomatoes.  The *Plymouth* Action is just as plausible, if not more supported, than the *Ragan* Action's shorter class period.  The longer class period covers the losses of many more investors (including Plymouth) who would not otherwise be covered by the litigation because they purchased shares before the start of the *Ragan* class period.  Because the longer class period is neither implausible nor obviously frivolous, it should be used to determine the most adequate movant to serve as lead plaintiff.

Recently, in *Lucas v. United States Oil Fund, LP*, Judge Gardephe rejected an argument that a longer class period was implausible or frivolous.  No. 20-CV-4740-PGG, 2020 WL 5549719, at \*4 (S.D.N.Y. Sept. 16, 2020).  There, the theory of the case had to do with coronavirus disclosures.  The complaint at issue alleged that "the coronavirus pandemic had been declared a global public health emergency by the WHO in January 2020" – weeks before registration statement alleged to be misleading was issued.  Yet the "Registration Statement did not even mention the COVID-19 pandemic."  This was enough for Judge Gardephe to find the longer class period sufficiently supported.  *Id.*  Similarly, here, the *Plymouth* Complaint alleges that AppHarvest opened its facility in October 2020, started planting in January 2021, and started harvesting in February 2021 – yet did not properly disclose the training issues.  This is sufficient to overcome any argument of frivolity because one can infer that, as the facility was opening and ramping up, the Company knew or should have known of these problems.

5

Notices to the public were issued regarding both cases and class periods prior to the PSLRA lead plaintiff deadline. ECF Nos 17-1 and 17-2. Even with that notice, Narzissenfeld strategically chose to use the shorter class period because he had a larger loss during that class period. He also chose not to provide his transaction details from the longer class period so the Court could perform a proper apples-to-apples comparison of losses. Such gamesmanship does not bode well for a lead plaintiff who is supposed to look out for the interests of all class members as well as potential class members who could recover pursuant to the same theory of wrongdoing. *See Eichenholtz v. Verifone Holdings, Inc.,* No. C07-06140, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008).

There is no need to republish notice of the *Plymouth* Action, because that notice has already occurred. ECF No. 17-2. Moreover, republication of notice is not required under the PSLRA. The plain text of the statute provides that, where a subsequent action asserts "substantially the same claim or claims . . . only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published." 15 U.S.C. §78u-4(a)(3)(A)(ii). Based on this, courts typically "disfavor republication of notice under [the] PSLRA when a class period is extended beyond the period contained in the first-filed securities class action." *Turner v. ShengdaTech, Inc.*, No. 11 CIV. 1918 TPG, 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011). Since notice was issued here, for both the *Ragan* and the *Plymouth* Actions, and because the actions are substantially similar, this is a non-issue.[2]

---

[2]    *Hachem v. Gen. Elec. Inc.*, No. 17-CV-8457 (JMF), 2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018), also supports the use of the longer class period for lead plaintiff determination purposes here. In *Hachem*, Judge Furman ordered the re-opening of a lead plaintiff deadline after a lead plaintiff had already been appointed. *Id.* Judge Furman did this because a related complaint, filed *after* the lead plaintiff appointment, pled a significantly expanded class period and addressed the same theory of wrongdoing as well as an additional theory that was not pled in the other, related cases. *Id.* Judge Furman held that class members should be notified of the longer class period (and new theory) and, therefore, the lead plaintiff deadline would be reopened. *Id.* This course of action is not necessary here because (i) the class was notified of the longer class period prior to the lead plaintiff deadline (*see* ECF No. 17-2); (ii) the *Plymouth* Action does not add any new theories

### C. Plymouth Is the Presumptive Lead Plaintiff and Should Be Appointed Lead Plaintiff

In its opening papers, Plymouth established that it satisfies the "preliminary" Rule 23 inquiry. *See* ECF No. 16 at 7-8. It is clearly typical of the putative Class because it purchased AppHarvest common stock during the Class Period, has claims that arise from the alleged misleading statements, and suffered economic injuries thereby. It is also adequate because it has no conflicts of interest with the other members of the Class and no unique defenses that apply to it, has a sufficient interest in the outcome of the case, and has selected counsel that is qualified, experienced, and generally able to conduct this litigation, *id.* at 9-10. Plymouth is also a sophisticated institutional investor and an experienced securities class action lead plaintiff. ECF No. 17-3.

Plymouth has also demonstrated it is an adequate representative by retaining competent and experienced counsel. Scott+Scott is an international law firm with a large presence in New York City that specializes in securities class action cases throughout the country and has significant resources to litigate this case. Scott+Scott consists of over 110 team members, including 70 highly experienced attorneys. Scott+Scott also includes a team of paralegals, legal assistants, and other support staff, including in-house investigators and an e-discovery litigation support group.

Scott+Scott also has a long track record of successfully leading, litigating, and resolving securities class actions in both state and federal courts throughout New York and is actively litigating numerous such actions. *See*, *e.g.*, *Mustafin v. GreenSky, Inc.*, No. 1:18-cv-11071 (S.D.N.Y.) ($27.5 million settlement); *In re Evoqua Water Techs. Corp. Sec. Litig.*, No. 1:18-cv-

---

of fraud; and (iii) there have been no other related complaints filed since the November 23 lead plaintiff deadline. This Court issued an Order on November 24, 2021, ordering Plaintiff Ragan to notify it of any additional related cases filed before a lead plaintiff is appointed. ECF No. 19. To date, the only related complaints on file are the above-captioned actions. Plymouth has filed a letter concurrently with this memorandum in response to the Order.

10320 (S.D.N.Y.) ($16.65 million settlement); *Silverberg v. DryShips Inc.*, No. 2:17-cv-04547 (E.D.N.Y.) (appointed lead counsel); *Robinson v. Diana Containerships Inc.*, No. 2:17-cv-06160 (E.D.N.Y.) (appointed lead counsel); *Garnett v. Wang [RLX Technology, Inc.]*, No. 21-cv-05125 (S.D.N.Y.) (appointed lead counsel); *Gupta v. Athenex, Inc.*, No. 21-cv-00337 (W.D.N.Y.) (appointed lead counsel); *In re Netshoes Sec. Litig.*, Index No. 157435/2018 (N.Y Sup. Ct.) ($8 million settlement approved); *In re PPDAI Grp. Sec. Litig.*, No. 654482/2018, (N.Y. Sup. Ct.); *In re DouYu Int'l Holdings Ltd. Sec. Litig.*, Index No. 651703/2020 (N.Y. Sup. Ct.); *In re Altice USA, Inc. Sec. Litig.*, Index No. 711788/2018 (N.Y. Sup. Ct.); and *Erie County Employees' Retirement System v. NN, Inc.*, Index No. 656462/2019 (N.Y. Sup. Ct.).

In addition, Scott+Scott's team has achieved a number of significant successes in other complex class action matters in New York. *See*, *e.g.*, *In re: Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y.) (achieved over $2.3 billion in final-approved settlements); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-07126 (S.D.N.Y.) (recovered $504.5 million for investors who transacted in ISDAfix agreements).

These achievements have not gone unnoticed. *See*, *e.g.*, *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758, 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) ("Based upon Lead Plaintiffs' counsel's diligent efforts on behalf of the Settlement Class, as well as their skill and reputations, Lead Plaintiffs' counsel were able to negotiate a very favorable result for the Settlement Class. ***Lead Plaintiffs' counsel are among the most experienced and skilled practitioners*** in the securities litigation field, and have unparalleled experience and capabilities as preeminent class action specialists.") (emphasis added).

## D.    The Related Cases Should Be Consolidated

Courts in this district "routinely consolidate securities class actions arising from the same allegedly actionable statements." *In re Braskem S.A. Sec. Litig.*, No. 15 Civ. 5132 (PAE), 2015 WL 5244735, at *3 (S.D.N.Y. Sept. 8, 2015) (collecting cases). The above-captioned actions share sufficiently common questions of law and fact to warrant consolidation. Both actions involve the same company and defendants, and nearly the same facts, claims, and legal theories; therefore, consolidation will prevent needless duplication and possible confusion, as well as potentially inconsistent jury verdicts. *See Crowe v. JPMorgan Chase & Co.*, No. 08 MDL 1963 (RWS), 2009 WL 3852381, at *2 (S.D.N.Y. Nov. 18, 2009). Minor "differences neither change the substantially similar nature of the two actions nor diminish the benefits of consolidation." *Villare v. ABIOMED, Inc.*, No. 19 CIV. 7319 (ER), 2020 WL 3497285, at *3 n.6 (S.D.N.Y. June 29, 2020) (citing *Francisco v. Abengoa, S.A.*, No. 15 CIV. 6279 (ER), 2016 WL 3004664, at *4 (S.D.N.Y. May 24, 2016)) (consolidating two securities actions notwithstanding differences in class period and alleged misstatements); *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."), *reconsidered on other grounds sub nom. In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009)).

## CONCLUSION

For the foregoing reasons, Plymouth respectfully requests that the Court grant its Motion and enter an Order: (1) consolidating the above-captioned cases; (2) appointing Plymouth as Lead Plaintiff; (3) approving its selection of Scott+Scott to serve as Lead Counsel; and (4) denying all competing motions.

9

DATED:  December 7, 2021                **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV
Donald A. Broggi
Rhiana L. Swartz
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
tlaughlin@scott-scott.com
dbroggi@scott-scott.com
rswartz@scott-scott.com

*Counsel for Proposed Lead Plaintiff Plymouth County Retirement Association and Proposed Lead Counsel for the Class*

10

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV
