# EXHIBIT A

As filed with the Securities and Exchange Commission on October 9, 2020

Registration No. 333-

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

## FORM S-4

REGISTRATION STATEMENT
*UNDER*
*THE SECURITIES ACT OF 1933*

## NOVUS CAPITAL CORPORATION

(Exact name of registrant as specified in its charter)

| **Delaware** | **6770** | **82-5042965** |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification Number) |

8556 Oakmont Lane
Indianapolis, IN 46260
(317) 590-6959

(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices)

Novus Capital Corporation
8556 Oakmont Lane
Indianapolis, IN 46260
Attention: Robert J. Laikin
(317) 590-6959

(Name, address, including zip code, and telephone number, including area code, of agent for service)

Copies to:

| | |
|---|---|
| Robert J. Mittman, Esq. | |
| Brad L. Shiffman, Esq. | Derek O. Colla |
| Kathleen A. Cunningham, Esq. | John T. McKenna |
| Elena P. Jacque, Esq. | David I. Silverman |
| Blank Rome LLP | Katie Kazem |
| 1271 Avenue of the Americas | Rishab Kumar |
| New York, New York 10021 | Cooley LLP |
| (212) 885-5000 | 1299 Pennsylvania Avenue NW |
| rmittman@blankrome.com | Suite 700 |
| bshiffman@blankrome.com | Washington, DC 20004 |
| kcunningham@blankrome.com | (202) 842-7800 |
| ejacque@blankrome.com | |

Approximate date of commencement of proposed sale to the public: As soon as practicable after this Registration Statement becomes effective and after all conditions under the Business Combination Agreement to consummate the proposed merger are satisfied or waived.

If the securities being registered on this Form are to be offered in connection with the formation of a holding company and there is compliance with General Instruction G, check the following box. ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company" and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer ☐ | Accelerated filer ☐ | Non-accelerated filer ☒ | Smaller reporting company ☒ |
| | | | Emerging growth company ☒ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 7(a)(2)(B) of the Securities Act. ☐

(number of employees), sector and location, representative indicators in the assessment include payment above a living wage, employee benefits, stakeholder engagement, supporting underserved suppliers and environmental benefits from a company's products or services. After completing the assessment, B Lab will verify the company's score to determine if it meets the 80-point minimum bar for certification. The review process includes a phone review, a random selection of indicators for verifying documentation and a random selection of company locations for onsite reviews, including employee interviews and facility tours. Once certified, every Certified B Corporation must make its assessment score transparent on B Lab's website.

Acceptance as a Certified B Corporation and continued certification is at the sole discretion of B Lab. To maintain its certification, AppHarvest is required to update its assessment and verify its updated score with B Lab every three years. AppHarvest will need to update its current certification no later than December 30, 2022. Additionally, AppHarvest is required to commit to recertifying within 90 days following the closing of the Business Combination and to complete this recertification within one year following the closing of the Business Combination.

**Public Benefit Corporation Status**

In connection with its Certified B Corporation status and as a demonstration of its long-term commitment to its mission, AppHarvest has been a public benefit corporation under Delaware law since inception.

Under Delaware law, a public benefit corporation is required to identify in its certificate of incorporation the public benefit or benefits it will promote and its directors have a duty to manage the affairs of the corporation in a manner that balances the pecuniary interests of the corporation's stockholders, the best interests of those materially affected by the corporation's conduct, and the specific public benefit or public benefits identified in the public benefit corporation's certificate of incorporation. Public benefit corporations organized in Delaware are also required to assess their benefit performance internally and to disclose to stockholders at least biennially a report detailing their success in meeting their benefit objectives.

As provided in AppHarvest's amended and restated certificate of incorporation, the public benefits that AppHarvest promotes, and pursuant to which it manages the Company, are empowering individuals in Appalachia, driving positive environmental change in the agriculture industry, and improving the lives of AppHarvest's employees and the community at large.

**Trademarks and Other Intellectual Property**

AppHarvest owns trademarks and other proprietary rights that are important to its business, including its principal trademark, AppHarvest. All of AppHarvest's trademarks are registered with the U.S. Patent and Trademark Office. AppHarvest's trademarks are valuable assets that reinforce the distinctiveness of its brand to its consumers. The Company believes the protection of its trademarks, copyrights and domain names are important to its success. AppHarvest aggressively protects its intellectual property rights by relying on trademark and copyright.

**Employees**

As of June 30, 2020, AppHarvest had approximately 40 full-time employees, including 21 at its Lexington location and 15 at its Morehead facility, all of whom are located in the United States. None of AppHarvest's employees are represented by a labor union. AppHarvest has never experienced a labor-related work stoppage. AppHarvest treats its employees with respect and dignity and considers its relations with its employees to be very good. AppHarvest expects that it will employ approximately 350 employees at its Morehead facility by the end of 2020.

**Facilities**

AppHarvest leases its corporate headquarters located at 500 Appalachian Way, Morehead, Kentucky 40351 where it occupies approximately 12,000 square feet of office space pursuant to a lease that expires in 2040. AppHarvest leases the Morehead controlled environment agriculture facility, which consists of

147