

THOMAS+LAUGHLIN IV
_____

+ Via ECF +

December 13, 2021

Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:    *Ragan v. AppHarvest, Inc.*, No. 21-cv-07985-LJL
                *Plymouth Cty. Ret. Sys. v. AppHarvest, Inc.*, No. 1:21-cv-09676-LJL

Your Honor:

We represent Lead Plaintiff Movant Plymouth County Retirement System ("Plymouth") in connection with the above-captioned related securities class actions regarding AppHarvest, Inc. ("AppHarvest" or the "Company") (the "*Ragan* Action" and the "*Plymouth* Action"; together the "Related Actions"). On December 9, 2021, the only competing movant, Alan Narzissenfeld, was granted leave to file and filed a Reply in further support of his motion to be appointed lead plaintiff. ECF Nos. 29-31. The Reply cited to many documents outside the pleadings. On Sunday, December 12, 2021, Your Honor cancelled the hearing that was previously set for the afternoon of December 13, 2021, indicating that a substantive order on the competing motions would follow. ECF No. 32. We respectfully request leave to file a short sur-reply to Narzissenfeld's Reply, to address a few factual points that we had planned to make at the hearing.

The main issue regarding the competing lead plaintiff motions is which of the two class periods alleged in the Related Actions is proper to use for the purpose of determining which movant has the "largest financial interest" in the case, as set forth in the Private Securities Litigation Reform Act ("PSLRA"). The *Plymouth* Action states a longer class period that starts on October 9, 2020, rather than May 17, 2021, like the *Ragan* Action. Under the longer class period, Plymouth has a loss of approximately $128,000, compared to Narzissenfeld's **gain** of approximately $176,000. *See* ECF Nos. 33 & 36. Generally, the longest alleged class period is the correct one to use for this purpose. Narzissenfeld argues that the longer class period is "meritless" and therefore cannot be used.

Narzissenfeld is clearly wrong about the class period and his attempt to undermine the longer class period simply because it affects his ability to serve as a lead plaintiff is a majorly disservice to the investors he seeks to represent. This case is about a Special Purpose Acquisition Company ("SPAC") that massively overstated the operational capacity of AppHarvest and its Morehead facility in order to secure investor approval for the merger and a lucrative award for the founders of the SPAC. Contrary to Narzissenfeld's argument, the allegation that the wrongdoing extends back to October 2020 is **very** plausible. Indeed, it was in October 2020 that management of the SPAC made the key misstatements about AppHarvest to solicit the votes for the merger.

For the sake of brevity, we highlight and summarize key facts herein, which all support the longer class period:

    1.      The SPAC that merged to become the public AppHarvest entity, Novus Capital Corporation ("Novus") collected $100 million from investors before going public. The initial shareholders (founders) of Novus received twenty (20) percent of Novus's stock for a nominal fee of

December 13, 2021
Page 2

$25,000. If a merger was not approved in 24 months from the beginning of the SPAC, Novus' money would be distributed back to investors and the founders' 20 percent interest would be worthless.

2.      To secure investor approval of the merger with AppHarvest, Defendants made many false statements concerning AppHarvest's operational ability and the Morehead facility. Perhaps most notably, in light of the arguments made in Narzissenfeld's Reply, the Company made apparently unsupported statements of its projected income in the initial Registration Statement filed on October 9, 2020.

**Specifically, on October 9, 2020, Novus told investors that the post-merger company (AppHarvest) expected to earn $25 million in net revenue for fiscal-year 2021** and $59 million for fiscal-year 2022. *See* Exhibit A at 92 (annexed hereto). To support these projections, defendants made a host of representations concerning its newly-opened Morehead facility, the strength of AppHarvest's management and favorable labor conditions available to AppHarvest. *Plymouth* Compl., ¶¶30-32. The $25 million projection had no basis; it was completely unattainable because AppHarvest did not have the ability to generate the necessary volume of Grade 1 tomatoes necessary to meet the revenue target. Additional misrepresentations on these subjects continued in the following months and are pled in the *Plymouth* Compl., ¶¶35-40.

3.      There is ample evidence that the statements – particularly the $25 million fiscal-year 2021 revenue forecast – were false when made. On August 11, 2021, the Company slashed fiscal-year 2021 revenue projections to only $7 to $9 million for fiscal-year 2021, because it could not produce enough high-quality tomatoes. The huge gap between these two projections strongly suggests that the $25 million statement lacked a reasonable basis at the time. Moreover, most of the facts relevant to AppHarvest's operational capacity for fiscal-year 2021 were known as of October 2020: (i) AppHarvest's management was in place (¶29; *see also* Exhibit A at 191-93); (ii) the Morehead facility opened in October 2020 (¶¶30, 35); and (iii) the labor pool for the Morehead facility was known (¶¶31-32). Indeed, if that were not the case, then the $25 million fiscal-year 2021 projection would be actionable for being unsupported by sufficient analysis.

4.      Further, it is common knowledge that SPACs are making greatly exaggerated statements concerning their post-merger prospects in order to secure deals. *See, e.g.,* THE WALL STREET JOURNAL, *SEC's Gary Gensler Seeks to Level Playing Field Between SPACs, Traditional IPOs, updated on December 9, 2021* (annexed hereto as Exhibit B).

5.      As SEC Chair Gary Gensler has said publicly, the inclusion of misleading financial forecasts is commonplace among SPAC offerings. It is a known phenomenon. Here, the facts fit the pattern. The $25 million projection is so far and away from what the Company was actually on track to achieve. The huge gap supports an inference of fraud, particularly because there is motive and opportunity here. The $25 million projection and related operations misstatements served the SPAC founders' direct financial interests in getting the merger approved and their award vested. This supports an inference of fraud under controlling Second Circuit authority. *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) ("Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged.").

For these reasons, as well as those set forth in Plymouth's opposition (ECF No. 26), the Court should follow the general rule and use the longer period to determine which movant has the largest financial interest in the case. The fact that Narzissenfeld is actively litigating against the longer class period at this early stage – and trying to prevent our client, a public pension fund, and so many other similarly situated investors, from recovering their losses, simply because he **made significant financial gains during that longer class period***,* is outrageous and disloyal. Moreover, based on the foregoing, there is no reason to credit

December 13, 2021
Page 3

Narzissenfeld's assertion that operational troubles only emerged in the second quarter of 2021. That position may well be Defendants' defense, but it is certainly not a basis to alter the scope of the class (which amounts to throwing out huge numbers of claims) at this stage.

That the briefing on this issue requires so many filings and exhibits, at a procedural time when the substance of the complaints is not meant to be subject to such extensive scrutiny, demonstrates that the *Plymouth* class period is far from frivolous. Narzissenfeld even *admits* that the correct class period should start some time before the May 17, 2021 start of the *Ragan* class period ("operational troubles may have materialized as some point in the [*Plymouth*] class period"), which severely undercuts his argument that the *Ragan* class period is proper for the purpose of evaluating who should be appointed lead plaintiff.

We request leave to file a surreply or, in the alternative, that the Court accept this filing in lieu of a surreply. We appreciate Your Honor's time and attention to this matter.

Respectfully Submitted,
SCOTT+SCOTT ATTORNEYS AT LAW LLP


 s/ *Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV

cc:  All Counsel of Record (via ECF)