# EXHIBIT 2

**Exhibit 10.20**

**PURCHASE & MARKETING AGREEMENT**
**EXCLUSIVE PRODUCTION APPHARVEST, LLC**
**(United States)**

This agreement ("Agreement") is made this 28th day of March, 2019 ("Effective Date") between AppHarvest, Inc., a Delaware corporation ("Grower") and Mastronardi Produce Limited, a corporation incorporated pursuant to the laws of the Province of Ontario, Canada, having its principal office at 2100 Road 4 East, ON CAN9Y 2E, Kingsville, Ontario, Canada ("Mastronardi").

| Recitals | |
|---|---|
| **Grower's Designated Greenhouse Facility:** | Morehead, Kentucky |
| **Facility Products:** | tomatoes, cucumbers and, or peppers |
| **Growing Acres:** | 60 |
| **Initial Term:** | 10 years |
| **Initial Term Commencement Date:** | date of commercial harvest of first crop |

Mastronardi is engaged in business as an importer, marketer and dealer of fruits and vegetables, with experience in domestic and international markets. Mastronardi wish to enter into an agreement by which they will cooperate in the growing, harvesting, packing and general operation of the Facility upon terms and conditions set forth in this Agreement.

Therefore, in consideration of the mutual covenants herein contained, and of other good and valuable consideration, the Parties incorporate the above Recitals and further agree as follows:

1.  Grower hereby agrees to grow, cultivate, harvest, produce, export (if applicable), and sell certain types and quantities of fresh Products of the Facility to Mastronardi set forth in the above Recitals (collectively, the "Products"), and Mastronardi hereby agrees to purchase certain types and quantities of Products from Grower, in accordance with the terms and conditions of this Agreement. Grower shall grow such Products on the lands comprising of the Facility as Mastronardi shall designate as set forth in this Agreement.

2.  Grower's responsibilities include the following:

    (a) Grower hereby agrees to grow, cultivate, harvest, produce, and sell certain types and quantities of Products as set forth in the above Recitals and Mastronardi hereby agrees to purchase certain types and quantities of Products from Grower, in accordance with the terms and conditions of this Agreement. Grower shall grow such Products on the lands comprising of the Facility. Grower shall grow and package the Products from the Facility. Any additional or change in the geographic location of the Facility must be agreed to by the Parties in writing. Grower is responsible for the production, management, administration and operation of the Facility and will grow and pack all crops applicable to this Agreement.

    (b) Grower is not to inventory more than [***] of packaging materials for any given pack format. At the end of the Term, Mastronardi will purchase the unused packaging applicable to the Products up to the [***] inventory. If Grower does store more inventory levels than required by Mastronardi and the pack format changes, Mastronardi is not responsible for any dollar value, costs or other charges, claims or damages above and beyond the [***]. Grower will produce, pack and have the Product ready for pick up by Mastronardi from the Facility in accordance with this Agreement and any respective purchase orders for the Products.

3.  Marketing; Quality; Product Pricing; Packaging.

    (a) Mastronardi shall market and sell the Products, directly or indirectly, to its customers. Grower has agreed to have Mastronardi market and be the exclusive purchaser of one-hundred percent (100%) of the production of the Products from the Facility, and Mastronardi has agreed to purchase one-hundred percent (100%) of such production that is of a quality at or above United States Department of Agriculture Grade No. 1 Standards and export quality standards within North America (which includes Canada, US, and Mexico), and of a quality required by Mastronardi's customers (collectively, "#1 Product"). If Mastronardi rejects, returns or otherwise refuses Products on the basis that Products do not meet #1 Product standards under this Agreement, Grower will have the right, at Grower's cost and expense, to sell or otherwise dispose of the Products so long as the Products are, (i) not sold as USDA #1 Product, (ii) not identified with any trade name, trademark, or other marks associated with Mastronardi, including its SUNSET® brand, or any of its customer's private label brands or marks, and (iii) no Mastronardi (or Mastronardi customer's) related packaging or similar materials shall be used to transport, sell, distribute or otherwise dispose of the Products.

**Certain information has been excluded from this agreement (indicated by "[***]") because such information (i) is not material and (ii) would be competitively harmful if publicly disclosed.**

2

(b) Mastronardi shall determine the marketing and branding of all Products of the Facility, provided, however, subject to the instructions of Mastronardi's customers for the Products to use of a customer private label brand. Mastronardi will use best efforts to include or incorporate a valid AppHarvest trade names, trade dresses, branding (the, "AppHarvest Marks") on packages of the Product, which may also bear one or more other trademarks, including trade names, trade dresses, branding, and/or logos, owned or controlled by Mastronardi, and other trademarks trade dresses, branding, and/or logos that are not AppHarvest Marks (the "Mastronardi Marks"). For avoidance of doubt, Mastronardi is under no obligation to include any of the AppHarvest Marks on packaging for the Products if including the AppHarvest Marks conflicts with instructions from Mastronardi's customer for the Products. In addition, Mastronardi shall be under no obligation to include any of the AppHarvest Marks on packaging for the Products in the event AppHarvest suffers a material impairment to its reputation, or the reputation of one or more of the AppHarvest Marks, as determined by Mastronardi. As between the Parties and their Affiliates, Mastronardi owns all rights, titles, and interest in and to the Mastronardi Marks. AppHarvest shall not challenge the validity of the Mastronardi Marks. AppHarvest shall also not apply, register or attempt to register any of the Mastronardi Marks, or any confusingly similar mark to the Mastronardi Marks, in AppHarvest's name, directly or indirectly through a third party, for any class of goods or services. During the Term, AppHarvest will only use or otherwise permit the use of AppHarvest Marks on tomatoes, cucumbers, peppers and berries from production of facilities located in any or all of [***] in accordance with the terms of this Agreement.

4.  All prices for the Products (commodity or specialty) include Grower's packaging and labor costs and expenses. All payments to be made by Mastronardi to Grower for the Products shall be made by bank transfer or any other means acceptable to the Parties.

5.  Grower will produce, pack and deliver to Mastronardi, Products of the Facilities in the manner set forth in this Agreement, and Mastronardi shall market and sell such Products, directly or indirectly, to customers in any or all of Canada, United States of America, Asia, Mexico or Europe. The Parties may expand this Agreement to include other greenhouse acreage and products by the written amendment or such other written agreement of the Parties.

6.  Market Price. Mastronardi shall except as specifically set forth in this Agreement (including any Addendums) and subject to Mastronardi's reasonable business judgment, use commercially reasonable efforts to obtain market prices for the Products that are consistent with the best and highest prices available during the duration of the applicable growing season, based upon seasonality, prevailing market conditions and customer commitments at the time and location of sale. Except as may be set forth otherwise in this Agreement or in a separate written agreement by the Parties (including price terms for any specialty products that the Parties may negotiate from time to time during the Term), the Parties hereby further agree and intend to establish sales terms consistent with the foregoing with respect to all produce related transactions contemplated or otherwise actually performed under this Agreement, in which case all prices include packaging and labor and Mastronardi shall be paid [***], plus [***] costs incurred in the sale and distribution of the Product, as reasonably determined by Mastronardi (the, "Market Price").

7.  [***]
    [***].

**Certain information has been excluded from this agreement (indicated by "[***]") because such information (i) is not material and (ii) would be competitively harmful if publicly disclosed.**

Initials

*/s/ JW*    */s/ PM*

Grower  Mastronardi

3

3

8. Grower will only package Products under Mastronardi's approved packaging and procedures for the growing, packaging, and shipping of the Products. All packaging of the Products shall be purchased from either Mastronardi, an approved Affiliate of Mastronardi, or a supplier approved by Mastronardi in writing. Unless agreed to otherwise in writing by Grower and Mastronardi, on a growing season basis, packaging prices to be paid by Grower and other sale terms will be set forth in sales invoices issued by Mastronardi or an Affiliate of Mastronardi to Grower.

9. Mastronardi is authorized and shall be entitled to fully deduct from sale proceeds or any other monies owed to Grower, all costs, fees and other indebtedness that Grower owes to Mastronardi and any of its Affiliates, [***], together with rights of set off. Any and all deductions shall not be limited only to the proceeds of any single produce transaction.

10. Mastronardi shall also be authorized to deduct the full amount of any and all damages or expenses related to any claim against any Product shipments from Grower to Mastronardi, from any sums that may be due and owing Grower, together with rights of set off and such deductions shall not be limited to only the proceeds of the produce transaction subject to any such claim.

11. The Parties hereby agree and intend to establish a running account that runs to the end of each relevant growing season and, therefore, is not a divisible contract for the sale of produce.

12. Exclusive Distribution of Facility Products. The Parties further agree that Mastronardi is appointed by Grower as the sole and exclusive distributor of Products and Grower shall only utilize the Facility in furtherance of this Agreement and Grower shall not directly or indirectly sell, market or distribute the Products, except through Mastronardi. If either or both, (i) Grower intentionally fails or refuses to plant varieties, grow or delivery Product in accordance with the terms and conditions of this Agreement (including a failure or refusal to replanting any diseased or destroyed crop at Mastronardi's direction), or (ii) any breach in exclusivity of this Agreement by Grower; then Grower shall pay to Mastronardi as liquidated damages the sum of $[***] US dollars for [***] assigned to Mastronardi for the growing season in which the breach occurs, and for each remaining growing season thereafter during the Term for which such breach, violation or exclusivity is violated on a per acre basis. Any partial breach or violation of an acre shall be deemed a breach of the entire acre. The Parties further agree that damages would be difficult to ascertain and that the provisions of this Section are reasonable and have been negotiated in good faith.

13. Restrictive Covenants. Grower agrees and shall be subject to and governed by the Non-Solicitation and Employ and Non-Competition provisions set forth in **Exhibit A**.

14. Mastronardi grants Grower a non-transferable, non-exclusive right to use Mastronardi's  trademark(s) and certain customer third-party trademark(s), solely for purposes in furtherance of this Agreement and sale of Products to Mastronardi, and as identified, permitted and directed by Mastronardi from time to time during the Term. Grower shall not and cannot sublicense any Mastronardi trademark(s) or the third-party trademark(s). Mastronardi has the right at any time to terminate any and all use by Grower of any Mastronardi trademarks and/or third-party trademarks.

**Certain information has been excluded from this agreement (indicated by "[***]") because such information (i) is not material and (ii) would be competitively harmful if publicly disclosed.**

Initials

_/s/ JW_    _/s/ PM_

Grower  Mastronardi

4

4

15. Grower covenants, warrants and agrees that, throughout the Term of this Agreement, including any renewal or extension thereof, the quality of the produce delivered by Grower to Mastronardi from the Facility shall fulfill the requirements of all applicable laws. All produce shall be free of contaminants prohibited by the laws of all applicable jurisdictions where Products are grown, harvested and sold, and will be properly labeled and comply with weight requirements of all applicable laws. Grower warrants that it is properly registered or shall be registered prior to commencing production, by the United States Food and Drug Administration under the Bioterrorism Act of 2002 and further warrants that it will actively maintain a third party food safety certification from certifying entities recognized in the United States and Canada and further warrants that it will actively maintain a third party food safety certification to the standard required by the top three retailers that sell the Products in North America from certifying entities recognized in the final importing country. Grower will provide a current certificate, audit report, water testing results, and proof of FDA registration to Mastronardi. All documentation must be written in the English language.

16. Upon pick up of the Products at the Facility by Mastronardi, title of the Products shall transfer from Grower to Mastronardi and Mastronardi will be responsible for the cost of logistics and shipment of the Products from the pick-up from the Facility to the first destination point that may be at a Mastronardi or Affiliate facility or a Mastronardi customer facility (in each case, the "First Destination Point"). Upon delivery of the Products by Mastronardi to the First Destination Point to a Mastronardi or Affiliate facility, Mastronardi has the right within [***] of receipt of such Products to the First Destination Point, to inspect the quality of the Products and shall have the right to notify Grower that the Products fail to meet the quality standards required under this Agreement, in which case Grower shall accept, at Grower's cost, a return of the Products as rejected under this Agreement. Mastronardi shall also have the right to notify Grower that the Products have been inspected by Mastronardi's customer within [***] from receipt of Products to the First Destination Point, and rejected by such customer in that the Products fail to meet the quality standards required under this Agreement, in which case Grower shall accept, at Grower's cost, a return of the Product as rejected under this Agreement, unless the rejection was at no fault of Grower and caused by Mastronardi. Mastronardi will provide to Grower reasonable documentation for the basis of rejections.

17. In the event Grower and Mastronardi agree in writing to change any or all of the fresh produce products or quantities to be grown under this Agreement, all such products grown shall be included within the meaning of "Products" under this Agreement. All varieties planted are to be approved by Mastronardi in writing. Mastronardi will determine the specifications of the Product, timeframe of the crops and any interplant schedule.

18. Given enough time to make adjustments before the beginning of each growing season, Grower and Mastronardi will consult with each other to plan future marketing and sales strategies for the following season, including forecasting the type of seeds and products to be grown as well as the quantities that should be cultivated for the next season and the approximate pack and schedule of delivery together with a forecast of future sales (in each case a, "Future Forecast" and collectively with the Initial Forecast referred to as a, "Forecast"). Notwithstanding anything to the contrary in this Agreement or otherwise, in the event that the Parties agree to any fixed prices during any applicable Term but Grower's actual delivery of Product under this Agreement varies by more than [***] percent above or below ([***]%+/-) either or both, the Forecast or any applicable pack schedule for any applicable period, at Mastronardi's option, the Product prices for such period shall be determined based upon a Market Price.

19. Expansion of Production. Products to be sold by Grower to Mastronardi are intended to include the entire production capacity of the Facility. The Parties agree that any products that arise as a result of the direct or indirect expansion in growing acreage or growing operations by Grower in any or all of the geographical location that encompasses [***], including any Affiliates or Persons under common control (collectively, "Additional Products"), will first be offered to Mastronardi as a first right of refusal. The right of first refusal shall be provided to Mastronardi in writing (in each case, a "RFR Notice"), in which case and at Mastronardi's election to be made within [***] of receipt of a RFR Notice, Mastronardi shall have the right to elect to include such Additional Products with the Products of this Agreement ("RFR Election") for the greater of, (i) ten years from the date of first commercial production of the Additional Products, or (ii) the remainder of the Term. Grower's failure to grant Mastronardi any right of first refusal shall be deemed a breach of the exclusivity provisions of this Agreement, and for each failure Grower shall pay to Mastronardi for the remainder of the Term liquidated damages in the sum of $[***] US dollars for [***] used to grow the Additional Products for the growing season in which the breach occurs, and for each remaining growing season thereafter for which such exclusivity is violated on a per acre basis. Any partial breach in exclusivity of an acre shall be deemed a breach of the entire acre. The remedies in this section are in addition to any other actions or remedies Mastronardi may be entitled to under applicable law.

**Certain information has been excluded from this agreement (indicated by "[***]") because such information (i) is not material and (ii) would be competitively harmful if publicly disclosed.**

Initials
/s/ JW    /s/ PM
Grower    Mastronardi

5