**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re AppHarvest Securities Litigation | Case No. 21-cv-7985-LJL |
| | Hon. Lewis J. Liman |

## <u>LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT</u>

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ..................................................................................... 1

II.   PROCEDURAL HISTORY ......................................................................................... 4

III.   ARGUMENT................................................................................................................. 5

   A.   Liberal Standard for Leave to Amend. ................................................................ 5

   B.   Plaintiff's Motion is timely and not the result of bad faith................................. 8

   C.   Defendants will not be unduly prejudiced by the amendment............................. 9

   D.   The requested amendment is not futile. ............................................................. 10

     1.   The PSAC Alleges Materially False and Misleading Statements ................................. 12

     2.   The PSAC Adequately Alleges Scienter ......................................................................... 19

     3.   Plaintiff Has Adequately Alleged Loss Causation ......................................................... 21

IV.   CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Abbey v. Skokos*,
  303 F. App'x 911 (2d Cir. 2008)........................................................................... 5
*Agerbrink v. Model Serv. LLC*,
  155 F. Supp. 3d 448 (S.D.N.Y. 2016)........................................................ 8, 9, 10
*Akerman v. Arotech Corp.*,
  608 F. Supp. 2d 372 (E.D.N.Y. 2009)................................................................ 19
*Anthony v. City of N.Y.*,
  339 F.3d 129 (2d Cir. 2003)................................................................................. 6
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 6
*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993).............................................................................. 10
*Boyer Works USA, LLC v. Rubik's Brand Ltd.*,
  2022 WL 355398 (S.D.N.Y. Feb. 7, 2022) ......................................................... 9
*Cherotti v. Exphand, Inc.*,
  2022 WL 2108604 (S.D.N.Y. June 10, 2022)...................................................... 7
*Chubb INA Holdings Inc. v. Chang*,
  2016 WL 6841075 (D.N.J. Nov. 21, 2016)......................................................... 7
*Contrera v. Langer*,
  314 F. Supp. 3d 566 (S.D.N.Y. 2018)................................................................. 8
*Cotto v. Fed. Nat'l Mortgage Ass'n*,
  2021 WL 4340668 (S.D.N.Y. Sept. 22, 2021)............................................. 7, 8, 9
*Employees' Ret. Sys. of Gov't of the V.I. v. Blanford*,
  794 F.3d 297 (2d Cir. 2015)............................................................................... 19
*Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*,
  2021 WL 2075586 (S.D.N.Y. May 24, 2021)......................................... 7, 8, 9, 10
*Francisco v. Abengoa, S.A.*,
  559 F. Supp. 3d 286 (S.D.N.Y. 2021)............................................................... 10
*Freudenberg v. E*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. May 10, 2010).................................................. 13
*Gordon v. Tencent Music Ent. Grp.*,
  2021 WL 6113263 (E.D.N.Y. Dec. 27, 2021) ................................................... 10
*Hamstead v. W. Va. State Police*,
  2019 WL 12313517 (N.D. W. Va. Jan. 7, 2019) ................................................. 7
*Hayden v. County of Nassau*,
  180 F.3d 42 (2d Cir. 1999).................................................................................. 9
*In re Allergan PLS Sec. Litig.*,
  2019 WL 4686445 (S.D.N.Y. 2019) ............................................................ 12, 18

*In re Aphria Sec. Litig.*,
  2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020) .................................................................... 16
*In re BRF S.A. Sec. Litig.*,
  2019 WL 12875444 (S.D.N.Y. May 3, 2019) .................................................................... 11
*In re Express Scripts/Anthem ERISA Litig.*,
  285 F. Supp. 3d 655 (S.D.N.Y. 2016) ............................................................................... 11
*In re Initial Pub. Offering Sec. Litig.,*
  214 F.R.D. 117 (S.D.N.Y. 2002) ...................................................................................... 11
*In re Madison Asset LLC,*
  2021 WL 1894032 (S.D.N.Y. May 11, 2021) ................................................................ 5, 11
*In re Moody's Corp. Sec. Litig.*,
  599 F. Supp. 2d 493 (S.D.N.Y. 2009) ................................................................................ 7
*In re Sanofi-Aventis Sec. Litig.*,
  774 F. Supp. 2d 649 (S.D.N.Y. 2011) .............................................................................. 18
*In re Take-Two Interactive Sec. Litig.*,
  551 F. Supp. 2d 247 (S.D.N.Y. 2008) ................................................................................ 7
*In re Tenaris S.A. Sec. Litig.*,
  493 F. Supp. 3d 143 (E.D.N.Y. Oct. 9, 2020) ................................................................. 18
*In re XL Fleet Corp. Sec. Litig.*,
  2022 WL 493629 (S.D.N.Y. Feb. 17, 2022) .................................................................... 16
*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016) ................................................................................................. 6
*Joint Stock Co. v. Infomir LLC*,
  2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) ........................................................... 7, 9, 10
*Litwin v. Blackstone Group, L.P.*,
  634 F.3d 706 (2d Cir. 2010) ............................................................................................. 19
*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
  797 F.3d 160 (2d Cir. 2015) ........................................................................................... 2, 5
*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27, 131 S. Ct. 1309 (2011) ................................................................................ 12
*Milanese v. Rust–Oleum Corp.*,
  244 F.3d 104 (2d Cir. 2001) ............................................................................................. 11
*Monahan v. N.Y.C. Dep't of Corr.*,
  214 F.3d 275 (2d Cir. 2000) ............................................................................................... 9
*Multi Access Ltd. v. Guangzhou Baiyunshan Pharm. Holdings Co., Ltd.,*
  2021 WL 5647790 (S.D.N.Y Nov. 30, 2021) ..................................................................... 3
*New Oriental Enter., PTE, Ltd. v. Mission Critical Sols. LLC*,
  2021 WL 930616 (S.D.N.Y. Mar. 11, 2021) ...................................................................... 8
*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ............................................................................................. 12
*Oliver Schs., Inc. v. Foley*,
  930 F.2d 248 (2d Cir. 1991) ............................................................................................... 6

*Osher v. JNI Corp.*,
    183 F. App'x 604 (9th Cir. 2006) ....................................................................... 7
*Ouedraogo v. A-1 Int'l Courier Serv., Inc.*,
    2013 WL 3466810 (S.D.N.Y. July 8, 2013) ...................................................... 11
*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
    681 F.3d 114 (2d Cir. 2012).............................................................................. 6
*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017)............................................................................... 6
*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021)................................................................................ 12
*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
    2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020 ..................................................... 17
*Richardson Greenshields Sec., Inc. v. Lau*,
    825 F.2d 647 (2d Cir. 1987)............................................................................... 8
*Ronzani v. Sanofi S.A.*,
    899 F.2d 195 (2d Cir. 1990)............................................................................... 6
*Rudani v. Ideanomics, Inc.*,
    2020 WL 5770356 (S.D.N.Y. Sept. 25, 2020)................................................... 16
*Schvimmer v. Off. of Ct. Admin.*,
    857 F. App'x 668 (2d Cir. 2021)......................................................................... 6
*Setzer v. Omega Healthcare Inv'rs, Inc.*,
    968 F.3d 204 (2d Cir. 2020).............................................................................. 12
*Shiro v. Cemex, S.A.B. de C.V.*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019)................................................................. 9
*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010)............................................................................... 6
*State Tchrs. Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981)............................................................................... 8
*United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*,
    889 F.2d 1248 (2d Cir. 1989)............................................................................. 5
*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011)............................................................................... 5
*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011).............................................................................. 12

**Rules**

Fed. R. Civ. P. 15(a)(2)........................................................................................... 2, 5
Lewis J. , United States District Judge,
    COURT'S INDIVIDUAL PRACTICES IN CIVIL CASES 3(C)............................................. 1

Pursuant to Federal Rule of Civil Procedure ("Rule") 15(a)(2), and consistent with the Court's Individual Practices in Civil Cases 3(C), Lead Plaintiff Alan Narzissenfeld ("Plaintiff") respectfully submits this Memorandum of Law in Support of his Motion for Leave to Amend the First Consolidated Class Action Complaint (the "FAC") (ECF No. 46) (the "Motion") and file an amended pleading substantially the same as Plaintiff's Proposed Second Consolidated Class Action Complaint (the "PSAC"), attached as Exhibit B to the Declaration of Shannon L. Hopkins in Support of Plaintiff's Motion for Leave to Amend Complaint ("Hopkins Decl.").[1] For the Court's convenience, Plaintiff has attached a redline comparison of the PSAC to the FAC as Exhibit A to the Hopkins Decl.

Plaintiff has met and conferred with Defendants who object to the requested amendment. The new substantive allegations in the PSAC strongly support and elaborate on the FAC's allegations and address the concerns raised in Defendants' motions to dismiss (ECF Nos. 50-52).[2] Because the requested amendment is timely, not the result of bad faith, will not prejudice Defendants, and amendment is not futile, the Motion should be granted.

## I.    PRELIMINARY STATEMENT

Pursuant to Rule 15, Plaintiff seeks leave to amend to incorporate newly discovered evidence that further supports the allegations in the FAC, and to refine existing allegations in response to arguments raised in Defendants' motions to dismiss. The PSAC adds detailed allegations, including but not limited to, information from three new confidential witnesses that was not available prior to the filing of the FAC: one witness who worked in the company's Financial Planning and Analysis (FP&A) Department, one that worked in the Maintenance

---

[1] Unless otherwise noted, "¶" references are to the paragraphs in the PSAC; capitalized terms have the meanings ascribed in the PSAC; all emphasis is added; and internal citations are omitted.
[2] Defendants are AppHarvest, Inc., Jonathan Webb, David Lee, and Loren Eggleton.

Department, and one that was a Team Lead and Group Lead in AppHarvest's Greenhouse. Information from these three new witnesses responds to Defendants' arguments concerning the reliability of the three CWs in the FAC by corroborating the allegations, and by representing a diversity of experience within different Company Departments at varying levels of AppHarvest's hierarchy.

For example, CW6 reported to Defendant Eggleton, and this witness's duties and responsibilities involved reviewing detailed internal metrics, including quality and yield, and preparing company-wide forecasts that this witness frequently shared and discussed with Defendants David Lee and Loren Eggleton as those metrics were deteriorating throughout the Class Period. Such allegations respond to Defendant's argument in their motion to dismiss that the FAC relies only on "three rank-and-file former employees who had no personal knowledge of farm-wide operations [and] no direct contact with any Individual Defendant[.]" ECF No. 51 at 12. Accordingly, the PSAC's new information bolsters Plaintiff's allegations that Defendants acted with knowledge or extreme recklessness when making and/or authorizing the dissemination of materially misleading statements and omissions to investors.

Under Rule 15's "permissive standard," Plaintiff respectfully seeks leave to file the PSAC and raise those allegations. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("[W]e hew to the liberal standard set forth in Rule 15, which states that '[t]he court should freely give leave [to amend] when justice so requires.' Fed. R. Civ. P. 15(a)(2). As we have explained, the 'permissive standard' of Rule 15 is consistent with our strong preference for resolving disputes on the merits."). Under that permissive standard, Defendants cannot establish grounds for denying Plaintiff's request.

*First*, Plaintiff's Motion is timely and not sought in bad faith. Plaintiff sought leave to

2

amend after identifying new information that was not publicly available until after the FAC was filed, and with the benefit of Defendants' motion to dismiss which purportedly raised Defendants' perceived deficiencies in the FAC. As specified herein, the PSAC provides further allegations supporting Plaintiff's claims that Defendants materially misled investors with scienter, and that Defendants' fraud caused Plaintiffs' loss. Therefore, the PSAC directly addresses Defendants' arguments in their motion to dismiss that the FAC was insufficiently pled.

*Second*, the amendment will not unduly prejudice Defendants. The Court has not yet ruled on Defendants' pending motion to dismiss, and no discovery has taken place pursuant to the PSLRA's discovery stay provision. Moreover, the PSAC's additions are factual allegations that supplement and corroborate previously alleged facts; importantly, the PSAC does not seek to assert new claims, name additional defendants, or redefine the Class Period. Also, Defendants are free to file a renewed motion to dismiss as to the PSAC, meaning Defendants will not lose any rights. Thus, as the Court has previously held:

> It is more prudent, more efficient, and fairer to consider a motion to dismiss on the basis of all the facts alleged in an amended complaint rather than to consider first the original complaint and then (assuming the Court were to agree with Defendants that that complaint should be dismissed) whether Plaintiff should be granted leave to file an amended complaint.

*Multi Access Ltd. v. Guangzhou Baiyunshan Pharm. Holdings Co., Ltd.,* 2021 WL 5647790, at *1 (S.D.N.Y Nov. 30, 2021) (Liman, J.) (granting leave to amend and denying motion to dismiss as moot).

*Finally*, granting Plaintiff leave to amend and file the PSAC would not be futile because, as detailed below, the PSAC alleges enough facts to state a claim for relief that is plausible on its face. Specifically, the proposed new facts further establish that Defendants made material

3

misstatements and/or omitted material information required to be disclosed, with scienter, and that Plaintiff has alleged loss causation. Accordingly, the Court should grant leave to file the PSAC.

## II. PROCEDURAL HISTORY

On March 2, 2022, Plaintiff filed the FAC against Defendants asserting claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder. ECF No. 46. Plaintiff brought the claims individually and on behalf of a Class consisting of all persons or entities who purchased or otherwise acquired AppHarvest securities between February 1, 2021 and August 11, 2023 inclusive. *Id.* at 1.

Specifically, the FAC alleges that, throughout the Class Period, AppHarvest's sole operating facility (the Morehead Facility) was in the midst of its first growing and harvesting season and was secretly beleaguered by: (i) lower saleable yield, quality, and prices, and (ii) higher distribution and transportation fees associated with rejected products. Plaintiff alleges that these issues were caused by inadequate employee training and an inability to reliably hire and retain employees due to attrition, labor churn, and the COVID-19 pandemic. Although Defendants knew of the issues that were hampering AppHarvest's productivity, they made numerous false and misleading statements and omissions throughout the Class Period predominantly concerning: 1) justifications for the Company's financial outlook; 2) AppHarvest's operational performance with respect to production and ability to supply; 3) the Company's ability to successfully staff the Morehead Facility; 4) risks that had already materialized; and 5) omissions concerning net sales required by Item 303 of SEC Regulation S-K.

The FAC alleges that Defendants disclosed the truth before market open on August 11, 2021, when AppHarvest issued, among other disclosures, Q2 2021 results and updated the Company's fiscal year 2021 outlook driven by "lower net sales" than expected "due to the quality challenges we encountered in ramping up our first facility and higher-than-expected cost of goods

sold with labor farm costs, associated with lower-than-expected labor productivity." AppHarvest common stock and warrant prices plummeted by 29% and 44%, respectively.

After the FAC was filed, Plaintiff's investigation continued. In accordance with the briefing schedule set by the Court, Defendants moved to dismiss the FAC on May 2, 2022, arguing that Plaintiff failed to adequately allege: 1) Defendants made a false or misleading statement; 2) Defendants acted with scienter; and 3) loss causation. ECF Nos. 50-52. On June 23, 2022 Plaintiff's counsel informed counsel for Defendants that Plaintiff would seek leave to amend rather than waste judicial resources and have the motion to dismiss the FAC decided on an incomplete record. Plaintiff inquired whether Defendants would consent to a letter-motion requesting leave to amend and a briefing schedule for any subsequent motion to dismiss, and enclosed a draft of same. On June 26, 2022, shortly after midnight, counsel for Defendants informed the undersigned that Defendants would not consent to the letter-motion, albeit without explanation.

## III.     ARGUMENT

### A.     Liberal Standard for Leave to Amend.

Leave to amend is "freely give[n]…when justice so requires." Fed. R. Civ. P. 15 (a)(2). Justice requires leave when there are "at least colorable grounds for relief ... ." *Abbey v. Skokos*, 303 F. App'x 911, 913 (2d Cir. 2008). The "permissive standard" of Rule 15 is consistent with the Second Circuit's "strong preference for resolving disputes on the merits." *Loreley*, 797 F.3d at 190; *see e.g., United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [they] ought to be afforded an opportunity to test [their] claim on the merits."); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (describing "the liberal spirit of Rule 15"); *In re Madison Asset LLC*, 2021 WL 1894032, at *2 (S.D.N.Y. May 11, 2021) ("[G]ranting leave to amend is consistent with the liberal standard of

Rule 15…, and with the Second Circuit's strong preference for resolving disputes on the merits.")
(internal quotation marks omitted).

"Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on a valid ground." *Oliver Schs., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991) (quoting *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017); *see also Anthony v. City of N.Y.*, 339 F.3d 129, 138 n.5 (2d Cir. 2003) (interpreting Rule 15(a) "in favor of allowing the amendment absent a showing by the non-moving party of bad faith or undue prejudice"). Therefore, leave to amend should only be denied "'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Schvimmer v. Off. of Ct. Admin.*, 857 F. App'x 668, 671 (2d Cir. 2021).

Amendment is proper when "the proposed complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In assessing whether the proposed complaint states a claim" for the purpose of determining whether amendment would be futile, a court will consider "the proposed amendment[s] ... along with the remainder of the complaint ... accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief[.]" *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (citing *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 323 n.3 (2d Cir. 2010)).

Moreover, "in the interest of judicial economy and in the absence of undue prejudice, the Court may decline to engage in a detailed futility analysis where the Court finds that these

arguments are better suited for consideration in the context of a motion to dismiss." *Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*, 2021 WL 2075586, at *2 (S.D.N.Y. May 24, 2021) (*quoting Chubb INA Holdings Inc. v. Chang*, 2016 WL 6841075, at *6 (D.N.J. Nov. 21, 2016) (collecting cases)); *see also Hamstead v. W. Va. State Police*, 2019 WL 12313517, at *5 (N.D. W. Va. Jan. 7, 2019) (declining to determine the futility of an amendment until Plaintiff had an opportunity to file the amended complaint, subject to the conditions set out by the Court).

In addition, given the stringent standards applicable to securities fraud claims, courts have determined that "leave to amend should be granted liberally" in such actions. *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 518 (S.D.N.Y. 2009); *see In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008) (citing importance of adherence to liberal amendment standards in context of complicated pleading rules of PSLRA and allowing filing of third amended complaint); *accord Osher v. JNI Corp.*, 183 F. App'x 604, 605 (9th Cir. 2006) ("[l]eave to amend is to be granted with extreme liberality…because the heightened pleading requirements imposed by the PSLRA are so difficult to meet.").

Further, courts in the district have found "no 'good reason' to deny leave to amend" in the early stages of litigation. *Cotto v. Fed. Nat'l Mortgage Ass'n*, 2021 WL 4340668, at *5 (S.D.N.Y. Sept. 22, 2021); *see Joint Stock Co. v. Infomir LLC*, 2017 WL 2988249, at *2 (S.D.N.Y. Mar. 27, 2017) (granting plaintiff's cross motion for leave to amend and denying defendants' motions to dismiss as moot "given the early posture of the case"). Indeed, when a plaintiff seeks leave to amend while a motion to dismiss is pending, a court "may either deny the pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading." *Cherotti v. Exphand, Inc.*, 2022 WL 2108604, *6 (S.D.N.Y. June 10, 2022). Faced with those options, "the preferred course is to grant leave to amend even if doing so renders moot the

7

motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave." *Cotto*, 2021 WL 4340668, at *4; *see e.g., Conopoco*, 2021 WL 2075586, at *2 ("The Court elects to grant Plaintiff leave to amend and to deny the pending motion to dismiss as moot. As noted, this is the preferred course where the amended complaint requires leave of court."); *see also, e.g., New Oriental Enter., PTE, Ltd. v. Mission Critical Sols. LLC*, 2021 WL 930616 (S.D.N.Y. Mar. 11, 2021) ("The Court elects to grant New Oriental's Motion for Leave and to deny the pending Motion to Dismiss as moot.").

As detailed below, Plaintiff's request for leave to amend: (1) is not unduly delayed or sought in bad faith; (2) would not unduly prejudice Defendants; and (3) would not be futile. Thus, Plaintiff respectfully requests that the Court grant leave to amend.

### B.    Plaintiff's Motion is timely and not the result of bad faith.

"Mere delay . . . , absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Contrera v. Langer*, 314 F. Supp. 3d 566 (S.D.N.Y. 2018) (quoting *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). Moreover, in opposing a motion for leave to amend, "[s]imply alleging that the plaintiff could have moved to amend earlier than she did ... is insufficient to demonstrate undue delay." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016); *see also Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases where courts granted leave to amend after delays ranging from two to five years).

Here, Plaintiff's request for leave to amend is made absent any undue delay, bad faith, or dilatory motive. Rather, the request is made for the ***opposite*** reasons—earnest investigation and diligence. Since filing the FAC, Plaintiff's counsel assiduously continued their investigation of the alleged claims and identified additional factual evidence, including evidence from three new CWs

8

(including CW5 who left in March 2022 when the FAC was filed), supporting Plaintiff's allegations that Defendants committed securities fraud.[3] This information was not available to Plaintiff when he filed the FAC. Further, Plaintiff is moving for leave to amend during the pleading stage before Defendants have filed an answer. *See, e.g., Conopoco*, 2021 WL 2075586, *2 (finding no undue delay or evidence of bad faith when "Plaintiff's request for leave was filed in response to Defendant's motion to dismiss"); *Joint Stock*, 2017 WL 2988249, at *1 (finding no undue delay where plaintiffs moved for leave to amend shortly after defendant moved to dismiss before any defendant answered the complaint); *Cotto*, 2021 WL 4340668, at *5–6 (same).[4] Thus, Defendants cannot show undue delay or bad faith.

> **C.     Defendants will not be unduly prejudiced by the amendment.**

"[P]rejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is *undue* prejudice to the opposing party." *Boyer Works USA, LLC v. Rubik's Brand Ltd.*, 2022 WL 355398, at *3 (S.D.N.Y. Feb. 7, 2022) (emphasis in original). To determine what constitutes prejudice, courts must consider whether the proposed amendment, "would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Agerbrink*, 155 F. Supp. 3d at 454 (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)). But "the prospect of spending more time, effort, or money on litigation—including through additional discovery and motion practice—does

---

[3] *See* ¶¶ 13-15, 17, 38-40, 60, 63, 67, 78, 82-88, 91-92, 96-97, 100-01, 107-08, 111, 119-29, 135, 141, 151, 155, 157, 162, 166, 170, 174, 179, 182, 186, 189, 191, 194, 200, 203, 208, 211, 214, 218, 221, 223, 227, 230, 236, 239, 245-46, 263-68, 275, 279-80, 290-91.

[4] Relatedly, Plaintiff is proactively seeking leave to amend *before* any motion to dismiss has been decided. But even after "a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). This is because plaintiffs should be given "an opportunity to amend in response to a Court order pointing out the deficiencies in their pleading[.]" *Shiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 309 (S.D.N.Y. 2019). Thus, the Motion cannot be considered dilatory.

9

not render an amended complaint unduly prejudicial." *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 312, 314 (S.D.N.Y. 2021); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (granting leave where defendants argued prejudice resulted "solely because of the time, effort and money they expended in litigating this matter"); *Agerbrink*, 155 F. Supp. 3d at 454 (finding defendant not unduly prejudiced where plaintiff sought leave to amend before the close of discovery).

Under controlling Second Circuit precedent, granting Plaintiff leave to file the PSAC would not unduly prejudice Defendants. Defendants have yet to answer the FAC and can move to dismiss the PSAC if leave to amend is granted. Further, no discovery has taken place pursuant to the PSLRA discovery stay. No schedule of pre-trial deadlines has been proposed or entered. No trial date has been set. The Court is still assessing the allegations and causes of action that will proceed past Defendants' motions to dismiss. Furthermore, the PSAC does not name any additional defendants or seek to alter the Class Period.

Accordingly, Defendants will not be unduly prejudiced by the proposed amendment. *See Conopoco*, 2021 WL 2075586, at *2 (finding "'no undue prejudice because the parties are far from trial, no Defendant has answered, no Rule 16 conference has been held, and no discovery deadlines have been established.'") (quoting *Joint Stock*, 2017 WL 2988249, at *1); *Abengoa,* 559 F. Supp. 3d at 314 (supporting a finding of no undue prejudice when "defendant[s] ha[ve] been on notice of the substance of and theories underlying the plaintiff's claims.").

### D.    The requested amendment is not futile.

"[L]eave to amend will be denied as futile only if ... it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Gordon v. Tencent Music Ent. Grp.*, 2021 WL 6113263, at *5 (E.D.N.Y. Dec. 27, 2021) (quoting *Milanese v. Rust–Oleum Corp.*,

10

244 F.3d 104, 110 (2d Cir. 2001)). "The party opposing the amendment has the burden of demonstrating that leave to amend would be futile," and, in considering this question, the Court reads the claims at issue "in the light most favorable to plaintiff and drawing all inferences in his favor." *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013). "A court may deny a motion to amend on the basis of futility only where no colorable grounds exist to support the proposed claim." *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 690 (S.D.N.Y. 2016).

Moreover, "where the alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss, such argument would better be taken up on a motion to dismiss unless the amendments' futility is readily apparent." *Tencent*, 2021 WL 6113263, at *5, n.7 (quoting *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 125 n. 11 (S.D.N.Y. 2002)); *see also In re BRF S.A. Sec. Litig.*, 2019 WL 12875444, at *3 (S.D.N.Y. May 3, 2019) ("To the extent that defendants urge that the proposed amendment would be futile, that argument goes to [plaintiff]'s ultimate theories of liability, and [is] more appropriately tested through the anticipated motion to dismiss."); *Madison Asset*, 2021 WL 1894032, at *2–3 (declining to consider Defendants' futility arguments when granting Plaintiff's motion for leave to amend filed shortly after Defendants moved to dismiss).

Thus, under the standards established by courts in this Circuit, Defendants cannot thwart Plaintiff's request to amend and file the PSAC. As a threshold matter, any futility challenge by Defendants is premature and should be raised in a motion to dismiss. Nonetheless, Defendants cannot meet their burden to show that an amendment would be futile because the additional allegations bolster Plaintiff's adequately pled allegations of falsity, scienter, and loss causation.[5]

---

[5] Plaintiff does not yet know Defendants' specific arguments as to futility. Therefore, Plaintiff reserves the right to address those forthcoming arguments on reply.

### *1.    The PSAC Alleges Materially False and Misleading Statements*

#### a.   Standard:

Under § 10(b) of the Exchange Act, "a plaintiff must plead six familiar elements: (1) a misstatement or omission of material fact; (2) scienter; (3) a connection with the purchase or sale of securities; (4) reliance; (5) economic loss; and (6) loss causation." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98 (2d Cir. 2021). The federal securities laws "are founded on the principle that full and fair disclosure of all material facts must be made to investors so that they may have the benefit of the facts in making their investment decisions." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 131 (2d Cir. 2011). Thus, Section 10(b) and Rule 10b-5 impose a duty "to be both accurate and complete" when speaking on an issue. *Setzer v. Omega Healthcare Inv'rs, Inc.*, 968 F.3d 204, 214 n. 15 (2d Cir. 2020). Disclosure is required "when necessary to make…statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37, 131 S. Ct. 1309, 1317 (2011). "[E]ven a statement that is literally true when viewed in isolation can be misleading in context if it leaves investors with a false impression." *In re Allergan PLS Sec. Litig.*, No. 18 CIV. 12089 (CM), 2019 WL 4686445, at *23 (S.D.N.Y. 2019). A complaint need only allege facts "*sufficient* to support a reasonable belief as to the misleading nature of the statement or omission." *Novak v. Kasaks*, 216 F.3d 300, 313-14, n.1 (2d Cir. 2000) (emphasis added).

#### b.   The PSAC's Well-Pled Allegations:

The PSAC identifies three new CWs, (CW4, CW5 and CW6) to corroborate Plaintiff's allegations provided by CW1, CW2, and CW3 that, throughout the Class Period, AppHarvest experienced significant undisclosed problems with inadequate or nonexistent employee training and significant employee churn and worker absences that caused: low yield, poor product quality,

low worker productivity, high amounts of rejected fruit from Mastronardi, and higher distribution and transportation fees. The Defendants' primary argument in support of the proposition that they did not make any false statements concerning these issues was to attack the reliability of the CWs in the FAC. Indeed, Defendants' claim that "The CW Allegations Are Not Reliable" was their very first argument with respect to falsity in their motion to dismiss. ECF No. 51 at 19-20. Yet, as Defendants admit, ***corroboration*** bears on the reliability of a CW allegation. *Id.* at 20. Plaintiffs' proposed amendment addresses this issue. Thus, amendment would not be futile, and in fact would be useful for the Court's consideration should Defendants elect to move for dismissal of the PSAC. Courts frequently consider whether CW allegations "corroborate each other's accounts," and whether the CWs were positioned in varying levels of a defendant company's "hierarchy" when deciding what weight to give the allegations. *In re Fairway Grp. Holding Corp. Sec. Litig.*, 2015 WL 249508, *16 (S.D.N.Y. Jan. 20, 2015) (crediting CW allegations); *see also Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 196-97 (S.D.N.Y. May 10, 2010) (same).

CW4 held multiple roles in the Greenhouse, including as a Team Lead and Group Lead. ¶38. Like CW2, who was a Quality Control Specialist in the Packhouse, CW4 confirmed the poor quality of AppHarvest's tomatoes during the Class Period was due to poor training and disorganization. ¶92. Thus, information provided by CW4 cuts against Defendants' attempt to discredit CW2's statements on the basis that CW2 did not have responsibilities concerning "greenhouse operations." ECF 51 at 21. Furthermore, CW4, whose responsibilities included managing up to thirty Crop Care Specialists and relaying current instructions to them, provided a timeline of when training did not exist, and how that changed just prior to the end of the Class Period. ¶91. CW4 also explained the process that AppHarvest's fluctuating and unreliable instructions regarding quality were delivered to Greenhouse personnel. ¶92. Thus, information

13

from CW4 directly responds to Defendants' contention that the CWs do not "say anything regarding anybody's training other than their own or how the training changed over the relevant period." ECF 51 at 23.

CW6 worked in the Company's Financial Planning and Analysis Department, which is a corporate level position, and reported directly to Defendant Eggleton. ¶40. Thus, inclusion of CW6 in the PSAC arguably responds to all of Defendants' criticisms of the CWs' reliability. To start, CW6's confirmation that Defendants tracked real-time performance metrics such as quality, yield, and returns, and compared them against forecasts provides independent corroboration of CW3's allegations who Defendants wholly ignore. *Compare* ¶¶264, 267; *with* ECF 51 at 21 (criticizing CW3 on the sole basis that CW3 left before the Class Period began). Moreover, information from CW6 responds to Defendants' claim that CW1 and CW2 failed to provide information at a Company-wide level. *See* ECF 51 at 21 (arguing "the Court should not consider CW1's and CW2's allegations about firm-wide operations"); *id.* at 23 (characterizing CW1 and CW2 pejoratively as "rank-and-file").

Furthermore, as discussed below with respect to scienter, CW6 provided information explaining which "risk[s] had already materialized, and that Defendants kn[e]w that when the[ir] statements were made." *See* ECF 51 at 17; *see also id.* at 19 (purporting that opinion statements were not actionable because "the CAC fails to plead that Defendants knew any contradictory information when the challenged statements were made"). For example, CW6 confirmed that worker productivity was identified by Defendants Lee and Eggleton as a challenge beginning at least in late 2020, and that the "toughest times" occurred consistently from late in the first quarter of 2021, including March 2021, through the second quarter of 2021 and the summer clean-up. ¶121. In particular, CW6 confirmed that during these meetings that CW6 attended, Lee and

14

Eggleton focused discussions on yield and quality aspects of productivity because AppHarvest was "very revenue driven" and yield and quality were the two primary inputs to forecasting and understanding the Company's revenue. ¶124.

Relatedly, CW6 provided specificity and quantified regarding the negative impact of these issues, which responds to another one of Defendants' (erroneous) criticisms of the FAC. *See* ECF 51 at 24 ("The CWs do not quantify the impact of the alleged training issues"); *id.* at 25 (criticizing CWs' purported failure to quantify impact of employee retention issues). AppHarvest's training and labor issues manifests in the Company's actual results. CW6 recalled that Mastronardi was rejecting upwards of 30% to 35% of AppHarvest's tomatoes due to quality issues, "many times" higher than AppHarvest's target of 6% or 7%, which would cause AppHarvest to reforecast revenue downward. ¶¶ 96-97. Additionally, CW6 confirmed that Defendants Lee and Eggleton knew that AppHarvest was "a long way off" its forecasted target for quality of USDA Grade No. 1 tomatoes. ¶87. CW6 also confirmed that for other productivity metrics besides quality, AppHarvest was more than 50% off its target. ¶88.

Thus, the CW allegations in the PSAC present a consistent and plausible narrative from former employees representing different departments within the Company, at varying levels within the internal hierarchy, and who had various roles and responsibilities. The PSAC persuasively alleges that prior to, and throughout the entire Class Period (i.e., at the same time as Defendants' statements), AppHarvest's operations at the Morehead Facility were stunted by an untrained workforce that suffered rampant attrition, churn, and employee absences. As a result, the Company suffered materially lower yield and quality, higher rejected tomatoes, and costs. In light of these issues, Defendants many affirmative statements concerning the same topics were false and

15

misleading at the time they were made. Defendants' misstatements roughly fall within the following categories:[6]

**_Examples of False Justifications for Earnings Guidance_**:

Despite knowing of AppHarvest's pervasive challenges with yield, quality (and thus pricing and returns), and rising costs from product rejections and labor churn, Defendants touted justifications for the Company's 2021 full-year financial outlook concerning then-present conditions which were false and misleading. For example, Defendants stated on February 25, 2021 and March 1, 2021 that "better than anticipated crop yields and pricing" and "favorable crop yields and market pricing currently support" raising AppHarvest' sales outlook. ¶¶169, 173. However, CW4 confirmed that yields were being negatively impacted throughout the Class Period through wide-scale waste that CW4 observed and photographed. ¶¶82-83. On May 17, 2021, Defendant Lee falsely attributed Defendants' decision to reiterate its previous guidance based on "the encouraging operating and financial performance of our Morehead facility and our team's ability to scale the business." ¶199; _see also_ ¶¶150, 207, 210, 216. However, these statements fall squarely in AppHarvest's "toughest times," when CW6 stated that the Company's actual results were underperforming forecast and that the "root cause" was known by Defendants to have been caused by employee training, turnover and poor work ethic. ¶127. Statements misrepresenting the factual underpinnings of a Company's financial guidance are actionable. _Rudani v. Ideanomics, Inc._, 2020 WL 5770356, 86 (S.D.N.Y. Sept. 25, 2020).

---

[6] Although Plaintiff has only provided some examples of Defendants' many Class Period misstatements, that is sufficient to demonstrate that granting leave to amend would not be futile. _In re XL Fleet Corp. Sec. Litig._, 2022 WL 493629, *3 (S.D.N.Y. Feb. 17, 2022) (if a securities fraud claim is "sufficiently alleged" with respect to at least one false statement, this alone "warrants denial of the motion to dismiss" and the Court need not analyze other alleged misstatements); _In re Aphria Sec. Litig._, 2020 WL 5819548, *9 (S.D.N.Y. Sept. 30, 2020) (same).

***Examples of Misstatements Concerning AppHarvest's Operational Performance and Labor Staffing***:

Defendants made myriad affirmative false statements concerning the Company's operational and financial performance that simply contradicted the actual conditions as they existed at the time such statements were made. *See* ¶156 ("we have predictable growing practices"); ¶193 ("This harvest has proved the team can handle the production ramp-up at our Morehead facility"); ¶217 ("So we haven't had any challenges with recruiting or staffing."); ¶222 ("We hired 500 employees in the middle of COVID, uh, and they're showing up every day."); *see also* ¶¶154, 177-78, 184-85, 190, 193, 213, 220, 225-26, 234-35. Statements like these are actionable because they "affirmatively created an impression of a state of affairs that differed in a material way from the one that actually existed." *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, 2020 WL 1877821, *7 (S.D.N.Y. Apr. 14, 2020). Indeed CW4, CW5, and CW6 confirmed that AppHarvest's entire first growing and harvesting seasons were hampered by inadequate training and staffing difficulties that caused significant negative impact to productivity metrics like yield and quality. *E.g.*, ¶¶82-83, 91, 107 (CW4 recalled that tomatoes were wasted "daily" largely due to inadequate training; 10 personnel resigned every week from one half of the Greenhouse alone); ¶¶78, 108 (CW5 estimated that 50% of AppHarvest's crop was wasted in the first growing season, and confirmed the Company had to hire contract labor to fill vacancies caused by turnover and attrition); ¶¶111, 126 (inadequate training, turnover, poor work ethic and inconsistent hiring standards were discussed as the "root cause" of AppHarvest's productivity issues during senior leadership meetings; attrition and retention metrics were falling short week after week in the first half of 2021).

Defendants' misstatements also misleadingly omitted material information concerning the Morehead Facility's performance. *See In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 649, 564

17

(S.D.N.Y. 2011) (when a speaker broaches a subject and omits facts concerning the same, a "plaintiff need only demonstrate the materiality of the omitted facts because [i]f a reasonable investor would so regard the omitted fact [as material], it is difficult to imagine a circumstance where the prior statement would not be rendered misleading in the absence of disclosure.").

***Examples of Misstatements Concerning Already Materialized Risks***:

The PSAC explains in detail that the factors which (Defendants admit) caused decreased sales and increased costs throughout the Class Period—*e.g.*, yield, quality, product rejections, productivity, training, unreliable labor attendance—manifested before the Class Period began, and continued (and intensified) until the "summer refresh" immediately preceding the corrective disclosures. CW4 and CW6 confirmed these risks had already materialized in operational and labor issues plaguing AppHarvest throughout the first harvesting season. ¶¶82-83, 91-92, 122-127, 129. CW6 further confirmed that Defendants were aware of these issues as they were discussed during weekly senior leadership meetings which "repeatedly cited" them as the "root cause" of the Company's underperformance. ¶127 Thus, Defendants' speculative, contingent, and woefully incomplete disclosures of potential risks were misleading when made. ¶¶160-161, 165, 181, 188, 202, 229, 238; *see Allergan*, 2019 WL 4686445, *24 ("generalized statements about a possible" risk actionable where defendants know of more a specific risk); *In re Tenaris S.A. Sec. Litig.*, 493 F. Supp. 3d 143, 161 (E.D.N.Y. Oct. 9, 2020) (risk factors that hide transpired risks with a "hypothetical qualifier" are "actionable deceit").

***Examples of Misstatements Concerning Item 303***:

Defendants admitted in the corrective disclosures that for the "***six months***" ended June 30, 2021, *i.e.*, beginning in January 2021, net sales were "adversely impacted by labor and productivity challenges associated with the training and development of the new workforce at the Morehead,

Kentucky facility," which "resulted in lower net sales due to lower overall No. 1-grade production yields, including the impact of higher related distribution and shipping fees." Failing to disclose these issues (¶240) was actionable because Defendants knew them and Item 303 requires companies to disclose known trends and uncertainties affecting their revenues in their annual and quarterly reports. *See Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 721 (2d Cir. 2010).

### 2.    *The PSAC Adequately Alleges Scienter*

The PSLRA requires plaintiffs to plead facts "giving rise to a strong inference that the defendant acted with the required state of mind." *Employees' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015). To allege scienter, the complaint must show "***either***: 1) a motive and opportunity to commit the fraud; ***or*** 2) strong circumstantial evidence of conscious misbehavior or recklessness." *Employees' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015). The PSAC's inference of scienter need only be cogent and compelling—not the only inference raised by the allegations, the most plausible inference, or irrefutable. *Id.* at 323-24; *Akerman v. Arotech Corp.*, 608 F. Supp. 2d 372, 382 (E.D.N.Y. 2009) (dismissal inappropriate where competing inferences "in equipoise").

The PSAC bolsters Plaintiff's original allegations, while simultaneously answering Defendants concerns. For example, Defendants' motion to dismiss (incorrectly) contends the FAC did not allege the Individual Defendants had "any contemporaneous knowledge of unspecified training, retention and staffing [] issues" and instead relied on CWs who did not have "access to firm-wide operations data…or had any direct contact with any Individual Defendant." ECF No. 51 at 2, 14. The PSAC specifies that CW6 would talk with Defendant Eggleton as frequently as every couple of hours, and with Defendant Lee at least weekly, on the current forecasts which would "get quite operational. ¶¶123-124, 127. Further, in addition to the forecast meetings, CW6

19

regularly had meetings, as frequently as twice a week during the "toughest times," with Defendants Eggleton and Lee concerning the Morehead Facility's poor labor productivity in order for senior management to "keep an eye on it." ¶126. CW6 was responsible for "corral[ing] information and disseminat[ing]" information to Defendants Eggleton and Lee during the Class Period. ¶123. CW6 confirmed that among the Company's senior leadership "everyone knew what everyone else knew" regarding the underperformance of fundamental metrics, such as quality, yield, and labor productivity. ¶129. According to CW6, it was "repeatedly cited" at these meetings that training, turnover, poor work ethic and inconsistent hiring standards were repeatedly cited as the "root cause" of the overall production challenges and underperformance. ¶127.

CWs 4 and 5 likewise corroborated the allegations in the FAC. Defendants' motion to dismiss argues that "[n]othing in the CAC suggests the alleged 'labor and productivity issues' were so widespread that they would have been obvious to the Individual Defendants." ECF No. 51 at 33. In direct contradiction to this claim, the PSAC contains pictures provided by CW4 that are representative of the entire Greenhouse during the first de-leafing and harvesting season and show vast amounts of decomposing and wasted tomatoes and plant matter on the floor of the Greenhouse. ¶83. Although Defendant Webb observed these issues as he admits he was at the Morehead Facility "every morning," Defendants hid them from investors. According to CW4, the only time the Greenhouse was cleaned was when news media or investors visited the Greenhouse and it was deemed necessary by Defendant Webb or his office to "hide the waste." *Id.* CW5 confirmed CW4's account, as CW5 was responsible for cleaning the Greenhouse when investor or visitor tours were scheduled. ¶84. According to CW5, the request for clean-ups were initiated by Defendant Webb's team, if not Defendant Webb himself, in order to create "better eye appeal" for the Morehead Facility. *Id*.

20

The new allegations in the PSAC directly answer Defendants' arguments and bolster the FAC's allegations to establish a strong inference that the Defendants knew, or recklessly disregarded, that the public statements and documents issued and disseminated in the name of the Company were materially false and misleading given the operational issues that plagued the Morehead Facility since late 2020.

### 3.   *Plaintiff Has Adequately Alleged Loss Causation*

While the Defendants' motion to dismiss did not articulate any specific deficiencies with Plaintiff's loss causation allegations, the PSAC nonetheless responds to Defendants facial argument that loss causation in the FAC was not well plead. According to CW6, Defendant Lee always took the most "aggressive" positions in forecasting meetings and the 2021 earnings guidance revision in the 2021 Q2 Earnings Release reflected that previous "far-fetched ideas" were reconsidered in terms of what was realistically achievable. ¶245. CW6 confirmed the revised forecasts reflected realistic assumptions for improving labor productivity (which includes quality and yield expectations which CW6 considered the primary productivity inputs of AppHarvest's revenue), by way of better training and analysis of how long it would take for improved training to lead to productivity gains. ¶245.

## IV.   CONCLUSION

Wherefore, Plaintiff respectfully requests the Court grant leave to amend the FAC and file an amended complaint substantially the same as the PSAC.

DATED: June 30, 2022                 Respectfully submitted,

> **LEVI & KORSINSKY, LLP**
> By:   */s/Shannon L. Hopkins*
>       Shannon L. Hopkins (SH-1887)
>       Gregory M. Potrepka (GP-1275)
>       Michael J. Keating (*Pro Hac Vice*)
>       1111 Summer Street, Suite 403
>       Stamford, CT 06905

21

Telephone: (203) 992-4523
Facsimile: (212) 363-7171
shopkins@zlk.com
gpotrepka@zlk.com
mkeating@zlk.com

*Counsel for Lead Plaintiff and Lead Counsel
for the Class*

22