**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re AppHarvest Securities Litigation | Case No. 21-cv-7985-LJL |
| | Hon. Lewis J. Liman |

## <u>REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT</u>

Lead Plaintiff Alan Narzissenfeld ("Plaintiff") respectfully submits this Reply in Further Support of his Motion for Leave to Amend the Complaint ECF No. 57 (the "Motion"). Defendants' opposition to the Motion (ECF No. 63, the "Opposition" or "Opp.") rests on speculative and incorrect assumptions that amendment is being sought too late, and omits (and therefore, waives) argument that amendment would be futile or that Defendants would suffer *undue* prejudice. Thus, the Court should grant the Motion and permit Plaintiff to file an amended pleading substantially the same as Plaintiff's Proposed Second Consolidated Class Action Complaint (the "PSAC").

## <u>PRELIMINARY STATEMENT</u>

Defendants mistake diligence for dereliction. They incorrectly assert without evidence the timing of the amended complaint is due to "eleventh hour" neglect and delay, when in fact Plaintiff's investigation, which continued up through the very filing of the Motion, produced critical information that further supports his claims and allegations. Having this new critical evidence in hand, Plaintiff filed the Motion consistent with this Court's Individual Procedures. Defendants' contention that the timing of Plaintiff's Motion should somehow require the parties and Court to instead fritter resources adjudicating their pending, and now moot, motion to dismiss would be wasteful. In any event, even if Defendants' argument that Plaintiff delayed were true (it is not), that would not affect Plaintiff's right to amend. It is *undue* delay which Defendants were required to show, and they did not.

1

Furthermore, Defendants have not established any other justification for denying the Motion. Defendants complain they expended resources moving to dismiss the first amended complaint (ECF No. 46, the "FAC"), but Defendants never argue that they suffered "undue" prejudice, and the law is clear they have not. Defendants also expressly reserve argument regarding futility of the PSAC for a future motion to dismiss and therefore do not directly address it. Opp. at 5 n.1. Accordingly, Defendants' Opposition fails to rebut the Motion's strong showing that leave to amend is warranted and should be granted.

Finally, the Court should decline to follow Defendants' premature request to limit any hypothetical future pleadings. The Motion demonstrates that Plaintiff's present request for leave to amend is being made: (i) in good faith as the result of a diligent investigation, (ii) in an attempt to conform with the Federal Rules of Civil Procedure and the decisions and rules of this Circuit and Court, and (iii) to properly respond to Defendants' pending motion to dismiss with additional facts and evidence so that the Court need not waste its time adjudicating a motion to dismiss on an incomplete record. The Court should grant Plaintiff's Motion on that basis and reject Defendants' invitation to prejudge whether future facts or circumstances might warrant leave to amend.

## ARGUMENT

### I.    Plaintiff's Motion was Not Unduly Delayed, Amendment is Not Futile, and Granting the Motion Will Not Cause Defendants Undue Prejudice

Defendants' Opposition does not contend that amendment would be futile argument or that they would suffer *undue* prejudice. Defendants only argue that Plaintiff failed to adequately explain the timing of his Motion. But the Motion was the product of diligent and steadfast investigation. Therefore, any delay was not undue or caused by bad faith, and Defendants fail to state any reason that amendment should not be granted.

### A.    Because the Motion was the Product of Diligent Investigation, Defendants Fail to Establish any *Undue* Delay

Defendants insist Plaintiff must explain the timing of his Motion but offers no authority for that assertion. Rather, Courts in this District and Circuit routinely grant leave to amend in response to a motion to dismiss, finding no "undue" delay, even if doing so renders the motion to dismiss moot. *Multi Access Ltd. v. Guangzhou Baiyunshan Pharm. Holdings Co., Ltd.*, 2021 WL 5647790, at *1 (S.D.N.Y. Nov. 30, 2021) (Liman, J.);[1] *Mikityuk v. Cision US Inc.,* 2021 WL 5568109, at*1 (S.D.N.Y. Nov. 29, 2021) (Liman, J) (finding no undue delay "given how early in the case the motion [was] made"); *Cotto v. Federal National Mortgage Association*, No. 1:20-cv-6487-MKV, at *8 (S.D.N.Y. Sep. 22, 2021) (granting leave to amend because there is no undue delay when motion was filed after defendant moved to dismiss.); *Schneiderman v. American Chem. Soc'y*, 2020 WL 2522120, at *1 (E.D.N.Y. May 18, 2020) (granting leave to file third amended complaint and denying pending motion to dismiss as moot); *W.B. David & Co., Inc. v. De Beers Centenary AG*, 2005 WL 3704690, at *1 (S.D.N.Y. Sept. 2, 2005) (same).[2] Accordingly, the Motion was not unduly delayed.

Furthermore, Plaintiff already provided the "explanation" Defendants "demand." Opp. at 5. As explained, the Motion was the result of "earnest investigation and diligence" undertaken by

---

[1] Defendants quibble that in *Multi Access*, the plaintiff learned new facts from Court-ordered discovery rather than some other means. Opp. at 8, n. 2. Defendants' attempt to distinguish the case fails. Nothing in *Multi Access* suggests that the plaintiff's mode of obtaining new information (rather than the fact that new information was, in fact, obtained) was pertinent to the Court's calculus in determining whether leave to amend should be granted.

[2] Defendants' caselaw is not to the contrary and supports granting leave. Defendants misquote *Park B. Smith, Inc. v. CHF Indus. Inc*., 811 F. Supp. 2d 766 (S.D.N.Y. 2011) by selectively omitting that "a *considerable period of time has passed* between the filing of the complaint and the motion to amend[.]" *Park B. Smith, Inc. v. CHF Indus. Inc*., 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) (motion for leave to amend denied when made four years after the initial complaint, and where, unlike here, the amended complaint sought to add new defendants, new claims, and new co-plaintiffs) (citation omitted) (emphasis added); *c.f.*, Opp. at 4 (omitting quotation). Here, Plaintiff filed the FAC on March 2, 2022, Defendants have not yet filed an answer, and Plaintiff is not seeking to amend to add new Defendants, redefine the class period, or add claims. *Cresswell* does not help Defendants either, where the motion to file a third amended complaint was filed more than one month after responding a summary judgment motion. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).

Lead Plaintiff and lead counsel who acted as fiduciaries for the Class by "continu[ing] their investigation of the alleged claims and identif[ying] additional factual evidence, including evidence from three new CWs." ECF No. 58, at 8.[3] This included conferencing with CWs through the eve of filing the Motion. The Motion also explains that CW5 had not left AppHarvest's employment until March 2022, the month that Plaintiff filed the FAC. *Id.* at 8-9.[4] It should come as no surprise that Plaintiff, through counsel, would diligently investigate his claims given his obligation to represent the class and his statutory charge to ensure vigorous advocacy of the case. Indeed, Plaintiff filed a certification pursuant to the Private Securities Litigation Reform Act of 1995 attesting that he will fairly and adequately protect the interests of the class pursuant to Rule 23(a)(4). ECF No. 14-1; *see also In re Turquoise Hill Res. Ltd. Secs. Litig.,* 2021 WL 2201388, at *4 (S.D.N.Y. June 1, 2021) (Liman, J) (in case governed by the PSLRA, lead counsel has "the right, and may have the duty, to investigate its client's claims."). Defendants' feigned surprise defies credulity. *Compare* Opp. at 5 (claiming Plaintiff did not "indicate that his investigation was incomplete…"), *with* FAC at 1 ("Lead Counsel's investigation into the matters alleged herein *is continuing,* and many relevant facts are known only to, or are exclusively within the custody or control of, Defendants.") (emphasis added).

Additionally, what Defendants misinterpret as delay is truly the diligent pursuit of evidence. Confidential witnesses do not appear overnight and the pursuit of their interviews and statements takes time and effort. Some confidential witnesses come forward early and are easier to locate while others are elusive. Lead counsel then must contact the witnesses to set up an

---

[3] Counsel explained the same during the meet and confer process. *See* Ex. C to the Declaration of Shannon L. Hopkins in Support of Plaintiff's Reply Memorandum in Further Support of Plaintiff's Motion for Leave to Amend Complaint ("Hopkins Decl."), hereto (June 23, 2022 Email from G. Potrepka to P. Adams, and attached draft letter motion).
[4] Defendants certainly do not suggest that Plaintiff was free to contact then-employed AppHarvest workers, or that failing to do so constitutes undue delay.

interview, interview the witness (frequently more than once) at times convenient for the witness's schedule, and follow up to then confirm the allegations Plaintiff intends to include in the complaint. Thus, it is unfair for Defendants to speculate that if a CW left AppHarvest's employment prior to the FAC's filing, that any information known by such CW was instantly obtainable by Plaintiff (certainly Defendants do not prove that). Regardless, ***even if*** the information from the new CWs was known to Plaintiff prior to filing the FAC, that does not mean delay was "undue." *Mikityuk*, 2021 WL 5568109, at \*1 ("Although Plaintiffs knew or could have known of the essential facts upon which they base their amended complaint earlier, that Plaintiffs could have amended earlier is not alone sufficient to defeat amendment."); *Bodum Holding AG v. Starbucks Corp.*, 2020 WL 6135714, at \*9 (S.D.N.Y. Oct. 16, 2020) (same). Accordingly, the timing of the Motion does not constitute the bad faith, intentional, or undue delay that Defendants portray. Rather, Plaintiff's investigation was the result of diligence which militates in favor of granting leave to amend.

   **B.    Because Amendment is Not Futile, Which Defendants Do Not Challenge, The Court Should Reject Defendants' Request to Adjudicate Misstatements Alleged in the FAC**

Although Defendants state "Plaintiff's PSAC is also futile" in conclusory fashion, they expressly reserve argument concerning futility for a future motion to dismiss, and thus waive those arguments with respect to the instant Motion. Opp. at 5, n. 1.[5] Defendants instead invite the Court to duplicate its workload and adjudicate their moot motion to dismiss the FAC. Opp. at 7-8. Defendants' contention that evaluating the sufficiency of a prior complaint's allegations would somehow promote judicial economy, when the PSAC provides additional factual bases and context for Plaintiff's claims, is sophistry. Rather, "[i]t is in the interest of judicial economy for Plaintiffs

---

[5] *See NML Capital LTD. v. Republic of Arg.*, 2009 WL 1528535, at \*1 (holding that defendant waived argument by not raising it in an opposition brief).

to amend now rather than after a ruling of Defendant's motion to dismiss." *Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc*, 2021 WL 2075586, at *2 (S.D.N.Y. May 24, 2021).

Defendants inaccurately characterize "140 statements" in the FAC as forward-looking or puffery statements,[6] and argue that judicial economy would be served if the Court evaluated all challenged statements now.[7] This is incorrect for several reasons. To start, evaluating the FAC's alleged misstatements in the context of a moot motion to dismiss is just another way to argue the PSAC is futile. Such arguments are more appropriate for a motion to dismiss and do not support denial of the Motion. *Cortese v. Skansa Koch, Inc.,* 2020 WL 13093237, at *3 (S.D.N.Y Oct. 22, 2020) (Liman, J) (addressing futility for the first time "makes no sense" when the court would have to evaluate allegations from two different complaints).

Furthermore, the PSAC's inclusion of additional facts and context to Plaintiff's claims is another reason supporting leave to amend. Importantly, the PSAC provides considerable additional context further supporting that the challenged statements are false and misleading. "Whether a representation is 'mere puffery' depends, in part, on the context in which it is made." *Doe v. Uber Techs., Inc*., 551 F. Supp. 3d 341, 368 (S.D.N.Y. 2021) (Liman, J.) (citing *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015). As Judge Rakoff recently held:

> "[E]ven if some statements, viewed in isolation, may be mere puffery, nonetheless, when ... the statements were made repeatedly in an effort to reassure the investing public about the Company's integrity, a reasonable investor could rely on them as reflective of the true state of affairs at the Company. Further, even where a statement may be considered vague or comparative when viewed in isolation, and so could be considered aspirational on its own, it may still be a material

---

[6] Defendants also simply ignore Plaintiff's argument that Defendants omitted material information concerning adverse impacts to net sales which AppHarvest had a legal obligation to disclose pursuant to Item 303 of SEC Regulation S-K. Motion at 18-19. AppHarvest ultimately admitted such information in their corrective disclosures to conform their public statements to Item 303's requirements. *See* PSAC, ¶249. Defendants' request that the Court dismiss alleged material omissions concerning noncompliance with Item 303 during the Class Period, when they simultaneously fail to address Plaintiff's argument on that point, is improper and should not be granted.

[7] It is unclear how Defendants arrived at 140 statements. Plaintiff estimates there are about 40 challenged statements, not including the risk statements which were alleged as often as Defendants misleadingly made them. Regardless, it would not promote judicial economy to evaluate 40 or 140 statements at this time.

misrepresentation when what 'was actually going on' at the company are wholly at odds with any reasonable interpretation of the terms."

*Karimi v. Deutsche Bank Aktiengesellschaft*, 2022 WL 2114628, at *6 (S.D.N.Y. June 13, 2022) (internal citations omitted). Therefore, analysis now of whether statements in the FAC are inactionable as a matter of law would not resolve the issue of whether statements in the PSAC were actionable in light of additional facts and context.

As an example, Defendants argue that Webb's statements in AppHarvest press releases on February 25, 2021 and March 1, 2021 were puffery when he stated "**Our favorable crop yields and market pricing currently support a 2021 sales outlook that is better than we expected in December 2020.**" *See* Opp. at 7; PSAC at ¶¶ 169, 173. Plaintiff disagrees that a firm statement like this, which is not aspirational or equivocal, could constitute puffery. But even assuming it could, the PSAC adds considerable context as to whether it was false or misleading. According to CW4, yields were being negatively impacted throughout the Class Period through wide-scale waste that CW4 observed and photographed. ECF No. 58 at 16; PSAC, ¶¶82-83. CW5 estimated that *fifty percent* of AppHarvest's crop was wasted in the first growing season. ECF No. 58 at 17; PSAC, ¶78. CW6 confirmed that AppHarvest's entire first growing and harvesting seasons were hampered by inadequate training and staffing difficulties that caused significant negative impact to productivity metrics like yield and quality (which dictates price). *E.g.*, PSAC, ¶¶82-83, 91, 107. According to CW6, senior leadership at AppHarvest "knew we were a long way off" from global standards of productivity during the Class Period, including 50% below global standards in the "toughest times" of the first harvest season which occurred during the end of Q1 through the "summer refresh." ECF No. 58 at 15-16, 18; PSAC, ¶87, 97. According to CW6, Defendants Lee and Eggleton met with CW6 and other participants at weekly meetings to discuss "the gap" in

forecasts, particularly with respect to yield and quality which were the "two primary inputs to forecasting and understanding the Company's revenue." PSAC, ¶¶123-24.

Thus, the information provided by three new CWs in the PSAC provides helpful context that should be assessed when evaluating the alleged statements, and analysis of whether the FAC states a claim would only waste judicial and party resources without advancing any issues in the case. *See Cortese*, 2020 WL 13093237, at *3 (Liman, J.) ("The most efficient course of action here, both from the perspective of the court and from the perspective of the parties, is to address the legal issues presented all at once, and in connection with the Third Amended Complaint.").

Furthermore, Defendants' request that the Court weigh the sufficiency of the FAC's allegations ignores that the facts in the PSAC also bear on scienter. Given that evaluation of scienter is a holistic analysis, the presence of new facts and detail supports granting leave to amend so that the Court can consider them. *See e.g., Spec. Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 447 (S.D.N.Y. 2014) (granting leave to amend to include "multiple facts absent from the FAC, or not clearly stated therein, [which] would permit the Court to draw stronger inferences of scienter"); *Hanson v. Frazer, LLP*, 2013 WL 5372749, at *8 (S.D.N.Y. Sept. 24, 2013) (granting leave to replead where plaintiffs' opposition brief and oral argument cited facts that "drew inferences that are either absent from the Complaint or are not made clear there"); *George v. China Auto. Sys., Inc.*, 2012 WL 3205062, at *1 (S.D.N.Y. Aug. 8, 2012) (granting leave to amend where allegations proffered in plaintiff's opposition brief, might, if properly plead, raise a strong inference of scienter).

## C.  Defendants Will Not Suffer Undue Prejudice if the Motion is Granted

Defendants fail to show amendment would be an "undue" burden, because they do not even argue it. *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 314 (S.D.N.Y. 2021) ("The defendant

bears the burden of showing that undue prejudice would result from granting leave to amend.").

Indeed, Defendants were willing to consent to amendment if Plaintiff would horse-trade his rights

to any future potential amendment. However, posing that Hobson's choice is unwarranted because

Defendants will not suffer undue prejudice from granting the Motion. Plaintiff does not seek to

add new parties or new claims, Defendants have yet to answer any pleading, discovery has not

begun, and no trial date has been set. Defendants will not be prejudiced by renewing their motion

to dismiss because "the prospect of spending more time, effort, or money on litigation—including

through additional discovery and motion practice—does not render an amended complaint unduly

prejudicial." *Id.*; *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 455 (S.D.N.Y. 2016).

## II.      The Court Should Reject Defendants' Premature Request to Prejudge The Merit of Any Hypothetical Future Motion for Leave to Amend

Plaintiff's Motion is the only one before the Court, and the only one that should be decided.

The Motion is well-founded given the stage of the case, Plaintiff's diligence, the facts alleged in

the PSAC, applicable Court rules, and the overwhelming weight of decisional law interpreting

Rule 15's "permissive standard." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797

F.3d 160, 190 (2d Cir. 2015). Recognizing this, Defendants weaponized their position in

opposition to the Motion as essentially a free shot at securing an order precluding ***any*** hypothetical

amendment, regardless of the circumstances, "***even if given the opportunity***" by the Court.

Hopkins Decl., Ex. D (June 28, 2022 Email from P. Adams to G. Potrepka).

Although Defendants complain about the time spent in this action completing the PSLRA-

required lead plaintiff process and a pleading schedule that they stipulated to, the fact is that this

case remains in its infancy. Defendants have not answered any pleading, no discovery has been

taken, Plaintiff has not moved for class certification, and there is no post-pleadings case

management schedule. Defendant's opposition to any hypothetical motion for leave to amend is

unreasonable and premature. There are situations in litigation where amendment becomes necessary. For example, courts regularly hold that plaintiffs should be given "an opportunity to amend in response to a Court order pointing out the deficiencies in their pleading[.]" *Shiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 309 (S.D.N.Y. 2019).[8] Courts permit amendment to conform to evidence received in discovery. *See SEPTA v. Orrstown Fin. Servs.*, 12 F.4th 337, 349 n. 9 (3d Cir. 2021) (the PSLRA's purpose "is still served if a plaintiff amends its complaint after discovery has yielded more facts to support" securities fraud claims). And, yes, often amendment is necessary because new information becomes available in ways that plaintiffs (unlike defendants) cannot control, including through disclosures by: defendant companies' public disclosures (*e.g.*, financial restatements); regulatory authorities (*e.g.*, announcements by the Securities and Exchange Commission or the Department of Justice); media reports; and through previously unavailable witnesses.[9] These issues are not before the Court and Defendants' request to categorically assess the merits of *any* future amendment is premature and short-sighted. The Court need only review the Motion at this time, which Plaintiff respectfully requests should be granted.

## CONCLUSION

Defendants have not shown that the Motion was made in bad faith, they failed to show undue delay, and they failed to argue futility or undue prejudice. Wherefore, Plaintiff respectfully requests the Court grant him leave to amend the FAC and file an amended complaint substantially the same as the PSAC.

---

[8] *Abengoa, S.A.*, 559 F. Supp. 3d at 313 (granting leave to amend after adverse motion to dismiss ruling because "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment[.]"); *Areu v. Fox News Network, LLC,* 2021 WL 4124226, at *16 (S.D.N.Y. Sept. 9, 2021) ("Ordinarily a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint[.] This is especially true on the Courts first ruling on a motion to dismiss.")

[9] Defendants' cases are inapposite. For example, in *Thompson v. City of New York*, the Court granted an unopposed motion for leave to amend with a warning and notice of deficiencies. 2022 WL 562358, at *2 (S.D.N.Y. Feb. 24, 2022). *See also Cotto*, 2021 WL 4340668, at *7 (same).

DATED: July 21, 2022                    Respectfully submitted,

                                        **LEVI & KORSINSKY, LLP**

                                        By: */s/Shannon L. Hopkins*

                                            Shannon L. Hopkins (SH-1887)
                                            Gregory M. Potrepka (GP-1275)
                                            Michael J. Keating (*Pro Hac Vice*)
                                            1111 Summer Street, Suite 403
                                            Stamford, CT 06905
                                            Telephone: (203) 992-4523
                                            Facsimile: (212) 363-7171
                                            shopkins@zlk.com
                                            gpotrepka@zlk.com
                                            mkeating@zlk.com

                                            *Counsel for Lead Plaintiff and Lead Counsel for the Class*