UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re AppHarvest Securities Litigation

Case No. 1:21-cv-07985-LJL

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

On September 23, 2022, Defendants moved to dismiss the SAC.[1] ECF No. 79. On November 22, 2022, Plaintiff filed his Opposition to Defendants' Motion to Dismiss. ECF No. 84. And on the same day, Plaintiff moved to strike, under Rule 12(f), four exhibits to Defendants' Motion to Dismiss (ECF No. 86):

- two Forms 4 filed with the SEC showing that Defendants Eggleton and Lee bought AppHarvest shares "very shortly after" (MTS at 5) the Company announced its disappointing Q2 results in August 2021 (ECF Nos. 81-48 (Ex. 42), 81-49 (Ex. 43)); and

- two Company-issued press releases filed with the SEC on Form 8-K announcing the Company's Q3 and Q4 results for 2021 (ECF Nos. 81-51 (Ex. 45), 81-52 (Ex. 46)).

As discussed below, the Court should deny Plaintiff's Motion to Strike ("MTS") for two reasons: (I) it procedurally improper and (II) the challenged exhibits can be judicially noticed by the Court.

## I.      PLAINTIFF'S MTS IS PROCEDURALLY IMPROPER.

Rule 12(f) can never be used to strike material from a motion. The Rule, by its terms, is limited to striking material from a pleading: "The court may strike ***from a pleading*** an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). And motions are not pleadings. Fed. R. Civ. P. 7. Thus, as numerous courts have held, Rule 12(f) simply does not authorize Plaintiff's MTS or the relief requested. *See, e.g.*,

---

[1] Unless otherwise noted, all "SAC" references are to Plaintiff's Second Amended Complaint (ECF No. 70), all "¶" references are to the SAC, all "Mot." references are to Defendants' Motion to Dismiss (ECF No. 80), and all "Opp." references are to Plaintiff's Opposition to Defendants' Motion to Dismiss (ECF No. 84).

*Honig v. Hansen*, 2021 WL 4651475, at *3 (S.D.N.Y. Oct. 6, 2021) (holding that "motions to strike the contents of [a] motion to dismiss are improper" because a motion is not a pleading); *Burns v. Bank of Am.*, 2007 WL 1589437, at *11 (S.D.N.Y. June 4, 2007) ("[T]he reply brief and accompanying materials of which the plaintiffs complain is not a pleading, and thus is not properly the subject of a motion under Rule 12(f)."); *Latino Quimica-Amtex S.A. v. Akzo Nobal Chems. B.V.*, 2005 WL 2207017, at *10 n.6 (S.D.N.Y. Sept. 8, 2005) (denying motion to strike an opposition brief because the motion "[wa]s directed to a brief rather than a pleading"); *Sierra v. United States*, 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998) (denying a request to strike a motion to dismiss because "Rule 12(f) does not authorize this court to strike documents other than pleadings").

Plaintiff's MTS must, therefore, be denied, and no further analysis is required.

## II.      THE CHALLENGED EXHIBITS ARE PROPERLY BEFORE THE COURT.

Setting aside the fact that Plaintiff's MTS is procedurally improper, the motion is substantively defective as well. Plaintiff has no plausible basis to object to the challenged documents, which were publicly filed with the SEC and are routinely considered (via judicial notice under Rule 201) by courts in this Circuit.

### A.      Legal Standard

"Two separate rules permit the Court to consider documents that are not contained within the four corners of the complaint" when considering a motion to dismiss. *Rice as Tr. of Richard E. & Melinda Rice Revocable Fam. Tr. 5/9/90 v. Intercept Pharms., Inc.*, 2022 WL 837114, at *5 (S.D.N.Y. Mar. 21, 2022) (Liman, J.).

The first is Rule 201 of the Federal Rules of Evidence ("Rule 201"), under which the Court may take judicial notice of a fact that is "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Under that rule, in federal securities fraud cases, courts can consider "public disclosure documents required by law to be filed, and actually filed, with the SEC." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). The Court need not limit itself to "documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Id.* at 773.

The second is Rule 10(c) of the Federal Rules of Civil Procedure ("Rule 10(c)"), under which courts may consider documents that are integral to the complaint, *i.e.*, "documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit." *Rice*, 2022 WL 837114, at *6.

### B.     The Challenged Forms 4 Are Subject to Judicial Notice.

Here, the Court should take judicial notice of the Forms 4 (Exs. 42, 43), and may do so for the truth of their contents, because they were publicly filed with the SEC and their accuracy cannot be reasonably disputed. Fed. R. Evid. 201. For this reason, courts routinely take judicial notice of SEC filings, including Forms 4, at the motion-to-dismiss stage. *See, e.g.*, *Rice*, 2022 WL 837114, at *20 ("[T]he Court takes judicial notice of [defendant]'s SEC Forms 4."); *Abely v. Aeterna Zentans Inc.*, 2013 WL 2399869, at *22 (S.D.N.Y. May 29, 2013) ("[C]ourts in this District routinely take judicial notice of Form 4 filings at the motion to dismiss stage, and consider them for the truth of their contents."); *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 763 F. Supp. 2d 423, 583 (S.D.N.Y. 2011) ("[Forms 4] are required SEC disclosures and may be considered for the truth of their contents."); *see also In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2022 WL 4085677, at *40 n.22 (S.D.N.Y. Sept. 2, 2022) (Liman, J.) ("The Court takes judicial notice of this SEC filing."). Plaintiff does not dispute this (nor could he), yet he asks the Court to strike the Forms 4 for three reasons. None has merit.

*First*, Plaintiff says the Forms 4 are not integral to the SAC. MTS at 4–5. But this argument conflates the "*[t]wo separate rules*" at play here: judicial notice (under Rule 201) and incorporation by reference (under Rule 10(c)). *Rice*, 2022 WL 837114, at \*5; *see* II.A, above. So, even if the Forms 4 are not integral to the complaint under Rule 10(c), the Court can (and should) take judicial notice of them for their truth under Rule 201. Tellingly, Plaintiff does not give a single reason why the Court should not do that.

*Second*, Plaintiff also says that the Forms 4 are irrelevant to the allegations in the SAC. MTS at 4–5. Not so. The Individual Defendants' trading history is relevant to the analysis of scienter. *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022) (weighing defendants' stock sales in analyzing potential motive to commit securities fraud); *In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 523 (S.D.N.Y. 2020) (discussing defendants' trading history in analyzing scienter). And Plaintiff put the Individual Defendants' trading history at issue by alleging that a single stock sale by Mr. Jeffrey Ubben, a non-defendant member of AppHarvest's Board of Directors, somehow establishes scienter as to the Individual Defendants. ¶¶ 311–12; Opp. at 11. The Individual Defendants' trading records are unquestionably more relevant than Mr. Ubben's when it comes to their state of mind. Plaintiff is correct that the Forms 4 reflect trades that were made after the Class Period. But that alone does not make them irrelevant, much less disqualify them from judicial notice. And, as Plaintiff acknowledges, the trades occurred "very shortly"—less than a week—after the Class Period. MTS at 5.

*Third*, Plaintiff argues that the Forms 4 should not be considered because Messrs. Lee and Eggleton could have purchased stock "for any number of reasons." *In re Guilford Mills, Inc. Sec. Litig.*, 1999 WL 33248953, at \*5 (S.D.N.Y. July 21, 1999).[2] This argument is not relevant to the

---

[2] *Guilford Mills* is distinguishable. There, the court stated that "a *company* buys back its stock for

whether the Forms 4 are properly before the Court (they are). Regardless, courts draw inferences from stock purchases all the time. *See, e.g.*, *In re Bristol–Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (increased holdings are "wholly inconsistent with fraudulent intent"); *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 763 (S.D.N.Y. 2018) (same). And here, it is reasonable to infer that Messrs. Lee and Eggleton bought stock days after the Company announced its disappointing Q2 results because they still had full confidence in the Company's future prospects. *See* Mot. at 11, 30. That the Company's stock price was "low" when Messrs. Lee and Eggleton bought stock only strengthens that inference—presumably they thought the stock was undervalued. MTS at 5.

**C.    The Challenged Press Releases Are Subject to Judicial Notice.**

Defendants asked the Court to take notice of two AppHarvest press releases, which announced the Company's financial results for Q3 and Q4 of 2021, respectively. Exs. 45, 46 (also disclosing that AppHarvest achieved the "high end" of its revised 2021 guidance range). Plaintiff moves to strike these press releases for two reasons. Neither has merit.

***First***, citing *Kramer*, Plaintiff argues that press releases are categorically not judicially-noticeable. MTS at 5. Plaintiff is wrong. There is no such holding in *Kramer*, and there were no press releases at issue in the first place. In that case, the court took notice of certain documents because they "were part of public disclosure documents filed with the SEC." 937 F.2d at 774. The

---

any number of reasons." 1999 WL 33248953, at *5 (emphasis added). A ***company's*** reasons for buying back its shares are numerous and may differ from the reasons an individual has for purchasing more stock. In any event, the Court held that "[b]uying back stock . . . does not ***in and of itself*** refute the strong inference of scienter raised by plaintiffs," where the plaintiffs had shown that the CEO of a subsidiary company (who was also a Guilford Mills board member) had admitted to fraud, and had sold $1.5 million of Guilford Mills stock just prior to disclosing accounting irregularities at the subsidiary company. *Id*. (emphasis added). By contrast, here, Plaintiff does not allege stock sales during the Class Period by any Defendant.

same is true here. The challenged exhibits were attached to Forms 8-K,[3] which are "disclosure documents required by law to be filed, and [were] actually filed, with the SEC." 937 F.2d at 774–76 (taking judicial notice of an Offer to Purchase contained in a Schedule 14D-1 and a merger agreement attached to a Form 8-K); *see also Gagnon v. Alkermes PLC*, 368 F. Supp. 3d 750, 763 (S.D.N.Y. 2019) (taking judicial notice of Forms 8-K); *Gissin v. Endres*, 739 F. Supp. 2d 488, 496 n.2 (S.D.N.Y. 2010) (taking "judicial notice of . . . public disclosures on file with the Securities and Exchange Commission," including Forms 8-K).

*Second*, Plaintiff argues that the press releases cannot be cited for their truth. MTS at 5–6. This is a straw man. No legal argument in Defendants' Motion to Dismiss relies on the press releases, and Defendants merely cited those press releases to provide context for the Court regarding post-Class Period events, not for the truth of their contents. Mot. at 11. Courts routinely take judicial notice of press releases for that exact reason. *See, e.g.*, *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d at 524 n.7 (taking notice of press release disclosing post-lawsuit FDA approval "for completeness of the record" although it had no bearing on the court's decision); *see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[R]eference to a letter attached to the state's motion to dismiss was not erroneous because the court did not rely on the letter as a basis for its decision but simply referred to it for background.").

## III.   CONCLUSION

For these reasons, the Court should deny Plaintiff's MTS.

---

[3] The November 10, 2021 press release (Ex. 45) was filed as Exhibit No. 99.1 to Form 8-K, filed with the SEC on the same date. (*See* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001807707/000180770721000056/apph-20211110.htm). The February 24, 2022 press release (Ex. 46) was filed as Exhibit 99.1 to Form 8-K, filed with the SEC on the same date. (*See* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001807707/000180770722000024/apph-20220224.htm).

Dated:  January 13, 2023

Respectfully submitted,

COOLEY LLP

By: _/s/ Aric H. Wu_____
       Aric H. Wu (2963387)

55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
ahwu@cooley.com

Patrick E. Gibbs (*pro hac vice forthcoming*)
3175 Hanover Street
Palo Alto, CA 94304-1130
Tel: (650) 843-5000
pgibbs@cooley.com

Peter M. Adams (*pro hac vice*)
Linh K. Nguyen (*pro hac vice*)
4401 Eastgate Mall
San Diego, CA 92121
Tel: (858) 550-6000
padams@cooley.com
lknguyen@cooley.com

Zachary D. Williams (*pro hac vice*)
1144 15th Street Suite 2300
Denver, CO 80202
Tel: (720) 566-4000
zwilliams@cooley.com

*Attorneys for Defendants AppHarvest, Inc.,*
*Jonathan Webb, Loren Eggleton, and David Lee*