

1111 Summer Street, Ste. 403
Stamford, CT 06905
T: 203-992-4523
F: 212-363-7171
www.zlk.com

**Gregory M. Potrepka**
gpotrepka@zlk.com

March 22, 2023

**VIA ECF**

Hon. Lewis J. Liman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> **Re:**   *In re AppHarvest Securities Litigation,* Case No. 21-cv-7985-LJL

Dear Judge Liman:

We represent Lead Plaintiff in the above-referenced Action and write to respectfully draw the Court's attention to Judge Koeltl's recent opinion and order in *Wang v. Cloopen Grp. Holding Ltd.*, 2023 WL 2534599 (S.D.N.Y. Mar. 16, 2023), denying a motion to dismiss and rejecting similar arguments to those proffered by Defendants. A copy of the *Wang* opinion is enclosed as Exhibit A.

***Material Omissions***: In *Wang*, like here, the lead plaintiff alleged violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, among other claims. In particular, the *Wang* plaintiff alleged that the defendants' registration statement was actionably misleading with respect to a certain "Series F Warrant" because the statements "omitted a material fact: namely, [] the original fair value" of the warrant. *Id.* at *2. Judge Koeltl held that "[o]nce Cloopen chose to speak" it was required to disclose "any additional material information necessary to make the existing disclosures not misleading." *Id.* at *8. In denying the motion to dismiss, Judge Koeltl found it persuasive that the defendants would have necessarily known the omitted material information (the original fair value of the Warrant) when it chose to speak about the warrant in the registration statement because the warrant had been exercised and the liability had been incurred "one month before the IPO," and yet because of that omission, "investors were left in the dark about the magnitude of that liability[.]" *Id.*

Like in *Wang*, Lead Plaintiff alleges that Defendants made actionable omissions in AppHarvest's filings with the SEC. In particular, Lead Plaintiff alleges Defendants reported on net sales for the first fiscal quarter of 2021 ended March 30, 2021, including with respect to "changes" and "trends" in net sales, in AppHarvest's 1Q2021 Form 10-Q filed on May 17, 2021, as well as a registration statement and prospectus filed on June 4, 2021 and June 9, 2021, respectively. ¶¶204-05, 231-32, 240-41. Despite the Form 10-Q, registration statement, and prospectus being filed more than "one month" after the end of the first quarter, Defendants omitted information that they would later admit was material for that time period, including that net sales were "adversely impacted by labor and productivity challenges associated with the training and development of the new workforce at the Morehead, Kentucky facility," which "resulted in lower net sales due to lower overall No. 1-grade production yields, including the impact of higher related distribution and

LEVI&KORSINSKYLLP

March 22, 2023
Page 2 of 3

shipping fees." ¶249. Furthermore, Defendants necessarily knew the material information at the time they made their statements as evidenced by Defendants' ability to report on the net sales results. Additionally, CW6 confirmed that CW6 participated in weekly Forecast Meetings with Defendants Lee and Eggleton specifically to discuss the state of AppHarvest's actual results compared to various forecast scenarios. ¶123. Thus, Defendants' statements in their SEC filings left investors "in the dark" about changes and trends affecting net sales, and therefore were "incomplete and misleading." *Wang*, 2023 WL 2534599, **8-9.

*"Forward"-Looking Statements*: Defendants made numerous present or backward-looking statements concerning the purported justifications for AppHarvest's financial guidance.[1] Defendants assert that, as a matter of law, any time a speaker issues a projection, that any accompanying, related justification for the projection will necessarily be protected by the PSLRA's safe harbor for forward-looking statements. ECF 91 at 3. However, Defendants misunderstand that when an alleged statement or component thereof is "generally grounded in descriptions of [a defendant company's] existing" or historical state of affairs, then "the safe harbor provision of the PSLRA does not apply." *Wang*, 2023 WL 2534599, *11.

*Scienter*: Defendants contend that "plaintiff *must* 'provide specific instances in which Defendants received information that was contrary to their public declarations'" to plead scienter. ECF 91 at 13 (paraphrasing *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382 (S.D.N.Y. 2020) (Liman, J.)).

That is exactly what Lead Plaintiff pled. *E.g.*, ¶¶123-24, 126-27, 264 (describing weekly Forecast Meetings and twice-weekly Leadership Meetings where metrics including yield, quality, rejections, attrition, employee absences, and other productivity metrics were *consistently* underperforming and "a long way off" compared to forecast); ¶128 (CW6's daily one-on-one meetings with Eggleton); ¶60 (daily and weekly production forecasts sent to Mastronardi); ¶67 (frequent audit reports and reprimands from Mastronardi regarding product quality); ¶96 (consistent reports throughout end of Q1 2021 through end of Class Period that Mastronardi rejected "many times" AppHarvest's target, upwards of 30% to 35%).

However, Defendants disregard that "facts contrary to a defendant's public representations may also be learned in other ways" beyond citation to specific reports. *Wang*, 2023 WL 2534599, *15 (*citing In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2022 WL 4085677 (S.D.N.Y. Sep. 2, 2022) (Liman, J.)). For example, Judge Koeltl found that scienter was supported by the defendants' "extensive and comprehensive customer support infrastructure, through which Cloopen could communicate with customers on a constant basis…and collect information on customer retention from over 20 regional sales offices in 'real time.'" *Id.* at *16; *c.f.*, ¶60 (describing the "Mastronardi Portal" that AppHarvest used to communicate production volumes with Mastronardi in real time); ¶118-21 (describing information systems that allowed AppHarvest to track worker production in "real time"). Judge Koeltl also held it was reasonable to infer the individual defendants knew of falling customer retention where Cloopen admitted such metric was "a crucial indicator of its ability to increase revenue generated from its existing customer base." *Wang*, 2023 WL 2534599, *17. Defendants likewise repeatedly told investors the Company relied "solely on the operations of the Morehead Facility" and that "any [] period of reduced production at" Morehead "would significantly disrupt our ability to grow and deliver our produce in a timely manner, meet our contractual obligations and operate our business." ¶¶165, 181, 188, 202, 229, 238, 294.

---

[1] Defendants' claim that these allegations are unpled (ECF 91 at 3) is incorrect. *See* ¶¶151, 170, 174, 200, 208, 211, 216.

**LEVI&KORSINSKY**LLP

Accordingly, the *Wang* decision bears on many of the issues under submission, and Lead Plaintiff respectfully submits it in further support of denying Defendants' motion to dismiss.

Very truly yours,

/s/ *Gregory M. Potrepka*
Gregory M. Potrepka

CC:    All Counsel of Record
Encl.: *Wang v. Cloopen Grp. Holding Ltd.*, 2023 WL 2534599 (S.D.N.Y. Mar. 16, 2023)