**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re AppHarvest Securities Litigation | Case No. 1:21-cv-07985-LJL |
| | **<u>CLASS ACTION</u>** |

**<u>MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED</u>**
**<u>MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY ................................................................. 3

    A.  Factual Background ................................................................................................ 3

    B.  Procedural History of the Action ........................................................................... 4

    C.  The Proposed Settlement ........................................................................................ 8

        1.  Relief to Settlement Class Members and Release of Claims ......................... 8

        2.  Settlement Class Notice and Settlement Administration ............................... 8

        3.  Papers in Support of the Settlement, Plan of Allocation, and an Award of Lead Counsel's Fees and Expenses ................................................................. 9

        4.  Objections ...................................................................................................... 10

        5.  Opt-Outs ......................................................................................................... 11

        6.  Termination of Settlement .............................................................................. 11

ARGUMENT ............................................................................................................................ 12

    A.  The Proposed Settlement Warrants Preliminary Approval .................................... 12

        1.  Standards For Preliminary Approval of Class Action Settlements ................ 12

        2.  Rule 23(e)(2)(A): Whether Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class ............................................... 14

        3.  Rule 23(e)(2)(B): Whether the Proposed Settlement Was Negotiated at Arm's Length 15

        4.  Rule 23(e)(2)(C) and *Grinnell* Factors 1 and 3 Through 9: Whether the Relief Provided to the Settlement Class Is Adequate ................................... 16

            a.  Rule 23(e)(2)(C)(i): Costs, Risks, and Delay of Trial and Appeal ......................... 16

            b.  Rule 23(e)(2)(C)(ii): Effectiveness of the Proposed Method of Distributing Relief to the Settlement Class ................................................. 21

            c.  Rule 23(e)(2)(C)(iii): Terms of the Proposed Attorneys' Fees, Including Timing of Payment ...................................................................... 22

            d.  Rule 23(e)(2)(C)(iv): Any Agreement Required to Be Identified Under Rule 23(e)(3) ...................................................................................... 22

        5.  Rule 23(e)(2)(D): Whether the Proposal Treats Settlement Class Members Equitably Relative to Each Other ................................................... 23

    B.  The Proposed Settlement Class Should Be Certified For Settlement Purposes ................ 26

1.  Legal Standards Concerning Class Certification ........................................................... 26

2.  The Settlement Class Satisfies the Requirements of Rule 23(a).................................... 27

3.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3).............................. 30

4.  The Court Should Appoint Lead Counsel as Counsel for the Settlement Class ............ 31

C.  The Court Should Approve The Proposed Form And Method of Settlement Class .............

    Notice.................................................................................................................................. 31

1.  Notice By E-Mail and Publication is Appropriate ........................................................ 31

2.  The Proposed Notice Adequately Informs Settlement Class Members of Their Rights in

    This Action...................................................................................................................... 33

D.  Proposed Schedule of Events............................................................................................ 33

CONCLUSION.................................................................................................................... 34

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................. 27, 30

*Balestra v. ATBCOIN LLC*,
2022 WL 950953 (S.D.N.Y. Mar. 29, 2022) ................................................................... 21

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ................................................................... 30

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) .................................................................................... 28

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) .......................................................................................... 27

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .......................................................................................... 13

*Fleisher v. Phoenix Life Ins. Co.*,
2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ................................................................. 12

*Gruber v. Gilbertson*,
2022 U.S. Dist. LEXIS 108611 (S.D.N.Y. June 17, 2022) ............................................... 25

*Guyer v. MGT Cap. Invs., Inc.*,
2019 WL 8403029 (S.D.N.Y. Dec. 17, 2019) ................................................................. 21

*In re 3D Sys. Sec. Litig.*,
2023 WL 4621716 (E.D.N.Y. July 19, 2023) ................................................................. 32

*In re Altair Nanotechnologies Sec. Litig.*,
2016 WL 7647043 (S.D.N.Y. Jan. 22, 2016) ................................................................. 21

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) .......................................................................................... 27

*In re American Bank Note Holographics Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................................ 25

*In re AppHarvest Inc., Securities Litigation*,
Case No. 1:21-cv-7985-LJL (S.D.N.Y) ........................................................................... 10

*In Re AppHarvest Products, LLC*,
Case No. 23-90745 (S.D. Tex. Bankr.) ......................................................................... 2, 5

*In re Electrobras Sec. Litig.*,
Case No. 15-cv-5754-JGK (S.D.N.Y. 2018) ................................................................... 22

*In Re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) .................................................................................... 28

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................................................... 23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) ............................................................................................ 29

*In re Giant Interactive Group, Inc. Securities Litigation*,
279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................................. 22, 23

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................... 26

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ...................................................................................... 30

*In re JPMorgan Chase & Co. Sec. Litig.*,
  2016 WL 11590485 (S.D.N.Y. May 10, 2016) ................................................................ 22
*In re Lehman Brothers Sec. & ERISA Litig.*,
  Case No. 1:08-cv-05523-LAK-GWG  (S.D.N.Y Mar. 11, 2014)..................................... 25
*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
  2018 WL 3475465 (S.D.N.Y. Jul. 19, 2018) ................................................................... 12
*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................................. 30
*In re N. Dynasty Minerals Ltd. Sec. Litig.*,
  2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023).................................................................. 32
*In re N. Dynasty Minerals Ltd. Sec. Litig.*,
  2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) .................................................................... 20
*In re PaineWebber Ltd. P'ships Litig.*,
  117 F.3d 721 (2d Cir. 1997)........................................................................................... 23
*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................................... 23
*In re Parmalat Sec. Litig.*,
  2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008).................................................................. 28
*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003)............................................................................. 18
*In re Sanofi-Aventis Sec. Litig.*,
  293 F.R.D. 449 (S.D.N.Y. 2013) .................................................................................... 30
*In re Take Two Interactive Sec. Litig.*,
  2010 WL 11613684 (S.D.N.Y. June 29, 2010) ............................................................... 33
*In re Telik Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008).............................................................................. 23
*In re Veeco Instruments Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007).................................................................... 18
*In re Vivendi Univ., S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................................................... 28
*Kalnit v. Eichler,*
  264 F.3d 131 (2d Cir. 2001)........................................................................................... 17
*Kalnit v. Eichler,*
  99 F. Supp. 2d 327 (S.D.N.Y.2000)................................................................................ 17
*Lomeli v. Sec. & Inv. Co. Bahrain*,
  546 F. App'x. 37 (2d Cir. 2013) ..................................................................................... 33
*Luo v. Sogou Inc*. et al.,
  Case No. 1:19-cv-230-LJL (S.D.N.Y. Dec. 10, 2020) (Liman, J.).................................. 32
*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................. 22
*Marisol A. v. Guiliani,*
  126 F.3d 372 (2d Cir. 1997)........................................................................................... 27
*Mayhew v. KAS Direct, LLC,*
  2018 WL 3122059 (S.D.N.Y. Jun. 26, 2018) ................................................................. 12
*Melito v. Experian Mktg. Sols., Inc*.,
  923 F.3d 85 (2d Cir. 2019)............................................................................................. 33

*Moshell v. Sasol Ltd.*,
    Case No. 1:20-cv-01008-JPC (S.D.N.Y. Sept. 26, 2022) ................................................. 25
*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ................................................................................ 23
*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp.*,
    2016 WL 7409840 (S.D.N.Y. Nov. 4, 2016) .................................................................... 29
*Pa. Pub. Sch. Emples.' Ret. Sys. v. Bank of Am. Corp.*,
    318 F.R.D. 19 (S.D.N.Y. 2016) ....................................................................................... 16
*Pearlstein v. Blackberry Ltd.*,
    2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ................................................................. 20
*Plymouth County Retirement Association v. AppHarvest, Inc., et al.*,
    Case No. 1:21-cv-09676 (S.D.N.Y.) ............................................................................ 4, 5
*Puddu v. 6D Global Techs. Inc.*,
    2021 WL 1910656 (S.D.N.Y. May 12, 2021) .................................................................. 32
*Ragan v. AppHarvest, Inc., et al.*,
    Case No. 1:21-cv-07985 (S.D.N.Y) ............................................................................. 4, 5
*Rosi v. Aclaris Therapeutics, Inc.*,
    2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) (Liman, J.) ................................. 13, 21, 22, 28
*Silberblatt v. Morgan Stanley*,
    524 F. Supp. 2d 425 (S.D.N.Y. 2007) .............................................................................. 23
*Sjunde AP-Fonden v. General Elec. Co.*,
    2023 WL 6314939 (S.D.N.Y. Sep. 28, 2023) .................................................................. 24
*Torres v. Toback, Bernstein & Reiss LLP*,
    2014 WL 988480 (E.D.N.Y. Mar. 14, 2014) .................................................................. 31
*Torres v. Toback, Bernstein & Reiss LLP*,
    No. 11-CV-1368 (NGG) (VVP), 2014 WL 1330957 (E.D.N.Y. Mar. 31, 2014) ............. 31
*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .............................................................................................. 12
*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) .............................................................................................. 27

**Statutes**

15 U.S.C. § 78j ................................................................................................................................ 3
15 U.S.C. § 78t ................................................................................................................................ 3

**Other Authorities**

Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 8.04 (4th ed. 2002) ............... 31
*Manual for Complex Litigation* (Fourth) § 21.632 ..................................................................... 27

**Regulations**

17 CFR § 240. 10b-5 ....................................................................................................................... 3

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................................... passim

Lead Plaintiff Alan Narzissenfeld submits this Memorandum of Law in support of his unopposed motion for entry of the agreed-upon order submitted herewith (the "Preliminary Approval Order") preliminarily approving the proposed class action settlement and providing for notice to the Settlement Class.[1] The motion and this Memorandum of Law are supported by the Declaration of Gregory M. Potrepka in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Potrepka Decl."), filed herewith.[2] The Settlement Class consists of all persons and entities that purchased or otherwise acquired securities of AppHarvest, Inc. ("AppHarvest" or the "Company"), during the period from February 1, 2021 and August 10, 2021, inclusive, and were injured thereby.[3]

## PRELIMINARY STATEMENT

Following two years of highly-contested litigation, Lead Plaintiff agreed to resolve all claims in this Action asserted against Individual Defendants Jonathan Webb ("Webb"), David Lee ("Lee"), and Loren Eggleton ("Eggleton"), in exchange for an all-cash recovery of $4,850,000.

The Settlement is the result of extensive investigation and arm's-length negotiations among experienced counsel and was the personal proposal of a highly respected mediator, Michelle Yoshida, Esq., of Phillips ADR. The Settlement was reached only after vigorous litigation efforts including investigating potential claims and preparing two amended complaints, prevailing on a motion for leave to file a second amended complaint, successfully opposing a motion to dismiss the Operative Complaint (ECF 76), letter briefing regarding a stay of this case, engaging

---

[1] Capitalized terms not otherwise defined herein have the meanings as defined in the Stipulation and Agreement of Settlement, dated February 20, 2024 (the "Stipulation").

[2] "Ex." are exhibits attached to the Potrepka Declaration. The exhibits to the Stipulation are identified as "Stipulation Ex." Unless otherwise noted herein, all emphasis is added, and all internal quotations and citations are omitted.

[3] Excluded from the Class are: (1) the Individual Defendants; (2) the Individual Defendants' immediate family members; (3) any firm, trust, corporation, or other entity in which a defendant has or had a controlling interest; and (4) the legal representatives, affiliates, heirs, successors in interest, or assigns of any such excluded person or entity. Also excluded from the Settlement Class will be any Person who or which timely and validly seeks exclusion from the Settlement Class.

1

specialized bankruptcy counsel and securing a carve out of the Settlement Class from the third party release in the Bankruptcy,[4] attending a full-day mediation before Ms. Yoshida, briefing in connection the mediation, and vigorous subsequent negotiations facilitated by the mediator.

Lead Plaintiff's investigation included, among other things, review and analysis of: (i) documents filed publicly by AppHarvest with the SEC; (ii) publicly available information concerning AppHarvest and/or the Individual Defendants, including press releases, news articles, conference call transcripts, and video recorded interviews; (iii) research reports issued by financial and industry analysts concerning AppHarvest; (iv) other publicly available information and data concerning the Company and its subsidiaries, including information concerning AppHarvest's operations; (v) docket entries from various court proceedings concerning AppHarvest and the Individual Defendants, including items filed in the Bankruptcy; (vi) interviews conducted with former employees; (vii) consultations with bankruptcy counsel; (viii) reports prepared by Lead Plaintiff's damages experts in connection with the mediation; and (ix) the applicable law governing the claims and potential defenses in this Action.

Given this extensive investigation, Lead Plaintiff's Counsel were well-informed of the strengths and weaknesses of the claims and the fairness of the Settlement. Lead Plaintiff submits that the Settlement ultimately should be approved by the Court as it fairly, reasonably, and adequately balances Lead Plaintiff's objective of securing the highest possible monetary recovery for the Settlement Class against the significant risk that it could receive a smaller recovery, or no recovery, if the Action continued. At this time, Lead Plaintiff seeks entry of the Preliminary Approval Order which will start the process for obtaining final approval of the settlement by, among other ways:

---

[4] *In re AppHarvest Products, LLC*, Case No. 23-90745(DRJ) (S.D. Tex. Bankr.).

(1) preliminarily approving the proposed Settlement as set forth in the Stipulation and Agreement of Settlement dated February 20, 2024;

(2) certifying the proposed Settlement Class for settlement purposes only, and appointing Lead Plaintiff as class representative and Lead Plaintiff's Counsel as Settlement Class Counsel, for settlement purposes only;

(3)  approving the retention of Strategic Claims Services as the Claims Administrator;

(4) approving the proposed form, content, and method of dissemination of the Notice, Claim Form, Postcard Notice, and Summary Notice substantially in the same form as Exs. A-1, A-2, A-3, and A-4 annexed to the Stipulation as the best notice practicable under the circumstances and they comply with due process, Rule 23, and the PSLRA;

(5) setting a schedule for: (i) providing notice to the Settlement Class; (ii) Settlement Class members to submit a claim, object to any part of the settlement, or request exclusion therefrom; (iii) filing of Lead Plaintiff's motion for Final Approval of the Settlement and request for attorneys' fees and expenses; (iv) the Settlement Hearing, at which the Court will consider final approval of the Settlement, as well as approval of the Plan of Allocation and Lead Counsel's request for attorneys' fees and expenses

## BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

In this federal securities class action, Lead Plaintiff alleges that Defendants made materially false or misleading statements and omissions throughout the Settlement Class Period in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 promulgated thereunder, which caused the price of AppHarvest's publicly traded securities—specifically common stock (Nasdaq: $APPH) and warrants (Nasdaq: $APPHW)—to trade at artificially inflated prices.

3

Prior to its bankruptcy, AppHarvest was a domestic producer of fruits and vegetables, with a single operating farm located in Morehead, Kentucky. ECF 76 at ¶43. Throughout the Settlement Class Period, Defendant Webb served as AppHarvest's Chief Executive Officer and Board Chairman, Defendant Lee served as President and a member of the Board, and Defendant Eggleton served as Chief Financial Officer. *Id.* at ¶29-31. Lead Plaintiff alleges that during the Settlement Class Period, Defendants disseminated false and misleading statements that falsely concealed and misrepresented labor and productivity issues that AppHarvest experienced at the Morehead farm that were negatively affecting the Company's operating results and prospects. *Id.* at ¶147-241. Lead Plaintiff further alleges that the truth was revealed on August 11, 2021, when Defendants disclosed, among other items, the Company's financial results for the fiscal quarter ended June 30, 2021, which caused the prices of publicly traded AppHarvest common stock and warrants to significantly depreciate, and thereby, caused economic harm to the Settlement Class. *Id.* at ¶242.

### B.    Procedural History of the Action

Starting in the fall of 2021, two purported securities class action complaints were filed in this District against Defendants Webb, Eggleton, and the Company. The first, filed on September 24, 2021, was captioned *Ragan v. AppHarvest, Inc., et al.*, Case No. 1:21-cv-07985 (S.D.N.Y) (the "*Ragan* Action") on behalf of all investors who purchased or otherwise acquired AppHarvest, Inc. securities between May 17, 2021 and August 10, 2021, inclusive. ECF No. 1. On November 22, 2021, a related securities class action captioned *Plymouth County Retirement Association v. AppHarvest, Inc., et al.*, Case No. 1:21-cv-09676 (S.D.N.Y.) (the "*Plymouth County* Action") was also filed in this Court seeking the same relief against the same defendants on behalf all investors who purchased or otherwise acquired AppHarvest securities between October 9, 2020 and August 10, 2021, inclusive. ECF 39 at 4. On December 13, 2021, the Court issued an Opinion and Order consolidating the *Plymouth County* Action into *Ragan* Action under the caption *In re AppHarvest*

4

*Securities Litigation* and appointed Alan Narzissenfeld as Lead Plaintiff; and Levi & Korsinsky, LLP as lead Counsel. ECF 39.

On March 2, 2022, Lead Plaintiff filed his First Consolidated Amended Class Action Complaint (the "FAC"), alleging securities fraud claims on behalf of himself and all other persons or entities other than Defendants who purchased or otherwise acquired securities of AppHarvest between February 1, 2021 and August 10, 2021, inclusive, and were damaged thereby. ECF 46. Lead Plaintiff's investigation, through Lead Counsel, resulted in the FAC asserting claims against Defendant Lee, who had not been named in the initial complaints filed in the *Ragan* and *Plymouth County* Actions.

On May 2, 2022, Defendants moved to dismiss the FAC. ECF 50-52. After continued investigation that included the identification of three new and important confidential witnesses, Lead Plaintiff responded to Defendants' motion to dismiss by moving for leave to amend the FAC. ECF 57-60. On July 22, 2022, the Court issued a Memorandum and Order granting Lead Plaintiff's motion for leave to amend. ECF 69. On August 12, 2022, Lead Plaintiff filed the Operative Complaint. ECF 76.

On September 23, 2022, Defendants moved to dismiss the Operative Complaint (ECF 79-81), which Lead Plaintiff opposed. ECF 84-87. On July 23, 2023, AppHarvest filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. *In Re AppHarvest Products, LLC*, Case No. 23-90745-CML (S.D. Tex. Bankr.). On July 31, 2023, the Court issued its Opinion and Order concerning Defendants' motion to dismiss the Operative Complaint, granting the motion as to claims asserted against Defendants Webb and Eggleton, and denying the motion only as to two statements made by Defendant Lee during an investment conference held by Stephens Inc., on May 25, 2021. ECF 97. Specifically, the Court sustained the following statements made by Defendant Lee: "**Um, thankfully COVID has not in any way impacted our**

5

**operation**[;]" and "**So we haven't had any challenges with recruiting or staffing**." *Id.* at 69-70, 75-77.

On August 1, 2023, Defendants filed a Notice of Suggestion of Bankruptcy and Automatic Stay of Proceedings, thereby automatically staying the Action as to AppHarvest. ECFs 98-99. As originally proposed, the confirmation plan in the Bankruptcy would have released Lead Plaintiff's and the Settlement Class's claims in this Action against the Individual Defendants. To protect the Settlement Class's claims from being released in the Bankruptcy, Lead Counsel retained Lowenstein Sandler, LLP ("Lowenstein"), a firm with well-regarded expertise in complex bankruptcy matters, to advise Lead Counsel. As a result of Lead Counsel's and Lowenstein's efforts and negotiations with counsel for the debtor, the debtor agreed to include the following language in the Debtor's proposed confirmation order which was approved by the bankruptcy court and resulted in a carve out of Lead Plaintiff's claims against the Individual Defendants from the bankruptcy release:

> **Release Opt-Out for Lead Plaintiff**. Notwithstanding anything to the contrary set forth in the Plan, Disclosure Statement, solicitation procedures order [ECF No. 72], Plan Supplement or this Confirmation Order, Alan Narzissenfeld ("Lead Plaintiff"), the court-appointed lead plaintiff in the securities class action pending in the United States District Court for the Southern District of New York under the caption, *In re AppHarvest Securities Litigation*, Case No. 1:21-cv-07985 (the "Securities Litigation"), together with each member of the putative class Lead Plaintiff represents in the Securities Litigation (as may be redefined or certified, the "Proposed Class"), is hereby deemed to have opted out of the Third Party Release contained in Article IX.B. of the Plan with respect to all claims asserted or to be asserted against any non-Debtor party in the Securities Litigation (the "Opt-Out Claims"), and shall not be required to execute, complete, or deliver the Release Opt-Out forms in respect of the Opt-Out Claims. Lead Plaintiff and the Proposed Class shall not be deemed Releasing Parties with respect to the Opt-Out Claims.

Potrepka Decl. Ex. 2 at ¶132.

Additionally, Lead Counsel's negotiations with counsel for the Debtor resulted in the bankruptcy court entering the following order regarding the preservation of records:

**Preservation of Books and Records**. Until the entry of a final order of judgment or settlement in the Securities Litigation (as defined in paragraph 132 of this Order), the Debtors, Purchaser(s), Plan Administrator, and any other transferee of the Debtors' books, records, documents, files, electronic data (in whatever format, including native format), or any tangible object potentially relevant to the Securities Litigation, wherever stored (collectively, the "Potentially Relevant Books and Records") shall preserve and maintain such Potentially Relevant Books and Records, and shall not destroy, abandon, transfer, or otherwise render unavailable such Potentially Relevant Books and Records without providing counsel to the lead plaintiff in the Securities Litigation at least sixty (60) days' advance written notice and an opportunity to object and be heard by a court of competent jurisdiction. In the event Lead Plaintiff timely objects to any such destruction, abandonment, or transfer, the Potentially Relevant Books and Records shall be preserved until the earlier of (a) a final order of the Court or other court of competent jurisdiction and (b) the date the party in possession, custody, or control of such Potentially Relevant Books and Records provides originals or true copies thereof to counsel for Lead Plaintiff.

*Id.* at ¶136.

On September 15, 2023, the Parties jointly advised the Court that they agreed to explore a resolution of the Action through private mediation and requested the Court enter a stay of the case, in part, until November 8, 2023. ECF 108. On September 18, 2023, the Court granted the Parties joint motion, thereby staying the case, in part, until November 8, 2022. ECF 109. On October 25, 2023, Lead Plaintiff's counsel and counsel for the Individual Defendants engaged in a full-day mediation session before Ms. Yoshida. In the weeks following the mediation, Lead Plaintiff and the Individual Defendants continued to negotiate a possible settlement. On December 14, 2023, the Parties agreed to Ms. Yoshida's personal, double-blind mediator's proposal to resolve the claims in the Action. On December 15, 2023, Lead Plaintiff and the Individual Defendants notified the Court that Lead Plaintiff and the Individual Defendants had agreed in principle to resolve all issues and claims involved in this Action. ECF 112.

7

### C.    The Proposed Settlement

#### 1.    Relief to Settlement Class Members and Release of Claims

Lead Plaintiff and the Individual Defendants agreed to settle the Action for an all-cash payment of $4,850,000, as described more fully in the Stipulation, in return for which all claims that have been, or could have been, asserted in the Operative Complaint against the Individual Defendants and Released Persons will be dismissed, barred, and released. The Settlement Amount will be deposited into an escrow account overseen by Lead Counsel within 30 calendar days after the Court's entry of an order preliminarily approving the Settlement.

In the event the Settlement is terminated, or fails to become effective, any portion of the Settlement Amount previously paid into the Escrow Account, together with any earnings thereon, less any Taxes paid or due, less Notice and Administration Expenses actually incurred and paid or payable from the Settlement Amount, shall be returned to the Individual Defendants within fifteen (15) business days after written notification of such event in accordance with instructions provided by the Individual Defendants' Counsel to Lead Counsel, along with a detailed accounting of any Taxes and Notice and Administration Expenses paid.

#### 2.    Settlement Class Notice and Settlement Administration

Lead Plaintiff has proposed that Strategic Claims Services (the "Claims Administrator"), a nationally-recognized class action settlement administrator, be retained, subject to the Court's approval. Strategic Claims Services was chosen after provision of a competitive bid, and because it is well known and highly experienced in the administration of securities fraud class action settlements. Accordingly, Lead Plaintiff respectfully requests that the Court approve his selection.

Notice to the Settlement Class and the cost of settlement administration will be funded by the Settlement Fund. Administration expenses are not to exceed $100,000 without further order of the Court and notice upon the Individual Defendants. Lead Counsel, through the Claims

8

Administrator, will supervise and administer the notice procedure as well as the processing of claims, as set forth below:

(a)    Not later than fifteen (15) business days after the entry of an order granting preliminary approval (the "Notice Date"), the Claims Administrator shall cause a copy of the Postcard Notice, substantially in the same form as Ex. A-3 annexed to the Stipulation, to be e-mailed (or sent by first-class mail where no e-mail address is available) to all Settlement Class Members who can be identified with reasonable effort, and shall cause the Notice and Proof of Claim, substantially in the same form as Exs. A-1 and A-2 annexed to the Stipulation, to be posted on the Settlement website at www.strategicclaims.net/apph/, from which copies of the documents can be downloaded;

(b)    Not later than ten (10) calendar days after the Notice Date, the Claims Administrator shall cause a copy of the Summary Notice, substantially in the same form as Ex. A-4 annexed to the Stipulation, to be published in *Investor's Business Daily*, and be transmitted over *PR Newswire*, or a similar widely-circulated national wire service;

(c)    At least seven (7) calendar days before the Settlement Hearing, Lead Counsel shall cause to be served on the Individual Defendants' counsel and file with the Court proof, by affidavit or declaration, of such mailing and publication.

Furthermore, the Claims Administrator shall use reasonable efforts to give notice to nominee purchasers such as brokerage firms and other persons and entities that purchased or acquired AppHarvest securities during the Settlement Class Period as record owners but not as beneficial owners, as more fully described in the Notice. *See* Stipulation Ex. A-1, at ¶56.

3.    **Papers in Support of the Settlement, Plan of Allocation, and an Award of Lead Counsel's Fees and Expenses**

All papers in support of the Settlement, Plan of Allocation, and Lead Counsel's request for an award of attorneys' fees and expenses shall be filed with the Court and served on or before

9

thirty-five (35) calendar days prior to the date set herein for the Settlement Hearing. If reply papers are necessary, they are to be filed with the Court and served no later than seven (7) calendar days prior to the Settlement Hearing.

### 4.    Objections

The Notice provides Settlement Class Members with instructions on how to object to the Settlement or any of its terms, the proposed Plan of Allocation, or the Fee and Expense Application. Any objection must be filed with the Court, and copies sent to Lead Counsel for the Settlement Class and Counsel for the Individual Defendants such that they are received, no later than twenty-one (21) days prior to the Settlement Hearing. Objections must be in writing and must (a) clearly identify the case name and number *"In re AppHarvest Inc., Securities Litigation*, Case No. 1:21-cv-7985-LJL (S.D.N.Y),"* and (b) be filed with the Court either by mailing or hand-delivering them to the Ruby J. Krajick, Clerk of Court, United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007. Any objection must also include: (i) the full name, mailing address, telephone number, and e-mail address of the person or entity objecting; (ii) contain a statement of the objection and all grounds supporting it, including any legal and evidentiary support (including witnesses) the Settlement Class Member wishes to bring to the Court's attention; and (iii) documentation identifying the number of publicly traded AppHarvest common shares or warrants the person or entity purchased, acquired, and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase, acquisition, and sale. Unless otherwise ordered by the Court, any Settlement Class Member who does not object in the manner described in the Notice will be deemed to have waived any objection and will be forever foreclosed from making any objection to the proposed Settlement, the Plan of Allocation, or Lead Counsel's Fee and Expense Application.

### 5.     Opt-Outs

Any Settlement Class Member wishing to be excluded from the Settlement Class must sign a letter requesting to be excluded from the Settlement Class. Each request for exclusion must also: (i) state the name, mailing address, telephone number, and e-mail address of the person or entity requesting exclusion; (ii) state the number of publicly traded AppHarvest common shares or warrants purchased, acquired, and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase, acquisition, and sale; and (iii) be signed by the person or entity requesting exclusion or an authorized representative. A request for exclusion must be post-marked if by mail, or e-mailed, no later than twenty-one (21) days prior to the Settlement Hearing.

### 6.     Termination of Settlement

The Stipulation provides that the Individual Defendants and Lead Plaintiff shall have the right to terminate the Settlement and the Stipulation by providing written notice of their election to do so ("Termination Notice"), through counsel within fourteen (14) calendar days of: (i) the Court's Final refusal to enter the Preliminary Approval Order in any material respect; (ii) the Court's Final refusal to approve the Stipulation or any material part of it; (iii) the Court's Final refusal to enter the Judgment in any material respect; or (iv) the date upon which the Judgment is modified or reversed in any material respect by a Final order of the Court, the United States Court of Appeals, or the Supreme Court of the United States.

Additionally, the Individual Defendants shall also have the right to terminate the Settlement in the event the Opt-Out Threshold has been reached. The Threshold amount is set forth in the Supplemental Agreement, which the Parties agreed will remain confidential. In the event that the Settlement is not approved by the Court, or does not become final due to any appeals or Individual Defendants' withdrawal from the Settlement, the parties will return to their respective positions prior to the Settlement and the litigation will proceed apace.

11

**ARGUMENT**

**A.      The Proposed Settlement Warrants Preliminary Approval**

**1.      Standards For Preliminary Approval of Class Action Settlements**

Rule 23(e) requires judicial approval of any class-wide settlement. Fed. R. Civ. P. 23(e). Public policy strongly favors settlement, "particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015) ("[T]here is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."). A court's review of a proposed class action settlement is "a two-step process[.]" *Mayhew v. KAS Direct, LLC*, 2018 WL 3122059, at *7 (S.D.N.Y. Jun. 26, 2018). First, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice to the class, Fed. R. Civ. P. 23(e)(1); and second, after notice has been provided and a hearing has been held, the court determines whether to grant final approval of the settlement, Fed R. Civ. P. 23(e)(2).

Rule 23(e) specifies that the crux of a court's preliminary approval evaluation is whether notice should issue given the likelihood that the court will be able to find the settlement to be fair, reasonable, and adequate, at final approval. Fed. R. Civ. P. 23(e)(1)(B); *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 2018 WL 3475465, at *1 (S.D.N.Y. Jul. 19, 2018) ("This analysis is "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.""). Final approval requires consideration of the following factors:

A.    Whether the proposed class representatives and class counsel adequately represented the class;

B.    Whether the proposed settlement was negotiated at arm's length;

C.    Whether the relief provided for the class is adequate, taking into account:

      i.        the costs, risks, and delay of trial and appeal;

      ii.        the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      iii.        the terms of any proposed award of attorneys' fees, including timing of payment; and

      iv.        any agreement required to be identified under Rule 23(e)(3); and

      D.        Does the proposal treat class members equitable relative to each other.

Fed R. Civ. P. 23(e)(2).

In assessing these factors at the final approval stage, the Court may also consider the Second Circuit's longstanding approval factors, many of which overlap with the Rule 23 factors. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (listing factors); *see also* Fed. R. Civ. P. 23(e)(2) Advisory Committee Note to 2018 Amendments (amendments are not intended to "displace" factors previously adopted by the Courts of Appeals). *Grinnell* instructs a district court to consider "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[5] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *3 (S.D.N.Y. Dec. 9, 2021) (Liman, J.).

The Court's evaluation of a motion for preliminary settlement approval should consider the "negotiating process leading up to the settlement, i.e., procedural fairness," contemplated by

---

[5] The second *Grinnell* factor is only reviewable after preliminary approval is granted and Settlement Class members have opportunity to react to the Settlement.

Rules 23(e)(2)(A) through (B), "as well as the settlement's substantive terms, i.e., substantive fairness" enumerated in Rules 23(e)(2)(C) through (D). *In re Platinum & Palladium Commod. Litig.*, 2014 WL 3500655, at *11 (S.D.N.Y. Jul. 15, 2014). Every applicable Rule 23(e)(2) factor and *Grinnell* is satisfied here and supports granting preliminary approval.

**2.    Rule 23(e)(2)(A): Whether Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class**

Lead Plaintiff's hard-fought litigation efforts have adequately represented the Settlement Class. Lead Plaintiff demonstrated his adequacy by moving for appointment as Lead Plaintiff so that he could seek to maximize the Settlement Class's recovery. *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *2 (S.D.N.Y. July 21, 2020) (lead plaintiff adequately represented settlement class because "[w]here plaintiffs and class members share the common goal of maximizing recovery, there is no conflict"). Lead Plaintiff also adequately represented the class by selecting qualified counsel. *See Chin v. RCN Corp.*, 2010 WL 3958794, at *3 (S.D.N.Y. Sept. 8, 2010) (class settlement "procedurally fair" where plaintiff selected "experienced and capable" counsel). Here, Lead Plaintiff is represented by Levi & Korsinsky, an experienced firm skilled in securities litigation with a long and successful track record in such cases. Lead Counsel believes that the Settlement is an excellent result for the Settlement Class given the attendant risks in the ongoing litigation and recommends that the Settlement be preliminarily approved. *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts give "great weight … to the recommendations of counsel," when deciding whether to approve a settlement).

Lead Counsel also adequately represented the Settlement Class by, *inter alia*, thoroughly investigating the allegations in the Operative Complaint for nearly two years before reaching the Settlement. This investigation included, among other things, an extensive review and analysis of all public filings and other available information, as well as hiring an investigator who identified confidential witnesses. Lead Counsel interviewed witnesses, prepared two detailed complaints,

14

considered and responded to Defendants' motions to dismiss, prepared detailed submissions in connection with the Parties' mediation, considered and responded to Individual Defendants' arguments and submissions at mediation, consulted with damages and market efficiency experts, and retained sophisticated bankruptcy counsel. Accordingly, Lead Counsel were well-informed about the strengths and weaknesses of the Action, enabling them to appropriately consider the terms of the Settlement, the risks associated with continued litigation, and ultimately, the Settlement's fairness, reasonableness, and adequacy. *See, e.g., Christine Asia Co. v. Jack Yun Ma*, 2019 WL 5257534, at \*11 (S.D.N.Y. Oct. 16, 2019) ("counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement"); *see also, In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at \*4 (S.D.N.Y. May 13, 2011) (although no "formal discovery" occurred, counsel's investigation permitted fair assessment of settlement).

### 3.    Rule 23(e)(2)(B): Whether the Proposed Settlement Was Negotiated at Arm's Length

A strong presumption of fairness attaches where a settlement is "reached by experienced counsel after arm's-length negotiations." *In re Advanced Battery Techs. Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014). The Settlement is entitled to this presumption because it was achieved after arm's-length negotiations by well-informed and experienced counsel on both sides.[6] Moreover, the Settlement was facilitated by a highly experienced mediator who reviewed detailed submissions that briefed a full spectrum of issues including the Action's merits, causation, damages, and collectability. *Palacio v. E\*Trade Fin. Corp.*, 2012 WL 1058409, at \*1 (S.D.N.Y. Mar. 12, 2012) ("The assistance of an experienced class action mediator…reinforces that the Settlement Agreements are non-collusive."); *Rosi*, 2021 WL 5847420, at \*4 ("The

---

[6] Defendants were represented by Cooley LLP, whose attorneys are highly experienced in defending securities class action litigation.

parties…reached a settlement only after participating in an all-day mediation session before a well-regarded and experienced mediator"). The procedurally fair manner in which this Settlement was reached strongly favors granting preliminary approval.

4.    **Rule 23(e)(2)(C) and *Grinnell* Factors 1 and 3 Through 9: Whether the Relief Provided to the Settlement Class Is Adequate**

In deciding whether a proposed settlement is adequate there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Wal-Mart*, 396 F.3d at 119. When reviewing a settlement's reasonableness, "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. Jul. 27, 2007). Rule 23(e)(2)(C) tasks courts to consider whether "the relief provided for the class is adequate[,]" taking into account four factors. The Settlement satisfies each factor.

a.    ***Rule 23(e)(2)(C)(i): Costs, Risks, and Delay of Trial and Appeal***

***First***, there is no question that continued class action litigation is costly, risky, and lengthy. Securities class actions are "a breed of litigation that courts have recognized as notably difficult and notoriously uncertain." *Pa. Pub. Sch. Emples.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 24 (S.D.N.Y. 2016); *see also Advanced Battery*, 298 F.R.D. at 177 ("[s]ecurities class actions present hurdles to proving liability that are particularly difficult").

Indeed, the Court's Opinion and Order concerning the motion to dismiss proves the difficulty of securities class action litigation as only two alleged misstatements survived, and no claims survived against Defendants Webb or Eggleton. ECF 97. Even with this partial denial of the motion to dismiss, Lead Plaintiff and his counsel recognized that there were many factors that rendered the outcome of continued litigation uncertain. If the Action had continued, Lead

16

Plaintiff faced risks to proving both Defendant Lee's liability and the Settlement Class's full amount of damages. Indeed, Lead Plaintiff still had to achieve class certification, complete complex fact and expert discovery, withstand summary judgment and pre-trial motions, prepare for and obtain a jury verdict, litigate post-trial motions, and withstand lengthy appeals. These hurdles are no small task and would take years. *See Signet Jewelers*, 2020 WL 4196468, at *5 ("Achieving a litigated verdict would have required substantial additional time and expense.").

Moreover, the Defendant Lee emphatically denies Lead Plaintiff's claims, including whether the alleged misstatements were materially misleading, and whether he acted with the requisite scienter. For instance, in their motion to dismiss the Defendants challenged falsity by arguing that the surviving misstatements only "concerned the Company's ability to ***recruit*** and ***hire*** employees during a global pandemic." ECF 97 at 76. Although the Court found that the Operative Complaint's allegations could be construed as "more general" and that Defendant Lee plausibly misstated "how COVID-19 impacted the Company's operations, including its ability to ***staff*** its facility," *id.* at 77, discovery could have disproved the inferences that the Court drew in Lead Plaintiff's favor at the pleadings stage. Counsel for Defendants would undoubtedly challenge the credibility of the Confidential Witnesses cited in the Operative Complaint at deposition, and there was no guarantee that any other witnesses would testify favorably for Plaintiff. Moreover, if litigation continued, Defendant Lee was certain to testify that he did not make the surviving misstatements with an intention to deceive or conceal information, and there can be no assurance Lead Plaintiff could prove the misstatements were made with the requisite scienter. *See, e.g., Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y.2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Risks like these militate in favor of settlement, because "it is difficult to predict" how juries

17

will decide difficult issues like scienter and damages in complex securities class actions. *In re Veeco Instruments Sec. Litig.*, 2007 WL 4115809, at \*9 (S.D.N.Y. Nov. 7, 2007).

***Second***, while Lead Plaintiff is confident in his merits' arguments, success is never guaranteed. Moreover, in this case in particular, Lead Plaintiff cannot be certain that even success on the merits would have obtained a better result for the Settlement Class than the Settlement given the significant risks Lead Plaintiff faced in collecting a future settlement with or a judgment against Defendant Lee.[7] As a result of the Bankruptcy, any recovery against AppHarvest has been foreclosed. If Lead Plaintiff and Defendant Lee continued with discovery, class certification, expert discovery, summary judgment briefing, trial, and appeals (all of which pose significant risk), Defendant Lee would have likely exhausted significant amounts (if not all) of the applicable insurance coverage—assuming coverage was not disclaimed. *C.f., In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 507 (W.D. Pa. 2003) ("because of the nature of the Class's claims (*i.e.*, securities violations involving alleged intentional fraud) the insurer had a potentially viable argument for excluding coverage."). Even if the case settled before trial, there was no guarantee that sufficient insurance coverage would remain to collect a larger recovery.

At class certification, summary judgment, and trial, Defendant Lee would have undoubtedly argued that the alleged misstatements were not the cause of Lead Plaintiff's losses, and that Settlement Class Members suffered no damages. Loss causation and damages analyses typically require complex economic and statistical assessments by experts, at summary judgment, in pre-trial motions, and at trial, providing multiple opportunities for Lee to establish that the price declines of AppHarvest's common stock and warrants were caused by factors unrelated to the alleged fraud and no damages had occurred. Even on the best facts, loss causation and damages

---

[7] When the Settlement was reached, the question of whether (and when) Lead Plaintiff could ever revive claims against Defendants Webb and Eggleton was highly speculative and uncertain.

issues are often an unpredictable and expensive "battle of the experts." *Signet Jewelers*, 2020 WL 4196468 at *11.

The facts of this Action injected additional risks to proving causation and damages. For example, although Defendant Lee was not entitled to dismissal, the Court observed in its decision on the motion to dismiss that "it is unclear exactly what impact staffing issues had on the Company's ability to meet its financial projections." ECF 97 at 77. In later proceedings, Defendant Lee was certain to argue the specific facts revealed on August 11, 2021, did not "correct" his statements made on May 25, 2021, and that none of the information in the alleged corrective disclosures connected the disappointing results and guidance that were reported to COVID-19, recruiting, or staffing. If Defendant Lee was successful, Plaintiff will have to parse out the fraud-related portion of the stock and warrant price drops, which could have diminished or eliminated recoverable damages entirely.

***Third***, the Settlement provides an immediate cash recovery of ***$4,850,000***. This favorable result is well-within reasonableness to warrant preliminary approval. Lead Plaintiff's damages expert estimates that if the Court had sustained the Operative Complaint in full (which it did not), and Lead Plaintiff fully prevailed on his alleged claims at both summary judgment and trial, and if the Court and jury accepted Lead Plaintiff's damages theory (including proof of loss causation, which would be hotly contested) over the entire Settlement Class Period from February 1, 2021 through August 10, 2021, Lead Plaintiff's ***best case scenario***—the maximum aggregate, theoretical damages—would be approximately $104 million in damages for AppHarvest common stock, and approximately $8 million in damages for AppHarvest warrants, for a combined total of approximately $112 million in damages. Potrepka Decl. at ¶10. Under Lead Plaintiff's estimated best-case scenario, assuming a 100% claims take rate and no disaggregation of confounding information, the Settlement represents approximately a 4.3% recovery, which is well within the

zone of reasonableness for a complex securities class action like this one. *See* Potrepka Decl. Ex. 3, Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements 2022 Review and Analysis, Cornerstone Research, at Figure 5 (median 2022 settlements in the $75-$149 million range is 4.4%); *In re N. Dynasty Minerals Ltd. Sec. Litig.*, 2024 WL 308242, at *13 (E.D.N.Y. Jan. 26, 2024) (finding a settlement amount of 2.3% of the maximum estimated aggregate damages within the reasonable range).

However, a full damages recovery was counterfactual and implausible given that the sole remaining alleged misstatements were made on May 25, 2021. Lead Plaintiff's damages expert estimated that for purchases made between May 26, 2021 and August, 10, 2021, inclusive, aggregate damages were approximately $33 million for AppHarvest common stock and $3 million for AppHarvest warrants, for a combined total of approximately $36 million in damages. Potrepka Decl. at ¶11. Accordingly, when accounting for the Court's orders in the Action, the Settlement represents an excellent 13.4% recovery. *See* Potrepka Decl. Ex. 3, Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements 2022 Review and Analysis, Cornerstone Research, at Figure 5 (median 2022 settlements in the less than $25 million range is 11.1%); *Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, *6 (S.D.N.Y. Sept. 29, 2022) (settlement over 13% was "well within the range of reasonableness and, in fact, considerably above the high end of historical averages") (citing cases).

*** 

 In sum, the uncertainties of continued litigation and collectability issues (especially given the Bankruptcy) posed a considerable risk that the Settlement Class would receive smaller recovery or no recovery at all. While the Settlement of $4,850,000 would be a good recovery in any securities class action, because it provides immediacy and certainty of recovery while eliminating all risks and costs of continued litigation, it is particularly outstanding here.

20

### b.      *Rule 23(e)(2)(C)(ii): Effectiveness of the Proposed Method of Distributing Relief to the Settlement Class*

Rule 23(e)(2)(C)(ii) requires consideration of the effectiveness of the method of distributing relief to the class. The Settlement, like most securities class action settlements, will be distributed with the assistance of an established and experienced claims administrator, Strategic Claims Services. *See, e.g., Balestra v. ATBCOIN LLC*, 2022 WL 950953, at *6 (S.D.N.Y. Mar. 29, 2022) ("Strategic Claims is accustomed to being approved by courts in this Circuit and District to provide notice of the settlement and claim processing services."); *Guyer v. MGT Cap. Invs., Inc.*, 2019 WL 8403029, at *2 (S.D.N.Y. Dec. 17, 2019) (approving the appointment of Strategic Claims as the claims administrator); *In re Altair Nanotechnologies Sec. Litig.*, 2016 WL 7647043, at *1 (S.D.N.Y. Jan. 22, 2016) (same); *Rosi*, 2021 WL 5847420, at *6 (same).

Strategic Claims Services will employ a well-established securities class action distribution process. Namely, a potential Settlement Class Member will submit, either by mail or online using the Claims Administrator's website, the Court-approved Claim Form that provides simple instructions to claimants concerning the necessary information they must present to process their claims and the deadlines by which they must do so. Based on the trade information provided by claimants, the Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss, as defined in the Plan of Allocation included in the Notice, or in such other plan of allocation as the Court may approve. *See* Potrepka Decl. Ex. 1, Stipulation at ¶25. After the Settlement reaches its Effective Date (Stipulation at ¶27) and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants. Potrepka Decl. Ex. 1, Stipulation at ¶28. If there are un-claimed funds after the initial distribution, the Claims

Administrator will conduct further distributions until it is no longer feasible and economical to do so. Any balance that still remains in the Net Settlement Fund after re-distribution(s), if any, shall be contributed to the Investor Protection Trust, or other entity the Court approves under the *cy pres* doctrine. *Id.*

   c.  ***Rule 23(e)(2)(C)(iii): Terms of the Proposed Attorneys' Fees, Including Timing of Payment***

As set forth in the Notice, Lead Counsel intends to seek an award of attorney's fees pursuant to the common fund doctrine of no more than 25% of the Settlement Fund and out-of-pocket expenses not to exceed $250,000.00. A fee of up to 25% is well within the range of attorneys' fee awards granted in comparable securities class actions, if not comparably lower. *See, e.g.*, *In re JPMorgan Chase & Co. Sec. Litig.*, 2016 WL 11590485, at *2 (S.D.N.Y. May 10, 2016) (granting fee of 25% of $150 million settlement); *Rosi*, 2021 WL 5847420, at *8 (finding 30% is a "common fee award in similar actions in the Second Circuit."); *In re Electrobras Sec. Litig.*, Case No. 15-cv-5754-JGK, Dkt. No. 142 (S.D.N.Y. 2018) (awarding 25% of settlement fund); *see also City of Providence*, 2014 WL 1883494, at *10 (awarding 33% of $15 million settlement); *In re Giant Interactive Group, Inc. Securities Litigation*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) (awarding 33% of $13 million settlement); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367-68 (S.D.N.Y. 2002) (awarding 33-1/3% of $11.5 million settlement). Further, the Court will decide the reasonableness of Lead Counsel's forthcoming fee and expense application after Settlement Class Members have opportunity to object.

   d.  ***Rule 23(e)(2)(C)(iv): Any Agreement Required to Be Identified Under Rule 23(e)(3)***

In connection with the Settlement, the parties entered a Supplemental Agreement setting forth conditions under which the Individual Defendants shall have the sole option to terminate the Settlement and render the Stipulation null and void. This option rests on the event that requests for

22

exclusion from the Settlement Class exceed certain agreed-upon terms. This Supplemental Agreement shall remain confidential and not filed with the Court unless a dispute of the terms arises or disclosure is ordered by the Court. The confidentiality of the Supplemental Agreement is a standard practice in securities litigation to reduce the possibility of groups being incentivized to collectively opt-out in hopes of leveraging an individual settlement. *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016) ("The opt-out threshold 'is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.'"). The Supplemental Agreement and the Stipulation are the only agreements concerning the Settlement entered into by the parties.

### 5.    Rule 23(e)(2)(D): Whether the Proposal Treats Settlement Class Members Equitably Relative to Each Other

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable and adequate. *Giant Interactive*, 279 F.R.D. at 163. "Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable." *Signet Jewelers*, 2020 WL 4196468, at \*13; *In re Telik Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) (similar). Plans of allocation, however, need not be tailored to fit each and every class member with "mathematical precision." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Giant Interactive*, 279 F.R.D. at 163 ("a plan of allocation need not be perfect"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 430 (S.D.N.Y. 2007) ("Exactitude is not required in allocating consideration to the class, provided that the overall result is fair, reasonable and adequate."). Moreover, in assessing a proposed plan of allocation, courts give great weight to the opinion of informed counsel. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*21 (S.D.N.Y. Nov. 8, 2010) (the conclusion of "experienced and competent counsel . . . that the Plan of Allocation is fair and reasonable is . . . entitled to great weight"); *In re EVCI Career Colls.*

23

*Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.").

Lead Plaintiff proposes a plan for allocating the net proceeds of the Settlement among members of the Settlement Class who timely and validly submit Claim Forms to the Claims Administrator in connection with this Settlement, in accordance with the requirements established by the Court, and which is described in the proposed Notice. *See* Stipulation Ex. A-1 at 26. Lead Counsel prepared the proposed Plan of Allocation (the "Plan"), which is set forth in the Notice under the title "Plan of Allocation of Net Settlement Fund," in consultation with Lead Plaintiff's financial and damages experts. Under the Plan, a Recognized Loss amount will be calculated for Settlement Class Members' transactions in publicly traded AppHarvest common stock and warrants during the Settlement Class Period based principally on the differences in the estimated amounts of artificial inflation in these securities on the date of purchase and the date of sale. *Id.* Based on Lead Plaintiff's expert's calculations, the Plan utilizes the "constant dollar" method and estimates that the alleged artificial inflation in the price of AppHarvest common stock and warrants during the Settlement Class Period is $3.34 per share and $1.68 per warrant, respectively. *See Sjunde AP-Fonden v. General Elec. Co.*, 2023 WL 6314939, at *16 (S.D.N.Y. Sep. 28, 2023) ("courts commonly accept the constant-dollar inflation method").

The Plan also takes into account the Court's dismissal of certain claims asserted by the Settlement Class relating to statements made prior to May 25, 2021. Accordingly, Recognized Loss calculations for purchases of publicly traded AppHarvest common stock and warrants will be multiplied by 10% (i.e., discounting by 90%) to reflect the substantially lower likelihood of success on the dismissed claims, which would be viable only if the Court's dismissal was reversed on appeal, and such claims would then face the additional risk of proof due to passage of time. *See*

24

*In re American Bank Note Holographics Inc.,* 127 F. Supp. 2d 418, 429 (S.D.N.Y. 2001) ("Allocation formulas, including certain discounts for certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim."); Potrepka Decl. Ex. 4 at Bates Nos. APPH 0005, 0022, and 0026 (*In re Lehman Brothers Sec. & ERISA Litig.*, Case No. 1:08-cv-05523-LAK-GWG, Dkt. No. 551 (S.D.N.Y Mar. 11, 2014) (proposed plan of allocation discounting settlement class members' dismissed claims by 90%)); Potrepka Decl. Ex. 5 (*In re Lehman Brothers Sec. & ERISA Litig.*, Case No. 1:08-cv-05523-LAK-GWG, Dkt. No. 570 (S.D.N.Y Apr. 16, 2014) (order approving plan of allocation discounting settlement class members' dismissed claims by 90%)); Potrepka Decl. Ex. 6 at Bates Nos. APPH 0004-0005 (*Moshell v. Sasol Ltd.*, Case No. 1:20-cv-01008-JPC, Dkt. No. 220 (S.D.N.Y. Sept. 26, 2022) (transcript of settlement hearing in securities class action, approving formulas proposed by counsel for distributing settlement fund among settlement class based on the timing of class members' purchases of securities which affected the strengths and weaknesses of their claims)).

Each Claimant's Recognized Loss amount will be compared to their overall Market Loss or Market Gain (the sum of all expenditures made in connection with purchases of AppHarvest securities during the Settlement Class Period less any sales proceeds and a "holding value" ascribed to securities retained as of close of trading on August 10, 2021) to determine whether the Claimant benefitted from transactions during the Settlement Class Period when the price of AppHarvest securities were inflated.[8] *See Gruber v. Gilbertson*, 2022 U.S. Dist. LEXIS 108611, *37 (S.D.N.Y. June 17, 2022) (approving comparison or recognized claim amounts to market gain or loss). An Authorized Claimant's distribution under the Plan will be their *pro rata* share of the

---

[8] If a Claimant had a Market Gain with respect to their overall transactions in AppHarvest Securities during the Settlement Class Period, the value of the Claimant's Recognized Loss will be set to zero. If a Claimant suffered an overall Market Loss with respect to their overall transactions in AppHarvest Securities during the Settlement Class Period, but that Market Loss was less than the Claimant's Recognized Loss, then the Claimant's Recognized Loss will be limited to the amount of the Market Loss.

Net Settlement Fund based on their Recognized loss compared to the aggregate Recognized Losses of all Authorized Claimants. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("*Pro-rata* distribution of settlement funds based on investment loss is clearly a reasonable approach."). Pursuant to the Plan, no distribution will be made to a Claimant with a Distribution Amount of less than $10.00. *Id.* at 463 ("Securities Lead Counsel acted reasonably in including a $10 *de minimis* threshold in the allocation plan").

Lead Counsel believes that the Plan provides a fair and reasonable method to equitably distribute the settlement proceeds among eligible Settlement Class Members. Indeed, the objective of the proposed Plan is to equitably distribute the net Settlement proceeds to those members of the Settlement Class who suffered economic losses as a result of the alleged misrepresentations asserted in the Action. Moreover, if preliminary approval is granted Settlement Class Members will have opportunity to voice their opinion (if any) regarding the Plan. Accordingly, this factor supports granting preliminary approval.

### B.     The Proposed Settlement Class Should Be Certified For Settlement Purposes[9]

#### 1.     Legal Standards Concerning Class Certification

Lead Plaintiff further respectfully requests the Court certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class to which the Parties have stipulated consists of:

> …all persons and entities that purchased or otherwise acquired securities of AppHarvest, Inc., during the period from February 1, 2021 and August 10, 2021, inclusive, and were injured thereby. Excluded from the Class are: (1) the Individual Defendants; (2) the Individual Defendants' immediate family members; (3) any firm, trust, corporation, or other entity in which a defendant has or had a controlling interest; and (4) the legal representatives, affiliates, heirs, successors in interest, or assigns of any such excluded person or entity. Also excluded from the Settlement

---

[9] The Individual Defendants have agreed not to contest that the Settlement Class satisfies all requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3), such that this Action is properly maintained as a class action. Potrepka Decl. Ex. 1, Stipulation at ¶3.

Class will be any Person who or which timely and validly seeks exclusion from the Settlement Class.

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 243 (2d Cir. 2012); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Before granting preliminary approval of a class action settlement, the Court should determine that the proposed Settlement Class is a proper class for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation* (Fourth) § 21.632. To certify a class, the Court must determine whether four threshold requirements of Federal Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3). *Id.* at 614. In certifying the Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Here, the proposed Settlement Class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

## 2. The Settlement Class Satisfies the Requirements of Rule 23(a)

*Numerosity*:  A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Joinder is generally presumed to be impracticable when a putative class exceeds 40 members." *In re Advanced Battery Techs., Inc. Sec. Litig.,* 298 F.R.D. 171, 181 (S.D.N.Y. 2014) (citing *Marisol A. v. Guiliani*, 126 F.3d 372 (2d Cir. 1997)). Impracticable does not mean impossible, but only that the difficulty or inconvenience of joining all members of the class makes use of the class action mechanism appropriate. *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). For "securities fraud class actions" numerosity is shown by evidence "that a large number of shares were outstanding and traded during the relevant period." *In Re Facebook, Inc., IPO Sec. &*

27

*Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015); *see also, Rosi*, 2021 WL 5847420, at *2 (finding 41.2 million shares of common stock outstanding and average daily trading volume in the United States of 516,759 shares during the Settlement Class Period satisfied numerosity).

Here, numerosity is met because the Settlement Class are likely to number in the hundreds or thousands. With more than 100 million shares of AppHarvest common stock outstanding at the end of the Settlement Class Period and an average daily trading volume in the U.S. of 1.6 million shares during the settlement Class Period, individual joinder is impracticable and the numerosity requirement is satisfied.

***Commonality***:  The proposed Settlement Class also meets the commonality requirement of Rule 23(a). Under Fed. R. Civ. P. 23(a)(2), "questions of law or fact" must be "common to the class," but not every issue must be identical for every class member, it is enough that there is "some unifying thread[.]" *In re Vivendi Univ., S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007). Commonality is "applied permissively by courts in the context of securities fraud litigation, and minor variations in the class members' positions will not suffice to defeat certification." *In re Facebook, Inc.*, 312 F.R.D. at 341 (collecting cases).

Lead Plaintiff's claims assert questions of law and fact common to all Settlement Class Members' claims, including whether: (i) Defendants' statements were materially false; (ii) Defendants had the requisite state of mind; (iii) AppHarvest's stock price was artificially inflated; and, (iii) Class Members suffered economic harm. *See Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) (common questions where "the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public"); *In re Parmalat Sec. Litig.*, 2008 WL 3895539, at *4 (S.D.N.Y. Aug. 21, 2008) (commonality requirement is "applied permissively").

*Typicality*: Plaintiff also meets Rule 23(a)'s typicality requirement. A plaintiff's claim is typical if it arises from "the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Lead Plaintiff asserts the same legal theories and would offer the same proof as any other Settlement Class Member. There are no facts concerning Lead Plaintiff that render him atypical as compared to other Settlement Class Members. Thus, Defendants' alleged misconduct similarly affected Lead Plaintiff and all other Settlement Class Members which satisfies the typicality requirement. *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp.*, 2016 WL 7409840, at *4 (S.D.N.Y. Nov. 4, 2016).

*Adequacy*: Under Rule 23(a)(4), the parties representing the class must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy prerequisite considers whether "(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *New Jersey Carpenters Health Fund*, 2016 WL 7409840, at *5.

First, Lead Plaintiff's purchases of AppHarvest securities during the Settlement Class Period and the losses he suffered as a result of Defendants' alleged misconduct, makes his interests directly aligned with—rather than "antagonistic" to—the interests of other Settlement Class Members. Second, there are no conflicts between the Lead Plaintiff and the Settlement Class. Third, Lead Plaintiff's Counsel is experienced and capable, having served as lead or co-lead counsel in numerous securities class actions and obtaining substantial recoveries.  *See* Potrepka Decl. Ex. 7. As their actions in this case and others demonstrate, Lead Plaintiff's chosen counsel have committed, and are willing to commit considerable resources to prosecuting the Action, and have vigorously represented the Settlement Class's interests in the Actions to date.

### 3.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

The proposed Settlement Class also satisfies Rule 23(b)(3) because common questions "predominate over any questions affecting only individual members," and a class action is "superior" to any other method of litigation. Fed. R. Civ. P. 23(b)(3).[10] "Predominance…is [a test] readily met in certain cases alleging…securities fraud," and that is no different here. *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 86 (S.D.N.Y. 2007); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). As discussed above, common questions of law and fact—such as whether Defendants made materially false and misleading statements that artificially inflated AppHarvest's stock price—abound. *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 457 (S.D.N.Y. 2013) (whether statements were materially misleading is "subject to generalized proof, and thus applicable to the class as a whole").

Further, a class action is superior to any alternative method for resolving these claims. *See* Fed. R. Civ. P. 23(b)(3). Here, the complex nature of securities class actions, and the high costs associated with individualized actions make it doubtful that most Settlement Class Members would be able to obtain relief without class status. *See, e.g.*, *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009) ("class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" gives "limited interest in individually controlling the prosecution or defense of separate actions"). Further, Settlement Class Members who desire to pursue individualized actions have the option to opt-out of the Settlement.

---

[10] Rule 23(b)(3)(D) considers "whether trial would present intractable management problems." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593, (1997). However, "Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *Id.* As this is a settlement in lieu of trial, the Rule 23(b)(3)(D) inquiry is not required. *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *2 (S.D.N.Y. Aug. 6, 2010).

In sum, the proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3), and the Court should certify the Settlement Class for the purposes of settlement only.

### 4. The Court Should Appoint Lead Counsel as Counsel for the Settlement Class

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). Rule 23(g) states that the adequacy of Plaintiff's counsel is determined by four factors: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel has extensive experience and a stellar reputation in class actions and securities litigation. *See* Potrepka Decl. Ex. 7. Lead Counsel has invested considerable time and resources to adequately litigate this Action on behalf of the Settlement Class and commits to continue to do so.

### C. The Court Should Approve The Proposed Form And Method of Settlement Class Notice

#### 1. Notice By E-Mail and Publication is Appropriate

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances," and Rule 23(e) directs "notice in a reasonable manner." Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1)(B). Neither Rule 23 nor due process requires receipt of actual notice by all Settlement Class Members; rather, notice should be delivered to the last known addresses of those who can be identified and publication used to notify others. *See Newberg* § 8.04; *Torres v. Toback, Bernstein & Reiss LLP*, 2014 WL 988480, at \*12 (E.D.N.Y. Mar. 14, 2014), *report and recommendation adopted in part, rejected in part*, No. 11-CV-1368 (NGG) (VVP), 2014 WL 1330957 (E.D.N.Y. Mar. 31, 2014) (approving mailed notice to last known addresses).

31

Here, Lead Plaintiff proposes to give interested parties notice in two ways. First, the Postcard Notice (Stipulation Ex. A-3) will be sent to Settlement Class Members' last known e-mail addresses, where available, and by first-class mail to their last known mailing addresses where no email is available. The Postcard Notice will include a direct link to the case specific Settlement website: www.strategicclaims.net/apph/. The website contains the long form of the Notice (Stipulation Ex. A-1) and the Claim Form (Stipulation Ex. A-2). Second, the Claims Administrator shall cause a copy of the Summary Notice (Stipulation Ex. A-4), to be published in *Investor's Business Daily*, a widely-circulated financial news publication and be transmitted over *PR Newswire*, or a similar national wire service. These two proposed methods for providing notice satisfy the requirements of Rule 23, the PSLRA, and due process.

Sending the Postcard Notice via e-mail or traditional mail, combined with the Summary Notice and maintenance of a Settlement website containing the Notice is the best notice practicable, typical of notice programs approved in similar class action settlements, and will provide substantial savings for the benefit of the Settlement Class compared to notice programs requiring delivery of the full Notice via USPS. *See, e.g.*, *Puddu v. 6D Global Techs. Inc.*, 2021 WL 1910656, at *3 (S.D.N.Y. May 12, 2021) (approving notice sent via e-mail or "Postcard Notice if no email address could be obtained," dissemination of summary notice via newswire, and posting long form notice (including plan of allocation) and proof of claim form on settlement website); *In re N. Dynasty Minerals Ltd. Sec. Litig.*, 2023 WL 5511513, at *14 (E.D.N.Y. Aug. 24, 2023) (same); *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *14 (E.D.N.Y. July 19, 2023) (same); *Luo v. Sogou Inc*. et al., Case No. 1:19-cv-230-LJL at Dkt. No. 102 (S.D.N.Y. Dec. 10, 2020) (Liman, J.) (approving either the mailing of the Postcard Notice or an e-mail with the Long Notice and Claim Form).

### 2.    The Proposed Notice Adequately Informs Settlement Class Members of Their Rights in This Action

The proposed Notice must contain all information required by the PSLRA and "fairly apprise" the Settlement Class Members of the Settlement's terms "and of the options that [are] open to them in connection with the proceedings." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019); *Lomeli v. Sec. & Inv. Co. Bahrain*, 546 F. App'x. 37, 41 (2d Cir. 2013). Pursuant to the PSLRA, the notice must also include an explanation of the plaintiff's recovery. *See In re Take Two Interactive Sec. Litig.*, 2010 WL 11613684, at *12–13 (S.D.N.Y. June 29, 2010) (quoting 15 U.S.C. §78u-4(a)(7)). Furthermore, the notice must inform "that the court will exclude from the class any member who requests exclusion," and "the binding effect of a class judgment [on members] under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(v)-(vii).

Lead Plaintiff's proposed Notice satisfies these standards. As specified by Rule 23(c)(3) and 15 U.S.C. §78u-4(a)(7), the Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the certified Settlement Class and who is excluded; (3) the reasons for settling; (4) the amount of the Net Settlement Fund; (5) the Settlement Class's claims and issues raised in this Action; (6) the Parties' disagreement over damages and liability; (7) the amount of attorneys' fees and expenses that Settlement Class Counsel may seek; and (8) the plan for allocating the Settlement proceeds to the Settlement Class. *See* Stipulation Ex. A-1. The Notice also describes the process for seeking exclusion from the Class, or for objecting to the Settlement, Plan of Allocation, or requests for awards of fees and expenses. *Id.*

### D.    Proposed Schedule of Events

Lead Plaintiff proposes the following schedule of events in connection with the Settlement Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| E-mailing of Postcard Notice and posting of the Proof of Claim and Release to the settlement website | No later than fifteen (15) business days after the entry of Preliminary Approval Order. Preliminary Approval Order ¶10(a) (the "Notice Date"). |
| Publication of Summary Notice | No later than ten (10) calendar days after the Notice Date. Preliminary Approval Order ¶10(b). |
| Filing deadline for requests for exclusion | Received no later than twenty-one (21) calendar days prior to the Settlement Hearing. Preliminary Approval Order ¶14. |
| Date for Lead Plaintiff to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | No later than thirty-five (35) calendar days prior to the Settlement Hearing. Preliminary Approval Order ¶21. |
| Filing deadline for objections. | No later than twenty-one (21) calendar days prior to the Settlement Hearing. Preliminary Approval Order ¶16. |
| Date for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | Seven (7) calendar days prior to the Settlement Hearing. Preliminary Approval Order ¶21. |
| Date for Claims to be submitted to the Claims Administrator | No later than twenty-one (21) calendar days before the Settlement Hearing. Preliminary Approval Order ¶12(a). |

## CONCLUSION

Wherefore, Lead Plaintiff requests that the Court: (1) preliminarily approve the proposed Settlement as set forth in the Stipulation and Agreement of Settlement dated February 20, 2024; (2) certify the proposed Settlement Class for settlement purposes only, and appoint Lead Plaintiff as class representative and Lead Plaintiff's Counsel as Settlement Class Counsel, for settlement purposes only; (3) approve the retention of Strategic Claims Services as the Claims Administrator (4) approve the proposed form, content, and method of dissemination of the Notice, Claim Form, Postcard Notice, and Summary Notice substantially in the same form as Exs. A-1, A-2, A-3, and A-4 annexed to the Stipulation, as the best notice practicable under the circumstances and complies with due process, Rule 23, and the PSLRA; and (5) set a schedule for: (i) providing notice to the

34

Settlement Class, (ii) Settlement Class members to submit a claim, object to any part of the settlement, or request exclusion therefrom; (iii) filing of Lead Plaintiff's motion for Final Approval of the Settlement and request for attorneys' fees and expenses, and (iv) the Settlement Hearing, at which the Court will consider final approval of the Settlement, as well as approval of the Plan of Allocation and Lead Counsel's request for attorneys' fees and expenses.

Dated: February 20, 2024

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/          Gregory M. Potrepka*
        Gregory M. Potrepka

Shannon L. Hopkins (SH-1887)
Gregory M. Potrepka (GP-1275)
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
shopkins@zlk.com
gpotrepka@zlk.com

*Lead Counsel for Lead Plaintiff and the Settlement Class*

35

## CERTIFICATE OF SERVICE

I, Gregory M. Potrepka, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 20th day of February, 2024.

/s/   *Gregory M. Potrepka*

Gregory M. Potrepka

36