# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re AppHarvest Securities Litigation | Case No. 1:21-cv-07985-LJL |
|---|---|

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation") is made and entered into by and between the Court-appointed Lead Plaintiff Alan Narzissenfeld, ("Lead Plaintiff"), on behalf of himself and all other members of the Settlement Class (defined below), on the one hand, and individual Defendants Jonathan Webb ("Webb"), David Lee ("Lee"), and Loren Eggleton ("Eggleton" and collectively with Webb and Lee, the "Individual Defendants") (Lead Plaintiff and the Individual Defendants collectively, the "Parties"), on the other, and embodies the terms and conditions of the settlement of the above-captioned action (the "Action").

**WHEREAS:**

### I.       THE ACTION

A.       All words or terms used herein that are capitalized shall have the meanings ascribed to those words or terms herein and in ¶1 hereof entitled "Definitions."

B.       On September 24, 2021, a purported securities class action was filed in the United States District Court for the Southern District of New York captioned *Ragan v. AppHarvest, Inc., et al.*, Case No. 1:21-cv-07985 (S.D.N.Y) (the "*Ragan* Action") on behalf of all investors who purchased or otherwise acquired AppHarvest, Inc. ("AppHarvest" or the "Company") securities between May 17, 2021 and August 10, 2021, inclusive. ECF No. 1.[1] On November 22, 2021, a similar securities class action captioned *Plymouth County Retirement Association v. AppHarvest, Inc., et al.*, Case No. 1:21-cv-09676 (S.D.N.Y.) (the "*Plymouth County* Action") was also filed in this Court seeking the same relief against the same defendants on behalf all investors who

---

[1] "ECF" herein refers to the electronic court filing docket entries filed in the underlying action, Case No. 1:21-cv-07985.

purchased or otherwise acquired AppHarvest securities between October 9, 2020 and August 10, 2021, inclusive. ECF 39 at 4.

C.      On December 13, 2021, the Court issued an Opinion and Order: (i) consolidating the *Ragan* and *Plymouth County* Actions (ii) amending the case caption of the consolidated *Ragan* and *Plymouth County* Actions to *In re AppHarvest Securities Litigation* and ordering that every subsequent filing be made under Master File No. 21-cv-7985-LJL; (iii) appointing Alan Narzissenfeld as Lead Plaintiff; and (iv) appointing Levi & Korsinsky, LLP as Lead Counsel. ECF 39.

D.      On March 2, 2022, Lead Plaintiff filed his First Consolidated Amended Class Action Complaint, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and United States Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, against Defendants, on behalf of himself and all other persons or entities other than Defendants who purchased or otherwise acquired securities of AppHarvest between February 1, 2021 and August 10, 2021, inclusive, and were damaged thereby. ECF 46. Defendants moved to dismiss the First Consolidated Amended Class Action Complaint on May 2, 2021. ECF 50-52.

E.      On June 30, 2022, Lead Plaintiff moved for leave to amend the First Consolidated Amended Class Action Complaint (Lead Plaintiff's "Motion to Amend"), and filed a memorandum in opposition to Defendants' motion to dismiss the First Consolidated Amended Class Action Complaint. ECF 57-60. On July 1, 2022, the Court took the Motion to Amend under advisement and ordered Defendants to indicate by July 5, 2022 whether they opposed the Motion to Amend. ECF 61. On July 5, 2022, Defendants filed a letter addressed to the Court indicating they opposed the Motion to Amend. ECF 62. On July 14, 2022, Defendants filed a memorandum in opposition to Lead Plaintiff's motion for leave to amend. ECF 63. On July 21, 2022, Lead Plaintiff filed a reply in support of the Motion to Amend. ECF 67-68. On July 22, 2022, the Court issued a Memorandum and Order granting Lead Plaintiff's Motion to Amend. ECF 69.

F. On July 25, 2022, Lead Plaintiff filed his Second Consolidated Amended Class Action Complaint, alleging violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, against Defendants, on behalf of himself and all other persons or entities other than Defendants who purchased or otherwise acquired securities of AppHarvest between February 1, 2021 and August 10, 2021, inclusive, and were damaged thereby. ECF 70.

G. On August 11, 2022, Lead Plaintiff filed an unopposed letter motion for leave to file a corrected Second Consolidated Amended Class Action Complaint, which is the operative complaint in the Action (the "Operative Complaint"). ECF 74. The Court granted the letter motion on August 12, 2022. ECF 75.

H. On August 12, 2022 Lead Plaintiff filed the Operative Complaint. ECF 76.

I. On September 23, 2022, Defendants moved to dismiss the Operative Complaint. ECF 79-81.

J. On November 22, 2022, Lead Plaintiff opposed Defendants' motion to dismiss the Operative Complaint and, concurrently, moved to strike certain exhibits filed by Defendants in support of their motion to dismiss. ECF 84-87.

K. On January 13, 2023, Defendants filed a reply in further support of their motion to dismiss the Operative Complaint and filed a memorandum in opposition to Lead Plaintiff's motion to strike. ECF 90-91.

L. On January 20, 2023, Lead Plaintiff filed a reply in further support of his motion to strike. ECF 92.

M. On March 22, 2023, Lead Plaintiff filed a letter regarding purported supplemental authority in further opposition to Defendants' motion to dismiss the Operative Complaint. ECF 95. Defendants filed a letter in response and in further support of their motion to dismiss the Operative complaint on March 28, 2023. ECF 96.

N. On July 23, 2023, AppHarvest filed a voluntary Chapter 11 Petition in the United States Bankruptcy Court for the Southern District of Texas.

O.      On July 31, 2023, the Court issued an opinion and order granting in part, and denying in part Defendants' motion to dismiss the Operative Complaint and denying Lead Plaintiff's motion to strike. ECF 97.

P.      On August 1, 2023, Defendants filed a Notice of Suggestion of Bankruptcy and Automatic Stay of Proceedings. ECF 98.

Q.      On August 2, 2023, the Court issued an Order directing the Parties' counsel to meet and confer and inform the Court by August 18, 2023, of the effect of the Bankruptcy on the Action. ECF 99.

R.      On August 18, 2023, the Parties jointly filed a letter advising the Court regarding the Parties' respective positions of the effect of the Bankruptcy on the Action, with Lead Plaintiff stating that the Action should not be stayed and the Individual Defendants stating that the Action should be stayed. ECF 105-06.

S.      On August 21, 2023, the Court lifted the Bankruptcy stay as to the Individual Defendants and ordered the Parties to submit a joint letter no later than September 18, 2023 on the impact of the confirmation plan, if any, on the Defendants' request to stay the Action. ECF 107.

T.      On September 15, 2023, the Parties jointly filed a letter that, *inter alia*, advised the Court that the Parties agreed to explore a resolution of the Action through private mediation and requested the Court enter a proposed order staying the case, in part, until November 8, 2023. ECF 108. On September 18, 2023, the Court entered the Parties' proposed Order Granting Partial Stay, thereby staying the case, in part, until November 8, 2023. ECF 109.

## II.     THE SETTLEMENT

U.      On October 25, 2023, Lead Plaintiff's counsel and counsel for the Individual Defendants engaged in a full-day mediation session before Michelle Yoshida, Esq., of Phillips ADR, a well-respected and highly experienced mediator. In the weeks following the mediation, Lead Plaintiff and the Individual Defendants continued to negotiate a possible settlement.

V.      On December 14, 2023, the Parties agreed to Ms. Yoshida's personal mediator's proposal to resolve the claims in the Action.

W.      On December 15, 2023, Lead Plaintiff and the Individual Defendants notified the Court that Lead Plaintiff and the Individual Defendants had agreed in principle to resolve all issues and claims involved in this Action. ECF 112.

## III.    THE INDIVIDUAL DEFENDANTS' DENIAL OF WRONGDOING AND LIABILITY

X.      The Individual Defendants have denied and continue to deny any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. securities laws. The Individual Defendants have denied and continue to deny all charges of wrongdoing or liability against them arising out of the conduct, statements, acts or omissions alleged, or that could have been alleged in the Action, including each and every one of the claims alleged by Lead Plaintiff in the Action on behalf of the Settlement Class, including all claims in the Operative Complaint. The Individual Defendants also have denied, and continue to deny, *inter alia*, the allegations that Lead Plaintiff or Settlement Class Members have suffered damage or were otherwise harmed by the conduct alleged in the Action or that could have been alleged in the Action. The Individual Defendants have asserted, and continue to assert, that, at all times, they acted in good faith and in a manner they reasonably believed to be in accordance with all applicable rules, regulations, and laws, and further maintain that they have meritorious defenses. Nonetheless, the Individual Defendants have determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation solely to avoid the further expense, inconvenience, and burden of this Action, the distraction and diversion of personnel and resources, and to obtain the conclusive and complete dismissal or release of this Action and the Released Claims.

Y.      The Stipulation, any proceedings relating to any settlement, or any of the terms of any settlement, whether or not consummated, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of the Individual Defendants, or any of them,

5

with respect to any fact or matter alleged in the Action, or any claim of fault or liability or wrongdoing or damage whatsoever, or any infirmity of any claim or defense that has or could have been asserted. Each Individual Defendant reserves all defenses to any claims that may be filed by anyone, including any individual or entity that has sought, or seeks, exclusion from the Settlement Class.

## IV.    CLAIMS OF LEAD PLAINTIFF AND BENEFITS OF SETTLEMENT

Z.    In connection with this Action, Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action. This process included reviewing and analyzing: (i) AppHarvest's public filings with the SEC; (ii) publicly available information, including press releases, news articles, interviews, and other public statements issued by or concerning the Company; (iv) information obtained during interviews with individuals who are former employees of AppHarvest; (v) reports of securities and financial analysts, news articles, and other commentary and analysis concerning AppHarvest and the industry in which it operates; (vi) pertinent court filings, including in the Bankruptcy; and (vii) the applicable law governing the claims and potential defenses, including in coordination with specialized bankruptcy counsel that Lead Plaintiff retained for the benefit of the Settlement Class.

AA.    Lead Plaintiff believes that the claims asserted in the Action have merit and that the information developed to date supports the claims asserted. However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action through discovery, class certification, summary judgment, trial and appeals. They also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as the difficulties and delays inherent in such litigation. Lead Plaintiff and Lead Counsel are also cognizant of the fact that AppHarvest filed for Chapter 11 bankruptcy, of the remaining insurance available to the Individual Defendants, and of the risks of enforcing a judgment against the Individual Defendants after trial. Lead Counsel also are mindful of the inherent problems of proof and the possible defenses to the

claims alleged in the Action. Based on their evaluation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial monetary benefits upon, and is in the best interests of, the Settlement Class.

**NOW THEREFORE**, without any concession by Lead Plaintiff that the Action lacks merit, and without any concession by the Individual Defendants of any liability or wrongdoing or lack of merit of their defenses, it is hereby **STIPULATED AND AGREED**, by and among Lead Plaintiff and the Individual Defendants, through their respective attorneys, subject to approval by the Court pursuant to Federal Rule of Civil Procedure 23(e), that, in consideration of the benefits flowing to the Parties hereto, all Released Claims and all Released Individual Defendants' Claims, as against all Released Parties, shall be fully, finally, and forever compromised, settled, released, discharged, and dismissed with prejudice, and without costs, upon and subject to the following terms and conditions:

## DEFINITIONS

1.     As used in this Stipulation, the following terms shall have the meanings set forth below. In the event of any inconsistency between any definition set forth below and any definition in any other document related to the Settlement, the definition set forth below shall control.

(a)     "Action" means the consolidated civil action captioned *In re AppHarvest Securities Litigation*. Case No. 1:21-cv-07985-LJL, pending in the United States District Court for the Southern District of New York before the Honorable Lewis J. Liman.

(b)     "Authorized Claimant" means a Settlement Class Member who submits a valid Proof of Claim and Release form to the Claims Administrator that is accepted for payment.

(c)     "Bankruptcy" means the jointly administered Chapter 11 bankruptcy proceedings pending in the United States Bankruptcy Court for the Southern District of Texas and captioned *In re AppHarvest Products, LLC*, Case No. 23-90745(DRJ).

(d)     "Claims Administrator" means Strategic Claims Services, the firm to be retained by Lead Counsel, subject to Court approval, to provide all notices approved by the Court to Settlement Class Members, to process proofs of claim, and to administer the Settlement.

(e)     "Defendants" means AppHarvest, Inc., Jonathan Webb, David Lee, and Loren Eggleton.

(f)     "Effective Date" means the date upon which the Settlement shall have become effective, as set forth in ¶40 below.

(g)     "Escrow Account" means the separate, interest-bearing escrow account designated and controlled by the Escrow Agent wherein the Settlement Amount shall be deposited and held for the benefit of the Settlement Class pursuant to this Stipulation and subject to the jurisdiction of the Court.

(h)     "Escrow Agent" means Lead Counsel.

(i)     "Fee and Expense Application" means Lead Counsel's application for an award of attorneys' fees and payment of litigation expenses incurred in prosecuting the case, including any expenses of Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4) of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

(j)     "Final," with respect to a court order, means the later of: (i) if there is an appeal from a court order, the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration or a petition for a *writ of certiorari* and, if *certiorari* is granted, the date of final affirmance of the order following review pursuant to the grant; or (ii) the date of final dismissal of any appeal from the order or the final dismissal of any proceeding on *certiorari* to review the order; or (iii) the expiration of the time for the filing or noticing of any appeal or petition for *certiorari* from the order (or, if the date for taking an appeal or seeking review of the order shall be extended beyond this time by order of the issuing court, by operation of law or otherwise, or if such extension is requested, the date of expiration of any extension if any appeal or review is not sought), without any such filing or noticing being made. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to the Plan of Allocation of the Net Settlement Fund, or to the Court's award of attorneys' fees or expenses, shall not in any way delay or affect the time set forth above for the Judgment to become Final or otherwise preclude the Judgment from becoming Final.

(k) "Individual Defendants" mean Jonathan Webb, David Lee, and Loren Eggleton.

(l) "Individual Defendants' Counsel" means the law firm of Cooley LLP.

(m) "Judgment" means the proposed judgment to be entered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit B.

(n) "Lead Counsel" means Levi & Korsinsky, LLP.

(o) "Lead Plaintiff" means Alan Narzissenfeld.

(p) "Mediator" means Michelle Yoshida, Esq., of Phillips ADR.

(q) "Net Settlement Fund" means the Settlement Fund less: (i) Court-awarded attorneys' fees and expenses; (ii) Notice and Administration Expenses; (iii) Taxes; and (iv) any other fees or expenses approved by the Court.

(r) "Notice" means the Notice of Pendency of Settlement Class Action, Proposed Class Action Settlement, Final Approval Hearing and Motion for Attorneys' Fees and Expenses which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit 1 to Exhibit A hereto, and shall be posted on the Claims Administrator's website related to this Settlement.

(s) "Notice and Administration Expenses" means all costs, fees, and expenses incurred in connection with providing notice to the Settlement Class and the administration of the Settlement, including but not limited to: (i) providing notice of the proposed Settlement by mail, publication, and other means to Settlement Class Members; (ii) receiving and reviewing claims; (iii) applying the Plan of Allocation; (iv) communicating with Persons regarding the proposed Settlement and claims administration process; (v) distributing the proceeds of the Settlement; and (vi) fees related to the Escrow Account and investment of the Settlement Fund.

(t) "Parties" means Court-Appointed Lead Plaintiff Alan Narzissenfeld, and the Individual Defendants Jonathan Webb, David Lee, and Loren Eggleton.

(u) "Person(s)" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture,

9

limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity.

(v)    "Plan of Allocation" means the proposed Plan of Allocation of Net Settlement Fund, which, subject to the approval of the Court, shall be substantially in the form described in the Notice.

(w)    "Postcard Notice" shall mean the postcard form notice which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit 3 to Exhibit A hereto, and which shall be mailed first class, postage prepaid, to Settlement Class Members and third-party nominees (the "Postcard Notice") that can be identified through reasonable investigation.

(x)    "Preliminary Approval Order" means the proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement, which, subject to the approval of the Court, shall be substantially in the form attached hereto as Exhibit A.

(y)    "Proof of Claim" or "Claim Form" means the Proof of Claim and Release form for submitting a claim, which, subject to approval of the Court, shall be substantially in the form attached as Exhibit 2 to Exhibit A hereto, and shall be posted on the Claims Administrator's website related to this Settlement.

(z)    "Released Claims" means any and all claims and causes of action of every nature and description, including both known claims and Unknown Claims (defined below), debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, amounts, or liabilities whatsoever), whether fixed or contingent, asserted or unasserted, discoverable or undiscoverable, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen,

10

whether individual or class in nature, whether arising under federal or state statutory or common law or any other law, rule, or regulation, whether foreign or domestic, including those that are concealed or  hidden, regardless of legal or equitable theory, that (i) arise out of, are based upon, are related to, or are in consequence of any of the facts, allegations, transactions, matters, events, filings, disclosures, non-disclosures, occurrences, representations, statements, acts or omissions or failures to act that were or could have been involved, set forth, referred to, or alleged by Lead Plaintiff and any other Settlement Class Member in the Action, whether arising under federal, state, local, common or foreign law, or any other law, rule, or regulation, whether individual or class in nature, (ii) that concern, arise out of, are based upon, or relate to the purchase, acquisition, holding, sale, or disposal of AppHarvest securities during the Settlement Class Period, or that otherwise would have been barred by res judicata had the Action been fully litigated to a final judgment; or (iii) Defendants' and/or their attorneys' defense or settlement of the Action and/or claims alleged therein, or both. Released Claims do not include: (i) claims relating to the enforcement of the Settlement; (ii) any claims asserted in the Bankruptcy, including, but not limited to, claims brought by Lead Plaintiff and/or Settlement Class Members; and (iii) any claims of Persons who submit a request for exclusion that is accepted by the Court.

(aa)    "Released Defendant Parties" The Released Defendant Parties shall include (i) the Individual Defendants and each and all of their present or former affiliates, predecessors, heirs, executors, administrators, successors and assigns, attorneys, accountants, insurers, financial advisors, commercial bank lenders, investment bankers, representatives, general and limited partners and partnerships, agents, spouses, associates, and assigns of each or any of them or any trust of which an Individual Defendant is the settlor or which is for the benefit of the Individual Defendant and any entity in which an Individual Defendant has a controlling interest, and (ii) each and all of the present and former parents, subsidiaries, divisions, affiliates, successors of AppHarvest and each and all of  the present or former employees, officers, directors, attorneys, accountants, insurers, financial advisors, commercial bank lenders, investment bankers,

representatives, general and limited partners and partnerships, agents, spouses, associates, and assigns of each or any of them.

(bb)    "Released Defendants' Claims" means all claims and causes of action of every nature and description, including both known claims and Unknown Claims (as defined below), demands, rights, liabilities, suits, debts, obligations, and causes of action of every nature and description, whether known or unknown, that could have been asserted in this action or could in the future be asserted in any forum, whether arising under federal, state, local, common or foreign law, by the Individual Defendants against the Released Plaintiff Parties that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action, except for claims relating to the enforcement of the Settlement or any claims against any Person who submits a request for exclusion that is accepted by the Court.

(cc)    "Released Parties" means the Released Defendant Parties and the Released Plaintiff Parties.

(dd)    "Released Plaintiff Parties" means (i) Plaintiff, Lead Counsel, and all other Settlement Class Members; (ii) the current and former parents, officers, directors, affiliates, subsidiaries, successors, predecessors, assigns, assignees, and immediate family members of each of the foregoing in (i); and (iii) for each and every Person listed in part (i), their respective past, present, and future heirs, executors, administrators, predecessors, successors, assigns, employees, agents, affiliates, analysts, assignees, associates, attorneys, auditors, co-insurers, commercial bank lenders, consultants, controlling shareholders, directors, divisions, domestic partners, employers, expert consultants, financial advisors, general or limited partners, general or limited partnerships, insurers, investigators, investment advisors, investment bankers, investment banks, joint ventures and joint venturers, managers, managing directors, marital communities, members, officers, parents, personal or legal representatives, principals, reinsurers, shareholders, spouses, subsidiaries (foreign or domestic), trustees, underwriters, and retained professionals, in their respective capacities as such. Released Plaintiff Parties does not include any Person who timely and validly seeks exclusion from the Settlement Class.

(ee)    "Settlement" means the resolution of the Action in accordance with the terms and provisions of this Stipulation.

(ff)    "Settlement Class" or "Settlement Class Member" means all persons and entities that purchased or otherwise acquired securities of AppHarvest, Inc., during the period from February 1, 2021 and August 10, 2021, inclusive, and were injured thereby. Excluded from the Class are: (1) the Individual Defendants; (2) the Individual Defendants' immediate family members; (3) any firm, trust, corporation, or other entity in which a defendant has or had a controlling interest; and (4) the legal representatives, affiliates, heirs, successors in interest, or assigns of any such excluded person or entity. Also excluded from the Settlement Class will be any Person who or which timely and validly seeks exclusion from the Settlement Class.

(gg)    "Settlement Class Counsel" means Levi & Korsinsky, LLP.

(hh)    "Settlement Class Period" means the period from February 1, 2021 and August 10, 2021, inclusive.

(ii)    "Settlement Amount" means the total principal amount of four million, eight hundred and fifty thousand U.S. dollars ($4,850,000.00) in cash.

(jj)    "Settlement Fund" means the Settlement Amount and any interest earned thereon.

(kk)    "Settlement Hearing" means the hearing to be held by the Court to determine whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved.

(ll)    "Stipulation" means this Stipulation and Agreement of Settlement.

(mm)    "Summary Notice" means the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses which, subject to approval of the Court, shall be substantially in the form attached as Exhibit 4 to Exhibit A hereto, and which shall be published in *Investor's Business Daily* and, *Accesswire*, or a similar widely-circulated national wire service.

13

(nn)    "Taxes" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties and the reasonable expenses of tax attorneys and accountants).

(oo)    "Unknown Claims" means any and all Released Claims that Lead Plaintiff or any other Settlement Class Member do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and any and all Released Defendants' Claims that any Individual Defendant does not know or suspect to exist in his or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including the decision to object to the terms of the Settlement or to exclude himself, herself, or itself from the Settlement Class. With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and the Individual Defendants shall expressly, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall be deemed to have, to the fullest extent permitted by law, expressly waived and relinquished any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or foreign law, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff, other Settlement Class Members, or the Individual Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Claims and the Released Defendants' Claims, but Lead Plaintiff and the Individual Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the

14

Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims and Released Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Lead Plaintiff and the Individual Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Defendants' Claims was separately bargained for and was a material element of the Settlement.

## SCOPE AND EFFECT OF SETTLEMENT

2.      The obligations incurred pursuant to this Stipulation are: (i) subject to approval by the Court and the Judgment reflecting such approval becoming Final; and (ii) in full and final disposition of the Action with respect to the Released Parties and any and all Released Claims and Released Defendants' Claims.

3.      Solely for the purposes of this Settlement and without waiving any rights, the Individual Defendants agree not to contest that the Settlement Class satisfies all requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3), such that this Action is properly maintained as a class action.

4.      By operation of the Judgment, as of the Effective Date, Lead Plaintiff and each and every other Settlement Class Member, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Defendant Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Claims against any and all of the Released Defendant Parties, whether or not such Settlement Class Member executes and delivers the Proof of Claim and Release form, and whether or not such Settlement Class Member shares or seeks to share in the Settlement Fund.

15

5.     By operation of the Judgment, as of the Effective Date, the Individual Defendants, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Defendants' Claims against each and every one of the Released Plaintiff Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Defendants' Claims against any and all of the Released Plaintiff Parties.

## THE SETTLEMENT CONSIDERATION

6.     In full settlement of the claims asserted in the Action against the Individual Defendants and in consideration of the releases specified in ¶¶4-5, above, all of which the Parties agree are good and valuable consideration, the Individual Defendants shall pay, or cause to be paid, the Settlement Amount into the Escrow Account within 30 calendar days after the following: (i) the Court's entry of an Order preliminarily approving the Settlement and (ii) Levi & Korsinsky, LLP providing to the Individual Defendants' Counsel the information necessary to effectuate a transfer of funds to the Escrow Account, including but not limited to, wire transfer instructions, payment address, and a complete and executed Form W-9 for the Settlement Fund that reflects a valid tax identification number.

7.     Neither the Individual Defendants nor their counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

16

8.      Other than the obligation of the Individual Defendants to cause the payment of the Settlement Amount pursuant to ¶6, the Individual Defendants shall have no obligation to make any other payments into the Escrow Account or to any Settlement Class Member or Lead Counsel in settlement of this Action or pursuant to this Stipulation, including, without limitation, any responsibility or liability related to any fees, taxes, investment decisions, maintenance, supervision or distribution of any portion of the Settlement Amount.

## USE AND TAX TREATMENT OF SETTLEMENT FUND

9.      The Settlement Fund shall be used: (i) to pay any Taxes; (ii) to pay Notice and Administration Expenses; (iii) to pay any attorneys' fees and expenses awarded by the Court; (iv) to pay any other fees and expenses awarded by the Court; and (v) to pay the claims of Authorized Claimants.

10.     The Net Settlement Fund shall be distributed to Authorized Claimants as provided in ¶¶23-36 hereof. The Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held in the Escrow Account, and all earnings thereon, shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall have been disbursed or returned, pursuant to the terms of this Stipulation, or further order of the Court. The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States Government (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in non-interest-bearing transaction account(s) that are fully insured by the Federal Deposit Insurance Corporation ("FDIC") in amounts that are up to the limit of FDIC insurance. The Individual Defendants and the Individual Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent. All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund.

11.     After the Settlement Amount has been paid into the Escrow Account, the Parties agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. All provisions of this Stipulation shall be interpreted in a manner that is

17

consistent with the Settlement Amount being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. In addition, the Escrow Agent shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph 11, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to timely occur. Consistent with the foregoing:

(a)      For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be the Escrow Agent or its successors, who shall timely and properly file, or cause to be filed, all federal, state, or local tax returns and information returns (together, "Tax Returns") necessary or advisable with respect to the earnings on the funds deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)). Such Tax Returns (as well as the election described above) shall be consistent with this subparagraph and in all events shall reflect that all Taxes (including any estimated taxes, earnings, or penalties) on the income earned on the funds deposited in the Escrow Account shall be paid out of such funds as provided in subparagraph (c) of this paragraph 11.

(b)      All Taxes shall be paid out of the Settlement Fund. In all events, the Individual Defendants and the Individual Defendants' Counsel shall have no liability or responsibility whatsoever for the Taxes or the filing of any Tax Return or other document with the Internal Revenue Service or any other state or local taxing authority. The Individual Defendants shall have no liability or responsibility for the Taxes of the Escrow Account with respect to the Settlement Amount nor the filing of any Tax Returns or other documents with the Internal Revenue Service or any other taxing authority. In the event any Taxes are owed by any

18

of the Individual Defendants on any earnings on the funds on deposit in the Escrow Account, such amounts shall also be paid out of the Settlement Fund.

(c)    Taxes with respect to the Settlement Amount and the Escrow Account shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid, or caused to be paid, by the Escrow Agent out of the Settlement Fund without prior order from the Court or approval by the Individual Defendants. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)). The Parties agree to cooperate with each other, and their tax attorneys and accountants to the extent reasonably necessary, to carry out the provisions of this paragraph 11. The Individual Defendants and the Individual Defendants' Counsel shall have no liability or responsibility whatsoever if it is later determined that the Settlement Fund is a not a "qualified settlement fund".

12.    This is not a claims-made settlement. As of the Effective Date, the Individual Defendants, or any other Person funding the Settlement on an Individual Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

## ATTORNEYS' FEES AND EXPENSES

13.    Lead Counsel will apply to the Court for an award from the Settlement Fund of attorneys' fees and payment of litigation expenses incurred in prosecuting the Action plus earnings on such amounts at the same rate and for the same periods as earned by the Settlement Fund. The Individual Defendants shall take no position with respect to any Fee and Expense Application.

14.    The amount of attorneys' fees and expenses awarded by the Court and the timing for the payment of fees and expenses is within the sole discretion of the Court. Lead Counsel intend to seek an order at the fairness hearing that the attorneys' fees and expenses awarded by the Court will be paid from the Settlement Fund to Lead Counsel immediately after the entry of the order approving the settlement. Any attorneys' fees and expenses awarded by the Court shall be paid from the Settlement Fund to Lead Counsel immediately after entry of the Order awarding such

attorneys' fees and expenses and entry of the Judgment, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Fee and Expense Application, the Settlement, or any part thereof.

15. Any payment of attorneys' fees and expenses pursuant to ¶¶13-14 above shall be subject to Lead Counsel's obligation to make refunds or repayments to the Settlement Fund of any paid amounts, plus accrued earnings at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or fails to become effective for any reason, or if, as a result of any appeal or further proceedings on remand or successful collateral attack, the award of attorneys' fees or expenses is reduced or reversed by Final non-appealable court order. Lead Counsel shall make the appropriate refund or repayment in full no later than fifteen (15) business days after receiving notice of the termination of the Settlement pursuant to this Stipulation, notice from a court of appropriate jurisdiction of the disapproval of the Settlement by Final non-appealable court order, or notice of any reduction or reversal of the award of attorneys' fees or expenses by Final non-appealable court order.

16. With the sole exception of the obligation to pay the Settlement Amount into the Escrow Account as provided for in ¶6, the Individual Defendants shall have no responsibility for, and no liability whatsoever with respect to, any payment whatsoever to Lead Counsel in the Action that may occur at any time.

17. The Individual Defendants shall have no responsibility for, and no liability whatsoever with respect to any allocation of any attorneys' fees or expenses among Lead Counsel in the Action, or to any other Person who may assert some claim thereto, or any fee or expense awards the Court may make in the Action.

18. The Individual Defendants shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses incurred by or on behalf of Settlement Class Members, whether or not paid from the Escrow Account. The Settlement Fund will be the sole source of payment from the Individual Defendants for any award of attorneys' fees and expenses ordered by the Court.

19.      The procedure for and the allowance or disallowance by the Court of any Fee and Expense Application are not part of the Settlement set forth in this Stipulation, and any order or proceeding relating to any Fee and Expense Application, including an award of attorneys' fees or expenses in an amount less than the amount requested by Lead Counsel, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement set forth herein. Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or the Settlement in accordance with ¶41 or otherwise based on the Court's or any appellate court's ruling with respect to fees and expenses in the Action.

## NOTICE AND ADMINISTRATION EXPENSES

20.      Except as otherwise provided herein, the Net Settlement Fund shall be held in the Escrow Account until the Effective Date.

21.      Prior to the Effective Date, without further approval from Individual Defendants or further order of the Court, Lead Counsel may expend up to $100,000 from the Settlement Fund to pay Notice and Administration Expenses actually incurred. Any monies from the Notice and Administration Expenses that remain after administration shall be returned to the Net Settlement Fund. Notice and Administration Expenses in excess of $100,000 shall not be paid out of the Net Settlement Fund without Court approval, as warranted, upon prior notice to Defendants' Counsel. Additional sums for this purpose prior to the Effective Date may be paid from the Settlement Fund upon agreement of the Parties or order of the Court. Taxes and fees related to the Escrow Account and investment of the Settlement Fund may be paid as incurred, without further approval of the Individual Defendants or further order of the Court. After the Effective Date, without approval of the Individual Defendants, Notice and Administration Expenses may be paid upon further order of the Court. The Released Defendant Parties shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

21

22.     No later than ten (10) calendar days following the filing of this Stipulation with the Court (the "CAFA Notice Date"), the Individual Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA"), and shall confirm with Lead Counsel via email that such service was made. The Individual Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice. At least seven (7) calendar days before the Settlement Hearing, Counsel for the Individual Defendants shall file a letter with the Court providing notice that all requirements of CAFA §1715(b) have been complied with. The Parties will request that the Settlement Hearing not be scheduled until at least 90 days following the CAFA Notice Date.

## DISTRIBUTION TO AUTHORIZED CLAIMANTS

23.     Except as otherwise provided herein, the Settlement Fund shall be held in the Escrow Account until the Effective Date.

24.     The Claims Administrator, subject to such supervision and direction of Lead Counsel or the Court as may be necessary or as circumstances may require, shall administer the Settlement in accordance with the terms of this Stipulation, the Court-approved Plan of Allocation, and subject to the jurisdiction of the Court. The Individual Defendants and the Individual Defendants' Counsel shall have no responsibility for (except as stated in ¶¶6 and 38 hereof), interest in, or liability whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability to the Settlement Class in connection with such administration.

25.     The Claims Administrator shall determine each Authorized Claimant's share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss, as defined in the Plan of Allocation included in the Notice, or in such other plan of allocation as the Court may approve.

26.     The Individual Defendants have no role in the development of, and will take no position with respect to, the Plan of Allocation. Any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. The Plan of

22

Allocation is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular plan of allocation be approved by the Court. Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or the Settlement in accordance with ¶41 or otherwise based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in the Action. The Individual Defendants and the Individual Defendants' Counsel shall have no responsibility or liability for reviewing or challenging claims, the allocation of the Net Settlement Fund, or the distribution of the Net Settlement Fund.

27.    Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants.

28.    If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to the Investor Protection Trust, or other non-profit that the Court, in its discretion, approves under the *cy pres* doctrine.

## ADMINISTRATION OF THE SETTLEMENT

29.    Any Settlement Class Member who fails to timely submit a valid Proof of Claim (substantially in the form of Exhibit 2 to Exhibit A) will not be entitled to receive any of the proceeds from the Net Settlement Fund, except as otherwise ordered by the Court or allowed by Lead Counsel in their discretion, but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action and all releases

23

provided for herein, and will be barred from bringing any action against the Released Defendant Parties concerning the Released Claims.

30.    Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator. Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Lead Counsel deems to be *de minimis* or formal or technical defects in any Proof of Claim submitted. The Individual Defendants and the Individual Defendants' Counsel shall have no liability, obligation or responsibility for the administration of the Settlement, the allocation of the Net Settlement Fund, or the reviewing or challenging claims. Lead Counsel shall be solely responsible for designating the Claims Administrator, subject to approval by the Court.

31.    For purposes of determining the extent, if any, to which a claimant shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)    Each claimant shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)    All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Lead Counsel in their discretion or by Order of the Court. Any Settlement Class Member who fails to submit a Claim Form by such date shall be barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless, by Order of the Court or the discretion of Lead Counsel, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and all releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Defendant Party. A Claim Form shall be deemed to be submitted when emailed to the Claims Administrator, or when mailed, if received with a postmark on the envelope and if mailed by first-class or overnight

24

U.S. Mail and addressed in accordance with the instructions thereon. In all other cases, the Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)　　Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, which shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed;

(d)　　Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim Form in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Claim Form submitted. The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing or by email, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)　　If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

32.　　Each claimant who submits a Claim Form shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, including but not limited to, all releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and

discovery shall be limited to the claimant's status as a Settlement Class Member and the validity and amount of the claimant's claim. In connection with processing the Claim Forms, no discovery shall be allowed to be directed to any of the Released Defendant Parties, and no discovery shall be allowed on the merits of the Action or the Settlement.

33.     Payment pursuant to the Stipulation and Court-approved Plan of Allocation shall be deemed final and conclusive against any and all claimants. All Settlement Class Members whose claims are not approved shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for herein and therein, and will be barred from bringing any action against the Released Defendant Parties concerning the Released Claims.

34.     All proceedings with respect to the administration, processing and determination of claims described by this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment.

35.     No Person shall have any claim of any kind against the Released Defendant Parties or the Individual Defendants' Counsel with respect to the matters set forth in this section (*i.e.*, ¶¶29-36) or any of its subsections, or otherwise related in any way to the administration of the Settlement, including without limitation the processing of claims and distributions.

36.     No Person shall have any claim against Lead Plaintiff or the Claims Administrator, or other agent designated by Lead Counsel, based on the distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

**TERMS OF THE PRELIMINARY APPROVAL ORDER**

37.     Concurrently with their application for preliminary approval by the Court of the Settlement contemplated by this Stipulation and promptly upon execution of this Stipulation, Lead

26

Counsel shall apply to the Court for entry of the Preliminary Approval Order, which shall be substantially in the form annexed hereto as Exhibit A. The Preliminary Approval Order will, *inter alia,* preliminarily approve the Settlement, set the date for the Settlement Hearing, approve the form of notice, and prescribe the method for giving notice of the Settlement to the Settlement Class.

38.    The Individual Defendants or their counsel shall work in good faith to provide, or cause to be provided, Lead Counsel or the Claims Administrator, at no cost to Lead Plaintiffs, the Settlement Fund, Lead Counsel, or the Claims Administrator, no later than ten (10) business days after entry of the Preliminary Approval Order, transfer records in electronic searchable form containing the names, mailing addresses, and e-mail addresses (if available) of record purchasers of AppHarvest publicly traded common stock during the Settlement Class Period. The Individual Defendants' efforts herein shall include, but are not limited to, requesting AppHarvest's transfer agent during the Settlement Class Period grant Lead Plaintiff and the Claims Administrator any necessary authorizations or permissions to access the transfer records described in this Paragraph.

## TERMS OF THE JUDGMENT

39.    If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and the Individual Defendants' Counsel shall jointly request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B.

## EFFECTIVE DATE OF SETTLEMENT

40.    The Effective Date of this Settlement shall be the first business day on which all of the following shall have occurred or been waived and is conditioned on the occurrence of all of the following events:

(a)    the Individual Defendants have not exercised their option to terminate the Settlement under ¶¶41-42.

(b)    entry of the Preliminary Approval Order, which shall be in all material respects substantially in the form set forth in Exhibit A annexed hereto;

(c)    payment of the Settlement Amount into the Escrow Account;

27

(d)    approval by the Court of the Settlement, following notice to the Settlement Class and the Settlement Hearing, as prescribed by Federal Rule of Civil Procedure 23; and

(e)    a Judgment, which shall be in all material respects substantially in the form set forth in Exhibit B annexed hereto, has been entered by the Court and has become Final.

## WAIVER OR TERMINATION

41.    The Individual Defendants and Lead Plaintiff shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice"), through counsel, to all other parties hereto within fourteen (14) calendar days of: (i) the Court's Final refusal to enter the Preliminary Approval Order in any material respect; (ii) the Court's Final refusal to approve this Stipulation or any material part of it; (iii) the Court's Final refusal to enter the Judgment in any material respect; or (iv) the date upon which the Judgment is modified or reversed in any material respect by a Final order of the Court, the United States Court of Appeals, or the Supreme Court of the United States. Lead Plaintiff shall not have the right to terminate the Settlement due to any decision, ruling, or order respecting the Fee and Expense Application or any plan of allocation.

42.    In addition to the foregoing, the Individual Defendants shall also have the right to terminate the Settlement in the event the Opt-Out Threshold (defined below) has been reached.

(a)    Simultaneously herewith, the Individual Defendants' Counsel and Lead Counsel are executing a Confidential Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement"). The Supplemental Agreement sets forth certain conditions under which the Individual Defendants shall have the sole option to terminate the Settlement and render this Stipulation null and void in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon criteria (the "Opt-Out Threshold"). The Parties agree to maintain the confidentiality of the Supplemental Agreement, which shall not be filed with the Court unless a dispute arises as to its terms, or as otherwise ordered by the Court, nor shall the Supplemental Agreement otherwise be disclosed unless ordered by the Court.

28

43.    The Preliminary Approval Order, attached hereto as Exhibit A, shall provide that requests for exclusion shall be received no later than twenty-one (21) calendar days prior to the Settlement Hearing. Upon receiving any request for exclusion pursuant to the Notice, Lead Counsel shall promptly, and in no event no later than three (3) calendar days after receiving a request for exclusion or fifteen (15) calendar days prior to the Settlement Hearing, whichever is earlier, notify the Individual Defendants' Counsel of such request for exclusion and provide copies of such request for exclusion and any documentation accompanying it by email.

44.    In addition to all of the rights and remedies that Lead Plaintiff have under the terms of this Stipulation, Lead Plaintiff shall also have the right to terminate the Settlement in the event that the Settlement Amount has not been paid in the time period provided for in ¶6 above, but only if (i) Lead Counsel has notified the Individual Defendants' counsel in writing of Lead Counsel's intention to terminate the Settlement, and (ii) the entire Settlement Amount is not transferred to the Escrow Account within fourteen (14) calendar days after Lead Counsel has provided such written notice.

45.    If, before the Settlement becomes Final, any Individual Defendant files for protection under the Bankruptcy Code or any similar law or a trustee, receiver, conservator, or other fiduciary is appointed under bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Settlement Fund by or on behalf of such Individual Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Lead Plaintiff the Parties shall jointly move the Court to vacate and set aside the release given and the Judgment entered in favor of that Individual Defendant and that Individual Defendant and Lead Plaintiff and the members of the Settlement Class shall be restored to their litigation positions immediately prior to December 14, 2023. All releases and the Judgment as to other Individual Defendants shall remain unaffected.

29

(a)    The Individual Defendants warrant as to the payments they make pursuant to this Stipulation, that, at the time of such payment, they will not be insolvent, nor will payment render them insolvent, within the meaning of or for the purposes of the United States Bankruptcy Code, including Sections 101 and 547 thereof.

46.    If an option to withdraw from and terminate this Stipulation and Settlement arises under any of ¶¶41-45 above: (i) neither Individual Defendants nor Lead Plaintiff (as the case may be) will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in the sole and unfettered discretion of the Individual Defendants or Lead Plaintiff, as applicable.

47.    With the exception of the provisions of ¶¶47-49 which shall continue to apply, in the event the Settlement is terminated as set forth herein or cannot become effective for any reason, then the Settlement shall be without prejudice, and none of its terms shall be effective or enforceable except as specifically provided herein; the Parties shall be deemed to have reverted to their respective litigation positions in the Action immediately prior to December 14, 2023; and, except as specifically provided herein, the Parties shall proceed in all respects as if this Stipulation and any related order had not been entered. In such event, this Stipulation, and any aspect of the discussions or negotiations leading to this Stipulation shall not be admissible in this Action, or in any other proceeding, and shall not be used against or to the prejudice of the Individual Defendants or against or to the prejudice of Lead Plaintiff, in any court filing, deposition, at trial, or otherwise. Any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

48.    In the event the Settlement is terminated, as provided herein, or fails to become effective, any portion of the Settlement Amount previously paid into the Escrow Account, together with any earnings thereon, less any Taxes paid or due, less Notice and Administration Expenses actually incurred and paid or payable from the Settlement Amount, shall be returned to the Individual Defendants within fifteen (15) business days after written notification of such event in accordance with instructions provided by the Individual Defendants' Counsel to Lead Counsel,

along with a detailed accounting of any Taxes and Notice and Administration Expenses paid. The Escrow Agent or its designees shall apply for any tax refund owed on the amounts in the Escrow Account and pay the proceeds, after any deduction of any fees or expenses incurred in connection with such application(s), of such refund to the Individual Defendants or as otherwise directed by the Individual Defendants.

## NO ADMISSION

49.    Except as set forth in ¶50 below, this Stipulation, whether or not consummated, and whether or not approved by the Court, and any discussion, negotiation, proceeding, or agreement relating to the Stipulation, the Settlement, and any matter arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the Parties or their respective counsel, for any purpose other than in an action to enforce the terms hereof, and in particular:

(a)    do not constitute, and shall not be offered or received against or to the prejudice of the Individual Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by the Individual Defendants with respect to the truth of any allegation by Lead Plaintiff and the Settlement Class, or the validity of any claim that has been or could have been asserted in the Action or in any litigation, including but not limited to the Released Claims, or of any liability, damages, negligence, fault or wrongdoing of the Individual Defendants or any person or entity whatsoever;

(b)    do not constitute, and shall not be offered or received against or to the prejudice of the Individual Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Individual Defendants, or against or to the prejudice of Lead Plaintiff, or any other member of the Settlement Class as evidence of any infirmity in the claims of Lead Plaintiff, or the other members of the Settlement Class;

(c)    do not constitute, and shall not be offered or received against or to the prejudice of the Individual Defendants, Lead Plaintiff, any other member of the Settlement Class,

31

or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of the Individual Defendants, Lead Plaintiff, other members of the Settlement Class, or their respective counsel, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(d)    do not constitute, and shall not be construed against the Individual Defendants, Lead Plaintiff, or any other member of the Settlement Class, as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

(e)    do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Lead Plaintiff, or any other member of the Settlement Class that any of their claims are without merit or infirm or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

50.    Notwithstanding ¶49 above, the Parties, and their respective counsel, may file this Stipulation or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, statute of limitations, statute of repose, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted them under any applicable insurance policy. The Parties may file this Stipulation or the Judgment in any action that may be brought to enforce the terms of this Stipulation or the Judgment. All Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

## MISCELLANEOUS PROVISIONS

51.    All of the exhibits to the Stipulation, except any plan of allocation to the extent incorporated in those exhibits, and the Supplemental Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

32

52.     The Parties intend the Settlement to be the full, final, and complete resolution of all claims asserted or that could have been asserted by the Parties with respect to the Released Claims and Released Defendants' Claims. Accordingly, the Parties agree not to assert in any forum that the Action was brought, prosecuted, or defended in bad faith or without a reasonable basis. The Parties and their respective counsel agree that each has complied fully with Federal Rule of Civil Procedure 11 in connection with the maintenance, prosecution, defense, and settlement of the Action and shall not make any application for sanctions, pursuant to Rule 11 or other court rule or statute, with respect to any claim or defense in this Action. The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties and their respective counsel and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

53.     This Stipulation, along with its exhibits and the Supplemental Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by counsel for the Parties hereto, or their successors, that are materially and adversely affected by the modification, amendment, or waiver.

54.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

55.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and any expenses and implementing and enforcing the terms of this Stipulation.

56.     The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

57.     This Stipulation, its exhibits, and the Supplemental Agreement constitute the entire agreement among the Parties concerning the Settlement as against the Individual Defendants, and no representation, warranty, or inducement has been made by any Party concerning this Stipulation and its exhibits other than those contained and memorialized in such documents. The Parties

acknowledge and agree that they are not relying on any representations or warranties not contained herein. It is understood by the Parties that, except for the matters expressly represented herein, the facts or law relate to the Released Claims, and with respect to which this Stipulation is entered into, may turn out to be other than or different from the facts now known to each party or believed by such party to be true; each party therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this Stipulation shall be in all respects binding and not subject to termination by reason of any such different facts or law.

58.    Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

59.    Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

60.    All designations and agreements made, or orders entered during the course of the Action relating to the confidentiality of documents or information shall survive this Stipulation.

61.    This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signatures sent by facsimile or via email in pdf format shall be deemed originals.

62.    This Stipulation shall be binding when signed, but the Settlement shall be effective upon the entry of the Judgment and the payment in full of the Settlement Amount, subject only to the condition that the Effective Date will have occurred.

63.    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

64.    The construction, interpretation, operation, effect, and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

65. This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties, and all Parties have contributed substantially and materially to the preparation of this Stipulation.

66. All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement document, warrant and represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

67. The Parties and their respective counsel agree to cooperate fully with one another in promptly applying for preliminary approval by the Court of the Settlement and for the scheduling of a hearing for consideration of Final approval of the Settlement and Lead Counsel's Fee and Expense Application, and to agree promptly upon and execute all such other documentation as reasonably may be required to obtain Final approval by the Court of the Settlement.

68. If any disputes arise out of the finalization of the settlement documentation or the Settlement itself prior to joint submission to the Court of the application for preliminary approval of the Settlement as set forth in ¶37 above, those disputes will be resolved by the Mediator first by way of expedited telephonic mediation and, if unsuccessful, then by final, binding, non-appealable resolution by the Mediator.

69. Except as otherwise provided herein, the Parties shall bear their own costs.

**IN WITNESS WHEREOF**, the Lead Plaintiff and the Individual Defendants have caused this Stipulation to be executed, by their duly authorized attorneys, as of February 20, 2024.

Respectfully Submitted,

Dated:  February 20, 2024

**LEVI & KORSINSKY, LLP**

By: /s/

Gregory M. Potrepka

Shannon L. Hopkins (SH-1887)
Gregory M. Potrepka (GP-1275)
1111Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
shopkins@zlk.com
gpotrepka@zlk.com

*Attorneys for Lead Plaintiff Alan Narzissenfeld*

Dated:  February 20, 2024

**COOLEY LLP**

By: /s/

Peter M. Adams

Aric H. Wu
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
Email: ahwu@cooley.com

Patrick E. Gibbs (*pro hac vice*)
3175 Hanover Street
Palo Alto, CA 94304-1130
Tel: (650) 843-5000
pgibbs@cooley.com

Peter M. Adams (*pro hac vice*)
Linh K. Nguyen (*pro hac vice*)
4401 Eastgate Mall
San Diego, CA 92121
Tel: (858) 550-6000
padams@cooley.com
lknguyen@cooley.com

Zachary D. Williams (*pro hac vice*)
1144 15th Street Suite, 2300
Denver, CO 80202
Tel: (720) 566-4000
zwilliams@cooley.com

*Attorneys for the Individual Defendants*

36