UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In   re   AppHarvest   Securities   Litigation | |
| --- | --- |
| | Case No. 1:21-cv-07985-LJL |
| | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND FINAL CERTIFICATION OF SETTLEMENT CLASS**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................... 4

    A.  Factual Background........................................................................... 4

    B.  Procedural History of the Action....................................................... 4

    C.  Mediation and Settlement Negotiations ............................................ 8

    D.  The Proposed Settlement................................................................... 9

          1.  Settlement Terms and Release of Claims.................................. 9

          2.  The Court Preliminarily Approved the Settlement..................... 9

    E.  Dissemination of Notice to the Class and Reaction of Class to Proposed Settlement . 10

ARGUMENT ................................................................................................... 12

I.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL............................................................................... 12

    A.  Standard of Review and Presumption of Approval...................... 12

    B.  The Rule 23(e)(2) Factors Support Approval of the Settlement as Fair, Reasonable, and Adequate................................................................................ 14

          1.  Rule 23(e)(2)(A) and *Grinnell* Factor 3: Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class ..................................... 14

          1.  Rule 23(e)(2)(B): The Settlement Was Negotiated At Arms' Length ................. 17

          2.  Rule 23(e)(2)(C) and *Grinnell* Factors 1 and 4 Through 9: The Relief Provided to the Settlement Class is Fair, Reasonable, and Adequate....................................... 18

               a)  Rule 23(e)(2)(C)(i): Costs, Risks, and Delay of Trial and Appeal........ 18

               b)  Rule 23(e)(2)(C)(ii): Effectiveness of the Proposed Method of Distributing Relief to the Settlement Class ......................................... 25

               c)  Rule 23(e)(2)(C)(iii): Terms of the Proposed Attorneys' Fees ............ 26

               d)  Rule 23(e)(2)(C)(iv): Agreements Required to Be Disclosed Under Rule 23(e)(3)............................................................................... 27

          3.  The Reaction of the Settlement Class to the Settlement Supports Settlement Approval............................................................................ 27

II.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED .............................................................................. 28

III. NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ................................................................... 31

IV. THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23, AND THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED .............. 33

CONCLUSION ................................................................................................ 34

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arkansas Teacher Retirement System v. Goldman Sachs Group, Inc.*,
  77 F.4th 74 (2d Cir. 2023) ............................................................. 21, 22
*Authors Guild v. Google, Inc.*,
  770 F. Supp. 2d 666 (S.D.N.Y. 2011)................................................... 12
*Balestra v. ATBCOIN LLC*,
  No. 17-cv-10001 (VSB), 2022 WL 950953 (S.D.N.Y. Mar. 29, 2022) .............................. 25
*Chen-Oster v. Goldman Sachs & Co.*,
  No. 10-cv-6950 (AT) (RWL), 2023 WL 7325264 (S.D.N.Y. Nov. 7, 2023) .................. 28, 31
*Christine Asia Co. v. Yun Ma*,
  No. 15-md-2631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).......... 12, 15, 27
*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)..................................................................... passim
*City of Providence v. Aeropostale Inc.*,
  No. 11 civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd, Arbuthnot v. Pierson*,
  607 F. App'x. 73 (2d Cir. 2015) ............................................. 16, 20, 27
*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001).................................................................. 17, 25
*Ebbert v. Nassau Cty.*,
  No. CV 05-5445 AKT, 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011) .................................... 22
*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000).................................................................... 14
*Gruber v. Gilbertson*,
  No. 16-cv-9727 (JSR), 2022 U.S. Dist. LEXIS 108611 (S.D.N.Y. June 17, 2022) ............... 30
*Guyer v. MGT Cap. Invs., Inc.*,
  No. 18-cv-9228 (ER), 2019 WL 8403029 (S.D.N.Y. Dec. 17, 2019) .................................. 25
*In re Altair Nanotechnologies Sec. Litig.*,
  No. 14-cv-7828 (AT), 2016 WL 7647043 (S.D.N.Y. Jan. 22, 2016) ................................... 25
*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................... 24, 30
*In re Am. Int'l Group Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012)................................................................... 34
*In Re AppHarvest Products, LLC*,
  Case No. 23-90745-CML (S.D. Tex. Bankr.)........................................ 2, 6
*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................. 18, 21
*In re China Sunergy Sec. Litig.*,
  No. 07 Civ. 7895(DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)................................ 16
*In re Citigroup Inc. Sec. Litig.*,
  No. 09-MD-2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ............................. 13
*In re Eletrobras Sec. Litig.*,
  Case No. 15-cv-5754-JGK, Dkt. No. 142 (S.D.N.Y. Dec. 12, 2018)................................ 27

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007).................... 16, 18, 29
*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x. 37 (2d
    Cir. 2016) ....................................................................................................................... 17, 18
*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02–CV–3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................ 19, 29
*In re Frontier Commc'ns Corp.*,
    No. 3:17-cv-01617-VAB, 2022 WL 4080324 (D. Conn. May 20, 2022)............................ 22
*In re Giant Interactive Group, Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) .................................................................................. 27, 28
*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................. 24, 30
*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)................................................................................ 19
*In re JPMorgan Chase & Co. Sec. Litig.*,
    2016 WL 11590485 (S.D.N.Y. May 10, 2016) .................................................................. 26
*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
    No. 20-CV-4953 (JPO), 2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024).............................. 22
*In re Marsh & McLennan Cos. Sec. Litig.*,
    No. 04-cv-8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................... 33
*In re Monster Worldwide, Inc. Sec. Litig.*,
    No. 07-CV-02237 JSR, 2008 WL 9019514 (S.D.N.Y. Nov. 25, 2008) ............................... 18
*In re N. Dynasty Minerals Ltd. Sec. Litig.*,
    No. 20-CV-5917 (TAM), 2024 WL 308242 (E.D.N.Y. Jan. 26, 2024)................................ 23
*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................................... 16
*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997), aff'd, 117 F.3d 721 (2d Cir. 1997) ................................. 28
*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x 760 (2d Cir. 2020)....................................................................................... 24
*In re Patriot Nat'l, Inc. Sec. Litig.*,
    No. 1:17-CV-01866-ER, 2021 WL 1040462 (S.D.N.Y. Mar. 18, 2021) ............................. 31
*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ....................................................................................... 16
*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020).............. passim
*In re Take Two Interactive Sec. Litig.*,
    No. 06 Civ. 803 (RJS), 2010 WL 11613684 (S.D.N.Y. June 29, 2010)............................... 32
*In re Telik Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................................................ 28
*In re Veeco Instruments Sec. Litig.*,
    No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .............................. 21
*In re: Revolution Lighting Tech., Inc. Sec. Litig.*,
    1:19-cv-00980-JPO, Dkt. No. 72 (S.D.N.Y. July 8, 2020)................................................. 26

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y.2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) .............................. 20
*Lea v. Tal Educ. Grp.*,
  No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ................... 12, 14, 16
*Lomeli v. Sec. & Inv. Co. Bahrain*,
  546 F. App'x. 37 (2d Cir. 2013) .................................................................................... 32
*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................................... 27
*Melito v. Experian Mktg. Sols., Inc.*,
  923 F.3d 85 (2d Cir. 2019) ...................................................................................... 31, 32
*Pearlstein v. BlackBerry Ltd.*,
  No. 13-cv-7060-CMKHP, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) .................... passim
*Plymouth County Retirement Association v. AppHarvest, Inc., et al.*,
  Case No. 1:21-cv-09676 (S.D.N.Y.) ................................................................................. 5
*Ragan v. AppHarvest, Inc., et al.*,
  Case No. 1:21-cv-07985 (S.D.N.Y) ......................................................................... 4, 5, 7
*Rosi v. Aclaris Therapeutics, Inc.*,
  No. 19-CV-7118 (LJL), 2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) .......................... passim
*Silberblatt v. Morgan Stanley*,
  524 F. Supp. 2d 425 (S.D.N.Y. 2007) ............................................................................ 29
*Sjunde AP-Fonden v. General Elec. Co.*,
  No. 17-CV-8457 (JMF), 2023 WL 6314939 (S.D.N.Y. Sep. 28, 2023) ............................ 29
*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ............................................................................ 19
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................... passim
*Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v. Brixmor*
  *Property Group, Inc.*,
  1:16-cv-2400-AT-SN, Dkt. No. 92 (S.D.N.Y. Dec. 13, 2017) ......................................... 26

## Statutes

15 U.S.C. § 78j ............................................................................................................. 4

15 U.S.C. § 78t ............................................................................................................. 4

## Other Authorities

Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements 2022 Review and
  Analysis, Cornerstone Research ................................................................................. 23

## Rules

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................................ 22

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 32, 33

Fed. R. Civ. P. 23(e)(2).................................................................................................... 12, 13

**Regulations**

17 CFR § 240.10b-5.............................................................................................................. 4

Pursuant to Federal Rule of Civil Procedure 23(e), Court-appointed Lead Plaintiff Alan Narzissenfeld ("Lead Plaintiff"),[1] on behalf of himself and the Settlement Class, respectfully submits this Memorandum of Law in support of Lead Plaintiff's unopposed Motion for: (i) final approval of the proposed class action settlement; (ii) final approval of the proposed Plan of Allocation for the distribution of the proceeds of the Settlement to eligible claimants; and (iii) final certification of the Settlement Class for settlement purposes. The motion and this Memorandum of Law are supported by the Declaration of Gregory M. Potrepka in Support of: (1) Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and Final Certification of Settlement Class and (2) Lead Counsel's Motion for Award of Attorneys' Fees and Litigation Expenses ("Potrepka Decl."), filed herewith.[2] The Settlement Class consists of all persons and entities that purchased or otherwise acquired securities of AppHarvest, Inc. ("AppHarvest" or the "Company"), during the period from February 1, 2021 and August 10, 2021, inclusive, and were injured thereby.[3]

## PRELIMINARY STATEMENT

As memorialized in the Stipulation, Lead Plaintiff agreed to resolve all claims against Individual Defendants Jonathan Webb ("Webb"), Loren Eggleton ("Eggleton"), and David Lee ("Lee") (who, together with Lead Plaintiff, are the "Parties") in this Action after two years of highly adversarial litigation, in exchange for an immediate cash payment of $4,850,00.00 (the "Settlement Amount") to the Settlement Class (the "Settlement"). The Court preliminarily

---

[1] Unless otherwise noted, all internal quotation marks and citations are omitted, all emphasis is added, and all capitalized terms not defined herein shall have the same meaning ascribed to them in the Stipulation and Agreement of Settlement dated February 20, 2024 (ECF No. 117-1, the "Stipulation" or "Stip").

[2] "Ex." refers to exhibits attached to the Potrepka Declaration.

[3] Excluded from the Class are: (1) the Individual Defendants; (2) the Individual Defendants' immediate family members; (3) any firm, trust, corporation, or other entity in which a defendant has or had a controlling interest; and (4) the legal representatives, affiliates, heirs, successors in interest, or assigns of any such excluded person or entity. Also excluded from the Settlement Class will be any Person who or which timely and validly seeks exclusion from the Settlement Class.

approved the Settlement on March 6, 2024. ECF No. 120 (the "Preliminary Approval Order").

At the time the Settlement was reached, Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the Action. The Settlement follows extensive investigation and arm's-length negotiations among experienced counsel and was the personal proposal of a highly respected mediator, Michelle Yoshida, Esq. ("Ms. Yoshida" or the "Mediator"), of Phillips ADR Enterprise, P.C., who has significant experience mediating securities class actions similar to this Action. The Settlement was reached only after vigorous litigation efforts including investigating potential claims and preparing two amended complaints, prevailing on a motion for leave to file a second amended complaint, successfully opposing a motion to dismiss the Operative Complaint (ECF 76), letter briefing regarding a stay of this case, engaging specialized bankruptcy counsel and securing a carve out of the Settlement Class from the third party release in the Bankruptcy,[4] attending a full-day mediation before Ms. Yoshida, briefing in connection the mediation, and vigorous subsequent negotiations facilitated by the Mediator.

Lead Plaintiff's extensive investigation included, among other things, review and analysis of: (i) documents filed by AppHarvest with the SEC; (ii) publicly available information concerning AppHarvest and/or the Individual Defendants, including press releases, news articles, conference call transcripts, and video recorded interviews; (iii) research reports issued by financial and industry analysts concerning AppHarvest; (iv) other publicly available information and data concerning the Company and its subsidiaries, including information concerning AppHarvest's operations; (v) docket entries from various court proceedings concerning AppHarvest and the Individual Defendants, including items filed in the Bankruptcy; (vi) interviews conducted with former employees; (vii) consultations with bankruptcy counsel; (viii) reports prepared by Lead

---

[4] *In re AppHarvest Products, LLC*, Case No. 23-90745(DRJ) (S.D. Tex. Bankr.).

Plaintiff's damages experts; (ix) consultation with a Controlled Environment Agricultural expert; and (x) the applicable law governing the claims and potential defenses in this Action.

While Lead Plaintiff believes the Action has substantial merit, the proposed Settlement eliminates significant risk, delay, and cost of further litigation, including as a result of a lengthy and protracted discovery process (likely to be complicated by AppHarvest's Chapter 11 bankruptcy), additional contested motion practice including in connection with class certification and likely motions for summary judgment, trial, post-trial motion practice, and any ensuing appeals. As discussed below, the Individual Defendants asserted colorable legal and factual defenses to Lead Plaintiffs' claims, and the Settlement avoids the risk of an unfavorable outcome for Plaintiff at any future stage of the litigation, which could cause the Settlement Class to receive a smaller recovery or no recovery at all. Further, even if Lead Plaintiff obtained a favorable judgment, the litigation necessary to achieve that result would involve extensive delay and substantial costs. Further, collectability of a judgment entered at a future date would be highly uncertain due to likely exhaustion of insurance funds through continued litigation expense. The Settlement avoids these extensive delays, costs, and risks while providing an immediate $4,850,000 cash payment to the Settlement Class.

Lead Plaintiff and Lead Counsel believe that the proposed Settlement balances Lead Plaintiff's objective of securing the highest possible monetary recovery for the Settlement Class against the significant risk that it could receive a smaller recovery, or no recovery, if the Action continued. Accordingly, Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate and warrants final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Lead Plaintiff alleges that Defendants made materially false or misleading statements and omissions throughout the Settlement Class Period in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 promulgated thereunder, which caused the price of AppHarvest's publicly traded securities—specifically common stock (Nasdaq: $APPH) and warrants (Nasdaq: $APPHW)—to trade at artificially inflated prices.

Prior to its bankruptcy, AppHarvest was a domestic producer of fruits and vegetables, with a single operating farm located in Morehead, Kentucky. ECF 76 at ¶43. Throughout the Settlement Class Period, Defendant Webb served as AppHarvest's Chief Executive Officer and Board Chairman, Defendant Lee served as President and a member of the Board, and Defendant Eggleton served as Chief Financial Officer. *Id.* at ¶29-31. Lead Plaintiff alleges that during the Settlement Class Period, Defendants disseminated false and misleading statements that falsely concealed and misrepresented labor and productivity issues that AppHarvest experienced at the Morehead farm that were negatively affecting the Company's operating results and prospects. *Id.* at ¶147-241. Lead Plaintiff further alleges that the truth was revealed on August 11, 2021, when Defendants disclosed, among other items, the Company's financial results for the fiscal quarter ended June 30, 2021, which caused the prices of publicly traded AppHarvest common stock and warrants to significantly depreciate, and thereby, caused economic harm to the Settlement Class. *Id.* at ¶242.

### B. Procedural History of the Action

Starting in the fall of 2021, two securities class action complaints were filed in this District against Defendants Webb, Eggleton, and the Company. The first, filed on September 24, 2021, was captioned *Ragan v. AppHarvest, Inc., et al.*, Case No. 1:21-cv-07985 (S.D.N.Y) (the "*Ragan*

Action") on behalf of all investors who purchased or otherwise acquired AppHarvest, Inc. securities between May 17, 2021 and August 10, 2021, inclusive. ECF No. 1. On November 22, 2021, a related securities class action captioned *Plymouth County Retirement Association v. AppHarvest, Inc., et al*., Case No. 1:21-cv-09676 (S.D.N.Y.) (the "*Plymouth County* Action") was also filed in this Court seeking the same relief against the same defendants on behalf all investors who purchased or otherwise acquired AppHarvest securities between October 9, 2020 and August 10, 2021, inclusive. ECF 39 at 4. On December 13, 2021, the Court issued an Opinion and Order consolidating the *Plymouth County* Action into *Ragan* Action under the caption *In re AppHarvest Securities Litigation*, appointing Alan Narzissenfeld as Lead Plaintiff, and approving Lead Plaintiff's selection of Levi & Korsinsky, LLP as lead Counsel. ECF 39.

On March 2, 2022, Lead Plaintiff filed his First Consolidated Amended Class Action Complaint (the "FAC"), alleging securities fraud claims on behalf of himself and all other persons or entities other than Defendants who purchased or otherwise acquired securities of AppHarvest between February 1, 2021 and August 10, 2021, inclusive, and were damaged thereby. ECF 46. Lead Plaintiff's investigation, through Lead Counsel, involved extensive research, including interviews with multiple confidential witnesses and consultation with a Controlled Environment Agricultural expert, and resulted in the FAC asserting claims against Defendant Lee, who had not been named in the initial complaints filed in the *Ragan* and *Plymouth County* Actions.

On May 2, 2022, Defendants moved to dismiss the FAC. ECF 50-52. After continued investigation that included the identification of three new and important confidential witnesses, Lead Plaintiff responded to Defendants' motion to dismiss by moving for leave to amend the FAC. ECF 57-60. On July 22, 2022, the Court issued a Memorandum and Order granting Lead Plaintiff's motion for leave to amend, over Defendants' objection. ECF 69. On August 12, 2022, Lead

Plaintiff filed the Operative Complaint. ECF 76.

On September 23, 2022, Defendants moved to dismiss the Operative Complaint. ECF 79-81. Defendants' motion to dismiss the Operative Complaint was voluminous. Indeed, Defendants' opening briefing and exhibits alone totaled 394 pages. Defendants argued, among other things, that the Operative Complaint failed to allege: materiality, falsity, scienter, and loss causation. ECF 80. Lead Plaintiff opposed Defendants' motion to dismiss on November 22, 2022. ECF 84-87. On March 22, 2023, Lead Plaintiff filed a letter containing supplemental authority in further opposition to Defendants' motion to dismiss the Operative Complaint. ECF 95. Defendants filed a letter in response and in further support of their motion to dismiss the Operative complaint on March 28, 2023. ECF 96.

On July 23, 2023, AppHarvest filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. *In Re AppHarvest Products, LLC*, Case No. 23-90745-CML (S.D. Tex. Bankr.). On July 31, 2023, the Court issued its Opinion and Order concerning Defendants' motion to dismiss the Operative Complaint, granting the motion as to claims asserted against Defendants Webb and Eggleton, and denying the motion only as to two statements made by Defendant Lee during an investment conference held by Stephens Inc., on May 25, 2021. ECF 97. Specifically, the Court sustained the following statements made by Defendant Lee: "**Um, thankfully COVID has not in any way impacted our operation**[;]" and "**we haven't had any challenges with recruiting or staffing**." *Id.* at 69-70, 75-77.

On August 1, 2023, Defendants filed a Notice of Suggestion of Bankruptcy and Automatic Stay of Proceedings, thereby automatically staying the Action as to AppHarvest. ECFs 98-99. As originally proposed, the confirmation plan in the Bankruptcy would have released Lead Plaintiff's and the Settlement Class's claims in this Action against the Individual Defendants. To protect the

Settlement Class's claims from being released by AppHarvest's bankruptcy, Lead Counsel retained Lowenstein Sandler, LLP ("Lowenstein"), a firm with well-regarded expertise in complex bankruptcy matters, to advise Lead Counsel. As a result of Lead Counsel's and Lowenstein's efforts and negotiations with counsel for the debtor (which included a draft objection to the proposed confirmation order that Lead Plaintiff was prepared to file), the debtor agreed to include the following language in the Debtor's revised, proposed confirmation order which was approved by the bankruptcy court and resulted in a carve out of Lead Plaintiff's claims against the Individual Defendants from the bankruptcy release:

> **Release Opt-Out for Lead Plaintiff**. Notwithstanding anything to the contrary set forth in the Plan, Disclosure Statement, solicitation procedures order [ECF No. 72], Plan Supplement or this Confirmation Order, Alan Narzissenfeld ("Lead Plaintiff"), the court-appointed lead plaintiff in the securities class action pending in the United States District Court for the Southern District of New York under the caption, *In re AppHarvest Securities Litigation*, Case No. 1:21-cv-07985 (the "Securities Litigation"), together with each member of the putative class Lead Plaintiff represents in the Securities Litigation (as may be redefined or certified, the "Proposed Class"), is hereby deemed to have opted out of the Third Party Release contained in Article IX.B. of the Plan with respect to all claims asserted or to be asserted against any non-Debtor party in the Securities Litigation (the "Opt-Out Claims"), and shall not be required to execute, complete, or deliver the Release Opt-Out forms in respect of the Opt-Out Claims. Lead Plaintiff and the Proposed Class shall not be deemed Releasing Parties with respect to the Opt-Out Claims.

Potrepka Decl. ¶43.

On September 15, 2023, the Parties jointly advised the Court that they agreed to explore a resolution of the Action through private mediation and requested the Court enter a stay of the case, in part, until November 8, 2023. ECF 108. On September 18, 2023, the Court granted the Parties' joint motion, thereby staying the case, in part, until November 8, 2023. ECF 109. On October 25, 2023, Lead Counsel and counsel for the Individual Defendants engaged in a full-day mediation session before Ms. Yoshida. In the weeks following the mediation, Lead Plaintiff and the Individual Defendants continued to negotiate a possible settlement. On December 14, 2023, the

Parties agreed to Ms. Yoshida's double-blind mediator's proposal to resolve the claims in the Action. On December 15, 2023, Lead Plaintiff and the Individual Defendants notified the Court that Lead Plaintiff and the Individual Defendants had agreed in principle to resolve all issues and claims involved in this Action. ECF 112.

### C. Mediation and Settlement Negotiations

The parties reached the proposed Settlement through a protracted, good faith, arm's-length negotiation facilitated by Ms. Yoshida, who specializes in mediating complex litigation, including securities class actions.

On October 13, 2023, Lead Plaintiff and the Individual Defendants submitted to the Mediator, and exchanged with each other, mediation statements detailing the strengths and weaknesses of their claims and defenses and competing damages analyses.

On October 25, 2023, counsel for all Parties, as well as counsel for the Individual Defendants' insurers, participated in a full-day, in-person mediation. During discussions, counsel for the Parties and carriers engaged in frank discussions with the Mediator concerning the parties' and carriers' respective positions on all issues relating to liability, damages, defenses, collectability, and Lead Plaintiff's likelihood of success at future stages of the litigation, including discovery, summary judgment, and trial. The Parties did not reach agreement at this mediation session, but continued to negotiate with the assistance of the Mediator.

On December 12, 2023, the Mediator presented the Parties and their counsel with a double-blind Mediator's Recommendation (the "Recommendation") for the cash payment of $4,850,000.00 to resolve all claims in the Action.

On December 14, 2023, the Mediator informed the Parties that each party had accepted the Recommendation.

Subsequently, the Parties negotiated a Stipulation more fully documenting the Settlement, and prepared the class notice, postcard notice, summary notice, claim form, and proposed orders for preliminary approval and final approval and entering final judgment. The Parties finalized and executed the Stipulation on February 20, 2024. ECF No. 117-1.

### D.  The Proposed Settlement

#### 1.  Settlement Terms and Release of Claims

Under the terms of the Settlement, the Individual Defendants were required to pay, or cause to be paid, $4,850,000 into an Escrow Account within 30 calendar days of preliminary settlement approval (the "Settlement Fund"). Stipulation at ¶6. The Individual Defendants caused to be paid $4,850,000, in cash, into the Escrow Account as of April 3, 2024. In return for these payments, the Settlement provides that, on the Effective Date, Lead Plaintiff and the Settlement Class will release all Released Claims against the Released Defendant Parties. *See, e.g.*, *id.* at ¶¶4, 20, 40, 52.

The Settlement Fund, including any interest earned thereon, shall be used to pay the following: (i) any Taxes; (ii) Notice and Administration Expenses; (iii) attorneys' fees and expenses as approved by the Court; (iv) any other fees and expenses awarded by the Court; and (v) the claims of Authorized Claimants. *Id.* at ¶9.

#### 2.  The Court Preliminarily Approved the Settlement

On December 15, 2023, the Parties notified the Court that they had reached a settlement in principle. ECF No. 112. On February 20, 2024, Lead Plaintiff filed his Motion for Preliminary Approval of Class Action Settlement, along with the Stipulation and related documents. ECF Nos. 115-17. On March 6, 2024, the Court issued the Preliminary Approval Order, thereby preliminarily approving the proposed Settlement, certifying the Settlement Class, and directing dissemination of notice to Settlement Class Members. ECF 120.

On March 7, 2024, the Court so-ordered Lead Plaintiff's request to adjourn the Settlement Hearing date, and scheduled the Settlement Hearing to be held on June 12, 2024 at 3:00 p.m. ECF 122. On April 3, 2024, Defendants filed a letter informing the Court that they had served the notice required under the Class Action Fairness Act and requesting that the Settlement Hearing be adjourned. ECF 123. On April 4, 2024, the Court granted Defendants' letter motion and adjourned the Settlement Hearing to July 11, 2024. ECF 124. The Claims Administrator subsequently updated the Settlement website to reflect the date of the hearing and a copy of the Court's April 4, 2024 order was uploaded thereto. Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections (the "Bravata Decl.") at ¶12.

**E.  Dissemination of Notice to the Class and Reaction of Class to Proposed Settlement**

Pursuant to the Preliminary Approval Order, as of May 8, 2024, Strategic Claims Services ("SCS" or "Strategic"), the Claims Administrator, mailed 32,436 copies of the Postcard Notice to potential Settlement Class members. Bravata Decl. ¶6. The Postcard Notice directed potential Settlement Class members to the Settlement website, https://www.strategicclaims.net/apph/, where downloadable versions of the long-form Notice and Claim Form are available. Bravata Decl., Ex. C. In addition, SCS and an APPH nominee collectively emailed 69,644 potential Settlement Class members direct links to the Notice and Claim form on the Settlement website. Bravata Decl. ¶7.  In total, 102,135 potential Settlement Class Members were notified by mailed Postcard Notice or emailed a direct link to the Notice and Claim Form.  *Id.*, at ¶8.

Potential Settlement Class members were identified by transfer records provided to SCS by Lead Counsel, as well as from brokerage firms and other banks, financial institutions, and other nominees holding AppHarvest stock in street name for Settlement Class members.

The Notice provided, *inter alia*:  (i) a description of the nature of the Action and claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) the reasons for and material terms of the Settlement; (v) the Plan of Allocation; (vi) the maximum amount of attorneys' fees and expenses that will be sought; (vii) the time and manner for requesting an exclusion from the Settlement Class or objecting to the Settlement, Plan of Allocation, or the requested attorneys' fees and expenses; (viii) the date, time, and place of the Settlement Hearing; (ix) the identity and contact information of the representatives of Lead Counsel and procedures for making inquiries; and (x) the binding effect of a judgment on Settlement Class Members.

SCS also arranged for the Summary Notice (ECF 117-6) to be transmitted over *PR Newswire* and in print in the *Investor's Business Daily* on April 1, 2024. *Id.*, at ¶10.

In addition, SCS established and continues to maintain a toll-free telephone number with a live operator during regular business hours dedicated to fielding calls and questions from AppHarvest shareholders. The deadline to submit a request for exclusion or an objection is May 22, 2024.  *See* Exhibit A to Bravata Decl. To date Lead Plaintiff has only received three requests for exclusion, and no objections to the settlement. One of the exclusion requests is invalid because it fails to provide requisite transaction information.  SCS notified this individual of the inadequacy of the exclusion request and has not received a response.  Attached as **Exhibit E** to the Bravata Decl. are copies of the two valid exclusion requests.

Although the deadline to object is May 22, 2024, to date, Lead Plaintiff has not received a single objection to the Plan of Allocation. Furthermore, Lead Counsel has not received a single objection to Lead Counsel's requested attorneys' fees and expenses.

SCS will submit a supplemental declaration addressing any exclusion requests or objections, if any are received, after the deadlines have passed. Similarly, Lead Plaintiff will

address any exclusion requests or objections in his reply papers.

## ARGUMENT

### I.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

#### A.  Standard of Review and Presumption of Approval

The law favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.");[5] *Pearlstein v. BlackBerry Ltd.*, No. 13-cv-7060-CMKHP, 2022 WL 4554858, at *2 (S.D.N.Y. Sept. 29, 2022) ("The law favors compromise and settlement of class action suits."); *Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 674 (S.D.N.Y. 2011) ("Public policy, of course, favors settlement."). As a result, courts "routinely approve" settlements of complex securities class actions such as this one. *Christine Asia Co. v. Yun Ma*, No. 15-md-2631 (CM) (SDA), 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019). Judicial policy would be well-served by approval of the Settlement of this complex securities class action, which, absent resolution, could consume years of this Court's time and significant Court resources.

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims. A class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Second Circuit has recognized that a court should examine both the settlement's substantive terms and the negotiating process leading to the settlement. *Wal-Mart Stores*, 396 F.3d at 116-7; *see also*, *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *7 (S.D.N.Y. Nov. 30, 2021); *In re Citigroup Inc. Sec.*

---

[5] All internal quotations and citations are omitted unless otherwise stated.

*Litig.*, No. 09-MD-2070 (SHS), 2014 WL 2112136, at \*2-3 (S.D.N.Y. May 20, 2014).

Courts evaluate Class Action settlements under the Rule 23(e)(2) factors, as amended on December 1, 2018, which require that:

A.  the class representatives and class counsel have adequately represented the class;

B.  the proposal was negotiated at arm's length;

C.  the relief provided for the class is adequate, taking into account:

  i.   the costs, risks, and delay of trial and appeal;

  ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  iii. the terms of any proposed award of attorney's fees, including timing of payment; and

  iv.  any agreement required to be identified under Rule 23(e)(3); and

D.  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *Rosi v. Aclaris Therapeutics, Inc.*, No. 19-CV-7118 (LJL), 2021 WL 5847420, at \*3 (S.D.N.Y. Dec. 9, 2021) (Liman, J.). The Advisory Committee's notes to Rule 23(e)(2) specify that the amendment is not intended to "to displace any factor" previously adopted by any U.S. Court of Appeals, but rather to "focus" the analysis on "the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at \*3 (*citing* Fed. R. Civ. P. 23(e)(2) advisory committee's notes to 2018 amendment.). Thus, courts in the Second Circuit also continue to also consider the largely overlapping *Grinnell* factors previously laid out by the Second Circuit, in conjunction with the core Rule 23 considerations:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see Wal-Mart Stores*, 396 F.3d at 117 (evaluating proposed settlement using *Grinnell* factors). Courts note that "not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Lea,* 2021 WL 5578665, at *8.

For the reasons discussed herein, the proposed Settlement meets the criteria set forth by Fed. R. Civ. P. 23 and the Second Circuit and warrants final approval.

### B. The Rule 23(e)(2) Factors Support Approval of the Settlement as Fair, Reasonable, and Adequate

#### 1. Rule 23(e)(2)(A) and *Grinnell* Factor 3: Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class

Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class. As this Court has recognized, where class representatives and class counsel "filed and served the operative complaint," and class counsel "defended against and achieved partial success with respect to a powerful motion to dismiss filed by Defendants," prepared briefing that "demonstrated command of both the facts and the law," "prepared mediation statements" and "participated in an all-day mediation," "consulte[d] with a damages expert," and "hir[ed] an investigator who uncovered confidential witnesses, "[t]he class representative and class counsel have more than adequately represented the class." *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *4.

Here, Lead Plaintiff and Lead Counsel zealously prosecuted and vigorously litigated this Action, meeting all of the above elements and more. As detailed in the Potrepka Declaration (¶¶24–30), Lead Plaintiff and Lead Counsel filed two amended complaints in this Action, including the

"Operative Complaint" (ECF No. 76). In preparing each amended complaint, Lead Counsel conducted robust investigation of the claims alleged therein, including by hiring investigators who located confidential witnesses with information supporting Plaintiff's claims, three of whom Lead Counsel identified after the First Amended Complaint was filed and provided statements which Lead Counsel incorporated into the Operative Complaint. Lead Counsel then fully briefed (ECF Nos. 84-87) and partially fended off (ECF No. 97) Defendants' voluminous and carefully argued motion to dismiss, which challenged the Operative Complaint with respect to its allegations of falsity, materiality, scienter, and loss causation (ECF Nos. 79-81).

Lead Plaintiff and Lead Counsel further protected the Settlement Class's claims by retaining Lowenstein in connection with the bankruptcy proceedings, and successfully negotiated for the inclusion of language in AppHarvest's bankruptcy confirmation plan to prevent the release of claims against the Individual Defendants. Lead Counsel then engaged in robust research, negotiation, and mediation efforts to achieve the Settlement, including researching and drafting an extensive mediation statement that addressed liability, damages, collectability, and all other legal and factual considerations pertinent to the case; engaging and consulting with experts on complex issues relating to damages; participating in an all-day mediation with an experienced Mediator; and conducting vigorous, follow-up negotiations through the Mediator to reach an agreement favorable to the Class. Accordingly, Lead Plaintiff and Lead Counsel adequately represented the Settlement Class and achieved the Settlement through a reasonable and adequate investigation. *See, e.g., Christine Asia Co.*, 2019 WL 5257534, at *11 ("counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement"); *see also, In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895(DAB), 2011 WL 1899715, at *4 (S.D.N.Y. May

13, 2011) (although no "formal discovery" occurred, counsel's investigation permitted fair assessment of settlement).

The judgment of Lead Counsel—a law firm highly experienced in securities class action litigation—that the Settlement is in the best interests of the Settlement Class is entitled to "great weight." *City of Providence v. Aeropostale Inc.*, No. 11 civ. 7132, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015); *see Pearlstein*, 2022 WL 4554858, at *7 (similar); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) (courts give "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998)); *accord, Lea,* 2021 WL 5578665, at *7 ("Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."). Additionally, as envisioned by the PSLRA, Lead Plaintiff actively supervised this litigation and endorses the Settlement. *See* Ex. 1 (Declaration of Alan Narzissenfeld); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[A] settlement reached under the supervision of appropriately selected lead plaintiffs is entitled to an even greater presumption of reasonableness.").

Further, the common objective of maximizing recovery from Defendants aligns the interests of Lead Plaintiff and all members of the Settlement Class. *See, e.g.*, *Signet*, 2020 WL 4196468, at *2 ("[w]here plaintiffs and class members share the common goal of maximizing recovery, there is no conflict"); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Regardless, Lead

Plaintiff has no conflicts with other members of the Settlement Class.

Accordingly, Lead Plaintiff and Lead Counsel have adequately represented the Class, and this factor supports final approval of the Settlement.

### 1. Rule 23(e)(2)(B): The Settlement Was Negotiated At Arms' Length

A "presumption of fairness, adequacy, and reasonableness" may attach when a proposed settlement is "reached in arm's length negotiations between experienced, capable counsel" who have a sufficient foundation for understanding the merits of the claims and defenses asserted. *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *4 *citing Wal-Mart Stores*, 396 F.3d at 116; *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x. 37 (2d Cir. 2016).

The Settlement merits such a presumption of fairness. As further explained in the Potrepka Declaration (Potrepka Decl., ¶¶45-50), the Settlement was achieved only after thorough arm's-length negotiations between well-informed and experienced counsel, a full-day mediation before Ms. Yoshida, briefing in connection the mediation, and vigorous subsequent negotiations facilitated by the Mediator. *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *4 ("experienced, capable counsel" and "all-day mediation session before a well-regarded and experienced mediator" supported that the settlement was the result of arm's length negotiation); *see also Pearlstein*, 2022 WL 4554858, at *7 (*citing D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)) ("The hard fought, arm's-length negotiations and involvement of an experienced mediator helps to ensure that the proceedings were free of collusion and undue pressure.").[6] The Settlement ultimately resulted from a double-blind recommendation by Ms. Yoshida and accepted by each of the Parties, further supporting that the Settlement resulted from arm's length negotiation. *See Signet*, 2020 WL

---

[6] Defendants were represented by Cooley LLP, whose attorneys are highly experienced in defending securities class action litigation.

4196468, at *3 (that settlement was the product of a mediator recommendation was significant).

Thus, the Settlement was the result of good faith, arm's length negotiations, and this factor supports final settlement approval.

### 2. Rule 23(e)(2)(C) and *Grinnell* Factors 1 and 4 Through 9: The Relief Provided to the Settlement Class is Fair, Reasonable, and Adequate

In deciding whether a proposed settlement is adequate there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Wal-Mart*, 396 F.3d at 119. When reviewing a settlement's reasonableness, "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI*, 2007 WL 2230177, at *4 (S.D.N.Y. Jul. 27, 2007). Rule 23(e)(2)(C) tasks courts to consider whether "the relief provided for the class is adequate[,]" taking into account four factors. The Settlement satisfies each factor.

### a) Rule 23(e)(2)(C)(i): Costs, Risks, and Delay of Trial and Appeal

**Risks and Costs of Securities Litigation**: Courts in this Circuit have long recognized that securities class actions like this one are inherently complex and "notably difficult and notoriously uncertain to litigate." *Facebook,* 2015 WL 6971424, at *3; *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012); *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-CV-02237 JSR, 2008 WL 9019514, at *2 (S.D.N.Y. Nov. 25, 2008) (similar); *see also*, *Pearlstein*, 2022 WL 4554858, at *5 ("Securities litigation generally involves complex issues of fact and law. . .These risks would be exacerbated by the risks inherent in all shareholder litigation, such as the unpredictability of a lengthy and complex jury trial, the risks that witnesses would suddenly become unavailable or jurors could react to the evidence in unforeseen ways."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02–CV–3400 (CM)(PED),

2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) ("securities class actions are generally complex and expensive to prosecute [and] readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation").

This case was no different and involved complex issues of liability and damages. Indeed, the Court's Opinion and Order concerning the motion to dismiss proves the difficulty of securities class action litigation as only two alleged misstatements survived, and no claims survived against Defendants Webb or Eggleton. ECF 97. Lead Plaintiff would still have to achieve class certification, complete complex fact and expert discovery, withstand summary judgment and pre-trial motions, prepare for and obtain a jury verdict, litigate post-trial motions, and withstand lengthy appeals. These hurdles are costly, burdensome, and would take years. *See Signet*, 2020 WL 4196468, at *5 ("Achieving a litigated verdict would have required substantial additional time and expense."); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense and duration of continued litigation supports final approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable"); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery."). These practical realities weigh in favor of approving the proposed Settlement.

**Risks of Litigating Liability**: Lead Plaintiff faced colorable risks in developing a factual record to establish liability and damages on a motion for summary judgment or at trial. In their motion to dismiss, Defendants challenged four elements of Lead Plaintiffs' securities fraud claims:

falsity, materiality, scienter, and loss causation (ECF Nos. 79-81). Defendant Lee would likely continue to argue each of these elements if the litigation proceeded. *See City of Providence*, 2014 WL 1883494, at *15 ("Defendants would never concede their liability and would likely continue to press these defenses and others at summary judgment and trial."). Moreover, Defendant Lee emphatically denies Lead Plaintiff's claims, including whether the alleged misstatements were materially misleading, and whether he acted with the requisite scienter. For instance, in their motion to dismiss, Defendants challenged falsity by arguing that the surviving misstatements only "concerned the Company's ability to *recruit* and *hire* employees during a global pandemic." ECF 97 at 76. Although the Court found that the Operative Complaint's allegations could be construed as "more general" and that Defendant Lee plausibly misstated "how COVID-19 impacted the Company's operations, including its ability to *staff* its facility," *id.* at 77, discovery could have disproved the inferences that the Court drew in Lead Plaintiff's favor at the pleadings stage. Lead Counsel anticipates that counsel for Defendants would take the depositions of the Confidential Witnesses cited in the Operative Complaint and seek to challenge their credibility, and there is no guarantee that other witnesses would be found and testify favorably for Lead Plaintiff.

Lead Plaintiff also faced the notoriously difficult task of establishing scienter, and Defendant Lee would have been certain to testify that he did not make the surviving misstatements with an intention to deceive or conceal information. *Pearlstein*, 2022 WL 4554858, at *5 ("Plaintiffs face a substantial risk involved in proving scienter, because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult."); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y.2000) ("scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Risks like these militate in favor of settlement, because "it is difficult to predict" how juries will decide difficult issues like scienter

and damages in complex securities class actions. *In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at \*9 (S.D.N.Y. Nov. 7, 2007).

      **Risks of Litigating Causation and Class Certification**: At class certification, summary judgment, and trial, Defendant Lee would have undoubtedly argued that the alleged misstatements were not the cause of Lead Plaintiff's losses, and that Settlement Class Members suffered no damages. Loss causation and damages analyses typically require complex economic and statistical assessments by experts at summary judgment, in pre-trial motions, and at trial, providing multiple opportunities for Lee to establish that the price declines of AppHarvest's common stock and warrants were caused by factors unrelated to the alleged fraud and no damages had occurred. Even on the best facts, loss causation and damages issues are often an unpredictable and expensive "battle of the experts." *Signet*, 2020 WL 4196468 at \*11. Here, the Court observed in its decision on the motion to dismiss that "it is unclear exactly what impact staffing issues had on the Company's ability to meet its financial projections." ECF 97 at 77. In later proceedings, Defendant Lee was certain to argue the specific facts revealed on August 11, 2021, did not "correct" his statements made on May 25, 2021, and that none of the information in the alleged corrective disclosures connected the disappointing results and guidance that were reported to COVID-19, recruiting, or staffing. If Defendant Lee was successful, Lead Plaintiff would have had to parse out the fraud-related portion of the stock and warrant price drops, which could have diminished or eliminated recoverable damages entirely.

      Defendants would also undoubtedly have raised other vigorous challenges to class certification, including with respect to the length of the relevant time period and Lead Plaintiff's adequacy. Many of these disputes "could well devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268. The Second Circuit's recent decision in *Arkansas Teacher*

*Retirement System v. Goldman Sachs Group, Inc.*, 77 F.4th 74, 81 (2d Cir. 2023) heightened these very same concerns, where the Second Circuit, after approximately 13 years of litigation, decertified the class and effectively ended the case finding statements about Goldman's business practices and approach to conflicts-of-interest management were too "generic" to have impacted Goldman's stock price, and there was an insufficient nexus between the front-end statement and back-end price decline. *Id.* at 105; *see also In re Kirkland Lake Gold Ltd. Sec. Litig.*, No. 20-CV-4953 (JPO), 2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024) (similar). Defendants would no doubt have challenged price impact at class certification, summary judgment, and trial.

Assuming arguendo that class certification were granted, class certification orders are reviewable and can be modified at any time by the Court before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Ebbert v. Nassau Cty.*, No. CV 05-5445 AKT, 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) (risk of potential de-certification supported settlement approval). Furthermore, any appeal pursuant to Federal Rule of Civil Procedure 23(f) would have added considerable delay and complexity. The Settlement avoids any uncertainty with respect to class certification and the risks of maintaining certification of the Class through trial and on appeal. *See* Potrepka Decl. ¶¶72-73; *see also In re Frontier Commc'ns Corp.*, No. 3:17-cv-01617-VAB, 2022 WL 4080324, at *13 (D. Conn. May 20, 2022) ("the process of class certification [in litigation] would have subjected Plaintiffs to considerably more risk than the ... certification that was ordered for the sole purpose of the Settlement.").

**The Certainty and Benefits of the Settlement Compared to the Risks of Withstanding a Greater Judgment**: The Settlement provides an immediate cash recovery of $4,850,000. This favorable result is well within the range of reasonableness to warrant final approval. In consultation

with their experts, Lead Counsel estimates if the Court had sustained the Operative Complaint in full (which it did not), and Lead Plaintiff had fully prevailed on his alleged claims at both summary judgment and trial, and if the Court and jury accepted Lead Plaintiff's damages theory (including proof of loss causation, which would be hotly contested) over the entire Settlement Class Period from February 1, 2021 through August 10, 2021, Lead Plaintiff's best case scenario—the maximum aggregate, theoretical damages—would be approximately $104 million in damages for AppHarvest common stock, and approximately $8 million in damages for AppHarvest warrants, for a combined total of approximately $112 million in damages. Under Lead Plaintiff's estimated best-case scenario, assuming a 100% claims take rate and no disaggregation of confounding information, the Settlement represents approximately a 4.3% recovery, which is well within the zone of reasonableness for a complex securities class action like this one. *See* Potrepka Decl. ¶82; Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements 2022 Review and Analysis, Cornerstone Research, at Figure 5 (median 2022 settlements in the $75-$149 million range is 4.4%) (ECF No. 117-9); *In re N. Dynasty Minerals Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL 308242, at *13 (E.D.N.Y. Jan. 26, 2024) (finding a settlement amount of 2.3% of the maximum estimated aggregate damages within the reasonable range).

However, a full damages recovery was counterfactual and implausible given that the sole remaining alleged misstatements were made on May 25, 2021. Lead Plaintiff's damages expert estimated that for purchases made between May 26, 2021 and August, 10, 2021, inclusive, aggregate damages were approximately $33 million for AppHarvest common stock and $3 million for AppHarvest warrants, for a combined total of approximately $36 million in damages. Accordingly, when accounting for the Court's orders, the Settlement represents an excellent 13.47% recovery. *See* Potrepka Decl. ¶83; Laarni T. Bulan & Laura E. Simmons, Securities Class

Action Settlements 2022 Review and Analysis, Cornerstone Research, at Figure 5 (median 2022 settlements in the less than $25 million range is 11.1%) (ECF No. 117-9); *Pearlstein*, 2022 WL 4554858, at *6 (settlement over 13% was "well within the range of reasonableness and, in fact, considerably above the high end of historical averages") (citing cases).

It is doubtful that Lead Plaintiff would have obtained a better result for the Settlement Class than the Settlement if litigation continued given the significant risks faced in collecting a future settlement or judgment.[7] As a result of the Bankruptcy, any recovery against AppHarvest has been foreclosed. Upon information and belief, Lead Counsel does not believe Defendant Lee would have had adequate personal assets to satisfy a judgment larger than the Settlement Amount. Thus, in this Action, liability insurance policies were likely the only sources of funding for any potential settlement. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 427-28 (S.D.N.Y. 2001) (approving settlement following corporate defendants' bankruptcy where "to the extent that the Individual Defendants had the ability to contribute to any judgment obtained, such contribution likely would be insufficient to wholly satisfy such judgment"). If Lead Plaintiff and Defendant Lee continued with discovery, class certification, expert discovery, summary judgment briefing, trial, and appeals (all of which pose significant risk), Defendant Lee would have likely exhausted significant amounts (if not all) of the applicable insurance coverage—assuming coverage was not disclaimed. *See In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 763 (2d Cir. 2020) (affirming settlement approval in part because defendant company had filed for bankruptcy and insurance funds were "wasting," thereby "creating a risk that further litigation would drain the amount available to shareholders."); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (settlement approved where continued litigation would

---

[7] When the Settlement was reached, the question of whether (and when) Lead Plaintiff could ever revive claims against Defendants Webb and Eggleton was highly speculative and uncertain.

consume insurance funds after corporate defendants' bankruptcies). Accordingly, even if the case settled before trial, there is no guarantee that sufficient insurance coverage would remain to collect a larger recovery, or any meaningful recovery at all.[8]

***

In sum, the uncertainties of continued litigation and probable collectability issues given the Bankruptcy posed a considerable risk that the Settlement Class would receive smaller recovery or no recovery at all. While the Settlement of $4,850,000 would be a good recovery in any securities class action of this size, because it provides immediacy and certainty of recovery while eliminating all risks and costs of continued litigation, it is particularly outstanding here.

### b) Rule 23(e)(2)(C)(ii): Effectiveness of the Proposed Method of Distributing Relief to the Settlement Class

Rule 23(e)(2)(C)(ii) requires consideration of the effectiveness of the method of distributing relief to the class. The Settlement, like most securities class action settlements, will be distributed with the assistance of an established and experienced claims administrator, Strategic Claims Services. *See, e.g., Balestra v. ATBCOIN LLC*, No. 17-cv-10001 (VSB), 2022 WL 950953, at *6 (S.D.N.Y. Mar. 29, 2022) ("Strategic Claims is accustomed to being approved by courts in this Circuit and District to provide notice of the settlement and claim processing services."); *Guyer v. MGT Cap. Invs., Inc.*, No. 18-cv-9228 (ER), 2019 WL 8403029, at *2 (S.D.N.Y. Dec. 17, 2019) (approving the appointment of Strategic as the claims administrator); *In re Altair Nanotechnologies Sec. Litig.*, No. 14-cv-7828 (AT), 2016 WL 7647043, at *1 (S.D.N.Y. Jan. 22, 2016) (same); *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *6 (same).

Strategic will employ a well-established securities class action distribution process.

---

[8] Regardless, the defendants' ability to withstand a greater judgment is not dispositive. *See, e.g.*, *Deutsche Bank*, 236 F.3d at 86-87 (approving settlement despite defendants' ability to withstand a greater judgment was not an abuse of discretion, in light of the risks of establishing liability and the other *Grinnell* factors).

Namely, a potential Settlement Class Member will submit, either by mail or online using the Claims Administrator's website, the Court-approved Claim Form that provides simple instructions to claimants concerning the necessary information they must present to process their claims and the deadlines by which they must do so. Based on the trade information provided by claimants, the Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss, as defined in the Plan of Allocation included in the Notice, or in such other plan of allocation as the Court may approve. *See* Stipulation at ¶25. After the Settlement reaches its Effective Date (Stipulation at ¶27) and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants.  Stipulation at ¶27.

### c) Rule 23(e)(2)(C)(iii): Terms of the Proposed Attorneys' Fees

As discussed in the Memorandum of Law in Support of Lead Counsel's Unopposed Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, filed concurrently herewith, Lead Counsel seeks an award of attorney's fees pursuant to the common fund doctrine of up to 25% of the Settlement Fund, or $1,212,500.00, and reimbursement of $166,987.77 in out-of-pocket expenses. A fee of 25% is well within the range of fee awards granted in comparable securities class actions, if not comparably lower. *See*, e.g., *In re: Revolution Lighting Tech., Inc. Sec. Litig.*, 1:19-cv-00980-JPO, Dkt. No. 72 (S.D.N.Y. July 8, 2020) (awarding attorneys' fees of 33.33% of the settlement fund plus expenses where no motion to dismiss was ever filed); *Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc.*, 1:16-cv-2400-AT-SN, Dkt. No. 92, at ¶ 5 (S.D.N.Y. Dec. 13, 2017) (awarding a 30% attorneys' fee before the motion to dismiss was filed); *In re JPMorgan Chase & Co. Sec. Litig.*, 2016 WL 11590485, at *2 (S.D.N.Y. May 10, 2016) (granting fee of 25% of $150

million settlement); *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *8 (awarding 30% because it is a "common fee award in similar actions in the Second Circuit"); *In re Eletrobras Sec. Litig.*, Case No. 15-cv-5754-JGK, Dkt. No. 142 (S.D.N.Y. Dec. 12, 2018) (awarding 25%); *see also City of Providence*, 2014 WL 1883494, at *10 (awarding 33%); *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) (awarding 33% of $13 million settlement); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 368-69 (S.D.N.Y. 2002) (awarding 33-1/3%). Accordingly, the 25% fee requested here is consistent with fee awards in similar cases in this District and nationwide.

### d) Rule 23(e)(2)(C)(iv): Agreements Required to Be Disclosed Under Rule 23(e)(3)

The Parties have entered a Supplemental Agreement setting forth conditions under which the Individual Defendants shall have the sole option to terminate the Settlement and render the Stipulation null and void. This option rests on the event that requests for exclusion from the Settlement Class exceed certain agreed-upon terms.[9] The Supplemental Agreement and the Stipulation are the only agreements concerning the Settlement entered into by the Parties.

### 3. The Reaction of the Settlement Class to the Settlement Supports Settlement Approval

"[T]he favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in [the] *Grinnell* inquiry." *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *5. Pursuant to the Court's Order Granting Preliminary Approval of Settlement (Dkt. No. 120, the "Preliminary Approval Order"), the Court-appointed Claims Administrator, SCS, has mailed copies of the Notice and Proof of Claim form to potential Settlement Class members and

---

[9] The confidentiality of the Supplemental Agreement is a "standard practice" in securities litigation to reduce the possibility of groups being incentivized to collectively opt out in hopes of leveraging an individual settlement, and "has no negative impact on the fairness of the Settlement." *Christine Asia Co.*, No. 2019 WL 5257534, at *15.

beneficial purchasers holding AppHarvest securities. *See* Bravata Decl. at ¶6. As of May 8, 2024, Strategic has mailed 32,436 Postcard Notices to potential Settlement Class members and emailed 55 additional potential Settlement Class members to notify of the settlement. Bravata Decl. ¶¶6-7. In addition, a nominee account holders informed Strategic that they emailed 69,644 customers to notify them of this settlement. *Id.*, ¶7. On April 1, 2024, Strategic published the Summary Notice on *Investor's Business Daily* and  transmitted it over PR Newswire. *Id.* ¶10. The Notice and other documents are also posted on a website maintained by Strategic dedicated to this Action to assist potential Settlement Class members, which will continue to be maintained and updated as appropriate. *Id.* ¶12.

No objections and only three requests for exclusion have been received. Bravata Decl. ¶¶13-14. This lack of any meaningful objection or request of exclusion further supports the granting of final approval of the proposed Settlement. *See, e.g.*, *Chen-Oster v. Goldman Sachs & Co.*, No. 10-cv-6950 (AT) (RWL), 2023 WL 7325264, at *1 (S.D.N.Y. Nov. 7, 2023) (only 16 exclusion requests indicated positive response to settlement). Lead Plaintiff will respond to any additional exclusion requests and objections in his reply papers.

## II.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable and adequate. *Giant Interactive*, 279 F.R.D. at 163. "Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable." *Signet*, 2020 WL 4196468, at *13; *In re Telik Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) (similar). Plans of allocation, however, need not be tailored to fit each and every class member with "mathematical precision." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Giant Interactive*,

279 F.R.D. at 163 ("a plan of allocation need not be perfect"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 430 (S.D.N.Y. 2007) ("Exactitude is not required in allocating consideration to the class, provided that the overall result is fair, reasonable and adequate."). Moreover, in assessing a proposed plan of allocation, courts give great weight to the opinion of informed counsel. *See, e.g., Flag Telecom*, 2010 WL 4537550, at *21 (the conclusion of "experienced and competent counsel . . . that the Plan of Allocation is fair and reasonable is . . . entitled to great weight"); *EVCI*, 2007 WL 2230177, at *11 ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.").

Lead Plaintiff proposes a plan for allocating the net proceeds of the Settlement among members of the Settlement Class who timely and validly submit Claim Forms to the Claims Administrator in connection with this Settlement, in accordance with the requirements established by the Court, and which is described in the proposed Notice. *See* Stipulation Ex. A-1 at 12. Lead Counsel prepared the proposed Plan of Allocation (the "Plan"), which is set forth in the Notice under the title "Plan of Allocation of Net Settlement Fund," in consultation with Lead Plaintiff's financial and damages experts. Under the Plan, a Recognized Loss amount will be calculated for Settlement Class Members' transactions in publicly traded AppHarvest common stock and warrants during the Settlement Class Period based principally on the differences in the estimated amounts of artificial inflation in these securities on the date of purchase and the date of sale. *Id.* Based on Lead Plaintiff's expert's calculations, the Plan utilizes the "constant dollar" method and estimates that the alleged artificial inflation in the price of AppHarvest common stock and warrants during the Settlement Class Period is $3.34 per share and $1.68 per warrant, respectively. *See Sjunde AP-Fonden v. General Elec. Co.*, No. 17-CV-8457 (JMF), 2023 WL 6314939, at *16 (S.D.N.Y. Sep. 28, 2023) ("courts commonly accept the constant-dollar inflation method").

The Plan of Allocation also takes into account the Court's dismissal of certain claims asserted by the Settlement Class relating to statements made prior to May 25, 2021. Accordingly, Recognized Loss calculations for purchases of publicly traded AppHarvest common stock and warrants will be multiplied by 10% (i.e., discounting by 90%) to reflect the substantially lower likelihood of success on the dismissed claims, which would be viable only if the Court's dismissal was reversed on appeal, and such claims would then face the additional risk of proof due to passage of time. *Id.* at 14. *See American Bank Note Holographics Inc.*, 127 F. Supp. 2d at 429 ("Allocation formulas, including certain discounts for certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim."); *Id.* at 12-17.

Each Claimant's Recognized Loss amount will be compared to their overall Market Loss or Market Gain (the sum of all expenditures made in connection with purchases of AppHarvest securities during the Settlement Class Period less any sales proceeds and a "holding value" ascribed to securities retained as of close of trading on August 10, 2021) to determine whether the Claimant benefitted from transactions during the Settlement Class Period when the price of AppHarvest securities were inflated.[10] *See Gruber v. Gilbertson*, No. 16-cv-9727 (JSR), 2022 U.S. Dist. LEXIS 108611, *37 (S.D.N.Y. June 17, 2022) (approving comparison of recognized claim amounts to market gain or loss). An Authorized Claimant's distribution under the Plan will be their *pro rata* share of the Net Settlement Fund based on their Recognized loss compared to the aggregate Recognized Losses of all Authorized Claimants. *Glob. Crossing*, 225 F.R.D. at 462 ("*Pro-rata* distribution of settlement funds based on investment loss is clearly a reasonable

---

[10] If a Claimant had a Market Gain with respect to their overall transactions in AppHarvest Securities during the Settlement Class Period, the value of the Claimant's Recognized Loss will be set to zero. If a Claimant suffered an overall Market Loss with respect to their overall transactions in AppHarvest Securities during the Settlement Class Period, but that Market Loss was less than the Claimant's Recognized Loss, then the Claimant's Recognized Loss will be limited to the amount of the Market Loss.

approach."). Pursuant to the Plan, no distribution will be made to a Claimant with a Distribution Amount of less than $10.00. *Id.* at 463 ("Securities Lead Counsel acted reasonably in including a $10 de minimis threshold in the allocation plan").

Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distributions will be made to eligible claimants in the form of checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining, and if feasible and economical, it will be redistributed among eligible claimants who have cashed their checks. *See* Stipulation ¶28. Any balance that still remains in the Net Settlement Fund after any reallocation, or if a reallocation is not undertaken, feasible, or economical, will be contributed to the Investor Protection Trust or other non-profit that the Court, in its discretion, approves under the *cy pres* doctrine. *Id.; Chen-Oster*, 2023 WL 7325264, at *2-3 (approving *cy pres* distribution for residual funds); *In re Patriot Nat'l, Inc. Sec. Litig.*, No. 1:17-CV-01866-ER, 2021 WL 1040462, at *2 (S.D.N.Y. Mar. 18, 2021) (approving Investor Protection Trust as *cy pres* designee).

For these reasons, Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund and should be approved. Moreover, Lead Plaintiff has received no objections to the Plan of Allocation.

## III.    NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Lead Plaintiff has provided the Settlement Class with notice of the proposed Settlement that satisfied all the requirements of Rule 23(e) and due process in accordance with the Court's preliminary approval order. Rule 23(e) require that notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that [are] open to them in connection with the proceedings." *Melito v. Experian Mktg. Sols., Inc*., 923 F.3d 85, 95 (2d Cir.

2019); *Lomeli v. Sec. & Inv. Co. Bahrain*, 546 F. App'x. 37, 41 (2d Cir. 2013); *Wal-Mart Stores*, 396 F.3d at 114. Pursuant to the PSLRA, the notice must also include an explanation of the plaintiff's recovery. *See In re Take Two Interactive Sec. Litig.*, No. 06 Civ. 803 (RJS), 2010 WL 11613684, at *12–13 (S.D.N.Y. June 29, 2010) (quoting 15 U.S.C. §78u-4(a)(7)). Furthermore, the notice must inform "that the court will exclude from the class any member who requests exclusion," and "the binding effect of a class judgment [on members] under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(v)-(vii).

Both the substance of the Notice and the method of its dissemination to potential members of the Settlement Class satisfied these standards. The Notice provided all the necessary information for Settlement Class members to make an informed decision regarding the Settlement, the Fee and Expense Application, and the Plan of Allocation. The Notice informed Settlement Class members of, among other things: (1) the amount of the Settlement; (2) the reasons the Parties are proposing the Settlement; (3) the estimated average recovery per affected share of AppHarvest common stock and warrants; (4) the maximum amount of attorneys' fees and expenses that will be sought and the possibility that Lead Plaintiffs might seek reimbursement for their time and expenses in connection with their representation of the proposed class in accordance with the PSLRA; (5) the identity and contact information for the representatives of Lead Counsel who are reasonably available to answer questions from Settlement Class Members concerning matters contained in the Notice; (6) the right of Settlement Class Members to object to the Settlement; (7) the binding effect of a judgment on Settlement Class Members; and (8) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. § 78u-4(a)(7). The Notice also contains the Plan of Allocation and provides Settlement Class Members with information about how to submit a Proof of Claim form in order to be eligible to receive a distribution from the Net Settlement Fund.

As of May 8, 2024, Strategic has mailed 32,436  Postcard Notices to potential Settlement Class members or their nominees. Bravata Decl., ¶6. Potential Settlement Class members were identified by the Company's transfer agent as well as brokerage firms, banks, institutions and other third-party nominees holding AppHarvest shares and warrants in street name. *Id.*, ¶¶6-7. A nominee account holder informed Strategic that they emailed 69,644 customers to notify them of this settlement. *Id.*, ¶7.  In total, 102,135 potential Settlement Class Members were notified by mailed Postcard Notice or emailed a direct link to the Notice and Claim Form. *Id.*, ¶8. The Court-approved summary notice was also published on *PR Newswire* and *Investors' Business Daily*, national wire services. *Id.*, ¶10. Strategic maintains a toll-free telephone number allowing Settlement Class members to call and speak with a live operator regarding the status of the Settlement and/or obtain answers to any questions they may have or to seek answers via email. *Id.*, ¶11. Finally, to assist potential Settlement Class members, Strategic maintains a website dedicated to this Action (https://www.strategicclaims.net/apph/) containing the Notice, summary notice and other important documents related to the Action and the proposed Settlement. *Id.*, ¶12.

This combination of email and first class mail, supplemented by notice in an appropriate publication, transmitted over a newswire, and set forth on internet websites, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *6; *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04-cv-8144(CM), 2009 WL 5178546, at *12-13 (S.D.N.Y. Dec. 23, 2009).

## IV.    THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23, AND THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Preliminary Approval Order preliminarily certified the Settlement Class for the purposes of Settlement pursuant to Rules 23(a) and (b)(3). *See* ECF 120 at ¶3. Certification was proper because the Settlement Class meets the four requirements of Rule 23(a), (numerosity,

commonality, typicality, and adequacy of representation), and Rule 23(b)(3). *In re Am. Int'l Group Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). None of the facts underlying the Court's preliminary class certification have changed in the intervening period, and there have not been any objections to class certification. For the reasons stated in Lead Plaintiff's memorandum of law in support of preliminary approval and the Court's Preliminary Approval Order, Lead Plaintiff respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3) for settlement purposes.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (1) approve the proposed Settlement as fair, reasonable, and adequate; (2) approve the Plan of Allocation as fair, reasonable, and adequate; (3) affirm its certification of the Settlement Class for Settlement purposes; and (4) grant such other and further relief as the Court deems just and proper.

Dated: May 8, 2024

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Gregory M. Potrepka*
Gregory M. Potrepka

Shannon L. Hopkins (SH-1887)
Gregory M. Potrepka (GP-1275)
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
shopkins@zlk.com
gpotrepka@zlk.com

*Lead Counsel for Lead Plaintiff and the Settlement Class*