UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| In re AppHarvest Securities Litigation |

Case No. 1:21-cv-07985-LJL

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
<u>REIMBURSEMENT OF LITIGATION EXPENSES</u>**

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ................................................................................. 1
II.    LEAD COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES IS
       REASONABLE AND SHOULD BE APPROVED ...................................................... 4
    A.  A Reasonable "Percentage of the Fund" Recovered Is the Appropriate Method for
        Awarding Attorneys' Fees in Common Fund Cases ...................................................... 4
    B.  The Requested Fee Award of 25% of the Common Fund Fair, Reasonable, and Adequate
        Considering District and Circuit Precedent.................................................................... 7
    C.  The Second Circuit's *Goldberger* Factors Confirm that the Requested Fee is
        Reasonable......................................................................................................................... 8
        1.  Lead Counsel Has Devoted Substantial Time and Labor to the Action to Achieve
            a Positive Result for the Benefit of Class.............................................................. 8
        2.  The Magnitude and Complexity of the Action Support the Requested Fee........ 11
        3.  The Risk of the Litigation Supports the Requested Fee ..................................... 12
        4.  The Contingent Nature of Counsel's Representation........................................... 14
        5.  The Quality of Lead Counsel's Representation ................................................... 15
        6.  The Requested Fee in Relation to the Settlement................................................ 19
        7.  Public Policy Considerations Support the Requested Fee................................... 20
    D.  The Requested Attorneys' Fees are Reasonable Under the Lodestar Cross-Check..... 21
    E.  The Reaction of the Class Supports the Requested Fee Award ................................... 23
III.   LEAD PLAINTIFF'S REQUESTS FOR REIMBURSEMENT OF LITIGATION
       EXPENSES IS REASONABLE.............................................................................. 23
IV.    CONCLUSION...................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ............................................................................................ 15

*Aponte v. Comprehensive Health Mgmt., Inc.*,
No. 10-cv-4825 (JLC), 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) .................................... 11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ............................................................................................................ 20

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ............................................................................................................ 20

*Bentley v. Legent Corp.*,
849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, *Herman v. Legent Corp.*, 50 F.3d 6
(4th Cir. 1995) ..................................................................................................................... 15

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......................................................................................................... 4, 5

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) .................................................................................................. 5

*Chen-Oster v. Goldman Sachs & Co.*,
No. 10-cv-6950 (AT) (RWL), 2023 WL 7325264 (S.D.N.Y. Nov. 7, 2023) ......................... 27

*Christine Asia Co., Ltd. v. Yun Ma*,
No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).... 5, 7, 20, 25

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ................................................................................................ 14

*City of Providence v. Aeropostale, Inc.*,
No. 11-cv-7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v.
Pierson,* 607 F. App'x. 73 (2d Cir. 2015) ..................................................................... passim

*City of Westland Police & Fire Ret. Sys. v. Metlife, Inc.*,
No. 12-cv-0256 (LAK), 2021 WL 2453972 (S.D.N.Y. June 15, 2021) ................................ 27

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998) ................................................................................................ 22

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000) ............................................................................................ passim

*Gormley v. Magicjack Vocaltec Ltd.*,
1:16-cv-01869-VM, Dkt. No 70 (S.D.N.Y. Jan. 19, 2018) .................................................. 23

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:15-cv-07192 (CM), 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .............................. 22

*Hicks v. Stanley*,
No. 01-cv-10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................ 21

*In re 3D Sys. Sec. Litig.*,
No. 21-cv-1920 (NGG) (TAM), 2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) .......................... 27

*In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
MDL No. 03-1529 (LMM), 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) *aff'd,* 272 F. App'x.
9 (2d Cir. 2008) ................................................................................................................... 19

*In re Allergan PLC Sec. Litig.*,
No. 18-cv-12089 (CM) (GWG), 2022 WL 17584155 (S.D.N.Y. Dec. 12, 2022) .................. 13

*In re Alstom SA Sec. Litig.*,
    741 F. Supp. 2d 469 (S.D.N.Y. 2010)......................................................................... 13
*In re Am. Bank Note Holographics, Inc. Sec. Litig*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................... 14
*In re Apple Comput. Sec. Litig*.,
    No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991).................................. 15
*In re BankAtlantic Bancorp, Inc.,*
    No. 07-cv-61542, 2010 WL 6397500 (S.D. Fla. 2010) *aff'd,* 688 F. 3d 713
    (11th Cir. 2012).................................................................................................. 15
*In re Beacon Associated Litigation*,
    No. 09-cv-777 (CM), 2013 WL 2450960 (S.D.N.Y. May 9, 2013) ..................................... 20
*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)............................................................... 3, 22, 24
*In re Canadian Superior Sec. Litig.*,
    No. 09-cv-10087 (SAS), 2011 WL 5830110, (S.D.N.Y. Nov. 16, 2011) ......................... 7, 25
*In re China Sunergy Sec. Litig.*,
    No. 07-cv-7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................ 28
*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05-cv-10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)................................... 3
*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    No. MDL 12- 2389 (RWS), 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re
    Facebook, Inc.,* 674 F. App'x 37 (2d Cir. 2016) ...................................................... 11
*In re FLAG Telecom Holdings, Ltd.*
    No. 02-cv 3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........ 11, 19, 21, 26
*In re Frontier Commc'ns Corp.*,
    No. 3:17-cv-01617 (VAB), 2022 WL 4080324 (D. Conn. May 20, 2022) ........................... 26
*In re Giant Interactive Grp. Inc.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................... 18
*In re Heelys, Inc. Derivative Litig.*,
    No. 3:07-cv-1682 (K), 2009 WL 10704478 (N.D. Tex. Nov. 17, 2009)............................... 22
*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-cv-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................... 18, 22
*In re IMAX Sec. Litig.*,
    No. 06-cv-6128 (NRB), 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012)................................... 5
*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    No. 04-cv-8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................... 6, 19, 27
*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ............................................................................ 6
*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................... 27
*In re Mindbody, Inc. Sec. Litig.*,
    No. 1:19-cv-08331, ECF 137-4, 144 (S.D.N.Y. Oct. 27, 2022)....................................... 26
*In re N. Dynasty Minerals Ltd. Sec. Litig.*,
    No. 20-cv-5917 (TAM), 2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ................................ 17
*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x 760 (2d Cir. 2020) ........................................................................... 13

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 1:16-cv-06728 (CM) (SDA), 2020 WL 4196468 (S.D.N.Y. July 21, 2020). 7, 14, 24, 25
*In re Sterling Foster & Co., Inc., Sec. Litig.*,
   238 F. Supp. 2d 480 (E.D.N.Y. 2002) .................................................................................. 22
*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y.2008) ................................................................. 7, 12, 22, 23
*In re Tesla Inc. Sec. Litig.*,
   Case No. 3:18-cv-04865-EMC, Doc. No. 697 (N.D. Cal. June 14, 2023) ............................ 15
*In re U. S. Steel Consolidated Cases*,
   No. 2:17-cv-00579, ECF 346-8, 358 (W.D. Pa. Mar. 21, 2023) ........................................... 26
*In re Veeco Instruments Inc. Sec. Litig,*
   MDL No. 05-01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................ 19, 20
*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   No. 15-cv-1249, 2018 WL 6333657 (S.D.N.Y. Dec. 4, 2018) ........................................ 7, 22
*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................................. 6, 21
*In re: Revolution Lighting Tech., Inc. Sec. Litig.,*
   No. 1:19-cv-00980 (JPO), Dkt. No. 72 (S.D.N.Y. July 8, 2020) .......................................... 7
*Landy v. Amsterdam*,
   815 F.2d 925 (3d Cir. 1987) ................................................................................................. 15
*Levin v. Resource Capital Corp.*,
   1:15-cv-07081-LLS, Dkt. No. 95 (S.D.N.Y. Aug. 3, 2018) .................................................. 23
*Luo v. Sogou et al.*,
   1:19-cv-00230-LJL, Dkt. No. 124 (S.D.N.Y. May 22, 2021) ................................................ 23
*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................................... 8
*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) ................................................................................................. 12
*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ............................................................................................................... 22
*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010) ............................................................................................................... 13
*Pearlstein v. BlackBerry Ltd.*,
   No. 13-cv-7060 (CM) (KHP), 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ................ passim
*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................................................. 15
*Rosi v. Aclaris Therapeutics, Inc.*,
   No. 19-cv-7118 (LJL), 2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) ................................ passim
*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999) .................................................................................................... 6
*Taft v. Ackermans*,
   No. 02-cv-7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ..................................... 8
*Teachers' Ret. Sys. Of La. v. A.C.L.N., Ltd.*,
   No. 01-cv-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ............................. 12, 19
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..................................................................................... 5, 6
*Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v.*
    *Brixmor Property Group, Inc.*,
    No. 1:16-cv-2400 (AT) (SN), Dkt. No. 92 (S.D.N.Y. Dec. 13, 2017) ................................. 8

**Statutes**

15 U.S.C. §78u-4 ......................................................................................................... 4, 6

**Other Authorities**

Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements 2022 Review and
    Analysis, Cornerstone Research ...................................................................... 17, 18

**Rules**

Fed. R. Civ. P. 23(h) ...................................................................................................... 4

Levi & Korsinsky, LLP, Lead Counsel for the Court-appointed Lead Plaintiff and the proposed Settlement Class respectfully submits this memorandum of points and authorities in support of its motion for (i) an award of attorneys' fees in the amount of 25%, or $1,212,500 of the Settlement Fund (representing a .75 negative multiplier to counsel's time); and (ii) reimbursement of $166,987.77 in litigation expenses that were reasonably and necessarily incurred by Lead Counsel in prosecuting and resolving this Action.[1]

## I.    PRELIMINARY STATEMENT

This $4.85 million Settlement, which resulted from an arm's-length mediation overseen by an experienced mediator, represents an exceptional recovery for the Settlement Class. The Settlement follows two years of intensive investigation, highly adversarial litigation, and extensive negotiation. *See* Declaration of Gregory M. Potrepka in Support of: (1) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation and Final Certification of Settlement Class and (2) Lead Counsel's Unopposed Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Potrepka Decl."). Lead Counsel have not received any compensation for this case while litigating it, even as they risked attorney time and money. They now ask that the Court award attorneys' fees not to exceed 25% of the Settlement Amount, or $1,212,500, for reaching this favorable result.

Lead Counsel's request for an award of attorneys' fees and litigation expenses is reasonable and well within the range approved in similar matters and should be approved. Lead Counsel advanced costs and devoted substantial time on a contingent basis to this complex matter, despite not knowing how long it would last or whether there would be any recovery. At each stage of the

---

[1] Unless otherwise noted, all internal quotations and citations are omitted, all emphasis is added, and capitalized terms not defined herein shall have the same meaning ascribed to them in the Stipulation and Agreement of Settlement dated February 20, 2024 (ECF No. 117-1, the "Stipulation" or "Stip").

litigation, Lead Counsel faced off against highly sophisticated defense counsel. Since this suit was filed over two years ago, Lead Counsel filed two amended complaints; prevailed on a motion for leave to file a second amended complaint; successfully opposed Defendants' motion to dismiss; engaged in letter briefing regarding a stay of this case; engaged specialized bankruptcy counsel and secured a carve out of the Settlement Class from the third party release in the Bankruptcy; and attended a full-day mediation before Ms. Yoshida, prepared briefing in connection with the mediation, and participated in vigorous subsequent negotiations facilitated by the Mediator.

Although Lead Plaintiff survived Defendants' motion to dismiss, Lead Plaintiff still faced significant obstacles and risks in certifying a class, defeating Defendants' anticipated summary judgment motion, proving their claims at trial, and defending a trial verdict on appeal. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability, loss causation, and damages. The Action would have involved significant expert discovery to establish damages and prove loss causation, and Lead Plaintiff faced a real prospect of greatly reduced damages or no damages at all. In addition, Lead Plaintiff faced significant risks as a result of AppHarvest's Chapter 11 bankruptcy, including risks relating to the likely exhaustion of available insurance coverage and the collectability of any future judgment amount.

Lead Counsel firmly believes that the Settlement is the result of their diligent and creative efforts, as well as their dedication to the interests of the Settlement Class and willingness to zealously prosecute a meritorious case. Here, in a case asserting claims based on complex legal and factual issues that were opposed by highly skilled and experienced defense counsel, Lead Counsel succeeded in securing an outstanding result for the Settlement Class under difficult and challenging circumstances.

The risks that Lead Counsel would never get paid after spending 2,439.93 hours in

professional time, equating to a lodestar of $1,609,971.25,[2] justify the $1,212,500 award. Lead Counsel also seek reimbursement of their out-of-pocket litigation expenses incurred in prosecuting this Action, in the amount of $166,987.77. *See* Potrepka Decl., Exhibit 3 (Declaration of Gregory M. Potrepka on Behalf of Levi & Korsinsky LLP in Support of Application for an Award of Attorneys' Fees and Expenses). These expenses were reasonable and necessary to prosecute and resolve the claims against Defendants successfully.

In class actions like this one, which are prosecuted on a contingent-fee basis, courts often award fees representing a positive "multiplier" of counsel's lodestar (often one to four times the amount of their lodestar) to compensate counsel for taking the risks of non-recovery and other factors. Here, however, Lead Counsel's requested fee is a "negative" lodestar multiplier of .75 of Lead Counsel's lodestar. This means that, if awarded, the requested 25% fee ($1,212,500) will result in a discount to Lead Counsel's total lodestar ($1,609,971.25), which further supports the reasonableness of the requested fee. A negative multiplier is "a strong indication of the reasonableness of the proposed fee." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012). Further, the requested fees have been approved by Court-appointed Lead Plaintiff Alan Narzissenfeld. *See* Declaration of Alan Narzissenfeld ("Narzissenfeld Decl."), Ex. 1 at ¶8, submitted herewith. Plaintiff evaluated the request for fees and expenses and has determined that the requested fees are warranted based on counsel's diligent and aggressive prosecution of the Action. *Id.* As a result, the fee request is entitled to a "presumption of reasonableness." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *16 n.4 (S.D.N.Y. July 27, 2007).

For all the reasons set forth herein, in Lead Plaintiff's Memorandum of Law in Support of

---

[2] In the exercise of billing judgment, Lead Counsel has omitted all billing entries for attorneys and other professionals who expended less than ten hours in total on this matter from its total consolidated lodestar.

Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation and Final Certification of Settlement Class, and in Potrepka Decl., both filed concurrently herewith and incorporated by reference herein, Lead Counsel respectfully submits that the requested $1,212,500 in attorney's fees and requested reimbursement of $166,987.77 in expenses are fair and reasonable under the applicable legal standards and should be awarded by the Court.

## II.    LEAD COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Private Securities Litigation Reform Act of 1995 (the "PSLRA") provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6). The ultimate determination of the proper amount of attorneys' fees rests within the sound discretion of the court based on the facts of the case. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 57 (2d Cir. 2000).

Here, in connection with their representation of the Settlement Class, Lead Counsel requests attorneys' fees of 25% of the Settlement Fund, or $1,212,500, plus their litigation expenses in the amount of $166,987.77. These requests are fair and reasonable and well within the range of fees and expenses typically granted in similar matters. Lead Counsel submits they should be approved.

### A.    A Reasonable "Percentage of the Fund" Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

Attorneys who obtain a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the

benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) ("Moreover, under the equitable fund doctrine, attorneys for the successful party may petition for a portion of the fund as compensation for their efforts"); *Goldberger*, 209 F.3d at 47 (similar). The purpose of the common fund doctrine is to fairly and adequately compensate counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation on their behalf. *Id.*

Courts recognize that, in addition to providing just compensation, "awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale, Inc.*, No. 11-cv-7132 (CM), 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015). Accordingly, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Pearlstein v. BlackBerry Ltd.*, No. 13-cv-7060 (CM) (KHP), 2022 WL 4554858, at *9 (S.D.N.Y. Sept. 29, 2022) ("The Second Circuit has approved th[e percentage of the fund] method."); *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *17 (S.D.N.Y. Oct. 16, 2019) ("trend in this Circuit is toward the percentage method"); *In re IMAX Sec. Litig.*, No. 06-cv-6128 (NRB), 2012 WL 3133476, at *5 (S.D.N.Y. Aug. 1, 2012) ("the percentage method continues to be the trend of district courts in th[e Second] Circuit").

"The percentage of the fund method is a simpler calculation where the award is based on

some percentage of the fund created for the benefit of the class." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 171 (S.D.N.Y. 2007) (quoting *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999)); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("Because of the practical and policy advantages of the percentage method, as well as the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions, 15 U.S.C. § 78u–4(a)(6), this Opinion will apply the percentage method"). "In contrast, the lodestar [method] creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (brackets omitted). The Second Circuit thus recognizes that predicating a fee award on "the lodestar method" results in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48, 49; *Savoie*, 166 F.3d at 460 (stating that "the percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). Second Circuit courts, therefore, consider lodestar only insofar as it serves as a cross-check of the reasonableness of the common fund percentage. *Goldberger*, 209 F.3d at 50. When using the lodestar method as a cross-check, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id*.

In sum, the weight of authority supports application of the percentage-of-recovery method in determining a reasonable attorneys' fee here. In addition, as described in Section I *infra*, Lead Counsel's lodestar multiplier here is negative. Accordingly, the Settlement Class benefits from applying the percentage of the fund method as opposed to the lodestar method, since the lodestar method would result in higher attorneys' fees. *See In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04-cv-8144 (CM), 2009 WL 5178546, at *20 (S.D.N.Y. Dec. 23, 2009) ("The

6

percentage fee requested represents a negative multiplier of 0.44 to the lodestar. Thus, not only are Lead Counsel not receiving a premium on their lodestar, their fee request amounts to a deep discount from their lodestar.").

### B. The Requested Fee Award of 25% of the Common Fund Fair, Reasonable, and Adequate Considering District and Circuit Precedent

Courts in the Second Circuit frequently award fees equaling 25% of a common fund or more in complex security class actions. *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728 (CM) (SDA), 2020 WL 4196468, at *15 (S.D.N.Y. July 21, 2020) (awarding 25% attorneys' fees); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *17 ("[d]istrict courts in the Second Circuit routinely award fees upwards of 25% in securities and other complex litigation settlements") (collecting cases); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 574, 593, 595 (S.D.N.Y.2008) (awarding 25% attorneys' fees prior to ruling on motion to dismiss); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15-cv-1249, 2018 WL 6333657, at *5 (S.D.N.Y. Dec. 4, 2018) (awarding 25% attorneys' fees); *In re Canadian Superior Sec. Litig.*, No. 09-cv-10087 (SAS), 2011 WL 5830110, at *4 (S.D.N.Y. Nov. 16, 2011) (same).

In fact, this Court and others in this District have routinely approved higher fees in cases settled at comparable or less advanced procedural postures to this case. *See, e.g., Rosi v. Aclaris Therapeutics, Inc.*, No. 19-cv-7118 (LJL), 2021 WL 5847420, at *9 (S.D.N.Y. Dec. 9, 2021) (Liman, J.) (awarding attorneys' fees amounting to 30% of settlement fund after order granting in part and denying in part defendants' motion to dismiss); *In re: Revolution Lighting Tech., Inc. Sec. Litig.*, No. 1:19-cv-00980 (JPO), Dkt. No. 72 (S.D.N.Y. July 8, 2020) (awarding attorneys' fees of 33.33% of the settlement fund plus expenses where no motion to dismiss was ever filed); *Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc.*, No. 1:16-cv-2400 (AT) (SN), Dkt. No. 92, at ¶ 5 (S.D.N.Y. Dec. 13,

2017) (awarding a 30% attorneys' fee before the motion to dismiss was filed); *Taft v. Ackermans*, No. 02-cv-7951 (PKL), 2007 WL 414493, at *1, 11 (S.D.N.Y. Jan. 31, 2007) (awarding 30% fee where the motion to dismiss was pending when settlement was negotiated); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 360, 368 (S.D.N.Y. 2002) (awarding $33^1/_3$% of settlement and collecting cases, despite the motion to dismiss being "*sub judice.*").

Accordingly, the 25% fee requested here is consistent with or lower than fee awards in similar cases in this District.

## C. The Second Circuit's *Goldberger* Factors Confirm that the Requested Fee is Reasonable

The Second Circuit has set forth the following criteria that courts should consider when evaluating the reasonableness of a request for attorneys' fee award:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations (the "*Goldberger* Factors").

*Goldberger*, 209 F.3d at 50. As discussed below, the *Goldberger* factors and the analyses herein demonstrate that Lead Counsel's requested fee is reasonable.

### 1. Lead Counsel Has Devoted Substantial Time and Labor to the Action to Achieve a Positive Result for the Benefit of Class

The time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in the Potrepka Decl. at ¶¶6, 46, Lead Counsel diligently investigated the claims, defenses, and the underlying events and transactions that are the subject of the Action.

In connection with this case, Lead Counsel reviewed and analyzed: (i) documents filed publicly by AppHarvest with the SEC; (ii) publicly available information concerning AppHarvest and/or the Individual Defendants, including press releases, news articles, conference call

8

transcripts, and video recorded interviews; (iii) research reports issued by financial and industry analysts concerning AppHarvest; (iv) other publicly available information and data concerning the Company and its subsidiaries, including information concerning AppHarvest's operations; (v) docket entries from various court proceedings concerning AppHarvest and the Individual Defendants, including items filed in the Bankruptcy; (vi) interviews conducted with former employees; (vii) consultations with bankruptcy counsel; (viii) reports prepared by Lead Plaintiff's damages experts in connection with the mediation; and (ix) the applicable law governing the claims and potential defenses in this Action. Lead Counsel also consulted with financial experts, agriculture experts, and bankruptcy experts in connection with this claim. In prosecuting this action, Lead Counsel also filed two amended complaints and successfully opposed a motion to dismiss filed by Defendants. *See Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *7, 9 (researching and preparing complaint, working with investigators and damages experts, opposing a motion to dismiss, and engaging in settlement efforts constituted "extensive time" spent on case and supported an award of 30% of settlement fund).

Further, Lead Counsel expended significant efforts to protect the Settlement Class's claims following AppHarvest's bankruptcy and enable recovery for the Settlement Class from the Individual Defendants. As originally proposed, the confirmation plan in the Bankruptcy would have released Lead Plaintiff's and the Settlement Class's claims in this Action against the Individual Defendants. Lead Counsel retained Lowenstein Sandler, LLP ("Lowenstein"), a firm with well-regarded expertise in complex bankruptcy matters, to advise Lead Counsel in connection with AppHarvest's bankruptcy. As a result of Lead Counsel's and Lowenstein's efforts and negotiations with counsel for the debtor, the debtor agreed to include language in the proposed bankruptcy confirmation order which was approved by the bankruptcy court and resulted in a carve out of Lead Plaintiff's

9

claims against the Individual Defendants from the bankruptcy release. This language enabled the Settlement Class to recover from the Individual Defendants.

Lead Counsel also expended significant time and labor to secure the Settlement Agreement, including preparing extensive briefing in connection with the mediation, attending a full-day mediation before Ms. Yoshida, and engaging in vigorous subsequent negotiations facilitated by the Mediator. Further, Lead Counsel will supervise the administration and distribution of the Settlement Fund. This process will add additional time that is not accounted for in Lead Counsel's lodestar calculation.

At all times, Lead Counsel remained dedicated to achieving a result in Class Members' best interests—and the Settlement would not have been achieved without Lead Counsel's tireless pursuit, skill, and relentless advocacy on behalf of Class Members. In litigating this Action, Lead Counsel expended substantial resources—2,439.93 hours in professional time, equating to a lodestar of $1,609,971.25, and $166,987.77 in expenses—all without any assurance of recovery. Throughout, Lead Counsel took care to staff the matter efficiently and avoided unnecessary duplication of effort. As compensation, Lead Counsel requests that the Court award attorneys' fees of 25% of the Settlement Amount. This request is fair and reasonable. *See Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *7, 9 (expenditure of only 333 hours supported 30% fee).

Moreover, Lead Counsel's work will not end with the filing of motions for final settlement approval and an award of attorneys' fees. Lead Counsel will necessarily spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the Final Approval Hearing scheduled for July 11, 2024, assisting Settlement Class Members with Claim Forms, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries. *Pearlstein v. Blackberry*

*Ltd.*, 2022 WL 4554858, at *10 ("after final approval there will be significant additional tasks relating to the Settlement, lowering the lodestar multiplier even further"); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10-cv-4825 (JLC), 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward").

Lead Counsel will seek no additional compensation for this work. Thus, the time and labor Lead Counsel will continue to invest, in addition to the time already invested in investigations, motion practice, and mediation, support the requested fee. *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12- 2389 (RWS), 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016).

Accordingly, the time and labor dedicated to this litigation support the fee request.

### 2. The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action also support the requested fee. Courts routinely recognize that securities class action litigation, such as this, is "notably difficult and notoriously uncertain." *City of Providence,* 2014 WL 1883494, at *5; *In re FLAG Telecom Holdings, Ltd.* No. 02-cv 3400 (CM) (PED), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (same). This case was no different.

As discussed in the accompanying Potrepka Declaration and Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement, Approval of the Plan of

11

Allocation, and Certification of the Class for Settlement Purposes, this Action involved and would have continued to involve difficult, hotly disputed issues of fact and law related to, among other things, (i) whether Defendant Lee made false or misleading statements or omissions; (ii) whether the alleged misrepresentations and omissions were material; (iii) whether Defendant Lee acted with scienter; (iv) whether AppHarvest common stock and warrants traded in an efficient market, entitling Lead Plaintiff to a presumption of reliance; and (v) the artificial inflation of AppHarvest common stock and warrants, and how much of the price declines on August 11, 2021, as alleged in the Operative Complaint, resulted from the alleged corrective disclosures.

Prosecuting the claims of the Class required skill and dedication of experienced class action attorneys. Indeed, "Plaintiff here faced a very serious motion to dismiss and survived it." *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at \*7. Accordingly, the magnitude and complexity of the Action supports the conclusion that the requested fee is fair and reasonable. *Id.*; *City of Providence*, 2014 WL 1883494, at \*16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 3. The Risk of the Litigation Supports the Requested Fee

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. Of La. v. A.C.L.N., Ltd.*, No. 01-cv-11814 (MP), 2004 WL 1087261, at \*3 (S.D.N.Y. May 14, 2004). The Second Circuit has said that "[t]he level of risk associated with litigation . . . is perhaps the foremost factor to be considered in assessing the propriety of a multiplier." *McDaniel v. County of Schenectady*, 595 F.3d 411, 424 (2d Cir. 2010) (quoting *Goldberger*, 209 F.3d at 54); *see also*, *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at \*7 ("[T]he built-in risk of litigation [is] a highly relevant factor in determining the fee to be awarded."); *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d at 592 ("Courts have repeatedly recognized

that the risk of litigation is a pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions.").

While Lead Counsel believes this case has merit, it recognizes that the chances of maintaining the Action through discovery, class certification, summary judgment, trial, and likely appeals and recovering damages for the Class was far from certain. The likelihood of a recovery was further complicated by AppHarvest's bankruptcy. If Lead Plaintiff and Defendant Lee continued with discovery, class certification, expert discovery, summary judgment briefing, trial, and appeals (all of which pose significant risk), Defendant Lee would have likely exhausted significant amounts, if not all, of the available insurance coverage. *See In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 763 (2d Cir. 2020) (upholding district court's settlement approval in part because defendant company had filed for bankruptcy and insurance funds were "wasting," thereby "creating a risk that further litigation would drain the amount available to shareholders."). Even if the case settled before trial, there was no guarantee that sufficient insurance coverage would remain to collect a larger recovery, or any meaningful recovery at all.

Furthermore, even the most promising cases can be jeopardized by a sudden change in the law after years of litigation. *See, e.g., In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of some 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)); *see also In re Allergan PLC Sec. Litig.*, No. 18-cv-12089 (CM) (GWG), 2022 WL 17584155 (S.D.N.Y. Dec. 12, 2022) (granting summary judgment after full discovery and class certification).

Accordingly, the risk of no recovery for the class and counsel in complex cases of this type is very real. By settling now, the Settlement Class will avoid these risks and delays and receive

13

an immediate cash payment. This factor strongly favors approval of the requested fee.

### 4. The Contingent Nature of Counsel's Representation

Despite the uncertainties concerning the outcome of the case, Lead Counsel undertook this Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little recovery and leave Lead Counsel uncompensated for its significant investment of time and expenses. Courts within the Second Circuit, including this Court, have consistently recognized that the risk associated with contingent representation is an important factor favoring an award of attorneys' fees. *See, e.g.*, *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *7 ("contingency risk must be considered in setting a reasonable fee"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *19 ("The Second Circuit has recognized that the risks associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.") (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974)); *In re Am. Bank Note Holographics, Inc. Sec. Litig*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award").

Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses as incurred, Lead Counsel has not been compensated for any time or expenses incurred in connection with this litigation and would have received no compensation if this case did not achieve a recovery for the Settlement Class. From the outset, Lead Counsel understood that it was embarking on a complex, expensive, and lengthy endeavor with no guarantee of ever being compensated. In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient attorney and professional resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and to pay for the costs entailed.

14

This was not without risk. Indeed, there have been many class actions in which plaintiffs' counsel took pursued claims on a contingent basis, expended thousands of hours and millions of dollars in expenses and time and received nothing for their efforts. *See, e.g.*, *In re Tesla Inc. Sec. Litig.*, Case No. 3:18-cv-04865-EMC, Doc. No. 697 (N.D. Cal. June 14, 2023) (after plaintiffs survived motion to dismiss and partially prevailed at summary judgment, jury rendered a defense verdict); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, *Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Comput. Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *In re BankAtlantic Bancorp, Inc.,* No. 07-cv-61542, 2010 WL 6397500 (S.D. Fla. 2010) (granted defendants' motion for judgment as a matter of law on loss causation grounds following a plaintiffs' jury verdict), *aff'd,* 688 F. 3d 713 (11th Cir. 2012).

As discussed in the accompanying Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement, Approval of the Plan of Allocation, and Certification of the Class for Settlement Purposes, Lead Plaintiff could have been dismissed on summary judgment, trial, or on appeal, leading to absolutely no recovery for the Settlement Class and no fee for Lead Counsel. Accordingly, the contingency risk supports the requested attorneys' fee.

### 5. The Quality of Lead Counsel's Representation

Lead Counsel devoted considerable time and effort to this case, thereby bringing to bear

many years of collective experience, including thoroughly investigating the claims, defenses, and underlying events that are the subject of the Action. Lead Plaintiff's efforts included reviewing and analyzing: (i) documents filed publicly by AppHarvest with the SEC; (ii) publicly available information concerning AppHarvest and/or the Individual Defendants, including press releases, news articles, conference call transcripts, and video recorded interviews; (iii) research reports issued by financial and industry analysts concerning AppHarvest; (iv) other publicly available information and data concerning the Company and its subsidiaries, including information concerning AppHarvest's operations; (v) docket entries from various court proceedings concerning AppHarvest and the Individual Defendants, including items filed in the Bankruptcy; (vi) interviews conducted with former employees; (vii) consultations with bankruptcy counsel; (viii) reports prepared by Lead Plaintiff's damages experts in connection with the mediation; and (ix) the applicable law governing the claims and potential defenses in this Action.

Further, as detailed in the in the accompanying Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement, Approval of the Plan of Allocation, and Certification of the Class for Settlement Purposes and the Potrepka Declaration, Lead Counsel successfully fended off a difficult motion to dismiss in this Action. *See Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at * 8 (quality of representation strong where "Plaintiff's counsel ably navigated the early procedural stages of this case, including briefing the motion to dismiss."). After AppHarvest initiated a bankruptcy proceeding, Lead Counsel retained and worked together with bankruptcy counsel to secure a carve out of the Settlement Class from the third-party release in the Bankruptcy confirmation plan to enable the Settlement Class to recover from the Individual Defendants in this Action.

Lead Counsel also successfully negotiated the Settlement on behalf of the Settlement Class,

attending a full-day mediation before Ms. Yoshida, preparing extensive briefing in connection with the mediation, and participating in vigorous subsequent negotiations facilitated by the mediator. Lead Counsel's efforts yielded a settlement amount of $4.85 million—an excellent result for the Class. Lead Counsel estimates if the Court had sustained the Operative Complaint in full (which it did not), and Lead Plaintiff fully prevailed on his alleged claims at both summary judgment and trial, and if the Court and jury accepted Lead Plaintiff's damages theory (including proof of loss causation, which would be hotly contested) over the entire Settlement Class Period from February 1, 2021 through August 10, 2021, Lead Plaintiff's best case scenario—the maximum aggregate, theoretical damages—would be approximately $104 million in damages for AppHarvest common stock, and approximately $8 million in damages for AppHarvest warrants, for a combined total of approximately $112 million in damages. Under Lead Plaintiff's estimated best-case scenario, assuming a 100% claims take rate and no disaggregation of confounding information, the Settlement represents approximately a 4.3% recovery, which is well within the zone of reasonableness for a complex securities class action like this one. *See* Potrepka Decl. ¶ 82; Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements 2022 Review and Analysis, Cornerstone Research, at Figure 5 (median 2022 settlements in the $75-$149 million range is 4.4%) (ECF No. 117-9); *In re N. Dynasty Minerals Ltd. Sec. Litig.*, No. 20-cv-5917 (TAM), 2024 WL 308242, at *13 (E.D.N.Y. Jan. 26, 2024) (finding a settlement amount of 2.3% of the maximum estimated aggregate damages within the reasonable range).

The Settlement result is even more remarkable considering that the Court dismissed all but two of the misstatements Plaintiff alleged to be false and misleading. Potrepka Decl. ¶36. With respect to the surviving misstatements, the Settlement represents a percentage of recovery that is *above* the median percentage recovery for similar class action settlements. The sole remaining

alleged misstatements were made on May 25, 2021. Lead Plaintiff's damages expert estimated that for purchases made between May 26, 2021 and August, 10, 2021, inclusive, aggregate damages were approximately $33 million for AppHarvest common stock and $3 million for AppHarvest warrants, for a combined total of approximately $36 million in damages. Accordingly, when accounting for the Court's orders in the Action, the Settlement represents an excellent 13.47% recovery. *See* Potrepka Decl. ¶83, Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements 2022 Review and Analysis, Cornerstone Research, at Figure 5 (median 2022 settlements in the less than $25 million range is 11.1%) (ECF No. 117-9); *Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, at *6 (settlement over 13% was "well within the range of reasonableness and, in fact, considerably above the high end of historical averages") (citing cases). A strong settlement result supports the quality of Lead Counsel's representation. *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *7.

In this case, the requested fee is further justified because Lead Counsel independently investigated and developed the claims alleged without the benefit of a related regulatory investigation or settlement. *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557 (CM), 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ("Lead Counsel did not have the benefit of a road map established by a government investigation off which they could piggy back, but instead independently developed factual allegations and legal theories sufficient to survive the PSLRA's heightened pleading standards."); *City of Providence*, 2014 WL 1883494, at *16 (noting "there was no road-map for Lead Counsel to follow in this Action as no governmental agency investigated or brought action against Defendants"); *In re Giant Interactive Grp. Inc.*, 279 F.R.D. 151, 164-165 (S.D.N.Y. 2011) (fee supported "in light of the fact that this case (unlike many other securities

class actions) was independently developed by plaintiffs' counsel, as opposed to following, or piggybacking on, a regulatory investigation or settlement").

Further, Lead Counsel is highly experienced in securities litigation with decades of combined experience representing shareholders in similar class actions, supporting the requested fee award. *See* Potrepka Decl. ¶98 and Exhibit 2 attached thereto; *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at \*8 (Lead Counsel's experience supports fee award). Likewise, the quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work. *See Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at \*8; *Flag Telecom*, 2010 WL 4537550, at \*28; *Teachers Ret. Sys.*, 2004 WL 1087261, at \*7. Defendants were represented by experienced and qualified attorneys well-versed in securities litigation at Cooley LLP. In the face of this knowledgeable and formidable opposition, Lead Counsel was nevertheless able to develop a case that was sufficiently strong to persuade the Individual Defendants to settle it on terms that are favorable to the Settlement Class. *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, MDL No. 03-1529 (LMM), 2006 WL 3378705, at \*3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008).

### 6. The Requested Fee in Relation to the Settlement

"In determining whether the Fee Application is reasonable in relation to the settlement amount, the Court compares the Fee Application to fees awarded in similar securities class-action settlements of comparable value." *Marsh*, 2009 WL 5178546, at \*19; *see also In re Veeco Instruments Inc. Sec. Litig,* MDL No. 05-01695 (CM), 2007 WL 4115808, at \*4 (S.D.N.Y. Nov. 7,

19

2007) (noting that the 25% fee awarded is "consistent with fees awarded in a similar class action settlements of comparable value").

As this Court noted, "District courts in the Second Circuit routinely award fees upward of 25% in securities and other complex litigation settlements of comparable size." *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *8 (citing *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *17). Indeed, "[i]n this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund." *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *8 (citing *In re Beacon Associated Litigation*, No. 09-cv-777 (CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013)). Thus, as discussed above, the attorneys' fees requested here are well within the range of percentage fee awards in comparable securities class action cases within this District. *See* Section B., *supra*.

### 7. Public Policy Considerations Support the Requested Fee

The federal securities laws are remedial in nature and, to effectuate their purpose of protecting investors, it is respectfully submitted that courts should encourage meritorious private lawsuits such as this one. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988). The Supreme Court recognizes that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("th[e] court has long recognized that meritorious private actions to enforce federal [] securities laws are an essential supplement to…civil enforcement actions").

Courts in the Second Circuit reason that if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook."

*Flag Telecom*, 2010 WL 4537550, at *29. "In order to attract well qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." *Id.*, at *29 (quoting *In re WorldCom*, 388 F. Supp. 2d at 359); *see also Hicks v. Stanley*, No. 01-cv-10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

It is respectfully submitted that lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved. Public policy therefore supports awarding Lead Counsel's attorneys' fee request.

### D. The Requested Attorneys' Fees are Reasonable Under the Lodestar Cross-Check

To ensure the reasonableness of a fee awarded under the percentage method, the Second Circuit permits courts to consider a "cross-check" against counsel's lodestar. *Goldberger*, 209 F.3d at 50. Under the lodestar method, a court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each timekeeper spent on the case by each person's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work. *See, e.g.*, *Flag Telecom*, 2010 WL 4537550, at *26 ("Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors"). Performing the lodestar cross-check here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Lead Counsel expended 2,439.93 hours in professional time. Potrepka Decl. ¶99 The

resulting lodestar at Lead Counsel's current hourly rates is $1,609,971.25. *Id.* Lead Counsel requests

that the Court award attorneys' fees of 25% (or $1,212,500.00) of the Settlement Amount. Thus,

the amount of attorneys' fees requested by Lead Counsel represents a negative multiplier of .75 of

Lead Counsel's lodestar. A negative multiplier is "a strong indication of the reasonableness of the

proposed fee." *Bear Stearns*, 909 F. Supp. 2d at 271; *see also Guevoura Fund Ltd. v. Sillerman*, No.

1:15-cv-07192 (CM), 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("Courts have repeatedly

recognized that the reasonableness of the fee request under the percentage method is reinforced

where, as here, the percentage fee would represent a negative multiplier of the lodestar."); *In re*

*Sterling Foster & Co., Inc., Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) ("the fact that

any reasonable fee would necessarily represent a negative multiplier of the lodestar supports an

award at the higher end of the spectrum."); *In re Heelys, Inc. Derivative Litig.*, No. 3:07-cv-1682

(K), 2009 WL 10704478, at *11 (N.D. Tex. Nov. 17, 2009) ("Because the Fees and Expenses

Award results in a negative multiplier as compared to the actual time and labor undertaken by

Derivative Plaintiffs' Counsel in the Derivative Action, the Fees and Expenses Award is

demonstrably reasonable."); *Virtus Inv. Partners, Inc. Sec. Litig.*, 2018 WL 6333657, at *5

(negative "lodestar multipliers are well below multipliers previously approved by this Court").

Lead Counsel's current hourly rates range from $900.00 to $1,000.00 for partners, $500.00

to $550.00 for associates, and $325.00 for professional staff. Potrepka Decl. ¶99. "[T]he use of

current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court,

the Second Circuit and district courts within the Second Circuit as a means of accounting for the

delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec.*

*Litig.*, 2014 WL 7323417, at *15 (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *see*

*also Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (similar); *In re Telik, Inc. Sec. Litig.,*

576 F. Supp. 2d at 589 n.10 (similar). Lead Counsel's hourly rates are consistent with those charged by attorneys in the New York Metropolitan area. *See, e.g., Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *10 (finding "rates…rang[ing] from $500 (associates) to $1,200 (senior partners)" to be "comparable to peer plaintiffs and defense firms litigating matters of similar magnitude and complexity"); *Luo v. Sogou et al.*, 1:19-cv-00230-LJL, Dkt. No. 124 (S.D.N.Y. May 22, 2021) (Liman, J.) (approving fee award for Levi & Korsinsky at similar billing rates, as reflected in lodestar filed at ECF No. 123-1); *Levin v. Resource Capital Corp.*, 1:15-cv-07081-LLS, Dkt. No. 95 (S.D.N.Y. Aug. 3, 2018) (same); *Gormley v. Magicjack Vocaltec Ltd.*, 1:16-cv-01869-VM, Dkt. No 70 (S.D.N.Y. Jan. 19, 2018) (same).

Accordingly, Lead Plaintiff submits that the hourly rates charged by counsel for attorneys and professional staff are reasonable and customary within the securities class action bar and the lodestar cross-check supports approval of the requested fee award.

### E.  The Reaction of the Class Supports the Requested Fee Award

There have been no objections and only three requests for exclusion submitted by members of the class to the terms of the settlement. *See* Bravata Decl. at 13-14. The absence of objections and minimal request for exclusions support the fee award. *Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *8 ("The absence of objections and the singular request for exclusion weighs in favor of the fee application.").

### III.    LEAD PLAINTIFF'S REQUESTS FOR REIMBURSEMENT OF LITIGATION EXPENSES IS REASONABLE

Lead Counsel also respectfully requests reimbursement of litigation expenses, which were reasonably incurred and necessary to prosecute the Action. Lead Counsel collectively incurred $166,987.77 in litigation expenses as set forth and itemized in the Potrepka Decl., ¶¶107-108. This amount is below the $250,000 maximum expenses that the Notice informed potential Settlement

Class Members that Lead Counsel may apply for and is well within the range of fee amounts awarded by courts in this District. *See, e.g.*, *Pearlstein*, 2022 WL 4554858, at *11 (approving reimbursement of over $4 million in litigation expenses); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *22 (approving reimbursement of over $3 million in litigation expenses, including over $2 million in expert expenses); *Bear Stearns*, 909 F. Supp. 2d at 272 n. 8 (approving reimbursement of over $2 million in litigation expenses and over $1 million in expert expenses).

The expenses for which Lead Counsel seeks payment were reasonable and necessary to Lead Plaintiff's success in achieving the Settlement and are the types of expenses that are necessarily incurred in securities class action litigation. The largest expenditures arose out of the professional services rendered by experts, investigators, external bankruptcy counsel, and mediators, without whom this case could not have been pursued and resolved. The principal expenses incurred by Lead Counsel were for: investigative services ($40,489.50 or ~24% of the requested expenses); financial and subject matter experts ($20,053.25 or ~12%); outside counsel ($90,400, or ~54%, with expert bankruptcy counsel accounting for $89,200 of that expense); mediation fees ($11,250 or ~6.7%), and computer research ($3,760.25 or ~2.3%); Potrepka Decl. ¶108 and Exhibit 3.B thereto.

The appropriate analysis applied in deciding whether expenses are compensable in a common fund case is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *City of Providence*, 2014 WL 1883494, at *19 ("investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review-are the type for which the paying, arms' length market reimburses attorneys … [and] for this reason, they are properly chargeable to the Settlement fund."). Applied here, such an analysis supports reimbursement of expenses. Indeed, in a recent action, this Court approved

reimbursement of litigation expenses incurred for substantially identical purposes. *See Rosi v. Aclaris Therapeutics, Inc*., 2021 WL 5847420, at *9 (finding 6.8% for computer research, 35% for expert fees, 28% for investigator fees, and 22% for mediator fees were "all reasonable").

**Expert and Investigator Expenses**: Lead Counsel retained damages experts to consult on market efficiency, loss causation, and class-wide damage calculations and to prepare the Plan of Allocation for the Settlement. *See* Potrepka Decl. at ¶7. The damages consultants were necessary to, among other things, evaluate the efficiency of the market for AppHarvest securities, provide multiple damages analyses based on different potential class periods and in light of the Court's Order on the Motion to Dismiss which sustained only a limited number of statements, and advise Lead Counsel regarding the Plan of Allocation. Lead Counsel also retained and consulted with a Controlled Environment Agricultural expert concerning issues that went to the merits of this Action. Potrepka Decl. at ¶6. Lead Counsel additionally incurred investigative costs associated with its outreach to former AppHarvest employees knowledgeable about AppHarvest's Class Period operations, who provided accounts to Lead Counsel of the facts and circumstances occurring during the Settlement Class Period at the Company. Potrepka Decl. at ¶24.

Courts in this District routinely grant routinely reimburse class counsel for costs expended for investigators and experts. *See e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *22 (approving reimbursement for "expert fees, [], on-line legal and factual research, [], mediation fees, [], and photocopying expenses," with "[t]he largest expense, by far," being for the retention of experts); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *20 ("vast majority," or 54%, of expenses "were incurred for services rendered by Plaintiffs' [] experts"); *In re Canadian Superior Sec. Litig.*, 2011 WL 5830110, at *3 ("bulk of the expenses relate to experts, consultants, and investigators").

**Outside Counsel**: Lead Counsel's largest expenditure was for the retention of bankruptcy counsel. This retention was instrumental in securing a carve-out in AppHarvest's bankruptcy confirmation plan to enable this litigation to continue and make possible recovery from the Individual Defendants. Potrepka Decl. at ¶¶42-44. In a recent similar action in this Circuit, where, as here, expert external counsel was critical to maintaining the action in the face of a bankruptcy and obtaining a collectable settlement award for the class, the court granted a similar expense reimbursement request for retention of bankruptcy counsel. *See In re Frontier Commc'ns Corp.*, No. 3:17-cv-01617 (VAB), 2022 WL 4080324, at *16 (D. Conn. May 20, 2022) (awarding $267,688.00 in litigation costs, including for retention of bankruptcy counsel to protect the interests of the settlement class in bankruptcy proceeding); *see also*, *Flag Telecom*, 2010 WL 4537550, at *30 (reimbursing expenses for external foreign counsel). Lead Counsel also incurred expenses to secure independent legal representation for the former AppHarvest employees cited in the Operative Complaint as Confidential Witnesses. Providing protection for these individuals, who undoubtedly would be the target of discovery by Defendant Lee if the Parties had not agreed to the Settlement, was prudent and beneficial to the Settlement Class. Lead Counsel respectfully seeks reimbursement of the $1,200 that Lead Counsel expended for such representation. *See, e.g.*, *In re U. S. Steel Consolidated Cases*, No. 2:17-cv-00579, ECF 346-8, 358 (W.D. Pa. Mar. 21, 2023) (approving reimbursement of $109,569.43 for legal representation provided to confidential witnesses); *In re Mindbody, Inc. Sec. Litig.*, No. 1:19-cv-08331, ECF 137-4, 144 (S.D.N.Y. Oct. 27, 2022) (approving reimbursement of $33,265.48 for legal fees of counsel for five potential witnesses who were former employees of defendant corporation).

**Mediation Fees**: Lead Counsel and Defendants' counsel reached the Settlement Agreement after a rigorous all-day mediation led by Ms. Michelle Yoshida, an expert mediator,

and multiple follow-up discussions also guided by Ms. Yoshida. Potrepka Decl. at ¶7. Mediation

fees, such as those Lead Counsel incurred here, are routinely awarded in complex securities class

actions. *See City of Westland Police & Fire Ret. Sys. v. Metlife, Inc.*, No. 12-cv-0256 (LAK), 2021

WL 2453972, *5 (S.D.N.Y. June 15, 2021) ("nothing objectionable" regarding counsel's request

for reimbursement of "mediation fees" in a securities class action settlement); *Marsh*, 2009 WL

5178546, at *20 (similar); *In re 3D Sys. Sec. Litig.*, No. 21-cv-1920 (NGG) (TAM), 2024 WL

50909, at *16 and n. 16 (E.D.N.Y. Jan. 4, 2024) (awarding $13,777.69 in mediation fees amongst

other expense awards where the parties engaged in "an in-person, all-day mediation").

**Research Tools**: Lead Counsel incurred necessary expenses for access to platforms such

as Lexis, Westlaw, and S&P Capital IQ; process-server fees; and miscellaneous clerical and filing

fees. Courts recognize that reimbursement of these costs is also standard and proper. *See Aclaris*

*Therapeutics, Inc*., 2021 WL 5847420, at *9 (reimbursing computer research costs); *Chen-Oster*

*v. Goldman Sachs & Co.*, No. 10-cv-6950 (AT) (RWL), 2023 WL 7325264, at *5 (S.D.N.Y. Nov.

7, 2023) (granting reimbursement request for, *inter alia*, postage, printing, copying, electronic

legal research, and process server fees); *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *16 n. 16

(awarding $402 in court filing fees, $400.75 in printing fees, $42.42 in postage and FedEx fees,

and $300 in travel, transportation and meal fees); *In re MetLife Demutualization Litig.*, 689 F.

Supp. 2d 297, 364 (E.D.N.Y. 2010) (reimbursing "long distance telephone and facsimile charges,

postage and delivery expenses, discovery costs, filing fees, [and] photocopying").

Because all of Lead Counsel's enumerated expenses are reasonable, all are properly

recoverable by counsel from the common fund. *See Aclaris Therapeutics, Inc*., 2021 WL 5847420,

at *9 (in a class action, attorneys may be compensated "for reasonable out-of-pocket expenses

incurred and customarily charged to their clients, as long as they were incidental and necessary to

the representation..."); *In re China Sunergy Sec. Litig.*, No. 07-cv-7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (same).

To date, there have been no objections to the requested fee and expense award.

## IV.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court: (1) award attorneys' fees in the amount of 25% of the Settlement Fund, or $1,212,500; (2) award Lead Counsel reimbursement of $166,987.77 in litigation expenses that were reasonably and necessarily incurred by Lead Counsel in prosecuting and resolving this Action; and (3) grant such other and further relief as the Court deems just and proper.

Dated: May 8, 2024

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Gregory M. Potrepka*
Gregory M. Potrepka

Shannon L. Hopkins (SH-1887)
Gregory M. Potrepka (GP-1275)
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
shopkins@zlk.com
gpotrepka@zlk.com

*Lead Counsel for Lead Plaintiff and the Settlement Class*

28