O7BHRagD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

GARY H. RAGAN,

                Plaintiff,

           v.                          21 Civ. 7985 (LJL)

APPHARVEST, INC., *et al.*,

                                       Decision

                Defendants.

-------------------------------x
                                       New York, N.Y.
                                       July 11, 2024
                                       2:00 p.m.

Before:

                    HON. LEWIS J. LIMAN,

                                       District Judge

                         APPEARANCES

LEVI & KORSINSKY, LLP
     Attorneys for Plaintiff
BY:  GREGORY M. POTREPKA

COOLEY LLP
     Attorneys for Individual Defendants
BY:  ARIC WU

O7BHRagD

(Case called)

MR. POTREPKA:  Good afternoon, your Honor.  Gregory Potrepka on behalf of lead plaintiff, Alan Narzissenfeld and the settlement class.

THE COURT:  Good afternoon.

MR. WU:  Good afternoon, your Honor.  Aric Wu from Cooley, on behalf of the individual defendants.

THE COURT:  Good afternoon.

All right.  We're here for the final settlement hearing.  I'll note that I did not receive any objections to the settlement and that there's nobody else in the courtroom.

I have a proposed order approving the plan of allocation of the net settlement fund and a proposed order awarding attorney's fees and litigation expenses.  I don't think I've got any other proposed orders, including I don't know that I have one just approving the settlement.

Was there a proposed order approving the settlement itself?

MR. POTREPKA:  Yes, your Honor.  There is a proposed order with respect to the settlement at ECF No. 134-2.  I have a copy of it as well, your Honor.

THE COURT:  Maybe you can pass that up, and then I've got a couple of questions.

My principal question is I didn't see any provision in the settlement for a separate payment made to

Mr. Narizissenfeld.  I don't know whether I was missing something or the settlement didn't provide for any incentive award to him.

MR. POTREPKA:  No, your Honor, Mr. Narizissenfeld was not requesting a separate incentive payment in this case.  He didn't sit for a deposition or participate in written discovery, so we thought it was perhaps not warranted in this matter.

THE COURT:  OK.  That sounds prudent.

All right.  I'll hear from plaintiff anything the plaintiff wants me to know.  Obviously, I've reviewed the papers.

MR. POTREPKA:  Your Honor, I was prepared to present, but it would largely track the papers, so I welcome the Court's questions if it has any.

THE COURT:  I think I asked the one question that I've got.

I take it, though, if I sign the final order and judgment in this case and the related orders, that will close the case, is that correct?

MR. POTREPKA:  That's correct, your Honor.

THE COURT:  Does the defendant have anything to say?

MR. WU:  Nothing to add, your Honor.

THE COURT:  I am prepared to approve the settlement and fee award.  I've got a somewhat lengthy opinion from the

O7BHRagD

bench that I'm going to read.  The court reporter has a copy of my script, and so I'm just going to go through it.  It's easier that way than writing a lengthy opinion.

Lead plaintiff Alan Narzissenfeld moves, on behalf of himself and all settlement class members, pursuant to Federal Rule of Civil Procedure 23 for an order finally approving the class action settlement of this matter for $4.85 million, finally approving the plan of allocation, and affirming the Court's certification of the settlement class for settlement purposes only, including by finally certifying lead plaintiff as class representative and Levi & Korsinsky, LLP, as class counsel for the settlement class.  Dkt. No. 125.  Lead counsel also moves for an order awarding it attorneys' fees in the amount of $1,212,500, representing one-quarter of the common fund and a .75 negative multiplier for lead counsel's lodestar and reimbursement of legal expenses in the amounts of $166,987.77.  Dkt. No. 127.

The defendants are former officers of AppHarvest, Inc., a former controlled-environment agriculture company ("CEA") located in Morehead, Kentucky.  Controlled-environment agriculture is a process of growing produce indoors which allows firms to cultivate and harvest crops year round.  This action commenced on September 24, 2021, when a purported securities class action was filed against AppHarvest and the defendants alleging claims on behalf of all investors who

purchased or otherwise acquired AppHarvest's securities between May 17, 2021, and August 10, 2021, inclusive, relating to statements that AppHarvest and the defendants made about labor and productivity issues at the Morehead farm.  A second class action was filed on November 22, 2021, on behalf of a slightly larger class comprising all investors who purchased or otherwise acquired AppHarvest securities between October 9, 2020, and August 10, 2021, inclusive.

On December 13, 2021, the Court consolidated the two actions and appointed Narzissenfeld as lead plaintiff and Levi & Korsinsky and as lead counsel.  Dkt. No. 39.  On March 2, 2022, lead plaintiff files his first consolidated amended class action complaint, alleging violations of Section 10(b) and 20(a) of the Securities and Exchange Act of 1934 on behalf of a putative class of all investors who purchased or otherwise acquired AppHarvest securities between February 1, 2021, and August 10, 2021, inclusive.  Dkt. No. 46.

On July 25, 2022, with the Court's leave, lead plaintiff filed a second consolidated amended class action complaint on behalf of the same putative class, and on August 12, 2022, lead plaintiff filed a corrected second consolidated amended class action complaint, Dkt. No. 76, which is the operative complaint.

The Court granted in part and denied in part the motion by defendants in AppHarvest to dismiss the operative

O7BHRagD

complaint for failure to state a claim for relief and failure to plead fraud with particularity.  Dkt. No. 97.  The Court granted the motion as to defendants Webb and Eggleton in its entirety and denied the motion as to certain statements made by defendant Lee.

AppHarvest filed for protection under Chapter 11 of the Bankruptcy Code on July 23, 2023, and the confirmation plan released all claims against AppHarvest.  The claims against the defendants were preserved.

On August 21, 2023, the Court lifted the bankruptcy stay as to the defendants and ordered the parties to submit a letter no later than September 18, 2023, on the impact of the confirmation plan, if any, on the defendant's request to stay the action.

The parties engaged in a full-day mediation session on October 25, 2023.  Settlement of this case was reached on December 14, 2023, after efforts had been made to preserve the claims against the defendants when the parties each agreed to a mediator's proposal.  The proposed settlement provides for the defendants to pay or cause to be paid $4,850,000 to be distributed to a class of persons and entities that purchased or otherwise acquired AppHarvest securities during the period from February 1, 2021, to August 10, 2021, inclusive, and were injured thereby, in exchange for a release by class members of release claims against the released parties.

The Court preliminarily approved the proposed settlement, certified the settlement class, and directed the dissemination of notice to the settlement class members on March 6, 2024.  Dkt. No. 120.  No objections to the settlement have been received.

Certification of the Settlement Class

For a class to be certified, it must satisfy the requirements of Rule 23(a), which considers numerosity, commonality of questions of law and fact, whether the claims of the named plaintiffs are typical of the class, and whether the representative parties adequately represent the class's interest.

The settlement class satisfies the threshold requirements of Rule 23(a).

The settlement class is numerous.  Courts have held that 40 or more class members presumptively satisfy the numerosity requirement.  At the end of the class period here, there were 100 million shares of AppHarvest common stock outstanding and an average daily volume in the United States of 1.6 million shares during the settlement class period.  Notice has been sent to over 99,604 potential class members.  Over 18,000 claims have been submitted.

The proposed class satisfies the requirement that its members have common questions of law and fact.  The common questions include whether Lee's statements were false, whether

they were material, and whether they were made with scienter, as well as whether AppHarvest stock trades in an efficient market and whether defendants' alleged misstatements caused a loss.  The answers to these questions for one class member will be the same for all other class members.

The claims of lead plaintiff Narzissenfeld are typical of the claims that would be raised by all members of the class. A plaintiff's claim is typical if it arises from "the same course of events and each class member makes similar legal arguments to prove the defendants' liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)(quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).  Narzissenfeld purchased AppHarvest securities during the class period in February of 2021 and in March, April, and July of 2021.  His claim satisfies the typicality requirement of Rule 23(a)(3).

The adequacy requirements of Rule 23(a)(4) is satisfied.  Narzissenfeld's claims are directly aligned with and not antagonistic to those of the other settlement class members.  He participated in the settlement discussions.  Lead plaintiff's counsel is experienced and capable.

In addition to satisfying Rule 23(a), a class must also satisfy one of the requirements of Rule 23(b) in order to be certified.  The proposed class satisfies the standards of Rule 23(b)(3).  The common issues predominate over any

individual issues.  In addition, a class action is far superior to any other methods for fairly and efficiently adjudicating the controversy.

The settlement class is therefore certified.

Approval of the Settlement

Fairness, reasonableness, and adequacy of the settlement from the standpoint of the settlement class.

Rule 23(e) provides that the claims of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval.  Rule 23(e)(2) requires a court to make certain findings in order for settlement to be binding on class members.  A settlement may be approved only if it is fair, reasonable, and adequate.

Rule 23(e)(2), as amended on December 1, 2018, provides that if a proposed settlement "would bind class members, the court may approve it only after hearing and only on finding that it is fair, reasonable, and adequate after considering whether (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated arm's length; (c) the relief provided for the class is adequate, taking into account (1) the cost, risk, and delay of a trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class members claims; (3) the terms of any proposed award of attorney's fees, including timing of

O7BHRagD

payment; and (4) any agreement required to be identified under Rule 23(e)(3).  Indeed, the proposal treats class members equitably relative to each other."

The Advisory Committee's notes on Rule 23(e)(2) state that the goal of the amendment "is not to displace any factor" previously adopted by any United States Court of Appeals, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  The Advisory Committee explained that in certain jurisdictions lengthy multifactor tests risk distracting courts and parties from focusing on the key issues in the settlement review.

Most of the requirements set forth in the amendments to Rule 23(e)(2) have long been used in the nine-factor test adopted by *Detroit v. Grinnell Corp.*, 495 F.2d 498, 463 (2d Cir. 1974), to evaluate the substantive fairness of a proposed settlement, *Grinnell* instructs a district court to consider "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the

best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Accord Charron v. Wiener*, 731 F.3d 241, 242 (2d Cir. 2013). In conducting the review required by Rule 23(e), the court has the duty "to make a considered and detailed assessment of the reasonableness of proposed settlements." *Weinberger v. Kendrick*, 698 F.2d 61, 82 (2d Cir. 1982) (Friendly J.).

The Court will first review the factors set forth by Rule 23(e)(2) and then address the additional *Grinnell* factors.

Rule 23(e)(2)(A): Whether the class representatives and class counsel have adequately represented the class.

Plaintiff and lead counsel prepared two lengthy amended complaints.

Lead plaintiff and lead counsel then fully briefed the opposition to the motion to dismiss and were partially successful in staving off that motion.

Lead plaintiff and lead counsel then protected the claims of the settlement class by securing a carve-out from the third-party release in AppHarvest plan of confirmation to preserve the release of the claims of class members.

Lead plaintiff and lead counsel then prepared a mediation statement and participated in an all-day mediation session and conducted vigorous follow-up negotiations to settle this case.

O7BHRagD

Counsel possessed records sufficient to permit evaluation of the merits of plaintiff's claims and the strength of the defenses that negotiated an appropriate settlement.

Rule 23(e)(2)(B):  Whether the proposed settlement was negotiated arm's length.

As the Second Circuit has held a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

The settlement was reached following arm's length negotiations by experienced counsel who were versed in the legal and factual complexities of the case and who were assisted by an experienced mediator, Michelle Yoshida of Phillips ADR Enterprise, P.C.  Of note, the settlement was the product of a mediator's proposal.

Rule 23(e)(2)(C):  Whether the relief provided to the class is adequate.

1.  Rule 23(e)(2)(C)(i):  Whether the relief provided to the class is adequate taking into account the costs, risks, and delay of trial and appeal.

The cost, risks, and delay of trial and appeal in this case are significant.  The defendants denied all allegations of wrongdoing.

Were the case to proceed further, the parties would have to engage in an expensive discovery process and class certification process, which would be followed by summary judgment briefing.  The lead plaintiff would have to present industry experts and experts on market efficiency, loss causation, and damages and would have to be prepared to cross-examine the defendants' experts on those subjects.

While lead plaintiff claims that the case has merits, lead plaintiff would still have to address difficult legal and factual issues regarding whether the statements at issue were false, whether they were material, whether they were made with scienter, whether AppHarvest common stock and warrants traded in an efficient market, and the portion of the price decline, if any, attributable to the alleged corrective disclosures.  In particular, there are issues as to whether Lee's statements were false or materially so and whether there was any price impacts from those statements.

Even if lead plaintiff had prevailed at summary judgment and at trial, there would have been delay and considerable risks collecting any future judgment or settlement given the discharge of AppHarvest in bankruptcy.  "The courts have repeatedly recognized that a defendant's bankruptcy in securities cases adds substantially to the difficulties and risks facing plaintiff's counsel in achieving a recovery for a class."  *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at

*8 (S.D.N.Y. Dec. 18, 2019).  Defendant Lee is unlikely to have the assets to satisfy a judgment larger than the settlement amounts, and the liability insurance policies that would likely have been the only sources of funding for a potential settlement would have been wasted and might well have been exhausted by the cost of litigation through an appeal.

For these reasons, the delay and risk of litigating this case through trial on the merits would have been significant, with no guarantee of recovery to the plaintiff.  This weighs in favor of proposed settlement.

Rule 23(e)(2)(C)(ii):  Whether the relief provided to the class is adequate, taking into account the effectiveness of the proposed method of distributing the relief to the class.

Under the proposed plan of allocation, the net settlement funds, i.e., the settlement fund after paying attorneys' fees and expenses and the costs of the claims administrator and other claims administrative costs, other administrative expenses will be equitably distributed among authorized claimants based on their respective alleged economic losses as a result of the alleged fraud.  The plan of allocation was created with the assistance of damages and financial consultants and is based on the assumption that the prices of AppHarvest securities were artificially inflated throughout the settlement class period.

The plan distinguishes between owners of common stock

and owners of warrants.  It also distinguishes between purchases made prior to the May 25, 2021, and purchases made after that date based on the Court's holding that the only actionable misstatements were made on May 25, 2021.  Recognized losses calculated for AppHarvest securities purchased in the settlement class period prior to May 25, 2021, are reduced by 90 percent.

If there is any balance remaining in the net settlement fund six months after the initial distribution of that fund, the claims administrator is directed, if feasible and economical, to redistribute the balance among authorized claimants who have cashed their checks in an equitable and economic fashion.  If there's still funds left, they will be contributed to the Investor Protection Trust or other nonprofits that the Court, in its discretion, approves under the *cy pres* doctrine.

The settlement fund will be distributed with the assistance and established and experienced claims administrator using a well-established securities class action distribution process.

The proposed method of distributing the settlement is effective, and the plan of allocation is fair and reasonable and adequate.  The plan of allocation is approved.

Rule 23(e)(2)(C)(iii):  Whether the relief provided to the class is adequate, taking into account the terms of the

proposed attorneys' fees, including the timing of payment.

Lead counsel seeks attorneys' fees in the amount $1,212,500, representing one-quarter of the common fund and a .75 percent negative multiplier for lead counsel's lodestar and reimbursement of legal expenses in the amount of $166,987.77. Dkt. No. 127.

In determining the attorneys' fees application, the Court will describe in greater detail the attorneys' fees and the performance of counsel and the appropriateness of the fee request.  For the purposes of Rule 23(e), the proposed attorneys' fees are not an obstacle to the $4,850,000 settlement.  *See, e.g., Revolution Lighting Tech, Inc. Sec. Litig.*, No. 19 Civ. 980, Dkt. No. 86 (S.D.N.Y. Aug. 11, 2020) (awarding attorneys' fees of 33.33 percent of the settlement fund where —— plus expenses, where no motion to dismiss was ever filed).

Rule 23(e)(2)(C)(iv):  Whether the relief provided to the class is adequate taking into account any agreement required to be identified under Rule 23(e)(3).

Rule 23(e)(3) states:  "The party seeking approval must file a statement identifying any agreement made in connection with the proposal."

The parties have entered into a supplemental agreement containing a bust provision, which sets forth the conditions under which the individual defendants would have the right to

terminate the settlement and render it null and void in the event that requests for exclusion exceed certain agreed-upon terms.  The bust provision is standard.  It also has not been triggered in this case.

Let me ask the plaintiff's counsel, is that correct, the bust provision has not been triggered?

MR. POTREPKA:  That is correct, your Honor.

THE COURT:  All right.

Next, Rule 23(e)(2)(C):  Whether the proposal treats class members equitably relative to each other.

I have previously discussed the plan of allocation, which is intended to allocate to each class member a portion of the settlement fund on the basis of their economic losses.  The Court finds the plan of allocation seeks to compensate members of the class equitably.

The Second Circuit's Grinnell Factors.

As I've previously mentioned, the Advisory Committee's notes to Rule 23(e)(2) state that the goal of the recent amendments were not intended to displace any factor adopted by any Court of Appeals and that the Second Circuit has long used the nine-factor *Grinnell* test to evaluate the substantive fairness of a proposed class action settlement.

In applying Rule 23(e) to this case, I have already discussed many of the *Grinnell* factors including the complexity, expense, and likely duration of the litigation, the

O7BHRagD

stage of the proceedings and amount of discovery, and the risk of establishing liability and damages.

I will now discuss the remaining *Grinnell* factors.

1.   The reaction of the class to the settlement.

The claims administrator mailed or emailed 2,406 letters to nominee account holders and institutional groups.  A total of 33,680 postcard notices were mailed to potential settlement class members either by the claims administrator or by nominees.  A total of 99,604 emails have been sent to settlement class members with a direct link to the notice and claim form.  The deadline for submitting requests for exclusion and for objections was May 22, 2024.  The claims administrators received only five requests for exclusion, of which only two are valid exclusions.  No objections have been submitted to the settlement.  18,303 claims have been submitted to the claims administrator.

The reaction of the class weighs strongly in favor of the settlement.

2.   The size of the settlement in the range of possible recovery.

Lead plaintiff's best-case scenario for damages was $104 million for AppHarvest common stock and $8 million for AppHarvest warrants, for a total of $112 million in damages. The settlement represents a 4.3 percent recovery assuming 100 percent claims take rate and no disaggregation of

confounding information.  But that best-case scenario is implausible.  The case, as narrowed by this Court's rulings, was limited to two statements made on May 25, 2021.  Lead plaintiff's damages expert estimated that for purchases made between May 26, 2021, and August 10, 2021, inclusive, class members suffered, at most, a combined total of approximately $36 million in damages, and so the settlement proposal represents an excellent 13.47 percent recovery.

3.  The risk of maintaining the class action through trial.

This factor favors approval of the settlement.  There was great risk to the lead plaintiff in this case.

4.  The ability of defendants to withstand a greater judgment.

Ordinarily, "the defendants' ability to withstand a higher judgment standing alone does not suggest that the settlement is unfair." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).  But in this case, defendants' financial resources operate in favor of the settlement.  AppHarvest filed for bankruptcy protection.  It is unlikely that the defendants' personally have assets sufficient to withstand a jury verdict substantially greater than the settlement amounts and the insurance policy is a wasting asset. *See Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *9 (S.D.N.Y. Dec. 18, 2009)(an insurance policy that pays both legal fees and provides

coverage for claims is a wasting asset because "each day that the action was not settled could take away money available for the class for settlement'").

### F.   Notice to the Class

By order of March 6, 2024, the Court preliminarily found that postcard notice by email or first-class mail where no email address was available directing class members to the settlement website to access the notice and publishing the summary notice would meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, and it approved the form of notice, postcard notice, and summary notice, as well as the claims form.  The Court directed the claims administrator to cause a copy of the postcard notice to be mailed or emailed to all settlement class members who could be identified with reasonable efforts and to cause the notice and proof of claim to be posted on the settlement website and to cause a copy of the summary notice to be published in the *Investor's Business Daily* and to be transmitted over PR Newswire.  The Court also directed the claims administrator to use reasonable efforts to give notice to the nominee purchasers.

Lead plaintiff has submitted two declarations of the claims administrator, Strategic Claims Services ("SCS").  Those declarations establish that the Court's order was complied with and that members of the class received the best notice that was practicable under the circumstances.

The notice and claims forms were published on the Legal Notice System of the Depository Trust Company.  In addition, SCS sent a letter to its list of 1,101 bank and broker companies, as well as 1,305 mutual funds, insurance companies, pension funds, and money managers, notifying them of the settlement, and asking that they transmit the postcard notice or email the link to the notice and claims form to their clients who may be beneficial owners or that they provide last-known addresses and email addresses of such beneficial purchasers or owners to SCS so that SCS could send them notices.

As noted, a total of 33,680 postcard notices were mailed to potential settlement class members either by the claims administrator or by nominees.  A total of 99,604 emails have been sent to settlement class members with the direct link to the notice and claims form.  The summary notice was published in the *Investor's Business Daily* and transmitted over PR Newswire.  SCS maintained a toll-free telephone number for settlement class members to call and obtain information about the settlement, as well as to request that the notice and claim form be mailed to them, and has promptly responded to each telephone inquiry.  It also established a settlement Web page which is accessible 24 hours a day, seven days a week.

The Court concludes that the notice to the class satisfies Rule 23(c)(2)(B).

O7BHRagD

                    The Settlement is Approved

          Having reviewed the factors set forth by Rule 23(e)(2)

and the additional factors set forth in the Second Circuit's

*Grinnell* decision, the Court concludes that the proposed

settlement is fair, reasonable, and adequate.  It is therefore

approved by the Court.

                   Approval of the Fee Application

          Lead counsel also moves for an order awarding it

attorneys' fees in the amount of $1,212,500, representing

one-quarter of the common fund and a .75 negative multiplier

for lead counsel's lodestar and reimbursement of legal expenses

in the amount of $166,987.77.  Dkt. No. 127.

                   Attorneys' Fees Application

          In reviewing the fee application in the class action

context, the Court is to act as a fiduciary who must serve as a

guardian of the rights of absent class members.  *Central States*

*Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco*

*Managed Care, LLC,* 504 F.3d 229, 249 (2d Cir. 2017)(quoting

*Grinnell*, 560 F.2d at 1099).  The award must reflect the actual

effort made by the attorney to benefit the class.  *Id.*

          The Second Circuit provided substantial guidance to

the district courts on common fund fee applications in

*Goldberger v. Integrated Resources Inc.*, 209 F.3d 43 (2d Cir.

2000).  *Goldberger* made plain that the district court has

discretion to use either the lodestar or percentage in setting

O7BHRagD

a fee award.  *Goldberger* lists certain factors that a court should weigh when reviewing an attorneys' fee application: "(1) the time and labor expended by counsel, (2) the magnitude and complexities of the litigation, (3) the risk of the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations."  *Id*. at 50.

*Goldberger* notes that the lodestar remains useful as a baseline even if the percentage method is eventually chosen. It serves a cross-check on the reasonableness of the requested percentage.  Of course, were it used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.  Instead, the reasonableness of the claimed lodestar can be tested by the Court's familiarity with the case, as well as encouraged by the strictures of Rule 11.  *Id.*

The Second Circuit's 2007 opinion in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,* 522 F.3d 182, 183 (2d Cir. 2007) moved analysis of attorneys' fees away from the concept of lodestar in favor of a presumptively reasonable fee.  The reasonable hourly rate is what a reasonable paying client would be willing to pay*.  Id.* at 184.

The time and labor compensated by counsel.

The first factor in determining the reasonableness of

a fee request considers the time and labor expended by counsel, *Goldberger*, 209 F.3d at 50.  Lead counsel expended 2,439.93 hours of attorney and professional time on this case.  The lodestar amount is $1,609,971.25.  Lead counsel also notes that these calculations do not include time for personnel who bill ten or fewer hours to the litigation.

I have previously referred to aspects of the work performed by lead counsel, which include researching the facts of the case and speaking to experts, consultations with bankruptcy counsel, researching and drafting two amended complaints in opposition to the motion to dismiss, preparation of the damages report, preparation of a report for the mediator, participating in the mediation sessions, and negotiating the settlement.

The time and labor expended by counsel has been reasonable given the stage of the litigation and weighs in favor of the fee request.

The magnitude, complexities, and risk of the litigation.

The magnitude, complexities, and risks of this case weigh in favor of the fee request.  *Goldberger* instructs that contingency risk must be considered in setting a reasonable fee.  Lead counsel was required to research and litigate complex questions regarding falsity and materiality, as well as loss causation.  There was substantial risk in the case

stemming both from the law and the facts and from the risk of collection.  This factor weighs in favor of the fee award.

The quality of representation.

*Goldberger* states that the quality of representation is best assessed by comparing the results of the settlement against plaintiff's maximum possible recovery.  209 F.3d at 55. As I have noted, lead counsel achieved a very good result in this case.  The settlement amount constitutes an approximately 4.3 percent recovery against lead plaintiff's best-case scenario of $112 million in damages, but that best case was never realistic.  The settlement represents a 13.47 percent recovery against the more realistic combined total of approximately $36 million in damages.

This result came in the face of significant obstacles on the law and the facts, as I've mentioned, and without there being any roadmap for lead counsel as there is in cases where there is a parallel government investigation.

The requested fee in relation to the settlement.

The requested fee is 25 percent of the settlement amount.  This is consistent with the percentage of the settlement amount that has been approved by district courts in this circuit in connection with complex litigation settlements. *See Christine Asia Co. v. Yun Ma,* 2019 WL 5257534, at *19, (S.D.N.Y. Oct. 16, 2019); *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *8 (S.D.N.Y. Dec. 9, 2021).

Public policy considerations.

Courts have recognized a public policy benefit in rewarding attorneys that bring successful securities actions that foster the enforcement of the federal securities laws. "Implied private actions provide a most effective weapon in the enforcement of the securities laws." *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985).

Public policy supports an attorneys' fee award in this case.

Reaction of the class.

As noted, there have been no objections submitted by members of the class to the terms of the settlement and only two supported requests for exclusion from the class, valid requests for exclusion from the class.  The absence of objections weighs in favor of the fee application.

Lodestar Cross-check.

*Goldberger* states that the lodestar can be used as a useful cross-check on the reasonableness of a counsel's fee request.  Under the lodestar method, a court must engage in a two-step analysis:  First, to determine the lodestar, the court multiplies the number of hours each timekeeper spent on the case by each person's reasonable hourly rate; and second, the Court adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingent nature of the litigation, the results obtained, and the quality of the

attorney's work.  A negative multiplier "militates very in favor of the reasonableness of the fee request, particularly in light of the fact that courts generally grant fees with positive multipliers to reflect the complexity and risk undertaken by class counsel."  *Guevoura*, 2019 WL 6889901, at *18.

At fees of $1,609,971.25, the amount of attorneys' fees requested represents a negative multiplier of .75 percent of the lodestar.

Though the lodestar multiplier's only a cross-check against the fee award here, it's low value reflects the appropriateness of the fee award.  The fee application is therefore approved.

Attorney Expenses

Lead counsel also seeks the reimbursement of legal expenses in the amounts of $166,987.77.  The fee expenses include $90,400 for the time of outside counsel to assist in the bankruptcy, $40,489.50 for investigator fees, $70,053.25 for expert fees, and $11,250 for mediation fees.  Counsel who create common funds are entitled to the reimbursement of expenses that they advance to a class.  Particular costs are compensable if they are of the type normally billed by attorneys to paying clients and if counsel's determination of them is adequate.  *Id.* at *22.

The Court includes that the reimbursement expenses are

O7BHRagD

reasonable.  Documentation has now been provided.  Plaintiff's application for reimbursement is therefore approved.

The Court thus approves the settlement to the now-certified class and also approves the award for attorneys' fees and expenses to plaintiff's attorney.  The clerk of court will be directed to close the motions to Dkt. Nos. 115, 125, and 127, and to close the case.

I will sign the proposed orders that have been submitted to me.

MR. POTREPKA:  Your Honor, I just —— it occurred to me that there is a stipulation on file of dismissal as to the corporate defendant, and that will also need to be ruled on by your Honor.  It has been referred to the Court.

THE COURT:  OK.  I will sign the stipulation.  That's a stipulation of dismissal of AppHarvest, is that correct?

MR. POTREPKA:  That's correct, your Honor.

THE COURT:  I'll sign that as well.

Is there anything else from plaintiff?

MR. POTREPKA:  No.  We thank the Court for its time and attention to this case.

THE COURT:  And from defendant?

MR. WU:  No, your Honor.  Thank you.

THE COURT:  Thank you all.  Congratulations, and congratulations on being finished with the case.

MR. POTREPKA:  Thank you, your Honor.

O7BHRagD

THE COURT:  Would you order a copy of the transcript, please?

MR. POTREPKA:  Yes, we will.

(Adjourned)