**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re AppHarvest Securities Litigation

Case No. 1:21-cv-07985-LJL

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR
DISTRIBUTION OF SETTLEMENT FUNDS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ....................................................................................................... iii

I.    INTRODUCTION ............................................................................................................ 1

II.   DETERMINATION OF AUTHORIZED CLAIMS ......................................................... 2

  A.   Valid Claims ................................................................................................................. 2

  B.   Deficient and Ineligible Claims ................................................................................... 3

    1.   Inadequately Documented Claims ........................................................................... 3

    2.   Ineligible Claims ..................................................................................................... 3

III.  DETERMINATION OF AUTHORIZED CLAIMS ......................................................... 4

IV.   RELEASE OF CLAIMS .................................................................................................. 5

V.    RECORDS RETENTION AND DESTRUCTION .......................................................... 6

VI.   CONCLUSION ................................................................................................................ 7

## TABLE OF AUTHORITIES

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am., Corp.*,
No. 14-CV-7126 (JMF), 2020 WL 916853 (S.D.N.Y. Feb. 26, 2020) ....................................... 5

*In re "Agent Orange" Prod. Liab. Litig.*,
689 F. Supp. 1250 (E.D.N.Y. 1988) ........................................................................................... 3

*In re Authentidate Holding Corp. Sec. Litig.*,
No. 05-CV-5323, 2013 WL 324153 (S.D.N.Y. Jan. 25, 2013) .................................................. 3

*In re Citigroup Inc. Sec. Litig.*,
199 F. Supp. 3d 845 (S.D.N.Y. 2016) ........................................................................................ 5

*In re Gypsum Antitrust Cases*,
565 F.2d 1123 (9th Cir. 1977) .................................................................................................... 3

*In re Orthopedic Bone Screws Prods. Liab. Litig.*,
246 F.3d 315 (3d Cir. 2001) ....................................................................................................... 3

*In re Top Tankers, Inc. Sec. Litig.*,
Case No. 1:06-cv-13761-CM (S.D.N.Y. Dec. 14, 2009) ............................................................ 6

*In re Veeco Instruments Inc. Sec. Litig.*,
Case No. 1:05-md-01695-CM (S.D.N.Y. Sept. 8, 2009) ............................................................ 6

## I.    INTRODUCTION

This action has been settled pursuant to the terms of the Stipulation and Agreement of Settlement dated February 20, 2024 (the "Stipulation"). Dkt. No. 117-1. The Stipulation resolved the action in exchange for a cash payment of $4,850,000. On July 11, 2024, the Court entered a Final Order and Judgment granting Lead Plaintiff's' Motion for Final Approval of Class Action Settlement. Dkt. No. 139. Since then, the Court-appointed Claims Administrator, Strategic Claims Services ("SCS"), has received, evaluated, and logged claims from Authorized Claimants. SCS has completed all analyses and accounting procedures and quality control procedures in connection with the submitted Claims and has finalized its determination of which Claims are authorized and which are ineligible. *See* Declaration of Josephine Bravata (the "Bravata Declaration" or "Bravata Decl."), ¶9, Exhibit 1 to the accompanying Declaration of Gregory M. Potrepka in Support of Lead Plaintiff's Motion for Distribution of Settlement Funds ("Potrepka Declaration"). All that remains to complete the Settlement process is to distribute the Net Settlement Fund to the Authorized Claimants. Lead Counsel therefore requests that the Court authorize the distribution of the Net Settlement Fund to Authorized Claimants, as identified in Exhibits B-1 and B-2 of the concurrently-filed Bravata Declaration.

1

II.    DETERMINATION OF AUTHORIZED CLAIMS

Pursuant to the Preliminary Approval Order, Settlement Class Members wishing to participate in the Settlement were required to submit a Proof of Claim and Release form ("Claim Forms") online or by mail, postmarked or received, no later than May 22, 2024. The Claims Administrator received and reviewed all submitted Claims, and to the extent that a Claim was deficient or ineligible in any regard, the Claims Administrator notified the Claimant of the defect(s) or condition(s) of ineligibility and advised the Claimant as to possible ways to cure the defect(s) or condition(s) of ineligibility. Bravata Declaration at ¶10. The Claims Administrator continued processing all Claims received up to February 3, 2025 and any additional information received or submitted prior to March 27, 2025 in response to deficiency notices. *Id.* at ¶11.

A.    **Valid Claims**

The Claims Administrator received 18,403 Claim Forms. *Id.* at ¶9. Of the 18,403 Claim Forms, SCS determined that 11,962 were properly documented and valid. *Id*. at ¶10(a). These valid claims represent Recognized Losses of $44,772,796.35 for common stock and $1,933,534.70 for warrants. *Id*. Of the 11,962 valid claims, 11,798 were timely and 164 were untimely but otherwise valid. *Id*. The 164 late but otherwise valid claims represent $277,619.85 in Recognized Losses for common stock and $7,384.72 in Recognized Losses for warrants. *Id*. The late but otherwise valid claims are included in the overall number of valid claims, *i.e.*, 11,962. *Id*.

Lead Plaintiff requests that the Court accept all 11,962 valid Claims, including the untimely but otherwise valid claims. The untimely but otherwise valid claims have not caused delay in the distribution of the Net Settlement Fund or otherwise prejudiced any Authorized Claimant. Accordingly, Lead Plaintiff believes that it would be unfair to prevent otherwise valid Claimants from participating in the Net Settlement Fund solely because their Claims were submitted after the

2

May 22, 2024 submission deadline, but while other Claims were still being processed. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977) (district court has discretion to grant late claims); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"); *In re Authentidate Holding Corp. Sec. Litig.*, No. 05-CV-5323, 2013 WL 324153, at *1 (S.D.N.Y. Jan. 25, 2013) (courts have "inherent power to accept late claims"); *see also In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001) (courts may allow late claims on a "finite pool of assets").

Accordingly, Lead Plaintiff respectfully requests that the Court approve the 11,962 Claims as listed in Exhibits B-1 and B-2 of the Bravata Declaration.

### B.    Deficient and Ineligible Claims

#### 1.    Inadequately Documented Claims

SCS identified 32 claims that were incomplete or had one or more defects or conditions of ineligibility. Bravata Decl. at ¶10(b). SCS sent deficiency notices advising Claimants of the inadequacy and giving them the opportunity to cure the deficiency. *Id.*; *see also id.* at Ex. D (sample deficiency notice). Claimants concerning the 32 inadequately documented claims were notified of the deficiencies and sent a rejection notice, but have not responded or objected, and thus no such claim was successfully cured and included as a valid claim. *Id.* at ¶10(b).

#### 2.    Ineligible Claims

SCS identified 6,409 Claim Forms that it recommends for complete rejection for reasons

3

other than inadequate documentation. Bravata Decl. at ¶10(c). Included in this category are: (i) claims with no Recognized Losses; (ii) claims filed for common stock or warrants purchased outside of the Settlement Class Period; (iii) claims filed for common stock or warrants that were received or transferred into an account, but not purchased; (iv) claims with common stock or warrants sold short; (v) duplicate claims filed; (vi) claims withdrawn from the filing entity; and (vii) claims filed for securities other than AppHarvest Inc. common stock and warrants. *Id.* Such Claimants were sent rejection notices advising them of SCS's determination and none has contested the determination. *Id.*

## III.    DETERMINATION OF AUTHORIZED CLAIMS

Pursuant to the Stipulation, "[t]he Claims Administrator shall determine each Authorized Claimant's share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss, as defined in the Plan of Allocation included in the Notice[.]" Stipulation, ¶25 (Dkt. No. 117-1). The Plan of Allocation sets forth the formula for calculating each claimant's Recognized Loss. *See* Dkt. No. 119-1.

Lead Counsel now seeks to distribute the Net Settlement Fund to the Settlement Class whose 11,962 Claims have been accepted as set forth in Exhibits B-1 and B-2 of the Bravata Declaration, in proportion to their Recognized Losses as shown herein. The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. Bravata Decl. at ¶13(b). However, if any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, and if Lead Counsel, in consultation with the Claims Administrator, determines it is cost-effective to do so, the Claims Administrator will conduct a second distribution to all Authorized Claimants in the initial distribution who cashed their distribution checks. *Id*. at ¶13(c).

4

Following the second Distribution, additional redistributions will occur following the same process until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines additional distributions are no longer economically feasible. *Id*.

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, and the Claims Administrator has determined that no further distributions would be feasible or economical, the remaining balance shall be contributed to a non-sectarian, not-for-profit organization identified by Lead Counsel. *Id*. Lead Counsel proposes that any such *cy pres* distribution be made to Legal Services NYC. "[C]ourts routinely approve cy pres awards to non-profit organizations when distributions to the class would not be feasible." *Alaska Elec. Pension Fund v. Bank of Am., Corp.*, No. 14-CV-7126 (JMF), 2020 WL 916853, at *2 (S.D.N.Y. Feb. 26, 2020) (citing *In re Citigroup Inc. Sec. Litig.*, 199 F. Supp. 3d 845, 848 (S.D.N.Y. 2016) ("'[C]y pres designations should be made only when it is not feasible to make further distributions to class members.'") (alteration in original). Pursuant to the Stipulation, a *cy pres* distribution, if any, would be "contributed to the Investor Protection Trust, or other non-profit that the Court, in its discretion, approves [sic] under the *cy pres* doctrine." Stipulation, ¶28 (Dkt. No. 117-1). Lead Counsel has determined that since filing for preliminary approval, the Investor Protection Trust is no longer in operation. Accordingly, Lead Counsel requests that any such distribution, if necessary, be made to Legal Services NYC. *See* Potrepka Declaration Ex. 2 at ¶6 (approving *cy pres* distribution to Legal Services NYC).

## IV.    RELEASE OF CLAIMS

To allow the full and final distribution of the Net Settlement Fund, the Court must bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and provide that all persons involved in the review, verification, calculation, tabulation,

or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, the Court should release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of such involvement and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them under the terms of the distribution order. *See In re Top Tankers, Inc. Sec. Litig.*, Order Authorizing Distribution of Net Settlement Fund at p.4, ECF No. 123, Case No. 1:06-cv-13761-CM (S.D.N.Y. Dec. 14, 2009); *In re Veeco Instruments Inc. Sec. Litig.*, Order Approving Distribution of Settlement Fund at ¶8, ECF No. 320, Case No. 1:05-md-01695-CM (S.D.N.Y. Sept. 8, 2009).

## V.   RECORDS RETENTION AND DESTRUCTION

The Court should order that: (i) in no less than one year after the final distribution of the Net Settlement Fund, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) in no less than one year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the claims and all supporting documentation.

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve and enter the [Proposed] Order Granting Lead Plaintiff's Motion for Distribution of Settlement Funds, submitted herewith.

Dated:   April 1, 2025

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Gregory M. Potrepka*
    Gregory M. Potrepka (GP-1275)
Shannon L. Hopkins (SH-1887)
1111Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
shopkins@zlk.com
gpotrepka@zlk.com

***Attorneys for Plaintiff Alan Narzissenfeld***